# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 49-cv-2782-EWN-CBS**

(Consolidated Cases: Civil Nos. 2782, 5016 and 5017)

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Civil No. 2782** |
| Plaintiff, | |
| v. | |
| NORTHERN COLORADO WATER CONSERVANCY DISTRICT, *et al.,* | |
| Defendants. | |
| In the Matter of the Adjudication of Priorities of Water Rights in Water District No. 36 for Purposes of Irrigation: | **Civil No. 5016** |

**Petitioners:**
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

| | |
|---|---|
| In the Matter of the Adjudication of Priorities of Water Rights in Water District No. 36 for Purposes Other Than Irrigation: | **Civil No. 5017** |

**Petitioners:**
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

**MOTION TO INTERVENE BY CLIMAX MOLYBDENUM COMPANY**

COMES NOW Climax Molybdenum Company ("Climax"), by and through its undersigned counsel, and hereby moves the Court for an order granting it leave to intervene as of right in the above-captioned cases, pursuant to Fed. R. Civ. P. 24(a)(2).  In the alternative, Climax moves for an order granting it permissive intervention in the above-captioned cases, pursuant to Fed. R. Civ. P. 24(b).  The supporting affidavits of Bryce R. Romig and Gary B. Thompson, P.E., are attached to this Motion as Exhibits A and B.

Pursuant to Fed. R. Civ. P. 24(c), Climax tenders its Petition on Intervention for Declaratory Relief ("Petition") concurrently with this motion.  Exhibits 1-19 of the Petition are being conventionally filed simultaneously with this motion.

As grounds for this Motion to Intervene, Climax states as follows:

## INTRODUCTION

1.     The original parties to these proceedings are:  the United States; the Northern Colorado Water Conservancy District ("Northern"); the Colorado River Water Conservation District (the "River District"); the City and County of Denver, acting by and through its Board of Water Commissioners ("Denver"); the City of Colorado Springs ("Colorado Springs"); the Grand Valley Water Users Association; the Orchard Mesa Irrigation District; the Palisade Irrigation District; the Grand Valley Irrigation Company; and the Middle Park Water Conservancy District.

2.     Pursuant to D.Colo.L.Civ.R.7.1, commencing on March 27, 2007, counsel for Climax conferred about this motion to intervene with counsel for the original parties.  The United States of America, Denver, and Colorado Springs did not consent to the motion.  Counsel for the following parties were unable to consent because they did not have the opportunity to

confer with their clients' governing boards: Northern, the River District, the Grand Valley Water Users Association, the Orchard Mesa Irrigation District, the Palisade Irrigation District, the Grand Valley Irrigation Company, and the Middle Park Water Conservancy District.

3. Climax is a corporation incorporated under the laws of the State of Delaware. Climax owns and operates the Climax Mine, which is located in Summit, Lake, and Eagle Counties in the State of Colorado. (Area Location Map, Petition Ex. 1) Climax owns water rights that divert from Tenmile Creek, a tributary of the Blue River, that were decreed by the District Court for Summit County, Colorado ("Summit County Court").

4. Several of Climax's water rights were decreed by the Summit County Court in Civil Action 1710 ("CA 1710") on October 26, 1937. These water rights were granted the following priority numbers and priority dates: Supply Canal No. 1, Priority Number 99-C, Aug. 15, 1935; Supply Canal No. 2, Priority Number 100-C, Aug. 15, 1935; Ten Mile Diversion Ditch No. 1, Priority Number 103-C, June 4, 1936; Ten Mile Diversion Ditch No. 2, Priority Number 104-C, June 4, 1936; and Chalk Mountain Ditch, Priority Number 105-C, June 4, 1936 ("Climax's CA 1710 Water Rights").[1] (CA 1710 Findings and Decree, Petition Ex. 2 at 10, 12)

5. Climax plans to resume operations at the Climax Mine in 2009, at which time Climax will need to exercise its water rights in-priority. (Romig Aff., Ex. A at ¶¶ 2 and 4) It is anticipated that Climax will invest up to $250 Million in new capital infrastructure at the mine.

---

[1] The letter "C" in these priority numbers denoted the fact that those water rights were decreed as conditional water rights. Climax's conditional water rights that were adjudicated in CA 1710 were made absolute in subsequent years.

(Id. at ¶ 3) A dispute has arisen surrounding the proper administration of Climax's CA 1710 Water Rights with respect to the 1,726 cubic foot per second water right decreed by this Court for the Green Mountain Hydroelectric Plant (the "Green Mountain Hydroelectric Right") and the "Power Interference Agreement" that Denver and the United States entered as part of the settlement stipulation that was incorporated into the Blue River Decree. (Thompson Aff., Ex. B at ¶ 8) This dispute casts a shadow over Climax's plans to resume operations at the Climax Mine by raising uncertainty about the mine's ability to operate at full capacity. (Romig Aff., Ex. A at ¶ 6) Climax's CA 1710 Water Rights constitute thirty-five to thirty-nine percent of the Climax Mine's water supply and are essential to the viability of resumed operations at the Climax Mine at its historic levels. (Thompson Aff., Ex. B at ¶¶ 6 and 7; Romig Aff., Ex. A at ¶¶ 5 and 6)

6. In 1942, seeking to adjudicate water rights for its Blue River Diversion Project, which includes Dillon Reservoir and the Roberts Tunnel, Denver brought Civil Actions 1805 and 1806 ("CA 1805 and 1806") in the Summit County Court as supplemental water adjudications for Blue River water in Water District No. 36.[2] In these cases, the Summit County Court decreed appropriation dates of June 24, 1946 to the various water rights for the Blue River Diversion Project (including Dillon Reservoir and the Roberts Tunnel) (the "Blue River Diversion Project's 1946 Water Rights"). (CA 1806 Judgment and Decree, Petition Ex. 6 at 12)

7. The United States and Northern filed a Statement of Claim in CA 1805 and 1806 for Green Mountain Reservoir, and in CA 1806 for the Green Mountain Hydroelectric Right,

---

[2] CA 1805 was an adjudication of water rights for irrigation purposes; CA 1806 was an adjudication of water rights for purposes other than irrigation.

both of which are features of the Colorado-Big Thompson Project, a federal water project administered by the Department of the Interior, Bureau of Reclamation.  The Summit County Court ultimately declined to adjudicate any water rights for Green Mountain Reservoir or the Green Mountain Hydroelectric Plant, resulting in an appeal to the Colorado Supreme Court.  The supreme court reversed the Summit County Court and remanded CA 1805 and CA 1806 to the Summit County Court for entry of a decree regarding only water rights on the Blue River associated with Green Mountain Reservoir and the Green Mountain Hydroelectric Plant.  See City and County of Denver v. Northern Colo. Water Conservancy Dist., 130 Colo. 375, 276 P.2d 992 (1955).  Upon remand to the Summit County Court, the United States was served notice pursuant to the McCarran Amendment, 43 U.S.C. § 666, and entered its appearance in CA 1805 and 1806 for adjudication of water rights for Green Mountain Reservoir and the Green Mountain Hydroelectric Plant.  On May 5, 1955, the United States petitioned to remove the cases to this Court.  Removal was effectuated, and the cases were renumbered in federal court as Case Nos. 5016 and 5017.

8.     Case Nos. 5016 and 5017 were subsequently consolidated for purposes of trial with Case No. 2782, which had been filed with this Court by the United States in 1949 seeking a determination of its rights and obligations in connection with the Colorado-Big Thompson Project and an adjudication of all the water rights associated with this Project.  (United States Complaint, Case No. 2782, Petition Ex. 5)  Collectively, Case Nos. 2782, 5016 and 5017 are known as the "Consolidated Cases."

9.     On October 12, 1955, the Court entered what is known as the Blue River Decree, interpreting Senate Document 80 and adjudicating water rights for the Colorado-Big Thompson

Project. The Blue River Decree consists of two sets of documents. The first set of documents is the "Findings of Fact and Conclusions of Law, and Final Judgment" for Case Nos. 5016 and 5017, but not Case No. 2782 (the federal quiet title action). (Findings of Fact and Conclusions of Law, and Final Judgment, Case Nos. 5016 and 5017, Petition Ex. 8) The second set of documents is the "Findings of Fact and Conclusions of Law, and Final Decree" for Case Nos. 5016, 5017 <u>and</u> 2782. (Findings of Fact and Conclusions of Law, and Final Decree, Case Nos. 5016, 5017 and 2782, Petition Ex. 7)

10. The Court in the Final Judgment in Case Nos. 5016 and 5017 assigned a priority number to the Green Mountain Hydroelectric Right, in keeping with the method of water rights administration utilized by the State of Colorado. (Findings of Fact and Conclusions of Law, and Final Judgment, Case Nos. 5016 and 5017, Petition Ex. 8 at folio p. 259) The transcripts of the proceedings before the Court on October 11 and 12, 1955, show that the issue of assigning priority numbers in the Final Judgment was raised by the parties, and that the Court's use of priority numbers in the Final Judgment was intentional. (October 11, 1955 Transcript, Petition Ex. 12; October 12, 1955 Transcript, Petition Ex. 13) The priority number assigned by the Court for the Green Mountain Hydroelectric Right (Priority No. 122B) was subsequent to the priority numbers previously assigned by the Summit County Court in CA 1710 to Climax's CA 1710 Water Rights (Priority Nos. 99, 100, 103, 104, and 105). (Findings of Fact and Conclusions of Law, and Final Judgment, Case Nos. 5016 and 5017, Petition Ex. 8 at folio p. 259; CA 1710 Findings and Decree, Petition Ex. 2 at 12)

11. The priority numbers awarded Climax's CA 1710 Water Rights are senior to those awarded to the Green Mountain Reservoir Hydroelectric Right. Also, Climax's CA 1710

Water Rights are senior to the Blue River Diversion Project's 1946 Water Rights as decreed in CA 1806. Paragraph 4(b) of the Findings of Fact and Conclusions of Law entered in the Blue River Decree describes a "Power Interference Agreement" wherein the United States agreed, under certain circumstances, to allow Denver to divert water out of priority against the Green Mountain Hydroelectric Right in return for Denver's delivery of power to the Green Mountain Substation or other locations as directed by the United States. (Findings of Fact and Conclusions of Law, and Final Decree, Case Nos. 5017, 5016 and 2782, Petition Ex. 7 at Bates 33[3]; and Findings of Fact and Conclusions of Law, and Final Judgment, Case Nos. 5016 and 5017, Petition Ex. 8 at folio p. 231)

12. As determined by this Court at paragraph 4(b) of its February 9, 1978 Supplemental Judgment and Decree, diversions by Denver under its Power Interference Agreement may only occur when "such diversions by Denver would otherwise be in priority." (Supplemental Judgment and Decree, February 9, 1978, Petition Ex. 16 at 2-3) Denver is prohibited from diverting and storing under the Power Interference Agreement in contravention of West Slope water rights that are junior to Green Mountain Reservoir's Hydroelectric Right but are senior to the Blue River Diversion Project's 1946 Water Rights. This limitation is necessary in order to prevent Denver from improperly benefiting from the Colorado-Big Thompson Project by using the Green Mountain Hydroelectric Right's 1936 priority to divert and store water to the detriment of Western Slope water users, such as Climax.

---

[3] The Bates numbers on this exhibit were not on the original. Bates numbers were affixed by Climax to the exhibit copy for ease of reference.

13. During a February 18, 2005 meeting of Colorado River water users regarding Green Mountain Reservoir operations and administration of Blue River water rights, Climax was informed by the Colorado State Engineer that the State Engineer's office would administer the Green Mountain Hydroelectric Right as senior to Climax's CA 1710 Water Rights. Climax was also informed by the Colorado State Engineer at this meeting that the State Engineer's office would administer the Blue River Diversion Project's 1946 Water Rights as senior to Climax's CA 1710 Water Rights (with 1935 and 1936 priority dates) by virtue of the Power Interference Agreement. (Thompson Aff., Ex. B at ¶ 8)

14. Statements by state water administration officials that the Green Mountain Hydroelectric Right will be administered as senior to Climax's CA 1710 Water Rights causes uncertainty and insecurity about the availability of water to the Climax Mine, which in turn creates uncertainty and insecurity about the operational capacity of the Climax Mine and Climax's planned investments therein. (Id. at ¶ 7; Romig Aff., Ex. A at ¶ 6)

15. Statements by state water administration officials that the Blue River Diversion Project will be administered as senior to Climax's CA 1710 Water Rights when Denver stores or diverts water under the Power Interference Agreement causes uncertainty and insecurity about the availability of water to the Climax Mine, causing uncertainty and insecurity about the operational capacity of the Climax Mine and Climax's planned investments therein. (Thompson Aff., Ex. B at ¶ 7; Romig Aff., Ex. A at ¶ 6)

16. Although Climax has moved to intervene in the Consolidated Cases in the past, Climax is not a party to the Consolidated Cases. Climax previously moved to intervene in Case No. 5017 on August 28, 1962, as a precaution regarding its CA 1710 Water Rights. Denver had

asserted in a Summit County Court diligence proceeding involving one of Climax's CA 1710 Water Rights that the removal of Civil Action 1806 to this Court had divested the Summit County Court of jurisdiction over Climax's CA 1710 Water Rights.  Climax therefore moved to intervene in order to have the Court determine whether Climax had met reasonable diligence on its CA 1710 Water Rights.  (Motion of American Metal Climax, Inc. to Intervene, Case No. 5017, Petition Ex. 17)[4]

17. In denying Climax's 1962 Motion to Intervene in Case No. 5017, the Court held that Climax's interests are not adequately represented in this action.  (Order Denying Motion of American Metal Climax, Inc. to Intervene, June 21, 1963, Petition Ex. 18 at ¶ 12)  Nevertheless, the Court did not allow Climax's intervention in this case at that time because the Court found that "[Climax] is not and will not be bound by the judgment of this Court in these consolidated actions entered October 12, 1955, or by any future judgment, order or decree of this Court entered in Civil Action No. 5017."  (Id.)

18. In its Order denying Climax's 1962 motion to intervene, the Court further held that "[u]nder the laws of the State of Colorado this Court can take no action in the removed Civil Action No. 1806 affecting the vested property rights of [Climax], which it has obtained in Civil Action No. 1710."  (Id. at ¶ 11)

---

[4]   Climax Molybdenum Company is a successor in interest to American Metal Climax, Inc.

## DISCUSSION

19.  <u>Standard for Intervention as of Right Under Fed. R. Civ. P. 24(a)(2).</u>

> Intervention under Rule 24(a)(2) should be granted when a timely motion to intervene demonstrates that (1) the intervenor has an interest in the property or transaction that is the subject matter of the action, (2) the interest might be impaired absent intervention, and (3) the existing parties will not adequately represent the interest. Moreover, "intervention requires that this interest in the proceedings be 'direct, substantial, and legally protectable.'"

<u>Alameda Water & Sanitation Dist. v. Browner</u>, 9 F.3d 88, 90 (10th Cir. 1993) (internal citations omitted); Fed. R. Civ. P. 24(a).

a.  <u>Climax Has a "Direct, Substantial, and Legally Protectable" Interest in the Subject Matter of the Consolidated Cases.</u>   Senior water priorities on Colorado's over-appropriated rivers are a valuable property right.  <u>E.g.</u>, <u>High Plains A & M, LLC v. Southeastern Colo. Water Conservancy Dist.</u>, 120 P.3d 710, 723 (Colo. 2005).  Climax's CA 1710 Water Rights constitute substantial and legally protectable rights that were lawfully decreed by the Summit County Court.  Further, Climax's CA 1710 Water Rights are inseparable from the subject of the Consolidated Cases, that is, rights and priorities to use water of the Blue River.

b.  <u>Climax's Interests Will Be Impaired Absent Intervention.</u>  In light of the statements made by state water administration officials, Climax's absence from the Consolidated Cases will impede its ability to protect its CA 1710 Water Rights from impairment by the Green Mountain Hydroelectric Right and Denver's diversion and storage of water under the Power Interference Agreement.  Although the Court concluded in 1963 that "[u]nder the laws of the State of Colorado this Court can take no action in the removed Civil Action No. 1806 affecting the vested property rights of [Climax], which it has obtained in Civil Action No. 1710" (Order

Denying Motion of American Metal Climax, Inc. to Intervene, June 21, 1963, Petition Ex. 18 at ¶ 11), actions of the Colorado State Engineer, based on his interpretation of this Court's decisions, will result in the administrative subordination of Climax's CA 1710 Water Rights (with 1935 and 1936 priority dates) to the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights.  The Green Mountain Hydroelectric Right was decreed by this Court, and the stipulation containing the Power Interference Agreement was approved by this Court.  This Court alone has the authority to enter declaratory judgments regarding these matters.

    c. <u>The Existing Parties Do Not Adequately Represent Climax's Interests.</u>   In its June 21, 1963 Order denying Climax's Motion to Intervene, the Court specifically held that Climax's interests are not adequately represented in this matter.  Circumstances have not changed; the current parties to the Consolidated Cases do not adequately represent Climax's interests on the Blue River.

    d. <u>The Issues Are Ripe for Climax's Intervention</u>.  Climax's intervention is justified at this point in time.  Climax's 1962 Motion to Intervene was for a finding of reasonable diligence regarding Climax's CA 1710 Water Rights and did not raise the issues discussed in Climax Molybdenum Company's Petition on Intervention for Declaratory Relief, filed concurrently with the instant Motion to Intervene.  Since that time, the Colorado State Engineer, as the administrator of water rights on the Blue River, has stated his intent to administratively subordinate Climax's CA 1710 Water Rights to the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights, thus directly implicating Climax's CA 1710

Water Rights in the Consolidated Cases. In the present action, Climax seeks to remedy a wrong not at issue in the previous Motion to Intervene.

    e.  <u>This Motion is Timely</u>. This Motion to Intervene is sufficiently timely to merit intervention as of right. The Climax Mine was in full operation from the adjudication of the CA 1710 Water Rights in 1937 until 1984, and was <u>never</u> administered as junior to the Green Mountain Hydroelectric Right or the Blue River Diversion Project's 1946 Water Rights. (Thompson Aff., Ex. B at ¶ 4) The historic consumptive use of Climax's water rights is 8,911 acre feet in a peak production year, and 6,119 acre feet over a long-term average; out of these total amounts, Climax's CA 1710 Water Rights were the source of 3,503 acre feet in a peak production year and 2,126 acre feet over a long-term average. (<u>Id</u>. at ¶ 5) During the severe drought year of 1977, the Blue River Diversion Project was required to stop diverting and storing water, but Climax's water rights were not curtailed. (<u>Id</u>. at ¶ 4) Indeed, total water consumption at the Climax Mine in 1977 was approximately 6,352 acre feet – the third highest year in the mine's history. (<u>Id</u>.) However, with a few sporadic exceptions, the Climax Mine did not operate from 1984 through the present due to insufficient demand for molybdenum. (<u>Id</u>.; Romig Aff., Ex. A at ¶ 2)

  During the late 1990's the Colorado State Engineer's tabulation of water rights for Water Division 5 listed Climax's CA 1710 Water Rights as subordinate to the Green Mountain Hydroelectric Right, but not to the Blue River Diversion Project. However, the State Engineer's tabulation is not authoritative. <i>See</i> C.R.S. §37-92-401(11) ("the relative listing of water rights in a tabulation shall not create any presumption of seniority"); <u>Consolidated Home Supply v. Town of Berthoud</u>, 896 P.2d 260, 264-65 (Colo. 1995). Additionally, the issue of the relative priorities

between Climax's CA 1710 Water Rights versus the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights was not ripe because the Climax Mine was not operating and, thus, Climax had no need to use its CA 1710 Water Rights.

The issue of the relative priorities between Climax's CA 1710 Water Rights versus the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights is now ripe because:   a) Climax plans to resume operations at the Climax mine in 2009, at which time Climax will need to exercise its water rights in priority (Romig Aff., Ex. A at ¶¶ 2 and 4); and b) the state engineer has taken a firm position, in the context of meetings between Colorado River water users regarding the administration of the Blue River, and relatively contemporaneous with Climax's commencement of its planning to restart the mine, that Climax's CA 1710 Water Rights will be administered as junior to the Green Mountain Hydroelectric Right and the Blue River Diversion Project.  (Thompson Aff., Ex. B at ¶ 8)  Since learning in February 2005 of the Colorado State Engineer's decision to administer the Green Mountain Hydroelectric Right and the Blue River Diversion Project as senior to Climax's CA 1710 Water Rights, Climax has unsuccessfully attempted to resolve the priority question outside of the judicial process.  (Id.)  The current uncertainty surrounding the proper administration of Climax's CA 1710 Water Rights with respect to the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights casts a shadow upon Climax's plans to resume full operation at the Climax Mine by raising uncertainty about the Mine's ability to operate at full capacity due to a limited water supply.  (Id. at ¶ 7; Romig Aff., Ex. A at ¶ 6)

20. <u>Alternatively, Permissive Intervention by Climax is Appropriate</u>.  Fed. R. Civ. P. 24(b) states:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The facts relevant to Climax's claim for declaratory relief to determine whether its CA 1710 Water Rights are senior to the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights are inextricable from the facts at issue in the Consolidated Cases. Climax presents a dispute regarding Blue River priorities in relation to the Consolidated Cases. Also, Climax's intervention will not unduly delay or prejudice adjudication of the rights of the original parties. The Consolidated Cases are ongoing, as the Court well knows. The addition of Climax as a party to the Consolidated Cases will not unnecessarily clutter or slow the proceedings. Instead, such addition will ensure fair and legal administration of Climax's CA 1710 Water Rights, which, because they are so close in priority to the rights decreed in the Consolidated Cases, have a substantial legal connection to the subject matter of this action.

Finally, there is no adequate remedy for Climax in another action. *Cf.* 6 James Wm. Moore, et al., Moore's Federal Practice, § 24.10(2)(b); § 24.10(2)(d) (3d Ed. 1999) (the Court should consider "other factors" such as availability of another remedy when considering a motion for permissive intervention). "[A]ctions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 819 (1976). If Climax attempted to initiate a separate lawsuit to resolve this issue, that action would likely be consolidated with these Consolidated Cases. Climax's motion to intervene therefore should be granted as a matter of judicial efficiency.

WHEREFORE, Climax respectfully requests the Court enter an order granting Climax's intervention as of right into the Consolidated Cases, pursuant to Fed. R. Civ. P. 24(a)(2). Alternatively, Climax requests the Court enter an order granting permission for Climax to intervene in these Consolidated Cases, pursuant to Fed. R. Civ. P. 24(b). Pursuant to Fed. R. Civ. P. 24(c), Climax Molybdenum Company's Petition on Intervention for Declaratory Relief, setting forth Climax's claims for which intervention is sought, is filed concurrently with this motion to intervene. Exhibits 1-19 of the Petition are being conventionally filed simultaneously with this motion. A proposed Order is attached.

Respectfully submitted this 5th day of April 2007.

>RYLEY CARLOCK & APPLEWHITE
>
> s/ Brian M. Nazarenus
> Brian M. Nazarenus
> 1999 Broadway, Suite 1800
> Denver, Colorado  80202
> Telephone:  (303) 863-7500
> Facsimile:   (303) 595-3159
>
> ATTORNEYS FOR PLAINTIFF-INTERVENOR
> CLIMAX MOLYBDENUM COMPANY

Plaintiff-Intervenor's Address:

1746 County Road 202
P.O. Box 68
Empire, CO  80438

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of April, 2007, I electronically filed the foregoing MOTION TO INTERVENE BY CLIMAX MOLYBDENUM COMPANY with accompanying CLIMAX MOLYBDENUM COMPANY'S PETITION ON INTERVENTION FOR DECLARATORY RELIEF and proposed ORDER with the Clerk of the U.S. District Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| Casey S. Funk<br>casey.funk@denverwater.org | Kathleen M. Morgan<br>kathleen@moriarty.com |
|---|---|
| Austin C. Hamre<br>ahamre@dodpc.com | James R. Montgomery<br>jmontgomery@mwhw.com |
| Chad M. Wallace<br>chad.wallace@state.co.us | Frederick G. Aldrich<br>faldrich@aldrich-law.com |
| Douglas L. Abbott<br>dabbott@hollandhart.com | Mark A. Hermundstad<br>mherm@wth-law.com |
| Anne J. Castle<br>acastle@hollandhart.com | Stanley W. Cazier<br>cazier_mcgowan@hotmail.com |
| Peter C. Fleming<br>pfleming@crwcd.org | Donald E. Phillipson<br>dbls99@comcast.net |
| William A. Paddock<br>bpaddock@chp-law.com | Robert V. Trout<br>rtrout@troutlaw.com |
| James J. DuBois<br>james.dubois@usdoj.gov | Nathan A. Keever<br>keever@dwmk.com |
| David J. Hill<br>dgh@bhgrlaw.com | Michael C. Santo<br>santo@bechtelsanto.com |

I further certify that on April 5, 2007, Exhibit Nos. 1-19 have been **conventionally** filed with the Court and an electronic copy (CD) has been provided to each counsel listed below via U.S. mail, postage prepaid, addressed as follows:

| | |
|---|---|
| Peter C. Fleming, Esq.<br>Colorado River Water Conservation District<br>201 Centennial Street, Suite 200<br>P.O. Box 1120<br>Glenwood Springs, CO 8l602-1120<br><br>[*Colorado River Water Conservation District*] | Mark A, Hermandstad, Esq.<br>Williams,Turner & Holmes<br>200 N. 6th Street<br>P.O. Box 338<br>Grand Junction, CO 81502-0338<br><br>[*Grand Valley Water Users Association and Orchard Mesa Irrigation District*] |
| Mary M. Hammond, Esq.<br>Carlson, Hammond & Paddock<br>1700 Lincoln, #3900<br>Denver, CO 80202<br><br>[*City of Colorado Springs and Colorado Springs Utilities*] | Stanley W. Cazier, Esq.<br>Cazier & McGowan<br>62495 U.S. Highway 40<br>P.O. Box 500<br>Granby, CO 80446<br><br>[*Middle Park Water Conservancy District*] |
| Casey S. Funk, Esq.<br>City and County of Denver<br>1600 West 12th Avenue<br>Denver, CO 80204-3412<br><br>[*City and County of Denver acting by and through its Board of County Commissioners*] | Robert V. Trout, Esq.<br>Trout, Raley, Montano, Witwer & Freeman, P.C.<br>1120 Lincoln Street, Suite 1600<br>Denver, CO 80203-2141<br><br>[*Northern Colorado Water Conservancy District*] |
| David G. Hill, Esq.<br>Berg Hill Greenleaf & Ruscitti LLP<br>1712 Pearl Street<br>P.O. Box 1719<br>Boulder, CO 80302<br><br>[*City of Englewood*] | Nathan A. Keever, Esq.<br>Dufford, Waldeck,Milburn & Krohn, LLP<br>744 Horizon Court, #300<br>Grand Junction, CO 81506<br><br>[*Palisade Irrigation District*] |
| Frederick G. Aldrich, LLC<br>601 A 28 ¼ Road<br>Grand Junction, CO 81506<br><br>[*Grand Valley Irrigation Company*] | James J. DuBois, Esq.<br>U.S. Department of Justice<br>Environmental & Natural Resources Division<br>999 18th Street<br>#945 North Tower<br>Denver, CO 80202<br><br>[*United States of America*] |

Additionally, an electronic copy (CD) of Exhibit Nos. 1-19 are available upon request if counsel were not included in the service via U.S. Mail as referenced above.

RYLEY CARLOCK & APPLEWHITE

 s/ Brian M. Nazarenus
Brian M. Nazarenus
1999 Broadway, Suite 1800
Denver, Colorado 80202
Telephone: (303) 863-7500
Facsimile: (303) 595-3159

ATTORNEYS FOR PLAINTIFF-INTERVENOR
CLIMAX MOLYBDENUM COMPANY