# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 49-cv-2782-EWN-CBS

(Consolidated Cases: Civil Nos. 2782, 5016 and 5017)

UNITED STATES OF AMERICA,   Civil No. 2782

  Plaintiff,

v.

NORTHERN COLORADO WATER
CONSERVANCY DISTRICT, *et al.*,

  Defendants.

In the Matter of the Adjudication of Priorities of   Civil No. 5016
Water Rights in Water District No. 36 for Purposes
of Irrigation:

**Petitioners:**
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

In the Matter of the Adjudication of Priorities of   Civil No. 5017
Water Rights in Water District No. 36 for Purposes
Other Than Irrigation:

**Petitioners:**
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

---

## AFFIDAVIT OF GARY B. THOMPSON, P.E.

---

**EXHIBIT B**

| | |
|---|---|
| CITY AND COUNTY OF DENVER | ) |
| | ) ss. |
| STATE OF COLORADO | ) |

**The Affiant, after being duly sworn, states as follows:**

1. I am a registered professional engineer in the State of Colorado, having received my license in 1978. For approximately thirty-three years I have specialized in water rights matters. I have testified as an expert witness regarding water rights matters in the State of Colorado Water Divisions 1 (South Platte River), 2 (Arkansas River), 4 (Gunnison River), 5 (Colorado River), and 7 (San Juan River).

2. I have provided Climax Molybdenum Company engineering services related to water matters, including planning for water needs, for approximately thirty years. I am knowledgeable about and familiar with: a) the water rights for the Climax Mine, including but not limited to the water rights that were decreed by the Summit County Court in Civil Action 1710; b) the Climax Mine's estimated water needs upon its planned reopening in 2009; and c) the impact upon the Climax Mine's water supply if the Green Mountain Hydropower Right or the Blue River Diversion Project's 1946 Water Rights are administered as senior to Climax's CA 1710 Water Rights.

3. Water is essential to the milling process at the Climax Mine. Water is consumed at various stages of the milling process. Without water, the mine would not be able to operate.

4. Climax diverted and beneficially used water under the CA 1710 Water Rights from the early 1930's through the early 1980's, and was never administered as junior to the Green Mountain Hydroelectric Right or the Blue River Diversion Project's 1946 Water Rights. During the severe drought year of 1977, the Blue River Diversion Project was required to stop diverting and storing water, but Climax's water rights were not curtailed. Total consumption at the Climax Mine in 1977 was approximately 6,352 acre feet – the third highest year in the mine's history. However, with a few exceptions, the Climax Mine did not operate from 1984 through the present.

5. The historic consumptive use of Climax's water rights is 8,911 acre feet in a peak production year, and 6,119 acre feet over a long term average. Out of these total amounts, Climax's CA 1710 Water Rights were the source of approximately 3,503 acre feet in a peak production year, and 2,126 acre feet over a long term average.

6. The historic yield of Climax's CA 1710 Water Rights would be eliminated in most years if supply if the Green Mountain Hydropower Right or the Blue River Diversion Project's 1946 Water Rights are administered as senior to Climax's CA 1710 Water Rights. This would result in a thirty-five to thirty-nine percent reduction in the historic water supply for the Climax

Mine. This reduction in the mine's water supply would substantially reduce the mine's operating capacity below historic levels.

7. I am familiar with the water supply planning being conducted for the planned 2009 restart of the Climax Mine. The operational levels that are being contemplated are within the scope of historic production at the mine. However, these operational levels could not be obtained if the Green Mountain Hydropower Right or the Blue River Diversion Project's 1946 Water Rights are administered as senior to Climax's CA 1710 Water Rights.

8. Due to general river administration issues that arose during the 2002 drought, Colorado River water users held a series of meetings from 2003 through 2005 about Green Mountain Reservoir operations and administration of Blue River water rights. During the course of these meetings, the dispute emerged regarding Climax's CA 1710 Water Rights versus the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights. This culminated in a meeting I attended on behalf of Climax in Silverthorne on February 18, 2005, where the Colorado State Engineer, Hal Simpson, stated that he would administer Climax's CA 1710 Water Rights as junior to the Green Mountain Hydroelectric Right and the Blue River Diversion Project's 1946 Water Rights. This position was reiterated at a follow up meeting I attended on March 2, 2005. Since that time Climax has been attempting, unsuccessfully, to resolve the dispute short of litigation.

Further affiant sayeth naught.

*/s/ Gary B Thompson*
Gary B. Thompson, P.E.

Subscribed and sworn to before me by this 3rd day of April, 2007.

Witness my hand and official seal.

[Seal]

*/s/ Patricia L. Davis*
Notary Public

My Commission Expires: March 27, 2011