**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 49-cv-2782-EWN-CBS**

(Consolidated Cases:  Civil Nos. 2782, 5016 and 5017)

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Civil No. 2782** |
| Plaintiff, | |
| v. | |
| NORTHERN COLORADO WATER CONSERVANCY DISTRICT, *et al.,* | |
| Defendants. | |

| | |
|---|---|
| In the Matter of the Adjudication of Priorities of Water Rights in Water District No. 36 for Purposes of Irrigation: | **Civil No. 5016** |

**Petitioners:**
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

| | |
|---|---|
| In the Matter of the Adjudication of Priorities of Water Rights in Water District No. 36 for Purposes Other Than Irrigation: | **Civil No. 5017** |

**Petitioners:**
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

**REPLY IN SUPPORT OF MOTION TO INTERVENE BY
CLIMAX MOLYBDENUM COMPANY**

COMES NOW Climax Molybdenum Company, a Phelps Dodge Company ("Climax"), by and through its undersigned counsel, and hereby replies to the responses to its Motion to Intervene filed on April 5, 2007 (the "Motion"). The Northern Colorado Water Conservancy District ("Northern"), the City and County of Denver, acting by and through its Board of Water Commissioners ("Denver"), and the City of Colorado Springs ("Colorado Springs") responded in objection to Climax's Motion.

The Colorado River Water Conservation District, Grand Valley Water Users Association, Orchard Mesa Irrigation District, Palisade Irrigation District, Grand Valley Irrigation Company, and Middle Park Water Conservancy District (collectively, the "West Slope Parties") responded with no objection to Climax's Motion, on the terms and conditions of a Stipulation between Climax and the West Slope Parties, signed on April 30, 2007 and attached to the West Slope Parties' Response. The United States of America did not respond to Climax's Motion.

In reply to the Responses objecting to Climax's Motion filed by Northern, and by Denver and Colorado Springs (collectively, the "Cities"), Climax states as follows:

### Introduction

This Court's holdings and decrees in the Consolidated Cases control the Colorado State Engineer's administration of the Blue River Decree. The Colorado State Engineer currently understands certain provisions of the Blue River Decree to allow him to administer the Green Mountain Hydroelectric Right and the Power Interference Agreement as senior to Climax's previously-decreed Blue River water rights. Climax moves this Court for intervention as of right or, in the alternative, permissive intervention in the Consolidated Cases to request declaratory clarification that the Green Mountain Hydroelectric Right and the Power Interference Agreement discussed in the Blue River Decree are junior to Climax's water rights on the Blue River.

765097.9
5/14/07

2

1.     Climax's two claims on intervention will enable proper enforcement of the Blue River Decree.

Climax's first claim in its petition on intervention seeks a declaration from this Court regarding the proper priority administration of the Green Mountain Hydroelectric Right. In Case No. 5017, the Green Mountain Hydroelectric Right was decreed with a Priority Number 122B. Climax holds the following water rights decreed in Summit County Court Civil Action 1710 ("CA 1710"): Supply Canal No. 1, Priority Number 99, Aug. 15, 1935; Supply Canal No. 2, Priority Number 100, Aug. 15, 1935; Ten Mile Diversion Ditch No.1, Priority Number 103, June 4, 1936; Ten Mile Diversion Ditch No. 2, Priority Number 104, June 4, 1936; and Chalk Mountain Ditch, Priority Number 105, June 4, 1936. Despite Climax's senior priority numbers, the Colorado State Engineer has stated that the Green Mountain Hydroelectric Right will be administered as senior to Climax's CA 1710 rights. Climax moves to intervene in order to obtain a declaration from this Court that will enable the proper administration of its senior rights pursuant to the Final Judgment entered by this Court in Case Nos. 5016 and 5017.

Climax also seeks a declaration that Denver's diversion or storage of water under the Power Interference Agreement in the Blue River Decree is pursuant to the 1946 priority awarded Denver's Blue River Diversion Project, and that Denver may not divert or store water under the Power Interference Agreement unless and until Climax's CA 1710 water rights, described above, are fully satisfied. The Power Interference Agreement is a creature of federal law which has not been decreed as a water right with a priority date, and Denver's rights on the Blue River and the facilities contained in Denver's Blue River Diversion Project are not included in the Colorado-Big Thompson Project. However, the Colorado State Engineer has stated that diversions and storage by Denver under the Power Interference Agreement will be administered as senior to

Climax's CA 1710 water rights. This stated administration results from a misinterpretation of the Blue River Decree, which, by incorporating Senate Document 80 into its terms, requires that West Slope water users not be injured by the Colorado-Big Thompson Project. (Consolidated Cases, Civil Nos. 2782, 5016 & 5017 - Final Decree, 10/12/55, Petition Ex. 7, at 3-7.) Denver is not a beneficiary under Senate Document 80. (See Consolidated Cases, Civil Nos. 2782, 5016 & 5017 Memorandum Opinion and Order, 11/02/77, Petition Ex. 15 at 10, 17, *aff'd by* United States v. Northern Colorado Water Conservancy Dist., 608 F.2d 422, 428 (10th Cir. 1979).) Therefore, Denver's undecreed storage and diversions under the Power Interference Agreement should be administered as junior to Climax's CA 1710 rights. As a West Slope water user, Climax seeks interpretation of Senate Document 80, as incorporated into the Blue River Decree, in order to enable the proper administration of Climax's West Slope water rights in a manner consistent with Senate Document 80 and the Blue River Decree.

    2.    <u>Climax's Motion to intervene as of right under Fed. R. Civ. P. 24(a)(2) should be granted.</u>

Neither the current status of the case between the original parties nor the absence of the Colorado State Engineer as a party precludes Climax's intervention into this case under the Court's retained jurisdiction. Climax has a direct, substantial, and legally protectable water right interest in the Blue River; stated misinterpretation of the Blue River Decree's provisions regarding the priority of the Green Mountain Hydroelectric Right and Power Interference Agreement threaten Climax's rights; and the existing parties to these Consolidated Cases do not adequately represent Climax's interests. Furthermore, Climax's Motion is timely and the issues of decree enforcement are ripe for consideration.

Case No. 1:49-cv-02782-MSK-CBS    Document 170    filed 05/15/07    USDC Colorado
pg 4 of 20

Alternatively, this Court should grant Climax's motion for permissive intervention under Fed. R. Civ. P. 24(b) because Climax's requested declaratory relief has the question of law regarding Blue River Decree priorities in common with the objectives of the Blue River Decree, that is, proper administration of Blue River water rights.

## Discussion

### I. Lack of Current Dispute Between Original Parties to the Consolidated Cases Does not Prohibit Climax's Intervention.

A. <u>Climax's intervention is proper under this Court's continuing jurisdiction over the administration of the Blue River Decree.</u>

Contrary to positions asserted by Northern and the Cities, the stated (mis)understanding of the Blue River Decree priorities by the Colorado State Engineer is sufficient to invoke the Court's continuing jurisdiction in the Consolidated Cases. Although there is no current dispute between the original parties to the Consolidated Cases, the Court has retained "continuing jurisdiction for the purpose of effectuating the objectives of this Final Decree." (Final Decree, 10/12/55, Petition Ex. 7 at Bates No. 066) One objective of the Final Decree was proper integration of Blue River priorities decreed by the federal court and those decreed in state court. As the Court noted during the hearings on the Blue River Decree:

> THE COURT: I can see immediately the advantage of having number decrees on the [Blue River Decree] to correspond with the state numbers on the other decrees, on the subsequent and prior decrees, because if there is another adjudication or something else that isn't removed to this Court [state water courts] will start numbering off of the other list, probably, and there might have to be some clarification on these decrees.

(Consolidated Cases, Civil Nos. 2782, 5016 & 5017 – Transcript of Court Proceedings on October 11, 1955, Petition Ex. 12 at 205-06) When entering the Blue River Decree, the Court envisioned that later questions such as Climax's would arise. Prior to signing the Decree, the

Court questioned whether there was "a provision about the matter remaining open." (Id. at 215) In response to the Court's query, counsel for the United States clarified that the Court retained "jurisdiction to administer" the Decree. (Id. at 215)  Climax's claims on intervention will enable proper enforcement and administration of the decree, a proper use of the Court's continuing jurisdiction.

> B. <u>Intervention is proper where there is no live dispute between original parties</u>.

Courts have allowed intervention in instances where there is no disposition between the original parties pending before the court.  The Tenth Circuit has recognized that Rule 24 "was designed with . . . traditional private action[s] in mind, and its adaptation to other contexts requires a flexible reading of its provisions." <u>Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior</u>, 100 F.3d 837, 843 (10th Cir. 1996) (quoting <u>United States v. Hooker Chemicals & Plastics Corp.</u>, 749 F.2d 968, 983 (2d Cir. 1984)). Applying this flexible approach, the Tenth Circuit has, for example, upheld permissive intervention into a case that had already settled, to allow the intervening parties access to sealed discovery documents.  <u>United Nuclear Corp. v. Cranford Insurance Co.</u>, 905 F.2d 1424, 1427 (10th Cir. 1990).  If intervention in a settled case is permissible, intervention into these ongoing Consolidated Cases is proper.

In the context of retained continuing jurisdiction regarding enforcement of a water decree, federal courts have found that intervention by affected entities for purposes of enforcing parts of a long-standing decree is proper even if a case has been "dormant" for some years.  See <u>United States v. Gila Valley Irrigation Dist.</u>, 961 F.2d 1432, 1434 (9th Cir. 1992) (describing procedural history of creation, enforcement, and continuing jurisdiction of court over Globe Equity Decree on the Gila River in Arizona).  The Globe Equity Consent Decree, entered by the

765097.9
5/14/07

6

Arizona District Court on June 29, 1935, is analogous to the Blue River Decree. Both decrees are historic anomalies arising from pre-McCarran Amendment adjudications of state water rights in federal court, and both decrees are administered by federal courts with retained continuing jurisdiction.

In the relevant Globe Equity cases, the Gila River Indian Community ("GRIC") petitioned to intervene to enforce proper administration of the decree to protect its water rights. GRIC was in a peculiar position as intervenor because its interests in the Gila River had previously been protected by the United States as a party to the litigation. However, the court found the imminent threat that the parties' interests might diverge was sufficient to demonstrate GRIC's rights were not protected.

The Arizona District Court emphasized that intervention by GRIC to *relitigate* the provisions of the decree was improper. (See, Order, United States District Court, District of Arizona, Globe Equity No. 59, attached as Ex. C.) However, considering GRIC's claims for *enforcement* of the decree, the District Court concluded that: "any time a party in good faith believes that the Decree is not being properly enforced, a proceeding to enforce the Decree probably would be timely . . . . It follows, therefore, that a motion to intervene by a non-party, for the purpose of filing an enforcement action also can be deemed timely." Id. at 5 lines 22-25, p. 6 lines 1-3. In granting GRIC's motion to intervene as of right, the court considered its retained jurisdiction and GRIC's rights under the decree, and concluded that GRIC's rights may be impaired or impeded by improper administration. Id. at 7 lines 17-19. The court granted intervention as of right for the limited purpose of enforcing the decree.

Climax's Motion is analogous to GRIC's motion to intervene in the Globe Equity Decree. Although Climax is not an original party to the Blue River Decree, Climax is a West Slope water

765097.9
5/14/07

7

user and therefore a non-preferred beneficiary of the Colorado-Big Thompson Project under Senate Document 80 as incorporated into the Blue River Decree. Climax holds decreed rights on the Blue River. Finally, Climax moves to intervene in order to enable the proper administration and enforcement of the Blue River Decree, not to relitigate previously-decreed issues. As such, Climax has sufficient interest in the Consolidated Cases to merit intervention at this time.

    C.    <u>United States v. Alpine Land and Reservoir Co., 431 F.2d 763 (9th Cir. 1970), cited by Northern as an example of an analogous case to Climax's wherein intervention was denied, is readily distinguishable.</u>

In <u>Alpine Land</u>, the would-be intervenor Indian tribe in 1968 sought to intervene to re-adjudicate the relative rights of all parties to the 1949 decree on the Carson River, and for enforcement of that decree. The Tribe based its interest in intervention on its water rights on the nearby Truckee River and Pyramid Lake. The Tribe attempted to reduce the attenuation between its claims and the subject of the case by asserting that its rights on the Truckee had been "unitized" with the Carson under the Newlands Bureau of Reclamation Project. <u>Id.</u> at 766. The court determined that the Tribe's motion to intervene for adjudication of the relative rights of all parties to the underlying decree was untimely, and the Tribe's interests in the underlying decree were insufficient for intervention.

The logic of <u>Alpine Land</u> is inapposite to Climax's Motion. Climax moves to intervene in order to enable the proper administration and enforcement of the terms of the Blue River Decree, *not* to relitigate priority assignments or other provisions. Further, Climax asserts interests in the Blue River, the subject of the Consolidated Cases. The <u>Alpine Land</u> court concluded that "[t]he Tribe does not show how any settlement of this case will in any way alter its rights or interest in the waters of the Truckee as established by the Decree [concerning Carson water] or otherwise." <u>Id.</u> at 769. Conversely, interpretation of the priorities decreed in the

Consolidated Cases directly affects enforcement of the Blue River Decree and Climax's Blue River rights; an adverse finding on the issues presented by Climax's petition on intervention will harm those rights. Intervention is warranted.

II. **Intervention is Appropriate Because Climax has a Direct, Substantial and Legally Protectable Interest in the Blue River Water Which is the Subject of the Ongoing Consolidated Cases, Which Interest is Being Impaired by Current Understanding of the Blue River Decree, and Which Interest is not Adequately Represented by Existing Parties.**

   A. <u>Climax's direct interest in the correct interpretation of the Blue River Decree is being impeded.</u>

As explained in the Motion, Climax's decreed Blue River water rights constitute a direct, substantial and protectable interest in the Blue River and therefore in the subject matter of the Consolidated Cases. The State Engineer's asserted understanding of the Blue River Decree threatens Climax's senior rights and presents an action for declaratory disposition by the Court.

Contrary to Northern's assertion otherwise, and as discussed above, "the possibilities that the United States might assert its Green Mountain direct flow hydroelectric power right and Denver might assert its Dillon Reservoir right in such a way as to diminish Climax's water rights" *are* enough to create "an action for disposition by the court in these consolidated cases." (Northern Response, at 6.) "The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action. The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty." <u>United States v. Fisher-Otis Co.</u>, 496 F.2d 1146, 1151 (10th Cir. 1974) (internal citations omitted). Climax seeks a declaration by this Court regarding water rights priorities in the Blue River Decree. Climax's threatened interest in the correct administration of its water rights meets

the standards of Rule 24(a)(2) intervention as of right as well as the less stringent standards for Rule 24(b) permissive intervention.

Climax must intervene in the Consolidated Cases to avoid the direct harm that will be inflicted when the State Engineer administers Blue River water rights according to his mistaken understanding that the Green Mountain Hydroelectric Right and the Power Interference Agreement should be administered as senior to Climax's CA 1710 rights. As discussed below, the real parties in interest to an action declaring the proper priority of water rights in Colorado are the other water rights holders, not the State Engineer. Therefore, contrary to the Cities' characterization, Climax's petition requests declaration of the correct water priorities as between Climax and the original parties to the Consolidated Cases, not a new claim against a non-party. (Cities' Response at 5) Climax's interests are sufficiently direct and impaired to warrant its intervention into the Consolidated Cases.

B.      Climax's Motion to Intervene is timely and presents issues ripe for consideration.

There need not be a predicate harm to justify a declaratory action establishing the validity *vel non* of a decree's interpretation. The State Engineer has asserted that Climax's water rights will be administered as junior to Blue River Decree rights decreed with junior priority numbers. The Cities do not dispute that the State Engineer has taken this position. The State Engineer has also asserted that Denver's storage and diversions under the Power Interference Agreement, an undecreed creature of federal law, will be administered senior to Climax's rights. Again, the Cities do not dispute that the State Engineer has taken this position. Declaratory judgment regarding the State Engineer's interpretation of the Blue River Decree is appropriate.

Further, Climax's Motion is timely. Despite Denver's suggestion otherwise, any substantive discussion of Climax's 1992 motion to intervene in the Consolidated Cases is

irrelevant here. As noted by Denver, on July 23, 1992, Climax moved to intervene in Case No. 88CW382, which action was before this Court by virtue of its continuing jurisdiction in the Consolidated Cases. (Cities' Response at 7) However, Climax withdrew its motion to intervene in Case No. 88CW382 on August 3, 1992, less than two weeks after filing its motion, and before any party had responded to the motion. (See Climax's Withdrawal of its Motion to Intervene, attached as Ex. D.) Climax's withdrawal was pursuant to Fed. R. Civ. P. 41(c), which allows a third party to withdraw its claim without prejudice if withdrawal is effected before any responsive pleading is filed. See Fed. R. Civ. P. 41(a), 41(c). "The plaintiffs' filing of a motion to intervene accompanied by proper pleadings is regarded as the commencement of an action . . . . Where an action is voluntarily dismissed without prejudice, the parties are left as if the action had never been brought." Braxton v. Virginia Folding Box Co., 72 F.R.D. 124, 126 (E.D. Va. 1976) (holding that the statute of limitations for a Title VII suit is not tolled by a party's filing and then withdrawing a motion to intervene because the withdrawal of the motion to intervene "leaves the action as though it had never been filed."). Climax's 1992 Motion to Intervene therefore has no bearing on the Consolidated Cases or Climax's instant Motion.

Furthermore, Denver is estopped from asserting that Climax's motion to intervene in 88CW382 bars Climax's present action. Shortly after Climax filed its motion to intervene in 88CW382, Denver, along with Northern, Colorado Springs, the River District and other parties, filed a motion for leave to file a response to Climax's motion to intervene. (See Motion for Leave to File a Response in Opposition to Motion to Intervene of Climax Molybdenum Co., attached as Ex. E.) At paragraph 4 of that pleading, Denver and the other parties to the pleading represented to the Court that they had requested Climax to *voluntarily withdraw* its Motion to Intervene. Climax, upon determining that the proposed decree for 88CW382 would not modify

or change the Court's Final Judgment in 5016 and 5017, shortly thereafter voluntarily withdrew its motion to intervene as requested by Denver and in accordance with Fed. R. Civ. P. 41. Neither Denver nor any other party to 88CW382 objected.

Finally, after having argued earlier that Climax's motion is not presently ripe, Denver inconsistently asserts that Climax should have brought this action earlier because of the State Engineer's tabulation of Climax's CA 1710 water rights. However, Denver concedes that the State Engineer's tabulation never encompassed the relative priorities of Climax's CA 1710 water rights and Denver's use of water under the Power Interference Agreement. Also, Denver does not contest that as a matter of Colorado law, the State Engineer's tabulation is not binding upon this Court or any other court. Lastly, Denver does not dispute the fact that Climax has not, until now, had a foreseeable need to use its CA 1710 water rights, and that therefore this dispute was not ripe until now. Consequently, as a mater of law and fact, Denver's assertions regarding the timeliness of Climax's motion are without merit.

**III.   The State Engineer is Not a Necessary Party to This Action.**

Concerns regarding prejudice to the existing parties because the Colorado State Engineer is not a party to the Consolidated Cases are unfounded because the State Engineer is not a necessary party herein. This Court sits "as a water court in Colorado" in adjudicating issues arising in the Consolidated Cases. United States v. Northern Colorado Water Conservancy Dist., 608 F.2d at 430. In its role as a water court, this Court necessarily applies Colorado water law. Id. Under Colorado law, State water officials acting pursuant to previous orders of the court are not necessary parties to an action regarding priority of water rights. See, e.g., McLean v. Farmers' Highline Canal & Reservoir Co., 44 Colo. 184, 192-93, 98 P.16, 19 (Colo. 1908).

McLean clarified that state water officials, as agents responsible for distributing water according to decree, are "but nominally interested" in priority disputes between water rights holders. Id. at 194. The real parties in interest to a water priority dispute are the appropriators of the subject water, that is, "those for whose benefit the order was made of which plaintiffs complain." Id. at 199, 98 P. at 21; see also Hinderlider v. Canon Heights Irrigation & Reservoir Co., 117 Colo. 183, 188, 185 P.2d 325, 327 (Colo. 1947) (in suit by reservoir company to enjoin the State Engineer from administering water rights following a decree, court held that when action was tried as an action for construction of decree "no complete construction of the . . . decree or effective order for administration of the water thereunder could be made" in the absence of actual appropriators and users of water in question). Contrary to the Cities' assertions, the real parties in interest in Climax's petition on intervention are the original parties to the Consolidated Cases as water rights holders under the Blue River Decree, not the State Engineer.

State statutes and recent Colorado Supreme Court precedent support the assertion that the State Engineer is not an indispensable party to a water adjudication or administration dispute, though it may be included as a party. Under Colorado statute, "'[t]he division engineer shall appear to furnish pertinent information and may be examined by any party, and *if requested by the division engineer*, the attorney general shall represent the division engineer.'" C.R.S. 37-92-304(3) (emphasis added); see also, Wadsworth v. Kuiper, 193 Colo. 95, 101, 562 P.2d 1114, 1117-18 (Colo. 1977) (the State Engineer and a division engineer are "proper parties" in a water adjudication). Statute does not *require* the State Engineer's presence in water court matters, and water court decrees are routinely entered without the State Engineer's participation as a party.

Because the State Engineer is not a necessary party in water rights administration cases, and the original parties to the Consolidated Cases are the "true parties in interest" to Climax's petition for declaratory relief regarding the interpretation of the Blue River Decree, all necessary parties to Climax's petition for relief are present in this case. Climax's interests can be appropriately addressed on intervention, and intervention will not necessarily require further joinder.

**IV.     This Court is Best Suited to Hear Climax's Petition for Declaratory Relief.**

Although the state court may have concurrent jurisdiction over the issues Climax raises, this is not determinative of Climax's ability to intervene in federal court. Climax's petition for declaratory judgment is best heard by this Court because Climax, as a non-preferred West Slope beneficiary of Senate Document 80 and the federal Colorado-Big Thompson Project, requests a substantive interpretation of not only the Green Mountain Reservoir Hydroelectric Right's proper priority, but also of the undecreed Power Interference Agreement under federal law in the Blue River Decree. It is undisputed that Climax's claims may be heard by the federal court. Federal jurisdiction over Climax's petition for declaratory relief is preferable to state jurisdiction because of the federal court's extensive involvement and history with the Blue River Decree and Climax's request for substantive interpretation of federal law.

   A.     <u>This Court is best suited to substantively interpret provisions of the Blue River Decree.</u>

Climax's petition on intervention requests the Court to construe provisions of the Blue River Decree. Although state and federal courts may have concurrent jurisdiction over the Blue River Decree, "long-standing principles of water law prohibit a court from interpreting or enforcing a decree entered by another court." <u>City of Grand Junction v. City and County of</u>

Denver, 960 P.2d 675, 681 (Colo. 1998).  These principles "inhibit any other court of coordinate jurisdiction from modifying, reviewing, or construing such decree."  Id. (quoting Weiland v. Reorganized Catlin Consol. Canal Co., 61 Colo. 125, 130-31, 156 P. 596, 598 (Colo. 1916)).  Further, the United States Supreme Court has "recognized that actions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings."  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 819 (1976).  Although the Supreme Court's Colorado River analysis led it to uphold abstention by the federal court in the face of concurrent state proceedings, the Court's reasoning supports Climax's declaratory action before the federal court.  Jurisdiction in this Court provides a "single continuous proceeding for water rights adjudication" that has been ongoing there since 1955.  This Court's institutional knowledge of the Blue River Decree is unmatched, and the federal court, which entered this Decree, is the preferable court to interpret and enforce its provisions.

      Climax's claims also meet the elements for a court's proper exercise of discretion to hear declaratory claims:  (1) the declaratory relief would settle the controversy presented by the State Engineer's misunderstanding of the Blue River Decree; (2) the relief sought would serve the useful purposes of clarifying these enforcement issues; (3) Climax is not using the declaratory remedy "merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata;'" (4) there is no concurrent state litigation on this subject, so federal jurisdiction does not "improperly encroach upon state jurisdiction;" and (5) despite Climax's previous efforts to negotiate these issues with the parties, there is no more effective alternative remedy than intervention for declaratory relief.  Cf., State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994).

Climax's intervention presents no risk of state/federal conflict. Although Civil Actions 1805 and 1806 were begun in the state court, the state court never adjudicated the Green Mountain Hydropower Right or any of the rights at issue in the Consolidated Cases before removal. Further, Climax is not requesting an interpretation of its own state court water decrees, but rather an analysis of the federal Consolidated Cases. Finally, parties to the Consolidated Cases have been adjudicating Blue River rights in this Court for the past fifty years. Jurisdiction is proper in federal court.

B.  <u>The Petition on Intervention requests the Court's substantive interpretation, analysis and construction of the terms of the Blue River Decree.</u>

Although the Colorado Supreme Court has decided a case involving the Blue River Decree since the removal and consolidation of the Consolidated Cases, that case did not require the court to analyze or interpret specific provisions of the Blue River Decree. In addition, that case did not involve portions of the Blue River Decree that concern the federal Colorado-Big Thompson Project. See <u>City of Grand Junction v. City and County of Denver</u>, 960 P.2d 675 (Colo. 1998). In <u>Grand Junction</u>, Denver applied in state court for a junior right to refill *Dillon Reservoir*. Grand Junction opposed the application, claiming that the state court did not have jurisdiction because the Blue River Decree controlled. The Colorado Supreme Court concluded state jurisdiction was proper because, *inter alia*, the water court was simply being asked to review the Decree to determine whether Denver's application interfered.

<u>Grand Junction</u> stands for the proposition that the state court can hear cases involving the Blue River Decree when its judgment would not "modify or impair previous decrees, but [leave] them undisturbed." <u>Id.</u> at 682. In <u>Grand Junction</u> the court noted that the federal court's continuing jurisdiction was not necessary to adjudicate Denver's application because that

application "[did] not *concern or interfere with* any provision of the Blue River Decree." Id. at 684 (emphasis added).

Grand Junction is also highly distinguishable on its facts. It only concerned interpretation of the portions of the Blue River Decree that concern Dillon Reservoir, which was actually decreed by the Summit County District Court before the Summit County proceedings were removed to this Court. Most importantly, Grand Junction did not involve those portions of the Blue River Decree that concern the federal Colorado-Big Thompson Project. In contrast, Climax's claims regarding the Green Mountain Hydroelectric Right and the Power Interference Agreement go directly to those portions of the Blue River Decree that concern the Colorado-Big Thompson Project. These questions concerning a federal project are most properly heard by a federal court.

Moreover, in contrast to Grand Junction, Climax is presently asking the Court not only to examine and construe provisions of the Blue River Decree, but also to substantively interpret its appropriate administration in light of the stated understanding of the Decree by the State Engineer. Further, Climax's petition on intervention requests a declaration of the Court's interpretation of how the undecreed Power Interference Agreement should be administered. The Power Interference Agreement, unlike the priority of the Green Mountain Hydroelectric Right, has never been decreed, granted a priority number or date, or granted an adjudication date. Its interpretation is outside the scope of a state court's application of the Blue River Decree, and is best considered by the federal court.

      C.    <u>Climax's intervention will not unduly broaden the scope of the Consolidated Cases</u>.

Based on its own Blue River water rights, Climax has a discrete and immediate interest in the proper interpretation of water priorities on the Blue River as decreed in the Consolidated Cases, and in the proper interpretation of the Power Interference Agreement. Granting Climax's motion to intervene therefore allows a party with direct, substantial, and legally protectable rights to protect those specific interests. Granting Climax's motion to intervene will by no means set a precedent "requiring virtually all litigation brought by or involving any water user disputing State Engineer administration of water rights . . . touching upon or affecting Blue River water rights . . . to be carried out in this Court," as the Cities somewhat dramatically contend. (Cities' Response, at 12) As discussed above, Climax's interests are much more immediate than merely "touching on or affecting" other Blue River rights. As seen in <u>Grand Junction</u>, state court provides an adequate venue for parties with water rights that might implicate the Blue River Decree, and <u>Alpine Lands</u> provides ample justification for denial of intervention by parties with attenuated interests. This Court will not open any floodgates by granting Climax's motion to intervene.

## Conclusion

Northern and the Cities raise no issues impeding this Court's grant of Climax's Motion to Intervene. Climax asserts its petition on intervention for declaratory relief to protect its direct interest in the correct enforcement of the Blue River Decree, which interest is necessarily impaired by an incorrect understanding of the priorities decreed, and which interest is not adequately protected by the current parties to the Consolidated Cases. Because the State Engineer is not an indispensable party, the grant of Climax's Motion will not impair or prejudice

any rights of the current parties to the Consolidated Cases by requiring addition of another party to the case.  Further, the federal court should accept jurisdiction over this case rather than force Climax to file in state court because this Court entered the Blue River Decree and is the most qualified to interpret its provisions.

WHEREFORE, Climax respectfully requests this Court enter an order granting Climax's intervention as of right into the Consolidated Cases, pursuant to Fed. R. Civ. P. 24(a)(2). Alternatively, Climax requests the Court enter an order granting permission for Climax to intervene in these Consolidated Cases, pursuant to Fed. R. Civ. P. 24(b).

Respectfully submitted this 15th day of May 2007.

                              RYLEY CARLOCK & APPLEWHITE

                               _s/ Brian M. Nazarenus_
                                Brian M. Nazarenus
                                John L. Watson
                                Roger T. Williams
                                Olivia D. Lucas
                                1999 Broadway, Suite 1800
                                Denver, Colorado  80202
                                Telephone:  (303) 863-7500
                                Facsimile:   (303) 595-3159

                              ATTORNEYS FOR PLAINTIFF-INTERVENOR
                              CLIMAX MOLYBDENUM COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of May, 2007, I electronically filed the foregoing REPLY IN SUPPORT OF MOTION TO INTERVENE BY CLIMAX MOLYBDENUM COMPANY with the Clerk of the U.S. District Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Casey S. Funk<br>casey.funk@denverwater.org | Kathleen M. Morgan<br>kathleen@moriarty.com |
| Austin C. Hamre<br>ahamre@dodpc.com | James R. Montgomery<br>jmontgomery@mwhw.com |
| Chad M. Wallace<br>chad.wallace@state.co.us | Frederick G. Aldrich<br>faldrich@aldrich-law.com |
| Douglas L. Abbott<br>dabbott@hollandhart.com | Mark A. Hermundstad<br>mherm@wth-law.com |
| Anne J. Castle<br>acastle@hollandhart.com | Stanley W. Cazier<br>cazier_mcgowan@hotmail.com |
| Peter C. Fleming<br>pfleming@crwcd.org | Donald E. Phillipson<br>dbls99@comcast.net |
| William A. Paddock<br>bpaddock@chp-law.com | Robert V. Trout<br>rtrout@troutlaw.com |
| James J. DuBois<br>james.dubois@usdoj.gov | Nathan A. Keever<br>keever@dwmk.com |
| David J. Hill<br>dgh@bhgrlaw.com | |

RYLEY CARLOCK & APPLEWHITE

 s/ Brian M. Nazarenus
Brian M. Nazarenus
1999 Broadway, Suite 1800
Denver, Colorado  80202
Telephone:  (303) 863-7500
Facsimile:   (303) 595-3159

ATTORNEYS FOR PLAINTIFF-INTERVENOR CLIMAX MOLYBDENUM COMPANY