IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Consolidated Cases:   Civil Action No. 2782 (EWN)
                      Civil Action No. 5016
                      Civil Action No. 5017


UNITED STATES OF AMERICA v.
NORTHERN COLORADO WATER
CONSERVANCY DISTRICT, et al.,

IN THE MATTER OF THE ADJUDICATION
OF PRIORITIES OF WATER RIGHTS IN
WATER DISTRICT NO. 36
FOR PURPOSES OF IRRIGATION

PETITIONERS:
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

IN THE MATTER OF THE ADJUDICATION
OF PRIORITIES OF WATER RIGHTS IN
WATER DISTRICT NO. 36
FOR PURPOSES OTHER THAN IRRIGATION

PETITIONERS:
THE COLORADO RIVER WATER CONSERVATION DISTRICT
THE GRAND VALLEY WATER USERS ASSOCIATION
ORCHARD MESA IRRIGATION DISTRICT
PALISADE IRRIGATION DISTRICT
GRAND VALLEY IRRIGATION COMPANY, AND
MIDDLE PARK WATER CONSERVANCY DISTRICT

_____

**ORDER AND MEMORANDUM OF DECISION**
_____

This is a water rights case. Petitioner Climax Molybdenum Company (hereinafter "Climax") seeks leave to intervene to petition for a declaratory judgment announcing the relative priority of its water rights on the Blue River *vis–à–vis* those rights decreed by this court to other parties in the Blue River Decree. This matter comes before the court on "Motion to Intervene by Climax Molybdenum Company," filed April 5, 2007. Jurisdiction is premised upon *United States of America v. Northern Colorado Water Conservancy District*, consolidated civil action numbers 2782, 5016, and 5017, Final Decree at 17 (D. Colo. Oct. 12, 1955) (hereinafter the "Blue River Decree"), Supplemental Order Dismissing Reserved Question and Amending Decree at 2 (D. Colo. Oct. 29, 1957), 43 U.S.C. § 620j, and 28 U.S.C. § 1331.

## FACTS

### 1. Factual Background

This litigation has been on this court's docket for nearly sixty years, and, as this court has repeatedly observed, "it will likely remain here so long as the Continental Divide partitions Colorado into western and eastern watersheds." (*See, e.g.*, Order and Mem. of Decision at 2–3 [filed Aug. 5, 2004] [hereinafter "2004 Order"].) As recounted by the Tenth Circuit in a decision now nearly two decades old, the essential facts of the underlying litigation are as follows:

> The controversy centers around water rights to the Blue River, a tributary of the Colorado River, located on the Western Slope of the Continental Divide in Colorado. In 1937, Congress authorized a multi-million dollar reclamation effort known as the Colorado-Big Thompson Project ("CBT"). Among other things, the CBT involved construction of a reservoir and power plant on the Blue River. This facility, known as Green Mountain Reservoir and Power Plant, was completed in 1942. The purpose of the CBT is set forth in Senate Document No. 80, 75th Cong., 1st Sess. (1937), which reveals that Green Mountain's main purpose is to store replacement water for the Western Slope to compensate for other Colorado

River water diverted to the Eastern Slope as part of the CBT.  It was also intended, however, to generate hydroelectric power and supply additional water for agricultural and industrial uses on the Western Slope.

The litigation began in 1949, when the United States brought an action in United States District Court for the District of Colorado for a determination of its rights in connection with the CBT, and for a declaratory judgment defining its operational obligations under Senate Document No. 80 with respect to Green Mountain Reservoir.  The United States sought to quiet title to water rights in the Blue River against Denver, Colorado Springs, and others.  These parties maintained their own claims to Blue River water.  Denver claimed the right to divert Blue River water upstream from Green Mountain and transport it to the Eastern Slope to augment its municipal water supply.

On October 12, 1955, the court entered [the Blue River Decree which] incorporated a stipulation executed by the parties.  The incorporated stipulation recognized Denver's right to divert Blue River water, subject, however, to the federal government's senior right to fill and utilize Green Mountain Reservoir.  Thus, according to the incorporated stipulation, Denver could divert Blue River water if the Secretary of the Interior determined that the diversion would "not adversely affect the ability of Green Mountain Reservoir to fulfill its function as set forth in [Senate Document No. 80]. . . .  In return, Denver agreed to deliver to the United States electrical energy "in substantially the same amounts, at approximately the same hours and at substantially the same rates of delivery that would have been generated by the Green Mountain Powerplant had it not been for the diversions . . . ."  Denver also agreed to bypass water in quantities sufficient to meet all downstream water rights on the Blue River and the downstream segment of the Colorado River having priorities superior to Denver's.

*In re Application of City & County of Denver Acting by & Through Its Bd. of Water Comm'rs*

*with Respect to Its Water Rights in the Blue River and Its Tributaries in Summit County, Colo.*,

935 F.2d 1143, 1145–46 (10th Cir. 1991) (internal citations omitted).

The instant motion centers upon the relative priority of certain water rights decreed to the

United States (hereinafter the "Green Mountain Hydroelectric Right") and Denver (hereinafter the

"Blue River Diversion Project Rights") in the Blue River Decree and exercised pursuant to the

stipulation incorporated therein (hereinafter the "Power Interference Agreement") *vis–à–vis* separate water rights decreed to Climax by the Summit County District Court in 1937. (*See generally* Mot. to Intervene by Climax Molybdenum Co. [filed Apr. 5, 2007] [hereinafter "Climax's Br."]; Climax Molybdenum Co.'s Petition on Intervention for Declaratory Relief [filed Apr. 5, 2007] [hereinafter "Decl. J. Pet."].) I first discuss the facts relevant to Climax's water rights and its historic use of these rights, and then describe the alleged nexus between Climax's proposed petition for declaratory judgment and the rights and obligations embodied in the Blue River Decree.

### a.     *Climax's Water Rights and Historic Use*

Climax owns and operates the Climax Mine located in Summit, Lake, and Eagle Counties, and owns water rights that divert from Tenmile Creek, a tributary of the Blue River. (*See* Climax's Br. at 3.) In 1937, the Summit County District Court decreed various water rights to Climax in a supplemental water rights adjudication, giving these rights priority dates ranging from August 15, 1935, to June 4, 1936, and priority numbers ranging from 99-C to 105-C. (*See id.*; Decl. J. Pet. at 5–6, Ex. 2 at 10, 12 [1937 Decree].)

From 1937 until 1984, Climax Mine was in full operation, and Climax asserts that its water rights were never administered as junior to either the Green Mountain Hydroelectric Right or the Blue River Diversion Project Rights. (*See* Climax Br. at 12.) From 1984 until the present, with a few sporadic exceptions, Climax Mine was not in operation due to insufficient demand for molybdenum. (*See id.*)

During the late 1990s, the Colorado State Engineer's (hereinafter "State Engineer") tabulation of water rights allegedly listed Climax's rights as subordinate to the Green Mountain Hydroelectric Right, but senior to the Blue River Diversion Project Rights. (*See id.*) On February 18, 2005, the State Engineer allegedly informed Climax that it intended to administer Climax's rights as junior to *both* the Green Mountain Hydroelectric Right *and* the Blue River Diversion Project Rights when Denver diverts or stores water pursuant to the Power Interference Agreement. (*See id.* at 8.)

Climax plans to resume operations at Climax Mine in 2009, and asserts that it will need to exercise its full water rights in-priority as of that date. (*See id.* at 3.) Climax anticipates investing up to $250 million in new capital infrastructure into the mine, and claims that the State Engineer's alleged plan to administer its rights as junior to both the Green Mountain Hydroelectric Right and Blue River Diversion Project Rights "casts a shadow over Climax's plans . . . by raising uncertainty about the mine's ability to operate at full capacity." (*Id.* at 4.)

### b. Alleged Nexus Between Climax's Petition for Declaratory Judgment on Intervention and the Blue River Decree

Climax seeks through its instant motion to obtain a declaratory judgment regarding the relative priority of its water rights *vis–à–vis* the Green Mountain Hydroelectric Right and the Blue River Diversion Project Rights. (*See* Decl. J. Pet.) Climax claims its rights are senior to those of both the United States and Denver, and additionally argues that a proper interpretation of the Blue River Decree and the Power Interference Agreement would so demonstrate. (*See id.*)

Specifically, Climax contends that its water rights are senior to the Green Mountain Hydroelectric Right because this court afforded that right a priority number — number 122B — in the Blue River Decree in an alleged effort to harmonize its ruling with ongoing state water court adjudications. (*See id.* at 11–16.) Climax alleges that this number proves that the Green Mountain Hydroelectric Right is junior to its own rights even though this court *also* established a priority date for the Green Mountain Hydroelectric Right — August 1, 1935 — which *predated* Climax's own priority dates. (*See id.* at 16–17.)

In the alternative, Climax maintains that its rights are at least senior to the Blue River Diversion Project Rights which this court decreed to have a priority date of June 24, 1946.[1] (*Id.* at 3, 8, 17–18.) Climax argues that:

> The Blue River Diversion Project's diversion and storage of water pursuant to the "Power Interference Agreement" . . . may only occur to the extent that Denver's 1946 water rights for the Blue River Diversion Project . . . are in-priority as against Western Slope water rights other than the Green Mountain Hydroelectric Right. Denver's Blue River Diversion Project may not divert or store water under the Power Interference Agreement in contravention of Western Slope water rights that are junior to the Green Mountain Hydroelectric Right and senior to the Blue River Diversion Project's 1946 Water Rights.

(*Id.* at 3.) The State Engineer's ostensible basis for contending otherwise does not appear on the record as the State Engineer is not a party to the Consolidated Cases, and because Climax neglected to report his claimed rationale.

---

[1]Climax refers to the priority date decreed by the Summit County District Court in the original cases that were removed to this court and subsequently formed part of the consolidated action (hereinafter collectively the "Consolidated Cases"), but I note that this court incorporated the same priority date both explicitly and by reference into the Blue River Decree. (*See* Decl. J. Pet. at 8; Blue River Decree, Final Decree at 9–10.)

## 2.    *Procedural History*

On April 5, 2007, Climax filed a motion to intervene in the Consolidated Cases, arguing that it is entitled to intervention as of right and should alternatively be granted permissive intervention.  (*See* Climax's Br.)  Climax contemporaneously filed its proposed petition on intervention for declaratory relief.  (*See* Decl. J. Pet.)  On April 27, 2007, Northern Colorado Water Conservancy District (hereinafter "Northern") filed a response, opposing Climax's motion. (*See* Northern Colo. Water Conservancy Dist.'s Opp'n to Mot. to Intervene By Climax Molybdenum Co. [filed Apr. 27, 2007] [hereinafter "Northern's Resp."].)  On April 30, 2007, Denver and Colorado Springs also filed a joint response opposing Climax's motion.  (*See* Resp. of the City and County of Denver, Acting by and Through Its Bd. of Water Comm'rs, and the City of Colorado Springs to Mot. to Intervene [filed Apr. 4, 2007] [hereinafter "Cities' Resp."].)  On that same day, the Colorado River Water Conservation District, Grand Valley Water Users Association, Orchard Mesa Irrigation District, Palisade Irrigation District, Grand Valley Irrigation Company, and Middle Park Water Conservancy District responded, stating that they did not oppose Climax's motion, but reserved all rights, claims, and defenses related to Climax's proposed declaratory judgment action on its merits.  (*See* Joint Resp. to Climax Molybdenum Co.'s Mot. to Intervene [filed Apr. 30, 2007].)  The United States did not respond to Climax's motion.  On May 15, 2007, Climax filed a reply in support of its motion.  (*See* Reply in Supp. of Mot. to Intervene by Climax Molydeum Co. [filed May 15, 2007] [hereinafter "Climax's Reply"].) This matter is fully briefed and ripe for review.

## ANALYSIS

Climax moves to intervene both as of right, and permissively, under Federal Rule of Civil Procedure 24. (*See* Climax's Br. at 10–14.) I first present the applicable legal standards, and then assess the parties' arguments with respect to Climax's motion.

## 1.    *Legal Standards*

Federal Rule of Civil Procedure 24(a)(2) provides that, on timely motion, the court must permit intervention as of right to anyone who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (2008). Under Tenth Circuit law interpreting this rule, "an applicant may intervene as a matter of right if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties." *Elliott Indus. Ltd. P'ship v. B.P. Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).

Federal Rule of Civil Procedure 24(b)(1)(B) provides that, on timely motion, the court may permit intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (2008). The decision whether or not to grant a motion for permissive intervention is within the district court's sound discretion. *See, e.g.*, *City of Stilwell, Okla. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). In exercising this discretion, "the court must consider whether the intervention will

unduly delay or prejudice adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3) (2008).

## 2. *Evaluation*

Climax asserts the criteria required for intervention as of right are met with respect to it, and alternatively maintains that permissive intervention is warranted because: (1) the facts relevant to its declaratory judgment petition are "inextricable from the facts at issue in the Consolidated Cases;" and (2) Climax has no adequate remedy in another action. (*See* Climax's Br. at 10–14.) Northern, Denver, and Colorado Springs collectively dispute that any of the criteria for intervention as of right — save inadequate representation by the existing parties — are met with respect to Climax, and additionally respond that permissive intervention should be denied because: (1) there are no pending matters before the court that necessitate or would benefit from Climax's intervention; (2) Climax's intervention would interject unnecessary procedural complexity into the Consolidated Cases; and (3) Climax has other available fora for its claims, including state water court. (*See* Northern's Resp. at 3–10; Cities' Resp. at 2–12.) I first assess whether the criteria for intervention as of right are satisfied, and then determine whether Climax should be granted permissive intervention.

### a. *Intervention as of Right*

#### i. *Timeliness of Climax's Motion*

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."

*Elliott Indus.*, 407 F.3d at 1103 (citation and quotation marks omitted). "The requirement of

timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard

against prejudicing the original parties by the failure to apply sooner." *Utah Ass'n of Counties v.

Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (citation and quotation marks omitted). At least

in context of a motion for permissive intervention, the Tenth Circuit holds that Rule 24's

"timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing

parties, a concern not present when the existing parties have settled their dispute and intervention

is for a collateral purpose." *United Nuclear Corp. v. Cransford Ins. Co.*, 905 F.2d 1424, 1427

(10th Cir. 1990) (citations omitted).

In the instant case, Denver and Colorado Springs contend that Climax's motion is not

timely because it knew during the late 1990s that the State Engineer's tabulation of water rights

subordinated Climax's rights to the Green Mountain Hydroelectric Right, yet it did not move to

intervene until now.[2]  (*See* Cities' Resp. at 6–7.)  Climax essentially counters that its application *is*

timely because it did not have an incentive to intervene until it began planning the resumption of

its mining operations, and because the State Engineer only recently represented to it that its rights

will be administered as junior to the Green Mountain Hydroelectric Right and the Blue River

Diversion Project Rights.  (*See* Climax's Reply at 10, 13.)

_____

[2]Denver and Colorado Springs also, inconsistently, argue that Climax's motion is not ripe
because no action has yet been taken by this court that Climax need correct or rectify through its
petition on intervention.  (*See* Cities' Resp. at 5–6.)  Because Denver and Colorado Springs have
cited no authority as to a ripeness requirement within the timeliness requirement of a motion to
intervene, I assess this argument in the context of whether Climax's interests might be impaired or
impeded absent intervention.  (*See* Analysis § 2[a][iii] *infra*.)

On the facts of this case, I find that Climax's motion to intervene is timely. Denver and Colorado Springs have pointed to no alleged prejudice to themselves or any other party that would accrue from the *timing* of Climax's proposed intervention, as opposed to the mere inherent undesirability of having to defend Climax's action. (*See* Cities' Resp. at 6–7.) In the absence of any such prejudice, I cannot find Denver and Colorado Springs's suggestion that Climax could have intervened sooner determinative on the question of whether its instant motion is timely. *See, e.g., Clinton*, 255 F.3d at 1250. Moreover, I find that the "unusual circumstances" of this case militate toward finding Climax's motion timely. *See Elliott Indus.*, 407 F.3d at 1103 (stating that court may consider "any unusual circumstances" in assessing timeliness of motion to intervene). The retained continuing jurisdiction of this court to enforce the Blue River Decree suggests that Climax's — or any similarly situated party's — motion to intervene might always be timely, assuming it is for the purpose of enforcing the rights adjudicated in that decree, and not aimed at relitigating those rights. I find such motions analogous to "intervention[s] . . . for a collateral purpose" in traditional adversarial proceedings between two parties, and thus similarly bereft of potential prejudice to the existing parties who have, in essence, already "settled their dispute." *See United Nuclear*, 905 F.2d at 1427. As such, I find that Climax's motion to intervene is timely.

### ii. *Climax's Interest Relating to the Property That Is the Subject of the Consolidated Cases*

Although the contours of the interest requirement for intervention as of right "have not been clearly defined," the Tenth Circuit generally finds this requirement met when the interest is

"direct, substantial, and legally protectable."[3]  *See Utah Ass'n of Counties*, 255 F.3d at 1251 (citation and quotation marks omitted).  The inquiry is "highly fact-specific," and the "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Id*. at 1251–52 (citation and internal quotation marks omitted).  Moreover, the "[t]he interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is *related to the property that is the subject of the action*."  *Id*. at 1252 (citation omitted) (emphasis in original).

In the instant case, Denver and Colorado Springs argue that Climax does not have a "direct, substantial, legally protectable" interest related to the property that is the subject of the Consolidated Cases because these cases addressed the relative priorities of the *existing* parties' rights on the Blue River, not Climax's rights on that river, which were separately decreed by the Summit County District Court.[4]  (*See* Cities' Resp. at 3–4.)  Climax responds that its "decreed

---

[3]The court acknowledges the recent Tenth Circuit decision casting doubt upon the usefulness of the "direct, substantial, and legally protectable" test without explicitly overruling it. *See San Juan County, Utah v. United States*, 503 F.3d 1163, 1190–97 (10th Cir. 2007). Nonetheless, because (1) this decision explicitly states that it would not be "error for a court addressing an application for intervention to consider whether the prospective intervenor's interest is direct, substantial, and legally protectable," (2) the parties briefed the interest requirement issue using this test *prior* to the *San Juan* decision; and (3) the *San Juan* decision was predicated upon the concern that the test may be too *restrictive*, I choose to apply this test, albeit cognizant of its limitations identified by the Tenth Circuit.  *Id*. at 1194.

[4]In this relation, Denver and Colorado Springs additionally cite this court's statement in its 1963 order denying Climax's predecessor's motion to intervene that "this Court can take no action in the [Consolidated Cases] affecting the vested property rights of [Climax's predecessor] which it obtained [in the Summit County District Court proceeding]."  (*See* Cities' Resp. at 4;

Blue River water rights constitute a direct, substantial and protectable interest in the Blue River and therefore in the subject matter of the Consolidated Cases." (Climax's Reply at 9.)

Although it is a close question, I find that Climax's water rights on the Blue River demonstrate a "direct, substantial, and legally protectable" interest relating to property that is the subject of the Consolidated Cases. Although I agree with Denver and Colorado Springs that the *existing* parties' water rights on the Blue River are the property that is the subject of the Consolidated Cases, I disagree with their implicit suggestion that Climax's own — separately decreed — rights are somehow *unrelated* to this property. On the contrary, Climax's petition on intervention — along with Northern, Denver, and Colorado Springs's opposition thereto — clearly demonstrates that Climax's water rights are related to the water rights decreed in the Blue River Decree, in the sense that these rights are more or less valuable depending upon their relative priority *vis–à–vis* those rights decreed by this court. (*See generally* Decl. J. Pet.) Moreover, the Tenth Circuit has explicitly held that "[t]he interest of the intervenor is not measured by the particular issue before the court," but rather by whether this interest is "*related*" to the property that is the subject of the action. *See Clinton*, 255 F.3d at 1251 (emphasis in original) (reversing district court which had found no interest on the part of environmental and touristic organizations seeking to intervene in dispute regarding the legality of an executive proclamation establishing a national monument). As such, I find that Climax has a "direct, substantial, and legally protectable" interest relating to property that is the subject of the Consolidated Cases.

Order Denying Mot. of American Metal Climax, Inc. to Intervene ¶ 11 [filed June 21, 1963] [hereinafter "1963 Order"].)

-13-

### iii.        *Danger of Impairing or Impeding Climax's Interest*

In assessing whether a would-be intervenor's interest might be impaired or impeded absent intervention, "the court is not limited to consequences of a strictly legal nature." *See id.*, 255 F.3d at 1253 (citation and quotation marks omitted).  Instead, "[t]o satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Id.* (citation and quotation omitted).  Although not explicitly so holding, Tenth Circuit cases assume *sub silentio* that such impairment must result from a pending action or judgment *of the court.  See, e.g.*, *Utahans for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("The threat of economic injury from the outcome of the litigation undoubtedly gives a petitioner the requisite interest"); *Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) ("[T]he *stare decisis* effect of the district court's judgment is sufficient impairment for intervention.").

In the instant case, Northern, Denver, and Colorado Springs argue that Climax's interest relating to their water rights on the Blue River would not be impaired or impeded absent intervention because "Climax has not identified any threats to its interests presented by the current proceedings," and because "no existing party has filed any motion or petition asserting any claim to be resolved by the court" regarding administration or construction of the Blue River Decree. (Northern's Resp. at 5; Cities' Resp. at 4–5.)  Without directly confronting this argument, Climax contends that it "must intervene . . . to avoid the direct harm that will be inflicted when the State Engineer administers Blue River water rights according to his mistaken understanding" of the

Blue River Decree.  (Climax's Reply at 9–10.)  For the reasons set forth below, I agree with Northern, Denver, and Colorado Springs.

First, I find that, as a practical matter, Climax's interest relating to the existing parties' water rights on the Blue River might be impaired if it is denied the opportunity to intervene.  *See, e.g.*, *Clinton*, 255 F.3d at 1253 (stating that "a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied").  Even assuming that Climax will be able to refile its action in state water court, the possibility of further delay in adjudicating its rights could practically impede Climax's ability to resume mining operations in 2009 given its understandable desire to delay investment decisions until all uncertainty surrounding its water rights has been resolved.  Nonetheless, even though Climax's interests might be impaired absent intervention, I agree with Northern, Denver, and Colorado Springs that the absence of any currently pending motion or proceeding before this court precludes a finding that such impairment to Climax's interest would result from any pending action or judgment *of this court*, which I find to be a *sine qua non* of the impairment requirement for intervention as of right.

Rule 24(a)(2) requires that a would-be intervenor be "so situated that *disposing of the action* may as a practical matter impair or impede [its] ability to protect its interest."  Fed. R. Civ. P. 24(a)(2) (2008) (emphasis added).  As a matter of plain meaning, I find this phrase requires some *pending* action or judgment of the court that — absent the intervenor's actions — might practically impair its interest.  Such a conclusion is consistent with Tenth Circuit precedent assuming *sub silentio* that the claimed impairment under Rule 24(a)(2) must result from some

-15-

pending action of the court, and not from a court's mere refusal to consider a *new* claim upon petition. *See, e.g.*, *Utahans for Better Transp.*, 295 F.3d at 1115; *Coalition of Ariz./N.M. Counties*, 100 F.3d at 844. Climax has pointed to no case law to the contrary, and I find that accepting its apparently novel theory could raise grave concerns as to a would-be intervenor's ability to skirt standing requirements by permitting intervention as of right to obtain *de facto* advisory opinions under the veil of declaratory judgments whenever an intervenor lacks standing. *See, e.g.*, *San Juan*, 503 F.3d at 1172 (holding that party seeking to intervene need not have Article III standing so long as another party with standing on the same side as the intervenor remains in the case). More concretely, I see no reasoned distinction between Climax's instant motion and the potential future motions of dozens or even hundreds of other water rights holders on the Blue River, and decline to set a precedent permitting *any* holder of water rights on the Blue River to intervene *as of right* to seek declaratory judgment regarding the relative priority of its rights *vis–à–vis* those rights decreed by this court in the Blue River Decree absent authority suggesting that such a ruling is required. Accordingly, I find that the impairment requirement for intervention as of right is not satisfied.

Because Climax cannot satisfy the impairment requirement under Rule 24(a)(2), I deny its motion for intervention as of right.

### b. *Permissive Intervention*

In determining whether permissive intervention is warranted, a court may consider such factors as: (1) whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights; (2) whether the would-be intervenor's input adds value to the existing

litigation; (3) whether the petitioner's interests are adequately represented by the existing parties; and (4) the availability of an adequate remedy in another action.  (*See generally* 2004 Order at 52–56.)  I consider each such factor in turn.

At the outset, I note that permissive intervention requires as its starting point that the would-be intervenor have a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B) (2008).  Northern halfheartedly contends that Climax does not have such a claim or defense because there are "no issues . . . underway for the court to determine in these consolidated cases in the absence of Climax's proposed petition" and thus, arguably, "no existing questions of law or fact in common with the allegations in Climax's proposed petition."  (Northern's Resp. at 7.)  Despite the facile appeal of this argument, I find it unavailing in light of this court's continuing retained jurisdiction to enforce the Blue River Decree.  *See, e.g.*, *United Nuclear Corp.*, 905 F.2d at 1427 (affirming district court's granting of permissive intervention three years after underlying case had settled where intervention was directed at modifying a protective order still in effect).

### i.       *Undue Delay or Prejudice to the Existing Parties*

According to the plain language of Rule 24(b)(3), "the court must consider whether the intervention will unduly delay or prejudice adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3) (2008).  "Additional parties always take additional time that may result in delay and that thus may support the denial of intervention."  7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1913 (3d ed. 2007).  Nonetheless, "delay in and of itself does not mean that intervention should be denied," and a court

should decide in its discretion whether intervention will "unduly delay" the adjudication. *Id.* Expounding upon this rule, the Tenth Circuit has explained that if an applicant's intervention "clutter[s] the action" without aiding the current parties or issues, the applicant's motion to intervene may be denied. *Arney v. Finney*, 967 F.2d 418, 421–22 (10th Cir. 1992).

In the instant case, Northern, Denver, and Colorado Springs essentially contend that permitting Climax to intervene will unduly delay adjudication of *future* matters in the Consolidated Cases by interjecting new parties into the case who will add procedural complexity to such adjudications. (*See* Northern's Resp. at 8–9; Cities' Resp. at 8–9.) Specifically, Northern contends that the State Engineer is a necessary — but not indispensable — party to Climax's declaratory judgement action as defined under Rule 19, and that, if accordingly so joined, will be able to "participate in all future disputes in these consolidated actions." (Northern's Resp. at 8.) Denver and Colorado Springs more prosaically protest that "to allow Climax to intervene in the Consolidated Cases so that it can contest future actions of the State Engineer in administering that decree will simply involve this Court in a dispute between two non-parties to the case about an issue not before it." (Cities' Resp. at 9.) Climax disputes that the State Engineer would be a necessary party, arguing that Colorado water law proves that existing parties to the Consolidated

Cases are the real parties in interest in its declaratory judgment action.[5]  (*See* Climax's Reply at 12–14.)

I find that Climax has failed to persuasively refute Northern's argument that the State Engineer would become a necessary party were I to granted its motion.  Climax assumes without authority that Colorado water law would supersede the requirement of Rule 19(a) in determining whether the State Engineer is necessary.  (*See* Climax's Reply at 12 [stating that "in its role as a water court, this Court necessarily applies Colorado water law," and arguing that "under Colorado law, State water officials . . . are not necessary parties to an action regarding priority of water rights"].)  This assumption ignores well-settled law that the *Erie* doctrine applies only to federal common law, and not to Congressional enactments such as the Rules Enabling Act, which authorized the Federal Rules of Civil Procedure.  *See, e.g.*, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 428 n.7 (1996)  ("It is settled that if the Rule in point is consonant with the Rules Enabling Act . . . the Federal Rule applies regardless of contrary state law." [citing *Hanna v. Plumer*, 380 U.S. 460 (1965)]).  Moreover, the only authority Climax cites for the proposition that the State Engineer is not "necessary" is common law predating the Water Rights Determination and Administration Act of 1969, Colorado Revised Statutes section 37–92–101 *et seq.*, and thus of unclear authority in the absence of any explanatory briefing by Climax on this

---

[5]Climax also, inappositely, maintains that Colorado water law proves that the State Engineer is also not "indispensable."  (*See* Climax's Reply at 13.)  This argument misses the mark as Northern agrees that the State Engineer is not "indispensable," and thus that Climax's petition on intervention would not have to be dismissed if he could not be joined.  (*See* Northern's Resp. at 8.); *see also* Fed. R. Civ. P. 19(b) (2008) (stating requirements for determining whether a party is indispensable).

point. (*See* Climax's Reply at 13 [citing *McLean v. Farmers' Highline Canal & Reservoir Co.*, 98 P. 16 (Colo 1908)].) As such, I find that Climax has failed to persuasively demonstrate that the State Engineer would *not* become a necessary party were I to grant its motion.

By contrast, Northern has presented at least a colorable argument that the State Engineer might become necessary were I to grant Climax's motion, arguing that it might be impossible to accord complete relief amongst the existing parties, including Climax, if he is not joined, and asserting that certain parties might be subject to the risk of incurring multiple or inconsistent obligations absent joinder. (*See* Northern's Br. at 8); *see also* Fed. R. Civ. P. 19(a)(1)(B)(ii) (2008). First, whether or not Northern is correct,[6] the mere attendant difficulty in deciding this question as an antecedent determination to whether or not Climax's joinder would interject unnecessary procedural complexity into the case *itself* ironically interjects unnecessary procedural complexity into this case because such issues could largely be avoided if Climax brought its action in state water court. Second, I note that the risk of unforeseen difficulties resulting from the State Engineer's joinder as a full party has motivated this court in the past to place strict conditions upon his right to *permissively* intervene, and observe that, should he now become a necessary party to Climax's declaratory judgment action, this court's ability to limit his participation in *future* matters might well be restricted. (*See* Northern's Resp. at 9; *see also* 2004 Order at 54 [noting that "there may be unseen disputes in the future in these consolidated cases where intervention by the State would not be warranted," and accordingly holding that "the State may

_____

[6]I make no findings on these points as all parties' briefing was cursory.

-20-

intervene regarding the present petition, but this intervention does not give the state an automatic right to intervene in future disputes in these consolidated cases"].)  Because expending judicial resources in deciding these issues with certainty absent adequate briefing from the parties on point would itself "clutter the action" without aiding the *current* parties or *current* issues, I find that the procedural complexity already made manifest by the instant motion — and, moreover, likely to proliferate should I grant this motion — militates against my granting of permissive intervention. *See Arney*, 967 F.2d at 421–22.

### ii.      *Climax's Input as Adding Value to the Instant Litigation*

"In deciding on a motion for permissive intervention, a court will consider whether the movant's input is likely to make a significant and useful contribution to the development of the underlying factual and legal issues or, alternatively, is likely to be counterproductive."  6 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 24.10(2)(b) (3d ed. 2007); *see also Arney*, 967 F.2d at 422 (district court properly denied applicant's motion to intervene because, *inter alia*, the applicant's "intervention would not aid" the plaintiffs).

In the instant case, Denver and Colorado Springs contend that Climax's intervention would not add value to the Consolidated Cases because: (1) "[i]t is not seeking to reopen [the Blue River Decree] or question the facts that led to the determination of water rights and priorities made in the decrees in the Consolidated Cases;" and (2) "Climax has not shown that there is any question currently pending before Court for which [its] participation will aid in a resolution."  (Cities' Resp. at 9.)  Climax does not explain how its intervention would add value

to the Consolidated Cases, but instead merely states that facts relevant to its declaratory judgment

action are "inextricable from the facts at issue in the Consolidated Cases." (Climax's Br. at 14.)

I find that Climax has failed to demonstrate how its declaratory judgment action would

add value to the Consolidated Cases. As Climax has pointed to no currently pending issues

before this court for which its input could be helpful, I find the mere suggestion that its input

could be helpful in resolving the dispute that Climax *itself* wishes to foist upon this court is

insufficient to show how its intervention would add value to the underlying litigation. As such, I

find this factor militates against granting Climax's motion.

### iii.    *Climax's Adequate Representation by the Existing Parties*

Permissive intervention is not as appropriate if the applicant's interests are adequately

represented by existing parties. 6 MOORE'S FEDERAL PRACTICE § 24.10(2)(c); *see also New*

*Orleans Public Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) ("In

acting on a request for permissive intervention, it is proper to consider, among other things,

whether the intervenors' interests are adequately represented by other parties.") (citations and

internal quotation marks omitted).

Climax contends that its interests are not adequately represented by the existing parties

because this court so held in its 1963 order denying Climax's predecessor's motion to intervene,

and because "circumstances have not changed." (Climax's Br. at 11.) Denver and Colorado

Springs concede that Climax is not adequately represented by the existing parties, but argue that

this is irrelevant in the dearth of a pending motion or action in the Consolidated Cases that could

-22-

affect its interests.  (*See* Cities' Resp. at 10.)  Climax does not reply to this argument.  (*See* Climax's Reply.)

I find that Climax's lack of adequate representation is irrelevant to its motion for permissive intervention absent a pending action or motion that could affect its interests.  In fact, this court implicitly so held in the same 1963 order that Climax now invokes to demonstrate that it is not adequately represented.  (*See* 1963 Order ¶ 12.)  As this court, speaking through Judge Arraj, then declared: "The representation of the interest of [Climax's predecessor] by existing parties to [the Consolidated Cases] is inadequate, but [Climax's predecessor] is not and will not be bound by the judgment of this Court in these consolidated actions . . . or by any future judgment, order or decree of this Court."  (*Id.*)  Because this reasoning remains equally true today, I find that Climax's inadequate representation by the existing parties irrelevant to its argument for permissive intervention.

### iv.     *Availability of Adequate Remedy in Another Action*

Finally, the availability of an adequate remedy in another action generally counsels against permissive intervention.  6 MOORE'S FEDERAL PRACTICE § 24.10(2)(d).

Climax implausibly maintains that state water courts lack the authority to interpret the Blue River Decree, and additionally argues that this court is best suited to do so "because of [its] extensive involvement and history with the Blue River Decree and Climax's request for substantive interpretation of federal law."  (Climax's Reply at 14–17.)  Northern, Denver, and Colorado Springs argue that Climax may bring its action in state water court, and maintain that water court is better suited for Climax's claims given water courts' expertise in determining the

relative priority of water rights. (*See* Northern's Resp. at 9, Cities' Resp. at 10–12.) I first assess whether state water court may decide Climax's action, and then consider which forum might be preferable.

A. STATE WATER COURTS' AUTHORITY TO DECIDE CLIMAX'S ACTION — Climax first maintains that "'long-standing principles of water law prohibit a court from interpreting or enforcing a decree entered by another court.'" (Climax's Reply at 14 [quoting *City of Grand Junction v. City and County of Denver*, 960 P.2d 675, 681 (Colo. 1998)].) As Climax contends, these principles "'inhibit any other court of coordinate jurisdiction from modifying, reviewing, or construing such decree.'" (*Id.* at 15 [quoting *Grand Junction*, 960 P.2d at 681].) This argument is mendacious.

Simple perusal of the Colorado Supreme Court case Climax quotes for these propositions demonstrates that the Court *itself* was only quoting such propositions — the first from a litigant's brief, the second from a 1916 case — as part of a discussion of how Colorado law had *subsequently* evolved to reach *substantially the opposite conclusion*. *See Grand Junction*, 960 P.2d at 681–82. After discussing two Colorado Supreme Court cases that had effectively overturned the propositions quoted by Climax by unpersuasively distinguishing them, the Court declared:

> In light of *Faden* [*v. Hubbell*] and *Denver v. Consolidated Ditches*, we disagree with Grand Junction's claim that the Water Court exceeded its jurisdiction when it examined and construed the provisions of the Blue River Decree. We hold that the Water Court possessed the authority to review the Blue River Decree in order to ascertain whether Denver's application would interfere with the terms or objectives of the decree. In doing so, we also reaffirm the principle, described [in the 1916 case], that a court of coordinate jurisdiction does not possess the

> authority to enter a decree that modifies or interferes with the objectives or terms of another court's decree.

*Id.* at 683.  Thus, on clear authority of the Colorado Supreme Court, I find that state water courts retain the jurisdiction to interpret the Blue River Decree so long as they do not "modify" or "interfere" with that decree's objectives or terms.  *See id.*; *see also City & County of Denver v. Consolidated Ditches Co.*, 807 P.2d 23, 34–35 (Colo. 1991) (interpreting the Blue River Decree to hold that a litigant's reliance upon it to show that an agreement between Denver and other appropriators of transmountain water was against public policy was unfounded).  Moreover, I note that Climax's shocking misrepresentation of *Grand Junction* represents yet another reason to deny its motion for permissive intervention — namely, the show cause hearings that might crowd this court's docket should Climax be permitted to intervene and continue its singularly abysmal brand of zealous representation.

B. PREFERABLE FORUM FOR CLIMAX'S ACTION — Finally, Climax asserts that, to the extent state water court may hold concurrent jurisdiction over its action, this court constitutes the preferable forum for its claims because of "the federal court's extensive involvement and history with the Blue River Decree and Climax's request for substantive interpretation of federal law." (Climax's Br. at 14.)  By "federal law," Climax appears to mean the Colorado-Big Thompson Project and the Power Interference Agreement, which it contends must be interpreted to afford the declaratory judgment it seeks.  (*See id.* at 14–17.)  Northern, by contrast, contends that "[t]he relief Climax seeks in its proposed petition implicates interpretation of both the [Blue River Decree] and state court water decrees, as well as their interrelationship, so the water court is an

appropriate forum in which Climax may seek relief." (*See* Northern's Resp. at 9.) Denver and Colorado Springs add that "Climax has alleged no barriers prohibiting it from filing a declaratory judgment action in state water court to determine the appropriate administration of its rights in relation to the Green Mountain Hydroelectric right and the Power Interference Agreement."[7] (Cities' Resp. at 11.)

I find that Climax has failed to prove why this court would present a forum for its claims preferable to state water court. While assessment of Climax's declaratory judgment petition might well require interpretation of federal law, Climax has failed to demonstrate how state water court is somehow jurisdictionally prevented from — or institutionally incapable of — performing such interpretation, and I find no reason to so hold. Moreover, given state water courts' statutory role of presiding over continuous proceedings for water rights, I note that state water court appears to present the most natural forum for assessing the relative priority of Climax's rights decreed by the Summit County District Court *vis–à–vis* those rights decreed by this court. *See, e.g.*, Colo. Rev. Stat. 37–92–302, 303 (2007) (outlining procedures for continuous water rights adjudications). Accordingly, while I decline to hold that state water court will *always* present the preferable forum for assessing third-parties' rights relative to those rights decreed in the Consolidated Cases, I find that Climax has failed to persuasively argue that state water court is

---

[7]Denver and Colorado Springs made this argument in their response, before Climax had misrepresented the holding of *Grand Junction* in its reply. (*See* Cities' Resp. at 11; Climax's Reply at 14.)

*not* preferable on the facts of *this* case, and accordingly find this factor militates against granting Climax's motion.

For the foregoing reasons, I deny Climax's motion for permissive intervention under Rule 24(b)(1)(B).

### 3. *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. CLIMAX's motion to intervene (#159) is DENIED.

Dated this 25th day of March, 2008.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge