1          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO

2

  Consolidated Civil Action Nos. 49-cv-02782, 5016,  5017

3

4  UNITED STATES OF AMERICA v.
    NORTHERN COLORADO WATER
5  CONSERVANCY DISTRICT, et al.,
    IN THE MATTER OF THE ADJUDICATION
6  OF PRIORITIES OF WATER RIGHTS IN
    WATER DISTRICT NO. 36
7  FOR PURPOSES OF IRRIGATION

8  PETITIONERS:
    THE COLORADO RIVER WATER CONSERVATION DISTRICT
9  THE GRAND VALLEY WATER USERS ASSOCIATION
    ORCHARD MESA IRRIGATION DISTRICT
10  PALISADE IRRIGATION DISTRICT
    GRAND VALLEY IRRIGATION COMPANY, AND
11  MIDDLE PARK WATER CONSERVANCY DISTRICT

12  IN THE MATTER OF THE ADJUDICATION
    OF PRIORITIES OF WATER RIGHTS IN
13  WATER DISTRICT NO. 36
    FOR PURPOSES OTHER THAN IRRIGATION

14

15  PETITIONERS:
    THE COLORADO RIVER WATER CONSERVATION DISTRICT
16  THE GRAND VALLEY WATER USERS ASSOCIATION
    ORCHARD MESA IRRIGATION DISTRICT
17  PALISADE IRRIGATION DISTRICT
    GRAND VALLEY IRRIGATION COMPANY, AND
18  MIDDLE PARK WATER CONSERVANCY DISTRICT

19  _____

20

21              **REPORTER'S TRANSCRIPT**
                Rule 16 Hearing

22

23  _____

24  Proceeding Recorded by Mechanical Stenography, Transcription
    Produced via Computer by Paul Zuckerman, 901 19th Street,
25     Room A259, Denver, Colorado, 80294, (303) 629-9285

1       Proceedings before the HONORABLE MARCIA S. KRIEGER,

2   Judge, United States District Court for the District of

3   Colorado, commencing at 1:56 p.m., on the 5th day of June,

4   2009, in Courtroom A901, United States Courthouse, Denver,

5   Colorado.

6                           **APPEARANCES**

7       CASEY S. FUNK and DANIEL J. ARNOLD, Attorneys at Law,

8   Denver Water Department, 1600 West 12th Avenue, Denver,

9   Colorado 80204, appearing for Petitioner Denver Water

10  Department.

11      STEPHEN D. GURR and BARRY A. SCHWARTZ, Attorneys at

12  Law, Kamlet Reichert L.L.P., 1515 Arapahoe Street Tower 1,

13  Suite 1600, Denver, Colorado, 80202, appearing for Petitioner

14  Denver Water Department.

15      ROBERT J. POHLMAN and ROGER T. WILLIAMS JR., Attorneys

16  at Law, Ryley Carlock & Applewhite P.A., 1999 Broadway, Suite

17  1800, Denver, Colorado, 80202, appearing for Climax Molybdenum

18  Company.

19      FREDERICK G. ALDRICH, Attorney at Law, 601 A 28 1/4

20  Road Grand Junction, Colorado 81506, appearing for Grand Valley

21  Irrigation Company.

22      STANLEY W. CAZIER, Attorney at Law, Cazier, McGowan &

23  Walker, P.C., 62495 U.S. Highway 40, P.O. Box 500, Granby,

24  Colorado, 80446, appearing on behalf of Middle Park Water

25  Conservancy District.

1          MARK A. HERMUNDSTAD, Attorney at Law, Williams, Turner

2   & Holmes P.C.,  P.O. Box 338, 200 North 6th Street,  Suite 103,

3   Grand Junction, Colorado, 81502, representing Ute Water

4   Conservancy District, Grand Valley Water Users Association, and

5   Orchard Mesa Irrigation District.

6          CHRISTOPHER L. THORNE, Attorney at Law, Holland & Hart

7   L.L.P., 555 17th Street, Suite 3200 Denver, Colorado,

8   80201-8749, representing Colorado River Water Conservation

9   District.

10          JASON V. TURNER, Attorney at Law, Colorado River Water

11   Conservation District, 201 Centennial Street, Suite 200,

12   Glenwood Springs, Colorado, 81602, representing Colorado River

13   Water Conservation District.

14          JAMES J. DUBOIS, Attorney at Law, U.S. Department of

15   Justice, Environmental Enforcement, 1961 Stout Street, 8th

16   Floor, Denver, Colorado, 80294, appearing for the United

17   States.

18          ANN M. RHODES, Attorney at Law, Berg Hill Greenleaf &

19   Ruscitti L.L.P., 1712 Pearl Street, Boulder, Colorado, 80302,

20   appearing for the City of Englewood.

21

22                       *   *   *   *   *

23                        **PROCEEDINGS**

24      (In open court at 1:56 p.m.)

25          *THE COURT:*  Please be seated.

 1          Good afternoon.  We're convened this afternoon in Case

 2   No. 49-cv-2782.  These are consolidated civil cases, 27 -- I'm

 3   sorry -- 2782, 5016, and 5017.  They're all with regard to the

 4   application for water rights of the Colorado River Water

 5   Conservation District and the City and County of Denver.

 6          And before I take entries of appearance, let me

 7   apologize to all of you in the courtroom.  We had an emergency

 8   in chambers, and that is why I'm delayed.  I know that you're

 9   on your clocks, and I apologize to you and your clients for the

10   late start.

11          Could I have entries of appearance, please.

12          *MR. FUNK:*  Your Honor, my name is Casey Funk.  I'm the

13   attorney for the City and County of Denver acting by and

14   through its Board of Water Commissioners.  At counsel table

15   with me is Dan Arnold.  He's also an internal attorney with me;

16   Steve Gurr, Barry Schwartz with Kamlet Reichert.  They're

17   special counsel to Denver.

18          And welcome to the Blue River, your Honor.

19          *MR. POHLMAN:*  Good afternoon your Honor.  I'm Robert

20   Pohlman.  With membership is Roger Williams.  We're with Ryley

21   Carlock & Applewhite, and we represent the opposer Climax

22   Molybdenum Company.

23          *MR. ALDRICH:*  My name is Fred Aldrich.  I represent

24   the opposer Grand Valley Irrigation Company.

25          *MR. CAZIER:*  If the Court please, Stanley W. Cazier.

1    I'm appearing on behalf of Middle Park Water Conservancy

2    District.

3            MR. HERMUNDSTAD:  Your Honor, I'm Mark Hermundstad.

4    I'm representing Objectors Ute Water Conservancy District,

5    Grand Valley Water Users Association, and Orchard Mesa

6    Irrigation District.

7            MR. THORNE:  Your Honor, I'm Chris Thorne, outside

8    counsel for the Colorado River Water Conservation District, an

9    opposer in this case.

10           MR. TURNER:  Your Honor, Jason Turner, associate

11   counsel with the Colorado River Water Conservation District.

12           MR. DUBOIS:  Good afternoon, your Honor.  James Dubois

13   for the United States.

14           MS. RHODES:  Good afternoon, your Honor.  Anne Rhodes

15   for City of Englewood, an opposer in this case.

16           THE COURT:  Welcome to all of you.

17           There is no doubt that I am the least informed person

18   in the courtroom.  This case dates back probably more years

19   than most of us have been alive, but it is a case that I

20   inherited from Judge Nottingham's docket.  And I've had the

21   opportunity to review a substantial part of the records in the

22   courthouse.  What I lack here in particular is (1) familiarity

23   with water law that you all have and (2) some idea of the time

24   frame that you envision for the resolution of the current

25   application at Docket No. 146.

1          I understand that you're currently engaging in

2    discovery; that you anticipate this will be extensive and time-

3    consuming; that it's being supervised by Magistrate Judge

4    Shaffer, and it's proceeding according to a scheduling order

5    that he has issued.

6          I also know that scheduling orders are often amended

7    due to the exigencies in the particular case; and therefore, I

8    need to get an idea with regard to the progress you anticipate

9    both as to timing and as to the various steps you think will

10   need to be taken by the Court in resolution of this matter.

11         So let me start with -- in the same order that we

12   proceeded with the entries of entries of appearance and ask all

13   counsel to address this.

14         *MR. FUNK:*  Your Honor, can I speak here, or would you

15   like me at the podium?

16         *THE COURT:*  You can stand there or you can stand at

17   the podium.  The only thing I request is that you speak into a

18   microphone.

19         *MR. FUNK:*  Does this work?

20         *THE COURT:*  That does.

21         *MR. FUNK:*  Your Honor, again my name is Casey Funk.

22   I'm attorney for the City and County of Denver acting by and

23   through its Board of Water Commissioners.

24         Let me start with the scheduling order.  Actually, the

25   dates were vacated by Judge Shaffer, I want to say back in

1    December or January.  The reason for that was primarily the

2    parties were having difficulties with the discovery process

3    through the electronically stored information process.  And at

4    that time also, the parties revved up settlement discussions

5    and mediation.

6                 THE COURT:  So the mediation has been concluded.

7                 MR. FUNK:  It has not been concluded.

8                 THE COURT:  Oh, okay.

9                 MR. FUNK:  All parties to this action have -- I'll

10   take that back.  Most parties to this action have been involved

11   in a mediation of many of the disputes that is the subject of

12   this action.  The parties retained a mediator back in January,

13   February of 2007; and we have been in that process, involving

14   not only parties to this action but parties that are not in

15   this action since then.  So Judge Shaffer vacated the

16   deadlines, and we proceeded generally with trying to wrap up

17   some of the pending ESI issues, but we've focused primarily on

18   trying to get this case settled through mediation.

19                So the case has basically -- I don't want to say

20   "stalled," but it has certainly slowed down since last

21   December.

22                Along those lines, the parties have been discussing

23   various methods to keep this effort on the mediation track.

24   And one of the ideas that we have been discussing is a motion

25   to remand.  If you recall our status report, I had a brief

1   blurb in that about the remand motion.  Various forms or ideas

2   for a remand have been bandied about by the parties.  The

3   favorite idea was kaput yesterday.  The United States decided

4   that they couldn't go along with that idea.  But we have other

5   ideas pending on a possible motion to remand this case to get

6   it off your docket temporarily until the parties can complete

7   the mediation process.

8           The other idea that we had been considering was a

9   request to this court for a stay, to allow the parties to

10  complete the mediation.  We were reluctant to push the stay

11  because of your local practice standards that discouraged a

12  stay based upon settlement conferences.  So the focus of most

13  of the parties to this case have been to see if there is a way

14  we can remand this case back to the state court as sort of a

15  magistrate or special master type of process to allow us to

16  continue with the mediation.

17          *THE COURT:*  Have you considered the appointment of a

18  special master in this case?  Because that's one that crossed

19  my mind.

20          *MR. FUNK:*  Right.  Judge Shaffer encouraged that when

21  we started a year ago, basically.  The parties really couldn't

22  agree to who that would be, and it was sort of was dropped off

23  the radar screen, basically; but it's something we can still

24  consider.  We just haven't been doing that.  We've been looking

25  at this motion to remand this action back under the 1977 order

1    or another method that's agreeable to all the parties to this

2    action.  That's what we're bantering about right now.

3         THE COURT:  I'm sorry to interrupt.  Who is the

4    mediator currently?

5         MR. FUNK:  His name is John Bickerman, and

6    Mr. Bickerman is a national mediator.  He is, I think, from

7    either Washington or Boston area.  I'm not really quite sure on

8    that.  But he has mediated many water disputes, national

9    disputes; and he got involved with this effort two years ago.

10   And it's been a slow progress, your Honor, but it is

11   progressing, and it's looking very positive.  And there is

12   probably a good likelihood this case will be settled through

13   this mediation process.  But it will take a while.

14        THE COURT:  Do I correctly understand that what would

15   be resolved would be the current application?

16        MR. FUNK:  Oh, absolutely that will be resolved.

17        THE COURT:  But this court has retained jurisdiction;

18   and that's why this is such an old case, 1949.

19        MR. FUNK:  You will have retained jurisdiction of this

20   case until the Blue River goes away.  And so -- or until the

21   Federal Government and Green Mountain go away, or somebody goes

22   away.  And that's not going to happen.  You will have retained

23   jurisdiction forever.

24        But this particular application involves Denver's

25   conditional water rights for Dillon Reservoir and the Roberts

1    Tunnel, and that's -- we had to file a diligence application.

2    And because of the 1977 order, you sit as a state water judge.

3    So we had to file this diligence application before you back in

4    2006.  And under the 1977 order, we follow the 1969 Water

5    Rights Determination and Administration Act, and we make

6    filings and notice pursuant to state law.  And you're the water

7    judge.

8         THE COURT:  That's why I said you know more about this

9    than I.

10        MR. FUNK:  Right.

11        But there is an clause in the original 1955 Blue River

12   water decree that says you retain jurisdiction to effectuate

13   the objectives of basically the stipulation which is

14   incorporated into the Blue River decree.  So you will always

15   being watching over to make sure that Denver does things right.

16   And that's why all these parties are here, is to make sure that

17   Denver's doing things according to the decree.

18        THE COURT:  Then let me ask you these particular

19   questions:

20        (1) When do you believe that you will have the

21   electronic portion of your discovery completed?

22        MR. FUNK:  Two months.

23        THE COURT:  When do you all think you're going to have

24   the remainder of the discovery completed, if there is any?

25        MR. FUNK:  You know, the parties have met three or

 1    four times in anticipation of some of these questions.  I have

 2    proposed certain dates that I can give to the Court, but not

 3    all parties have agreed to them yet.  So with that in mind,

 4    they can speak to these dates that I'm about to give you.

 5            THE COURT:  I'm not going to be setting dates, so this

 6    is not the time to argue about dates.  What I want to know --

 7    this is informational.

 8            MR. FUNK:  What I think is by the end of the summer

 9    all electronically stored data should be produced to the

10    parties.

11            As far as all discovery, later on in the fall,

12    November time frame.  End of November.

13            If your next question to me is on dispositive

14    motions -- then I'll stop there.

15            THE COURT:  No.

16            Let me ask with regard to discovery:  Have you had to

17    avail yourself and do you intend to avail yourself of the

18    assistance of the magistrate judge in order to resolve

19    disputes?

20            MR. FUNK:  He's been available to us.  At this point

21    we have not -- we've had some disputes, but they haven't gotten

22    to the point that we needed to have Magistrate Judge Shaffer

23    take action on them.

24            THE COURT:  All right.  Do you reasonably anticipate

25    given the vast number of parties and the fact that you've

1    negotiated your way through this that you're likely to need his

2    assistance?

3           MR. FUNK:  So far we have been able to negotiate

4    through most of our difficulties; however, there are some

5    issues pending that may need his assistance.

6           THE COURT:  Okay.  Then let ask, moving to the topic

7    that you introduced, dispositive motions, whether you believe

8    that dispositive motion practice is appropriate in this case.

9           MR. FUNK:  Yes.  There will be some motions that are

10   likely to dispose or could dispose of some of the claims and

11   issues in this case.

12          THE COURT:  Will it require dispositive motions to

13   dispose of those claims?

14          MR. FUNK:  Yes.

15          THE COURT:  What are the claims that you think might

16   benefit from the submission of dispositive motions?

17          MR. FUNK:  Whether Denver's ability to make absolute

18   some of its conditional water rights are in accordance with the

19   Blue River decree.

20          THE COURT:  About this, there will be no factual

21   dispute?

22          MR. FUNK:  Probably not.

23          THE COURT:  All right.  Because let me be real clear

24   here --

25          MR. FUNK:  I understand.

 1          THE COURT:  -- I believe very strongly that

 2   dispositive motions are not only limited in their effectiveness

 3   but they're limited to circumstances where there really are no

 4   material facts in dispute.  And I say that with great

 5   conviction because it is a practice in this court that

 6   virtually every lawsuit on the civil docket has one or more

 7   dispositive motions that are filed and more often than not

 8   those motions are denied because there are facts in dispute.

 9   And therefore, it is not a good exercise to file dispositive

10   motions where people reasonably believe there are facts in

11   dispute.

12          That doesn't mean that there aren't circumstances

13   where they are appropriate, but they tend to be over-used and

14   limited in their effect.  So I urge you in thinking about this,

15   to really think about what is appropriate for a dispositive

16   motion as compared to what isn't.

17          MR. FUNK:  I understand, and I have not discussed with

18   the other parties what facts we can stipulate to.

19          THE COURT:  All right.  Well, practically speaking, if

20   you're not able it to stipulate to the material facts, then

21   there is a relatively high likelihood that there is a genuine

22   dispute as to some material fact, which means that it's not a

23   good use of Rule 56.

24          MR. FUNK:  I understand.

25          THE COURT:  Okay.  Are there other issues that you

 1    think may be appropriate for dispositive motions, other than

 2    the correlation between Denver's ability to obtain the

 3    determination it wants consistent with the prior decree?

 4              *MR. FUNK:*  Most of the issues that I'm thinking of

 5    have to do with whether Denver has operated and exercised these

 6    water rights in strict conformance with the Blue River decree

 7    or in substantial compliance with the Blue River decree.  So --

 8    and that takes a look at interpreting the stipulations that

 9    were incorporated in the Blue River decree, taking a look at

10    the facts of what we did, and making a determination of -- of

11    whether we're entitled to make that water right absolute.

12              I can give the Court an example of a possible

13    dispositive motion regarding Denver's ability or compliance

14    with the reuse component of the Blue River decree.  There have

15    been claims made that Denver is not in compliance with those

16    reuse provisions.  The stipulation itself speaks as the

17    enforcement officer to be the United States of America.  So

18    there may be a standing-type motion that could be filed by us

19    on whether it's appropriate by other parties to make this

20    allegation or claim against Denver, or whether it should only

21    come through the United States of America.

22              That would be an example of a dispositive motion that

23    we would file.  And that basically to me is primarily -- it's

24    all legal, looking at and making an interpretation from the

25    Blue River decree and its stipulations.

1          THE COURT:  And a motion like that would be

2    circumvented by the United States undertaking the objection;

3    correct?

4          MR. FUNK:  I suppose; but factually, they made no

5    enforcement action during the diligence period.  And that will

6    be undisputed.

7          THE COURT:  Okay.  So the question I asked -- and I

8    don't mean to be rhetorical about that -- is there are many

9    legal issues you may want to have resolved here; but if what

10   they are are legal issues that simply change the posture that

11   the parties are taking, there may be less utility to have them

12   resolved in a dispositive motion context as compared to a

13   negotiated context.

14         MR. FUNK:  Correct.  I think the example I gave you

15   would remove a claim from the litigation.

16         THE COURT:  But ultimately the remainder of the claims

17   are going to have to be determined.

18         MR. FUNK:  Absolutely.

19         THE COURT:  And that's what -- that's what I would ask

20   you to think about.

21         MR. FUNK:  It's whether it will be a 16-day trial or a

22   10-day trial.  Something like that.

23         THE COURT:  And that makes no difference.

24         MR. FUNK:  Okay.

25         THE COURT:  If we're going to have a trial, we're

1   going to have a trial.  And so trying to pare away this claim

2   or that claim may or may not impact the number of days.  It

3   really from a court's perspective -- now, maybe it affects the

4   parties differently; but from a court's perspective, five or

5   six days is not going to make any difference.  I'm going to

6   spend that much time or more looking at dispositive motions in

7   order to clear away five or six days of trial.  So it may be

8   from your perspective that the cost and the preparation for

9   five or six days of trial is less than or more than the amount

10  of time you'd spend on dispositive motions; but if we're

11  looking at this from a cost/benefit analysis, it may be simpler

12  and less expensive to proceed to trial, even though you might

13  be looking at dispositive motions as an alternate way to

14  address the very same issues.  The worst for both the parties

15  and the Court is to have dispositive motions submitted and have

16  them determined in favor of a trial.  And then we've gone

17  through both exercises.

18          So in the course of your mediation and negotiation,

19  you may want to think about efficiency all the way around.

20          When do you think, if, indeed, you needed a trial,

21  that trial would need to occur?

22          *MR. FUNK:*  2010.

23          *THE COURT:*  And when do you think that, if you needed

24  a trial, you would know that you needed a trial?

25          *MR. FUNK:*  2010.

1        No, I'm sorry.  I'll throw out six months, but I think

2   that is probably -- well, six months.

3        THE COURT:  Let me give you an idea what the Court's

4   docket looks like.  And I appreciate all the different angles

5   that you're looking at here, because as you know, we are short

6   a couple of judges.  And the likelihood is that we will not

7   have new judges join us probably in 2009.  It will probably be

8   into 2010, and who knows when it might be in 2010?  We're not

9   the only district that needs judges, and the Supreme Court

10  jumped to the front of the list.

11       So until we have new judges, the current judges are

12  handling a very heavy docket.  I'm right now handling in excess

13  of 300 civil cases and in excess of 100 criminal cases, and the

14  criminal cases are -- involve a number of multidefendant cases

15  and, of course, as we all know have to go on an expedited

16  calendar.

17       The long and the short of this is that probably I

18  cannot turn on a dime as far as scheduling of trial.  I'd like

19  to be able to do that for you; but I won't be able to, likely,

20  which means that there likely could be a delay between the time

21  you reasonably understand that you're going to need a trial and

22  the availability of trial time to accomplish it.  And that

23  delay could be up to a year or so.

24       And so I -- I would love to schedule things in advance

25  so that you have some predictability.  But realistically,

 1   that's why I urge you to really think about these dispositive

 2   motions.  That does not speed the date of the trial.  Quite to

 3   the contrary, it delays it.  And for every dispositive motion

 4   that is filed, giving time for appropriate responses and

 5   replies, we can commit that we have those motions determined by

 6   the end of the six month period under the Civil Justice Reform

 7   Act.  But what that means is if you file a motion before, say,

 8   March, it will be determined by the end of September.  But if

 9   you file it after March, it won't be determined probably until

10   the following -- we couldn't guarantee that it would be

11   determined until the February that follows.  So there is a

12   tremendous time period, depending on when you file motions, for

13   their determination.

14          So I'm interested in your time frame so that we can

15   get this posited correctly on this docket.

16          Let me ask with regard to your thoughts on remand:

17   When do you think you all will have concluded your thinking

18   with regard to that?

19          MR. FUNK:  In a couple weeks, your Honor.

20          THE COURT:  Okay.  And with regard to stay, I don't

21   know how a case could be stayed so long as you need the

22   assistance of Magistrate Judge Shaffer.  How would that work?

23          MR. FUNK:  Well, the stay would -- we would not -- the

24   way it has been proceeding, we have needed the assistance of

25   Judge Shaffer.  If this action is stayed, we would stay all

1    discovery.  Everything would be stayed for a time period to

2    allow this mediation to go forward.  So we would not need his

3    assistance during the period of the stay.  And then if the

4    mediation doesn't work out within that stay, then we would

5    reinstitute and his assistance and your assistance.

6            THE COURT:  You've had the assistance of the mediator

7    for a little more than a year; is that right?  Year and a half?

8            MR. FUNK:  Correct.

9            THE COURT:  And how much more assistance do you need

10   from the mediator, knowing that there are moving pieces outside

11   this lawsuit that play into that?

12           MR. FUNK:  How long will we need his assistance?  At

13   least till the end of the year.

14           THE COURT:  Okay.  So if you were looking at a stay,

15   you would want a stay at least until the end of the year.  Is

16   that fair?

17           MR. FUNK:  That is fair.

18           THE COURT:  Okay.  What I'm understanding, then, from

19   what you've said is that you intend to continue mediation at

20   least through the end of the year, you intend to

21   simultaneously, I guess, complete your electronic discovery

22   this summer and maybe the remainder of the discovery as of

23   November; is that right?

24           MR. FUNK:  No.

25           THE COURT:  Okay.  I misunderstood.

 1          MR. FUNK:  I was assuming when you asked me those

 2     questions that you were disregarding the stay.  So if we stayed

 3     the action, there would be no more EIS, there would be no more

 4     written discovery, everything would stop to allow this

 5     mediation to go forward at least tell the end of the year.

 6          THE COURT:  Is there some reason you cannot proceed on

 7     two tracks simultaneously?

 8          MR. FUNK:  We can do that.

 9          THE COURT:  So you could proceed with your discovery

10     and simultaneously proceed with mediation and all of it would

11     be done, then, by the end of the year.  Is that fair?

12          MR. FUNK:  Yeah, that's fair.  But here's my

13     qualifier, your Honor, and that goes to your charge for just,

14     speedy, and inexpensive determination of this action.

15          THE COURT:  That pesky provision in Rule 1.

16          MR. FUNK:  Yeah.  Yeah.  To the extent that we have to

17     go forward on the ESI discovery, that will be expensive.

18          THE COURT:  Will that become more expensive if you

19     don't complete it now?

20          MR. FUNK:  I think the charges -- possibly a little

21     bit.  The charge that Denver is faced with will be uploading

22     what we have already stored onto a search platform called

23     Clearwell and in doing the review, and so forth.  We anticipate

24     that could cost 100- to $200,000 to do that.  I think that

25     charge will be about the same now and into 2010.  I am guessing

1   on that, your Honor; but that's my anticipation.

2        THE COURT:  Do you need to do that for purposes of the

3   mediation?

4        MR. FUNK:  No.

5        THE COURT:  Is there any possibility of completing

6   your efforts at mediation sooner than the end of the year?

7        MR. FUNK:  We are trying to get this completed as soon

8   as we can.  It has just been a slow progress because of the

9   number of parties involved in the mediation, the number of

10  issues that are even outside of this litigation that we are

11  trying to resolve.

12       THE COURT:  Well, what's the applicant's preference

13  for the course of this case?

14       MR. FUNK:  The applicant's preference for this is to

15  allow the mediation to go forward before we have to get into

16  litigation.

17       THE COURT:  So in essence, you would prefer to have a

18  stay till the end of the year.

19       MR. FUNK:  That would work, your Honor -- or as we are

20  working on this remand, which would have the same effect.  It

21  would just go back down to the state court with the option of

22  any party to -- to what we call "re-refer" it back to the water

23  judge, which would be you.  So if it's a remand, it could -- it

24  would meet the same objective.

25       THE COURT:  I'm lost, then, on the remand.  It goes

```
 1   back down to the state court but then could come back here for

 2   determination?

 3            MR. FUNK:  That's correct, your Honor.

 4            THE COURT:  How does that work?

 5            MR. FUNK:  Well, one of the options that we're looking

 6   at is under the state procedures, the water court has a

 7   magistrate system, a water referee.  And we could use the

 8   services of the water referee in state court under the proposal

 9   that we've been thinking about.  But the reason I'm qualifying

10   it is that this has been a recent idea of ours and hasn't been

11   fully thought through by everybody.  But what would happen is

12   that we would ask this court to remand it back to the state

13   court system to be presided over by the state water referee, to

14   allow the parties to continue and finish the mediation.  And if

15   that doesn't work, then there is a process called re-referral

16   that would be filed before the referee to get it back before

17   the judge.  And since you're the acting state water judge in

18   this particular case, it would end up back on your docket.

19            THE COURT:  Well, I'm happy to have it on my docket.

20            MR. FUNK:  No, I'm just saying that that's the process

21   that we would look at.  But you're right:  If it's already on

22   your docket and you grant a stay, that would probably have the

23   same effect.

24            THE COURT:  Can the state water referee act as a

25   special master?
```

 1          MR. FUNK:  Not really.

 2          THE COURT:  Why not?

 3          MR. FUNK:  I don't know that a state water referee

 4   could rule on dispositive motions and disputes that may come up

 5   among the parties.  I think she -- she -- and I'm saying "she"

 6   because the water referee in Water Division 5 is Lain Leoniak.

 7   I don't believe -- I believe that she could handle discovery

 8   disputes.  She can do that.  But I'm going defer to some of my

 9   compatriots over here.  If they feel differently, they can

10   certainly help answer the Court's questions, too.

11          THE COURT:  Okay.  Is there anything else you think I

12   should know with regard to your preferences as to the course of

13   this case?

14          MR. FUNK:  Denver's primary objective is to allow the

15   mediation it to be pursued and completed before we have to go

16   into litigation on some of these issues.  That's the primary

17   charge given to me by my board and client.

18          So can somebody else talk, your Honor?

19          THE COURT:  It's their turn.

20          MR. FUNK:  Thank you.

21          MR. POHLMAN:  Your Honor, Bob Pohlman on behalf of

22   Climax Molybdenum Company.

23          As is almost always the case, I find that I agree

24   100 percent with 90 percent of what Mr. Funk says.

25          And his primary consideration is echoed by Climax.

1    Because of the nature of these proceedings -- and most of the

2    time, these are handled by state water carts with people with a

3    lot of background in the area.  And so we thought that given

4    the short -- the short bench that you have right now and the

5    horrible docket, we'd try to do and you favor and have the case

6    stayed or remanded.

7           And I concur with Casey that we think the best way to

8    proceed to have this inexpensively, justly, and fairly

9    determined is through a stay until the end of the year without

10   any discovery or further litigation going forward.  We all

11   agree that if we can't get it done within that period of time

12   that we should begin the discovery or continue the discovery --

13   I should say there has been substantial discovery already.

14   We've had numerous expert witnesses deposed in this case; but

15   if we could get the chance to try to mediate it, we may be able

16   to do this without going through what is going to be very

17   considerable expense not only for the City and County of

18   Denver, given the number years that this has been, but also

19   considerable expense for Climax Molybdenum Company.

20          So our preference would be to say we can get this case

21   put together to get ready to for trial or dispositive motion in

22   a six-month period of time from the time we say we can't get

23   the mediation concluded.  So that would mean we'd be ready

24   basically through dispositive motions by the end of July, 2010,

25   you think?

1          About the end of July of 2010.

2          We also believe there are dispositive motions that

3    would not just simply have the effect of diminishing trial by a

4    four-or-five-day period of time.  For example, there is a

5    question, just a legal question, of whether or not this Blue

6    River diversion project can ever be completed.  One of the

7    essential components of that project was the Two Forks

8    Reservoir.  They have abandoned the Two Forks Reservoir.  And

9    without that reservoir, it's our belief that legally this

10   project is now dead.  They've got their 520 cubic feet per

11   second now, but they can have nothing else.  That's a pure

12   legal question.

13         Pure legal questions as to whether or not there are

14   certain defenses that they say they have to our opposition that

15   they can actually raise in these proceedings.  They want to

16   raise equitable defenses.  It's purely a legal question as to

17   whether or not they can do that.

18         So there are dispositive motions that can be made that

19   can have an effect on this.

20         But I think all parties are really trying to work very

21   hard to get this resolved.  I think they're acting in good

22   faith.  We've been able to work very well with the City and

23   County of Denver on difficult electronically stored information

24   issues, and I don't suppose that's going to change in the

25   future.

 1          But we would urge -- Climax would urge you to stay

 2  this until the end of the year.  If we can't get it done, then

 3  we'll come back; and if we have to bother Magistrate Judge

 4  Shaffer, we will.  But let's give everybody a break to try to

 5  resolve it.

 6          Any questions, your Honor?

 7          THE COURT:  Thank you.

 8          MR. FUNK:  Why, your Honor?

 9          THE COURT:  You answered all the questions.  It made

10  him really short for him.

11          Anyone else take a different position?

12          Anyone else want to address all of the issues that

13  Counsel for the City and County of Denver thoroughly covered?

14          I'm not hearing anything from anyone.

15          I think -- I think there is not much disagreement

16  here.  I think you all want a stay.  You want a stay until the

17  end of the year.

18          Were this not a case that had so many parties or had

19  such a lengthy history or had such specialized legal issues, I

20  wouldn't be inclined to grant a stay, because in those

21  circumstances it is my experience that most often stays in

22  favor settlement negotiations just prolong the conversations

23  and don't often result in settlements.

24          But in this case, it's very similar to the kinds of

25  litigation that you see in other specialized areas, such as

1  bankruptcies, where there are a wide variety of parties,

2  limited funds, big issues, much to talk about, a need for a

3  global settlement.  And in those kind of situations, litigation

4  is a less satisfactory fit than is mediation.  And that may

5  well be the case here.

6       As I said, it's been a long time since I studied water

7  law.  And I'd love to go back 30 years and refresh my

8  recollection of water law; but I know there are people who are

9  much more experienced and knowledgeable about that area of law,

10 and I couldn't possibly match their expertise, even if I were

11 to do that.  I'm happy to relearn it, kind of look forward to

12 that; but I want it to give the parties here an opportunity to

13 take advantage of the momentum (1) that you've built up thus

14 far and (2) the collaboration that is evident.  I think this is

15 a situation where a stay is appropriate.

16      And understanding that all parties are in agreement

17 with that, I will grant a stay until the end of the year,

18 December 31, 2009, for completion of the mediation process.

19 And what I mean by the "completion of the mediation process" is

20 either the submission of whatever documentation you believe

21 will resolve the issues currently before this court or a

22 submission of a document that says, We have exhausted our

23 mediation efforts and we are ready to proceed through the

24 litigation process.  That's what needs to be filed by

25 December 31.

1        Now, I understand that Counsel for Molybdenum has

2   suggested that you all could complete the remainder of the

3   litigation process in a period of six months.  I hope that's

4   the case, if you need to; but I'm not going to hold everybody

5   to that.  If you certify to me that you've completed your

6   mediation process and you have not been able to resolve the

7   disputes here -- all of them -- then you're -- and then what

8   you're saying to me is you need the assistance of this court --

9   in that event, I'll set this back down for a Rule 16, we'll

10  convene again.  And it may be that some things have narrowed,

11  it may be that nothing has narrowed, but we can again look at

12  the course here that needs to be addressed to resolve whatever

13  issues are outstanding.

14       Please don't ask for an extension of this time.  It's

15  a hard date.  And do I that for several reasons, not to make

16  your life miserable but to encourage those other people that

17  you might be dealing with on other issues to know that you have

18  a hard date and that it's not open-ended for you and also to

19  ensure that this case doesn't languish on my docket to the

20  detriment of your clients' interests.

21       Is there anything further we can do today?

22       I'm seeing shaking heads.

23       *MR. FUNK:*  No, your Honor, from Casey Funk and Denver.

24       *THE COURT:*  Thank you.

25       Anyone else?

1          MR. POHLMAN:  No, your Honor.

2          THE COURT:  Go ahead, sir.

3          MR. ALDRICH:  It's fine with Grand Valley Irrigation

4    Company.  I appreciate your listening to our plight and our

5    story.

6          MR. CAZIER:  Thank you, your Honor.  Stan Cazier once

7    again.

8          The only question that I had that came up when we were

9    discussing this was the magistrate entered an order allowing

10   Denver to file an amended pleading in this matter.  And I

11   assume the stay would be applicable to any answers that would

12   be due with respect to that pleading, also, your Honor.

13         THE COURT:  Is that what you're anticipating, too?

14         MR. FUNK:  A stay is a stay.  Everything's stayed.

15         THE COURT:  All right.  As we go to that point,

16   remember that the filing of an amended pleading may change the

17   course of the parties' conversation; and it may make sense to

18   have the pleadings framed up here so that you can have a full

19   and frank conversation in your mediation.  Delaying that may

20   well delay everything else on the back side, if you're not able

21   to accomplish it.

22         MR. FUNK:  If they would like to answer, we would

23   appreciate it.

24         MR. DUBOIS:  Jim Dubois for the United States, your

25   Honor.

1        We did not originally object to the -- to Denver's

2   diligence application in state court.  We are, of course, a

3   party to this proceeding.  As things have developed in the

4   diligence case, there appear to be some issues related to the

5   Blue River decree that may come up that we could not have

6   anticipated, at least when the thing was filed.  So we do

7   intend I think at this point to file a statement of position to

8   the amended application, and I want to make sure that we can do

9   that within the framework of the stay.

10       THE COURT:  All right.  Anyone else want to weigh in?

11       Okay.  Then the stay order stays obligatory filings.

12   It does not stay voluntary filings.

13       MR. DUBOIS:  Thank you, your Honor.  That will take

14   care of our problem.

15       THE COURT:  All right.  And what that means is that

16   you can't be asking for relief from this court because we won't

17   be granting it -- that's stayed; but if there are filings that

18   you want to make to stake out your position, you certainly can

19   do that.

20       Any need for clarification, further explanation?

21       Anything else we can do today?

22       Okay.  Then thank you all very much.  I wish you all a

23   good weekend, and we'll stand in recess.

24     (Recess at 2:44 p.m.)

25                       **REPORTER'S CERTIFICATE**

1        I certify that the foregoing is a correct transcript from

2   the record of proceedings in the above-entitled matter.  Dated

3   at Denver, Colorado, this 21st day of December, 2009.

4

5                                        *S/Paul A. Zuckerman*
                                         Paul A. Zuckerman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25