IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No.: 49-cv-02782-MSK-CBS
Consolidated Civil Case Nos. 2782, 5016 and 5017 and

DISTRICT COURT, WATER DIVISION NO. 5 STATE OF COLORADO
Case No. 2006CW255

---

**AFFIDAVIT OF JOHN G. BICKERMAN IN SUPPORT OF JOINT STATUS REPORT
AND MOTION FOR CONTINUANCE OF THE STAY**

---

CONCERNING THE APPLICATION FOR WATER RIGHTS OF THE CITY AND COUNTY
OF DENVER, ACTING BY AND THROUGH ITS BOARD OF WATER COMMISSIONERS,
IN SUMMIT COUNTY, COLORADO

---

I, John G. Bickerman, being over the age of eighteen and first duly sworn, declare and

affirm under oath the following:

1.       I am an attorney admitted to practice in the States of Maryland, New Jersey and

New York and the District of Columbia.  I have been a mediator and arbitrator for more than

twenty years.  Since 1997, I have been the sole proprietor of Bickerman Dispute Resolution,

PLLC, 1201 New York Avenue, NW, Washington, DC.  In my practice as a mediator, I have had

considerable experience mediating complex cases involving water rights and natural resources

that involve multiple parties.  For example, I successfully resolved *Wisconsin v. Illinois, United

States v. Michigan*, and a water rights dispute between the United States Department of

Agriculture and the State of Montana.  I have also been involved in the water rights negotiations

among Georgia, Florida and Alabama concerning the ACT and ACF aquifers, North Carolina

and Virginia over a trans-basin diversion from Lake Lanier to Virginia Beach, and a dispute

between New Mexico, Colorado and Texas over water rights in the Lower Rio Grande river.

**Exhibit A**

Affidavit of John Bickerman
Civil Action No.: 49-cv-02782-MSK-CBS

Frequently, these mediations have taken more than a year to resolve.

2.     In January, 2007, I was retained by the Denver Water Board ("Denver Water"),
the Colorado River Water Conservation District (the "River District") and various entities on the
West Slope of Colorado for the purpose of assisting them negotiate a comprehensive resolution
of a variety of water rights issues.  The animating event for the negotiations was the pending
regulatory action of the Denver Water Board related to firming some its water rights on the West
Slope.  However, there was a broader array of issues that the parties sought to resolve in their
negotiations.  In short, board members of both the River District and Denver Water sought to
find a better way to resolve their differences than they had done historically.  I was retained to
assist the parties in this process.  My scope was broad.  In the initial stages of the mediation
process I met with staff and Board members of Denver Water and interested parties on the West
Slope that included water users in the Grand Valley, County Commissioners in Eagle, Summit
and Grand Counties, and Board members and counsel for the Clinton Ditch and Reservoir
Company.

I have had broad experience mediating difficult matters.  The task of resolving the
issues between the Denver Water and the West Slope are by far the most complicated of any I
have ever worked on.  The complexity is manifold.  The legal regime in Colorado for addressing
prior appropriation is arguably the most complicated of any Western state.  In addition, the
political decision making process and internal negotiations required to reach decisions is time-
consuming and cumbersome.  The plumbing – the way water moves from the West Slope across
the divide and the use of exchanges and substitutions – makes for more complication.  In
addition, the mediation was taking place in a dynamic environment.  Other activities involving

Affidavit of John Bickerman
Civil Action No.: 49-cv-02782-MSK-CBS

the same parties and sometimes the same issues were taking place parallel to the mediated

negotiations. Finally, the long history of distrust that pervades any discussion between the parties

makes these negotiations extremely challenging.  Nonetheless substantial progress has been

made at reaching a resolution of all issues.

     3.      At our most recent meeting on December 16, 2009, the parties committed to

holding several technical meetings in the first two weeks of January and then a drafting meeting

at the end of the month.  Principal-to-principal meetings will be scheduled over the next several

months.  It is reasonable to expect that all of the deal points can be achieved by early Spring.

The drafting and approach to implementing a final agreement has been an arduous process.  With

perseverance, I believe that a final draft of an agreement can also be realized by the end of June.

     4.      While it would be improper to share the substance of the negotiations with the

Court because it would breach the confidentiality of the process, the parties have made enormous

progress toward a successful conclusion of their negotiations.  Countless meetings and technical

discussions have been held over the last three years.  My experience has taught me that it is

common for complex cases like this to take several years to reach a resolution.

     The contours of a settlement are in place and the outline of a settlement agreement has

been drafted.  More work needs to be done to finalize the agreement and draft the language that

will fill in the outline.  Some key terms are still the subject of further negotiation.  However, it is

indisputable that the momentum of reaching a deal is present. I believe and can state without

reservation that the parties are closer to a resolution of their issues than at any time in the

mediation.  I am very optimistic that a settlement will be reached.  This is not a view that I held

as recently as last year.

Affidavit of John Bickerman
Civil Action No.: 49-cv-02782-MSK-CBS

     5.     There are instances where having a mediation and litigation occur in tandem can be helpful in furthering settlement. This is not one of them. The parties and their counsel have devoted a vast amount of time and energy to negotiate an agreement in the mediation process. Litigation would be deleterious because it would demand that resources be diverted away from the mediation at the most critical time when they are most needed to conclude an agreement. Moreover, it is inevitable that the litigation would foster an adversarial mindset that would greatly undermine the collaborative approach that the mediation has been mostly able to achieve. Importantly, I would anticipate that if litigation resumed, the flow of information that is essential in the mediation process would come to a halt, crippling the process. For these reasons, I encourage the Court to maintain the stay of litigation for another six months. I am available to the Court now or during the pendency of a stay to provide oral or written updates if it deems that doing so would be helpful.

     I have nothing further to add.

     Dated this 24th day of December, 2009

  /s John Bickerman           

John Bickerman

Subscribed and affirmed, or sworn to before me in the County of Montgomery State of Maryland, this  24th  day of  December    , 2009.
My commission expires: 01/26/2011

/s Susan A. Krimigis           
Notary Public

(SEAL)

4