UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 49-cv-02782-MSK-CBS

Consolidated Case Nos. Civil Action No. 5016 and Civil Action No. 5017

UNITED STATES OF AMERICA,

      Plaintiff,

v.

NORTHERN COLORADO WATER CONSERVANCY DISTRICT, et al.

      Defendants.

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes of Irrigation:

**Petitioners:**
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes Other Than Irrigation:

**Petitioners:**
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT.

---

### CLIMAX MOLYBDENUM COMPANY'S UNOPPOSED
### LIMITED MOTION TO INTERVENE AS PETITIONER

---

COMES NOW Climax Molybdenum Company ("Climax"), by and through its undersigned counsel, and hereby moves the Court for an order granting it leave to intervene, for the limited purposes described herein, as of right pursuant to Fed. R. Civ. P. 24(a)(2) as a Petitioner in this matter of the Petition for Determination that Administrative Protocol is

Consistent with the Blue River Decree filed on November 15, 2013 in the above-captioned cases ("Petition").

In the alternative, Climax moves for an order granting it permissive intervention, for the limited purposes described herein, pursuant to Fed. R. Civ. P. 24(b).

Pursuant to Fed. R. Civ. P. 24(c), Climax tenders its Petition on Intervention for Declaratory Relief ("Climax Petition") concurrently with this motion.

Pursuant to D.Colo.L.Civ.R.7.1(a), counsel for Climax conferred about this motion to intervene with counsel for the Petitioners and is able to state that the Petitioners consent.[1]

As grounds for this Motion to Intervene, Climax states as follows:[2]

## INTRODUCTION

1.  The Parties.

    1.1. Petitioners the United States of America ("United States"), City and County of Denver acting by and through its Board of Water Commissioners ("Denver Water"), City of Colorado Springs ("Colorado Springs"), Colorado River Water Conservation District ("River District"), Northern Colorado Water Conservancy District ("Northern"), Middle Park Water Conservancy District, Grand Valley Water Users Association, Grand Valley Irrigation Company, Orchard Mesa Irrigation District, and Palisade Irrigation District are the original parties to these proceedings (collectively referred to as the "Blue River Decree Parties").

---

[1] The Blue River Decree Parties agreed that they "shall not oppose and shall consent to any motion to intervene by Climax in the Federal Court Application for the limited purpose of determining whether Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree." (Green Mountain Reservoir Administrative Protocol Agreement, ¶3.3)

[2] The statements in this Motion that go beyond the specific statements in the Protocol Agreement are statements and contentions of Climax, only, and not of the Petitioners

1.2. Climax is a corporation incorporated under the laws of the State of Delaware. Climax owns and operates the Climax Mine, which is located in Summit, Lake, and Eagle Counties in the State of Colorado.

2. <u>Background Related to the Priorities Controversy between Climax and the Blue River Decree Parties.</u>

2.1. <u>Climax's C.A. 1710 Water Rights</u>. Climax owns the "Climax C.A. 1710 Water Rights" that were adjudicated on October 26, 1937 by the Summit County District Court in Civil Action 1710 for use at the Climax Mine and Mill located near Leadville. The Climax C.A. 1710 Water Rights are as follows:

| Water Right | Appropriation Date | Adjudication Date | Amount |
|---|---|---|---|
| **Supply Canal No. 1** | | | |
| Humbug Creek | 08-15-1935 | 10-26-1937 | 20.0 cfs |
| Mayflower Creek | 08-15-1935 | 10-26-1937 | 30.0 cfs |
| Clinton Creek | 08-15-1935 | 10-26-1937 | 50.0 cfs |
| Other Drainages into Canal | 08-15-1935 | 10-26-1937 | 20.0 cfs |
| **Supply Canal No. 2** | | | |
| Searle Gulch | 08-15-1935 | 10-26-1937 | 35.0 cfs |
| Kokomo Gulch | 08-15-1935 | 10-26-1937 | 25.0 cfs |
| Other Drainages into Canal | 08-15-1935 | 10-26-1937 | 10.0 cfs |
| **Tenmile Diversion Ditch No. 1** | | | |
| McNulty Ditch | 06-04-1936 | 10-26-1937 | 15.0 cfs |
| Transferred to West Gravity Line | 06-04-1936 | 10-26-1937 | 20.0 cfs |
| **Tenmile Diversion Ditch No. 2** | | | |
| Transferred to West Gravity Line | 06-04-1936 | 10-26-1937 | 20.0 cfs |
| **Storage of the amounts above in:** | | | |
| Robinson Reservoir | | | 3,136 ac-ft |
| Chalk Mountain Reservoir | | | 204.1 ac-ft |

The adjudication of Climax's C.A. 1710 Water Rights was completed prior to the removal to this Court of the Civil Action Nos. 1805 and 1806 Summit County District Court cases.

2.2. <u>Green Mountain Reservoir Water Rights Adjudicated by the Blue River Decree.</u>

2.2.1. <u>Denver Water's Blue River Water Rights</u>. In 1942, seeking to adjudicate water rights for its Blue River Diversion Project, which includes Dillon Reservoir and

the Roberts Tunnel, Denver Water brought Civil Actions 1805 and 1806 ("C.A. 1805 and 1806") in the Summit County District Court as supplemental water adjudications for Blue River water in Water District No. 36. In these cases, the Summit County District Court decreed appropriation dates of June 24, 1946 to the various water rights for the Blue River Diversion Project. Civil Actions 1805 and 1806 were later removed to this Court, assigned Civil Action Nos. 5016 and 5017, and consolidated with what is now captioned as Civil Action No. 49-cv-02782-MSK-CBS.

    2.2.2. <u>The Green Mountain Reservoir Water Rights</u>. The Final Judgment entered by the United States District Court on October 12, 1955, in the Consolidated Cases (known as the "Blue River Decree"[3]) decreed all of the Colorado-Big Thompson Project ("C-BT") facilities, including the Elliott Creek Feeder Canal, Green Mountain Reservoir ("GMR"), and GMR Powerplant water rights, as having an August 1, 1935 date of priority, and recognized these rights as senior in priority to Denver Water's facilities, including Williams Fork Reservoir in Water District No. 51.

    2.2.3. The Blue River Decree also included, by stipulation of the parties, the "Power Interference Agreement" between Denver and the United States. Under this Agreement, Denver can divert water against the GMR Powerplant Right direct flow capacity in exchange for delivering to the United States the amount of electricity that water would have generated had it been run through the GMR turbines.

  2.3.  Since the Blue River Decree was originally entered in 1955, the administration of Climax's C.A. 1710 Water Rights vis-à-vis those adjudicated in the Blue River Decree has

---

[3] For purposes of this Motion and Petition, the "Blue River Decree" means the Findings of Fact, Conclusions of Law, and Final Decree in Consolidated Civil Cases No. 5016 and 5017, and the Findings of Fact, Conclusions of Law, and Final Judgment in Consolidated Civil Cases No. 2782, 5016 and 5017, both entered on October 12, 1955 by the United States District Court, District of Colorado ("Federal Court"), and all amendments and supplemental orders, judgments, and decrees in said cases (collectively, the "Consolidated Cases").

varied, has resulted in litigation, and is likely to lead to additional litigation. In addition, Climax's C.A. 1710 Water Rights are currently tabulated by the Colorado State Engineer as junior in priority to the water rights for GMR adjudicated in the Blue River Decree. (Petition, ¶24)

3. Background Related the GMR Administrative Protocol Agreement and GMR Protocol.

3.1. In April 2007, Climax separately moved to intervene as a full party to the Blue River Decree in the Consolidated Cases. Several of the Blue River Decree parties opposed Climax's intervention. In its petition on intervention, Climax asserted two claims for declaratory relief regarding its C.A. 1710 Rights. First, it requested that the Court declare that its C.A. 1710 rights were senior to the GMR Powerplant Right and GMR Storage right. In the alternative, Climax requested that the court declare that Denver Water could only divert water under the Power Interference Agreement according to Denver's 1946 priorities.

3.2. In March 2008, this Court denied Climax's motion to intervene as a party in the Consolidated Cases. See United States v. N. Colorado Water Conservancy Dist., 251 F.R.D. 590 (D. Colo. 2008). Climax appealed this decision to the 10th Circuit Court of Appeals.

3.3. In November 2009, the 10th Circuit upheld this Court's decision denying Climax's motion to intervene in the Consolidated Cases. Id.

3.4. The Blue River Decree Parties, Climax, and the Ute Water Conservancy District ("Ute") have negotiated and agreed to the GMR Protocol in order to clarify and implement certain provisions of the Blue River Decree and to settle disputed issues of priority.

3.5. On November 15, 2013, the Blue River Parties filed the Petition seeking: (1) a determination of this Court that Sections I, II, and III of the GMR Protocol are consistent

with the Blue River Decree and (2) a separate determination of this Court that Section IV of the GMR Protocol is consistent with the Blue River Decree. (Petition, ¶27)

3.6. The Petition was filed for "the purpose of settling and ending controversies that have arisen regarding (1) the administration of the water rights decreed to GMR and the Green Mountain Reservoir Powerplant ("GMR Powerplant") by the Blue River Decree and (2) the priority of water rights owned by Climax . . . that were adjudicated in the decree of the Summit County District Court in Civil Action No. 1710 ("C.A. 1710") entered on October 26, 1937, vis-à-vis those adjudicated by the Blue River Decree." (Petition, ¶ 11) As more particularly set forth in the GMR Protocol, the Petitioners believe that Section III of the Administrative Protocol describes the relative priority of Climax's C.A. 1710 Water Rights in a manner consistent with the Blue River Decree. (Petition, ¶ 24)

3.7. Climax's intervention is for the limited purpose of determining whether Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree, and is necessary to afford Climax the opportunity to ensure that the relief sought in the November 15, 2013 Petition, to settle and end the controversy regarding the priority of Climax's C.A. 1710 Water Rights vis-à-vis those adjudicated by the Blue River Decree, is accomplished.

3.8 The Blue River Decree Parties have consented to Climax's intervention for the limited purpose of determining whether Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree.

## DISCUSSION

1. Standard for Intervention as of Right Under Fed. R. Civ. P. 24(a)(2).

> Intervention under Rule 24(a)(2) should be granted when a timely motion to intervene demonstrates that (1) the intervenor has an interest in the property or transaction that is the subject matter of the action, (2) the

interest might be impaired absent intervention, and (3) the existing parties will not adequately represent the interest. Moreover, "intervention requires that this interest in the proceedings be 'direct, substantial, and legally protectable.'"

Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 90 (10th Cir. 1993) (internal citations omitted); Fed. R. Civ. P. 24(a).[4]

Rule 24(a) factors "are intended to 'capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation,' and '[t]hose factors are not rigid, technical requirements.'" WildEarth Guardians v. Nat'l Park Serv., 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting San Juan Cnty., 503 F.3d at 1195). The Rule 24 test, and in particular the interest element, is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Id.

Climax's present application for intervention fully satisfies that test.

### 1.1. This Motion to Intervene is Timely

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co., 407 F.3d 1091, 1103 (10th Cir. 2005) (quoting Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1250 (10th Cir.2001)).

---

[4] An applicant to intervene as a matter of right or by permission need not establish Article III standing where another party with constitutional standing on the same side as the intervenor remains in the case. San Juan Cnty. v. U.S., 503 F.3d 1163, 1171-72 (10th Cir. 2007). Here, Petitioners clearly have constitutional standing; and therefore Climax need not establish its own standing. Nevertheless, Climax submits that it has constitutional standing based on its direct, substantial interests in the subject matter of this case as it relates to Climax's C.A. 1710 Water Rights on the Blue River as described herein, as well as the fact that a determination in this case will directly impact such interests.

This Motion is being filed on December 2, 2013, approximately two weeks after the Petition was filed. At the time of this filing, no substantive filings have been made and therefore Climax's intervention would not delay this proceeding or prejudice any party.

1.2.   Climax Has an Interest Relating to the Property which is the Subject Matter of the Consolidated Cases.

The "interest" required by Rule 24(a)(2) is not defined in the rule. United States v. Scott, No. 11-CV-01430-PAB-MEH, 2011 WL 7094382 (D. Colo. Oct. 19, 2011) report and recommendation adopted, 11-CV-01430-PAB-MEH, 2012 WL 224500 (D. Colo. Jan. 25, 2012). However, the 10th Circuit has determined that the interest requirement requires court to "exercise judgment based on the specific circumstances of the case." 2011 WL 7094382 (quoting United States v. Albert Inv. Co., 585 F.3d 1386, 1392 (10th Cir. 2009)). The interest prong "'is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc., 595 P.2d 679, 687 (Colo. 1979) (quoting Smuck v. Hobson, 408 F.2d 175, 179 (D.C.Cir.1969)).

The movant's claimed interest is measured in terms of its relationship to the property or transaction that is the subject of the action, not in terms of the particular issue before the district court. Nat'l Park Serv., 604 F.3d at 1198; Clinton, 255 F.3d at 1252.

Senior water priorities on Colorado's over-appropriated rivers are a valuable property right. E.g., High Plains A & M, LLC v. Southeastern Colo. Water Conservancy Dist., 120 P.3d 710, 723 (Colo. 2005). "The property right we recognize as a Colorado water right is a right to use beneficially a specified amount of water . . . controlled in priority under a decree, to the exclusion of all others not then in priority under a decreed water right." Empire Lodge Homeowners' Ass'n v. Moyer, 39 P.3d 1139, 1147 (Colo. 2001). Climax's C.A. 1710 Water

Rights constitute substantial and legally protectable rights that were lawfully decreed by the Summit County District Court. Further, Climax's CA 1710 Water Rights are inseparable from the subject of the Petition and the administration of the GMR Protocol, that is, rights and priorities to use water of the Blue River.[5]

### 1.3. Climax's Interests May be Impaired or Impeded Absent Intervention.

"To satisfy the impairment element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." Scott, 2011 WL 7094382 (D. Colo. Oct. 19, 2011) (quoting Wildearth Guardians, 573 F.3d at 995).

Given Climax's interests at stake in this matter, as described above, disposition may as a practical matter impair or impede Climax's ability to protect its interests in the Blue River if intervention is denied. The Petition states:

> The Colorado State and Division 5 Engineers will not administer, distribute, and regulate waters in accordance with the GMR Protocol until a final judgment or order determining that Sections I, II, and III of the GMR Protocol are consistent with the Blue River Decree is entered pursuant to the notice procedures of the 1969 Act for determinations of water rights, by either this Court or the Division 5 Water Court.

Petition, ¶25. Climax's C.A. 1710 Water Rights are currently tabulated by the Colorado State Engineer as junior in priority to the water rights for Green Mountain Reservoir adjudicated in the Blue River Decree. As more particularly set forth in the Petition, the Blue River Parties, Ute, the State, and Climax believe that Section III of the GMR Protocol describes the relative priority of Climax's C.A. 1710 Water Rights in a manner consistent with the Blue River Decree. The

---

[5] As part of this Court's ruling on Climax's 2007 Motion to Intervene, this Court found that Climax's water rights on the Blue River demonstrate a direct, substantial, and legally protectable interest. United States v. N. Colorado Water Conservancy Dist., 251 F.R.D. 590, 597 (D. Colo. 2008).

Petitioners seek a determination that Sections I, II, and III of the GMR Protocol is consistent with the Blue River Decree. If this Court determines that Section III of the GMR Protocol is not consistent with the Blue River Decree, then the State may not administer, distribute, and regulate Climax's C.A. 1710 Water Rights as senior in priority to the GMR Hydro and Storage rights. Climax relies upon use of its C.A. 1710 Water Rights to fully operate the Climax Mine. The potential limitation on use of Climax's C.A. 1710 Water Rights could hinder the Mine's ability to operate at full capacity due to a limited water supply. (Romig Aff., Ex. A at ¶ 5) If Climax is not permitted to intervene, it will not have the opportunity to protect its interests in its C.A. 1710 Water Rights and continued efficient operation of the Climax Mine. This impairment is sufficient to satisfy this element of the test for intervention. See San Juan Cnty., 503 F.3d at 1189-1203 (focusing on whether interests may be impaired in the practical sense).[6]

### 1.4. No Existing Party Can Adequately Represent Climax's Interests.

The burden to satisfy the third element of Fed. R. C.P. Rule 24(a)(2) is "minimal" and an intervenor need only show the *possibility* of inadequate representation." WildEarth Guardians v. U.S. Forest Serv., 573 F.3d 992, 996 (10th Circuit 2009) (quoting Utah Ass'n of Counties, 255 F.3d at 1254 (emphasis added).

Although the Petitioners and Climax support the same outcome in this case -- a judicial determination that Sections I, II, and III of the GMR Protocol are consistent with the Blue River Decree -- Petitioners and Climax's specific bases for and interests in support of that outcome diverge in certain respects given the Petitioners and Climax's differing rights and obligations

---

[6] As part of this Court's ruling on Climax's 2007 Motion to Intervene, this Court found that "as a practical matter, Climax's interest relating to the existing parties' water rights on the Blue River might be impaired if it is denied the opportunity to intervene." United States v. N. Colorado Water Conservancy Dist., 251 F.R.D. 590, 598 (D. Colo. 2008).

under the GMR Protocol and the different injury each party may incur if this Court determines that Sections I, II, and III of the GMR Protocol are not consistent with the Blue River Decree.

In addition, Climax is the only entity that has direct, in-depth knowledge of the use of its C.A. 1710 Water Rights, its operation of the Climax Mine, and Climax's interest relating to the water rights on the Blue River. Furthermore, Climax has a substantial and direct financial interest in the determination at stake here. Specifically, if this Court determines that Section III is not consistent with the Blue River Decree, Climax will be unable to operate the Climax Mine at its fullest capabilities because the mine's water supply will be limited.

As shown above, Climax's intervention in this case is warranted in light of the practical implications of this case for Climax's interests and the absence of adequate representation of those interests by existing parties. Intervention would, moreover, be compatible with efficiency and due process. See Nat'l Park Serv., 604 F.3d at 1198.

    2.    In the Alternative, Permissive Intervention by Climax is Appropriate.

As established above, Climax is entitled to intervene as a matter of right. In addition, Climax also qualifies for permissive intervention. Pursuant to Federal Rule Civil Procedure 24(b):

> On timely motion, the court may permit anyone to intervene who... has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

    2.1.    This Motion to Intervene is Timely.

As noted above, this Motion is being filed on December 2, 2013, approximately two weeks after the Petition was filed. At the time of this filing, no substantive filings have been

made and therefore Climax's intervention would not delay this proceeding or prejudice any party.

### 2.2. Climax has Interests Directly Relating to the Questions at Issue.

As discussed in more detail above, Climax has significant interests in the subject matter of this case. Although the Petitioners and Climax support the same outcome in this case, a determination that Sections I, II, and III of the GMR Protocol are consistent with the Blue River Decree, Petitioners and Climax's specific bases for, and interests in support of that outcome differ. If the Court determines that Section III of the GMR Protocol is not consistent with the Blue River Decree, then the State may not administer, distribute, and regulate Climax's C.A. 1710 Water Rights as senior in priority to the GMR Hydro and Storage rights. Climax relies upon use of its C.A. 1710 Water Rights to fully operate the Climax Mine.

### 2.3. Climax's Intervention Would Not Delay Proceedings or Prejudice Any Party in this Case.

At the time of this filing, no substantive filings have been made. Therefore, Climax's intervention will not unduly delay or prejudice adjudication of the rights of the Petitioners. Conversely, given the above-described substantial interests of Climax in the subject case, exclusion of Climax from this case would threaten to cause great and irreparable prejudice to Climax. Permitting Climax to intervene in this case would promote judicial economy. "[A]ctions seeking the allocation of water essentially involve the disposition of property and are best conducted in unified proceedings." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 819 (1976).

WHEREFORE, Climax respectfully requests the Court enter an order granting Climax's limited intervention as of right in this matter pursuant to Fed. R. Civ. P. 24(a)(2). Alternatively, Climax requests the Court enter an order granting permission for Climax to intervene in this

matter on a limited basis pursuant to Fed. R. Civ. P. 24(b).  Pursuant to Fed. R. Civ. P. 24(c), Climax's Petition on Intervention for Declaratory Relief, setting forth Climax's claims for which intervention is sought, is filed concurrently with this motion to intervene.  A proposed Order is attached.

Respectfully submitted this 2nd day of December 2013.

RYLEY CARLOCK & APPLEWHITE

/s Brian M. Nazarenus
Brian M. Nazarenus
Sheela S. Stack
1700 Lincoln Street, Suite 3500
Denver, Colorado 80203
Telephone: (303) 863-7500
Facsimile: (303) 595-3159

ATTORNEYS FOR PETITIONER-INTERVENOR
CLIMAX MOLYBDENUM COMPANY

Petitioner-Intervenor's Address:
1746 County Road 202
P.O. Box 68
Empire, CO 80438

## CERTIFICATE OF SERVICE

   The undersigned certifies that on December 2, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:


Ann M. Rhodes amr@bhgrlaw.com
Anne Jamieson Castle acastle@hollandhart.com
Austin C. Hamre ahamre@dodpc.com
Barry Alan Schwartz barry.schwartz@denvergov.org
Bennett W. Raley bwraley@mac.com
Casey S. Funk casey.funk@denverwater.org
Chad Matthew Wallace chad.wallace@state.co.us
Charles B. White cwhite@petros-white.com
Christopher Graham McAnany howard@dwmk.com
Christopher L. Thorne cthorne@hollandhart.com
Daniel John Arnold daniel.arnold@denverwater.org
David G. Hill dgh@bhgrlaw.com
Donald E. Phillipson dbls99@comcast.net
Douglas L. Abbott dabbott@hollandhart.com
Frederick G. Aldrich faldrich@aldrich-law.com
Gail Rosenschein gail.rosenschein@denverwater.org
James J. DuBois james.dubois@usdoj.gov
James R. Montgomery jmontgomery@mwhw.com
Jason V. Turner jturner@crwcd.org
Jeffrey Flinn Davis jeff.davis@denverwater.org
John Dorsey Walker jdorseywalk@yahoo.com
John Leonard Watson jwatson@bw-legal.com
Julie Elise Maurer jmaurer@rcalaw.com
Karl D. Ohlsen kohlsen@chp-law.com
Kathleen M. Morgan kathi_M8@yahoo.com
Lisa M. Thompson lthompson@troutlaw.com
Mark A. Hermundstad mherm@wth-law.com
Mary Mead Hammond mhammond@chp-law.com
Meghan Nichols Winokur mwinokur@hollandhart.com
Michael J. Gustafson mgustafson@springsgov.com
Nathan A. Keever howard@dwmk.com , keever@dwmk.com
Olivia Denton Lucas olivia.lucas@faegrebd.com
Patricia Wells patricia.wells@denverwater.org
Peggy Montano pmontano@troutlaw.com
Peter Cheney Fleming pfleming@crwcd.org
Robert James Pohlman rpohlman@swlaw.com
Robert V. Trout rtrout@troutlaw.com

Stanley W. Cazier cazier_mcgowan@hotmail.com
William A. Paddock bpaddock@chp-law.com

/s/ Patricia L. Davis