UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 49-cv-02782-MSK-CBS

Consolidated Civil Case Nos. 2782, 5016 and 5017

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NORTHERN COLORADO WATER CONSERVANCY DISTRICT, et al.

    Defendants.

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes of Irrigation:
Petitioners:
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes Other Than Irrigation:
Petitioners;
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT.

---

### JOINT BRIEF OF WEST SLOPE PETITIONERS REGARDING QUESTIONS POSED BY THE COURT

---

This Joint Brief is filed by the Grand Valley Water Users Association, the Orchard Mesa Irrigation District, the Grand Valley Irrigation Company, the Palisade Irrigation District, Middle Park Water Conservancy District and the Colorado River Water Conservation District ("West Slope Petitioners"), by and through their undersigned attorneys, pursuant to the Court's December 2, 2013 Minute Order (Document No. 358). The Court asked interested parties to brief the following questions: 1) What is the Court being asked to do with respect to the Petition filed in this matter?; 2) What is the basis of the Court's jurisdiction to do so?; 3) Why should the Court exercise jurisdiction and not the state water court?; and 4) If the Court exercises jurisdiction, what process should be used and what kind of notice satisfies due process requirements?

A.   QUESTION 1:  RELIEF REQUESTED

The Petitioners are parties to the Consolidated Civil Cases No. 2782, 5016 and 5017 ("Consolidated Cases"). On October 12, 1955, this Court entered Findings of Fact, Conclusions of Law, and Final Decree in Consolidated Civil Cases No. 5016 and 5017, and Findings of Fact, Conclusions of Law, and Final Judgment in the Consolidated Cases. Those judgments, and all amendments and supplemental orders, judgments, and decrees entered in these cases are collectively referred to as the "Blue River Decree." The Petitioners are requesting that the Court enter an order approving the proposed Green Mountain Reservoir Administrative Protocol ("GMR Protocol"), with specific findings that Articles I through IV of the GMR Protocol are

consistent with the Blue River Decree. The proposed GMR Protocol is attached as Exhibit B to the Petition filed in this matter.

### B.     QUESTION 2:  JURISDICTION

This Court has jurisdiction over this matter pursuant to the Blue River Decree, specifically: (1) the October 12, 1955 Final Decree; (2) October 12, 1955 Final Judgment; and (3) the October 29, 1957 Supplemental Order Dismissing Reserved Question and Amending Decree, which provided that "this Court retains continuing jurisdiction for the purpose of effectuating the objectives of this Final Decree, including specifically but not by way of limitation, further interpretation of Senate Document No. 80 and the enforcement of the provisions thereof."

This Court also has jurisdiction pursuant to 28 U.S.C. §1331 because the claims arise under the laws of the United States and 28 U.S.C. § 1345 because the United States is a plaintiff in this proceeding.

The claims arise under federal law because in 1956 Congress approved the terms of the Blue River Decree in the Colorado River Storage Project Act, Pub.L. No 84-485, 70 Stat. 105, 110 (1956), codified at 43 U.S.C. § 620j. "The effect of this Congressional approval is that the terms of Senate Document 80, as incorporated in the Blue River Decree, have the force of a statute and still control the manner in which Green Mountain Reservoir is to be operated." *Public Service Co. v. Federal Energy Regulatory Com.,* 754 F.2d 1555, 1560 (10th Cir. 1985). The

provisions of 43 U.S.C. § 620j require the United States to act in accordance with the Blue River Decree.

In order for the Court to exercise its jurisdiction under Article III of the U.S. Constitution, it must have a justiciable case or controversy before it. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42, (1986). Neither the Declaratory Judgment Act nor the Court's retained jurisdiction alter this fundamental requirement. *See Calderon v. Ashmus*, 523 U.S. 740 (1998) (in an action for declaratory judgment, court must first look for an Article III case or controversy); *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1080-81 (10th Cir. 2009) (agreeing with the holding in *United States v. Accra Pac, Inc.,* 173 F.3d 630, 633 (7th Cir. 1999) that "mere retained jurisdiction over a case does not create a perpetual case or controversy, even for the original parties to the case.")

Although the Petitioners seek a determination concerning the GMR Protocol from the Court after reaching an agreement concerning the Protocol, this does not mean that there is no Article III case or controversy before the Court. The federal courts have long recognized that a case or controversy can exist between disputing parties even after a settlement agreement is reached.

In *SEC v. Randolph*, 564 F.Supp.137 (No. Cal. 1983), *rev'd* 736 F.2d 525 (9th Cir. 1984), the Securities and Exchange Commission ("SEC") filed a complaint against two individuals, alleging illegal insider trading. Prior to filing the complaint, the SEC negotiated settlement agreements whereby the individuals agreed to disgorge the profits of the allegedly

improper transactions and to cooperate with further investigations. At the same time the complaint was filed by the SEC, the parties filed proposed judgments incorporating the terms of their respective settlement agreements, including consent to the entry of permanent injunctions against future violations. The district court dismissed the action. One of its reasons for doing so was its conclusion that there was no case or controversy because the parties came to court after agreeing to a settlement.

The Ninth Circuit Court of Appeals reversed the district court on its case and controversy holding. *SEC*, 736 F.2d at 527. It noted that the "Supreme Court has long endorsed the propriety of the use and entry of consent judgments." *Id*. It also noted that the consent decree called for prospective injunctive relief which overcame any argument that the case became moot prior to the entry of the decree. *Id*. at 528. The SEC court emphasized that the district court's refusal to exercise its jurisdiction because the parties could rely on their settlement agreement ran "against the judicial recognition of the validity and efficiency of this procedure" which "encourages internal resolutions of disputes, thereby lessening the risks and costs of litigation." *Id*. Finally, it pointed out that a consent decree offers more security to litigants than a settlement agreement. *Id*.

As one federal district court has explained, the Court should look to "the nature of the controversy and not the timing of the settlement agreement" to determine if the parties are truly adversaries. *Carlough v. Amchem Prods.*, 834 F.Supp. 1437, 1465 (E.D. Pa., 1993).

> I conclude that this case is one involving genuinely adverse interests, but, because of the settlement, it lacks a dispute as to the remedy. I conclude, therefore, that the simultaneous filing of the complaint and the proposed settlement does not require a conclusion that the case is collusive or lacks

> a genuine dispute. A contrary rule would unwisely discourage pre-litigation negotiations and, by encouraging parties to wait an "appropriate" period of time after filing suit to file a proposed settlement, elevate form over substance.

*Id. See also Colorado Environmental Coalition v. Romer*, 796 F. Supp. 457 (Colo. 1992) (where Judge Babcock approved a stipulated consent decree and order that was filed simultaneously with a complaint filed under the Safe Drinking Water Act.)

There can be no question that the parties to this case are truly adversaries. This litigation has been on this Court's docket since 1949 and as Judge Arraj noted in 1977, and again in 1989, "it will likely remain here so long as the Continental Divide partitions Colorado into western and eastern watersheds." *United States of America v. Northern Colorado Water Conservancy Dist.,* Consolidated Civil Action Nos. 2782, 5016 and 5017, Memorandum Opinion and Order dated Nov. 2, 1977, at 2-3, and again at *Re Application of City and County of Denver,* Consolidated Civil Action Nos. 2782, 5016, and 5017, Amended Memorandum Opinion and Order dated Oct. 23, 1989, at 1.

The GMR Protocol submitted to the Court for determination is the result of years of negotiations between adverse parties trying to resolve a number of extremely contentious issues, including the proper fill and refill of the Green Mountain Reservoir (Petition, ¶¶ 17-22), the relative priority of Climax's C.A. 1710 water rights (Petition, ¶¶ 23-24), and the replacement obligations of Denver Water and Colorado Springs (Petition, ¶¶ 26-27). The parties' efforts to compromise on these disputed issues were precipitated in large part by Denver Water's most recent diligence filing with this Court in 2006 (Document No. 146). The Court stayed that

diligence proceeding several times (Document Nos. 285, 300, 305, 311, 329, 334 and 337) and ultimately administratively closed the diligence proceeding (Document No. 340) pending the parties' efforts to resolve their outstanding issues. The GMR Protocol is one aspect of that negotiated resolution.

The Petitioners in this case entered into an agreement regarding the GMR Protocol (the "GMR Protocol Agreement"), a copy of which is attached to this Brief as Exhibit A. The GMR Protocol Agreement establishes a procedure to obtain judicial approval of the GMR Protocol and provides that the GMR Protocol will not govern the matters addressed by it if it is disapproved or materially modified as a result of the judicial proceedings commenced pursuant to the GMR Protocol Agreement. See ¶¶ 2 – 4 of the GMR Protocol Agreement. It is also important to explain that the State of Colorado has not formally agreed to the GMR Protocol. Instead, the State has agreed only (1) that it will not oppose the adjudication of the GMR Protocol in court, and (2) that it will administer water rights in accordance with the GMR Protocol *after* a final judgment has been entered that approves the protocol in accordance with the Petitioners' request. See ¶ 3.3.2 of the GMR Protocol Agreement. Thus, judicial approval of the GMR Protocol is necessary in order to have the Protocol administered by the Colorado State Engineer.

Therefore, like the settlement agreements discussed in *SEC v. Randolph*, above, the Petitioners' agreement concerning the GMR Protocol is not self-executing. In other words, in the absence of a court order duly approving the GMR Protocol, the Petitioners' agreement cannot

be fully implemented and the disputes between the Petitioners could easily become more adversarial and litigious.

Judicial approval of the GMR Protocol is also essential because the United States is statutorily required to operate the Green Mountain Reservoir in accordance with the Blue River Decree. See *43 U.S.C. §620j*. The role of the United States with respect to the operation of the Colorado-Big Thompson Project, of which Green Mountain Reservoir is a feature, "is that of a trustee responsible for the protection of western slope interests and delivering water to northeastern Colorado." Consolidated Civil Action Nos. 2782, 5016, and 5017, Supplemental Judgment and Decree dated February 9, 1978, at 2; see also *United States v. Northern Colorado Water Conservancy District*, 608 F.2d 422, 430 (10th Cir. 1979) (citing *City and County of Denver v. Northern Water Conservancy District*, 130 Colo. 375, 276 P.2d 992 (1954)). The United States needs certainty that operation of Green Mountain Reservoir pursuant to the GMR Protocol is consistent with the Blue River Decree in order to discharge its statutory and trust obligations.

In summary, entities that have substantial adverse interests with respect to the administration of Green Mountain Reservoir have presented the Court with an Article III case or controversy that needs to be resolved through the exercise of the Court's jurisdiction. The West Slope Petitioners, as water rights owners or operators on the West Slope affected by, and benefitting from, the operation of the Green Mountain Reservoir, each have a personal stake in how all of the issues addressed by the GMR Protocol are ultimately decided and they face real

injury and continued uncertainty if these issues are left undecided. The fact that the parties have reached a contingent resolution of their issues before filing the Petition does not mean that the case or controversy no longer exists. Judicial action is necessary to implement the GMR Protocol.

### C.  QUESTION 3:  EXERCISE OF FEDERAL VERSUS STATE JURISDICTION

The Supreme Court has reiterated over the years that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 812 (1976) ("*Colorado River*").

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-189 (1959)).

The Supreme Court has recognized three general categories where abstention may be appropriate: cases presenting a federal constitutional issue which might be mooted by a state court determination of state law; where there are difficult questions of state law bearing on policy problems of substantial public import; and where federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Id.* at 812-817. None of these circumstances exist in this matter.

The Court has asked whether the "Colorado River Doctrine" supports the Court determining that the state water court should have the first opportunity to address the issues raised by the Petition.  In *Colorado River*, the Supreme Court found that "exceptional circumstances" may exist to permit the dismissal of a federal suit due to concurrent state proceedings.  In *Colorado River*, the Supreme Court found such exceptional circumstances from the following factors: the McCarran Amendment is a clear federal policy against piecemeal adjudication of water rights; the absence of any proceedings in the District Court; the extensive involvement of state water rights as the United States named 1,000 defendants; the 300 mile distance between the District Court and the state water court; and the prior participation of the United States in related state proceedings.  *Id*. at 818.

Although the Petitioners have asserted that portions of the GMR Protocol may be characterized as "a determination of water rights within the meaning of Colorado water statutes" (*Petition*, ¶15), this matter can be clearly distinguished from the factual circumstances underlying the holding in *Colorado River*.

In *Colorado River* there had been no proceeding in federal court other than the filing of the complaint.  Compare that to this case where this Court has exercised continuous jurisdiction since 1949.   The reason there is even a concurrent state proceeding pending is because the parties seeking relief in federal court initiated the state court action the same way they have historically done when this Court sat as the water judge for these proceedings, primarily so that the notice procedures of the 1969 Act could be utilized by this Court.  *See, for example,* Water

Division No. 5 Cases 87CW375, 87CW378, 88CW22, 88CW382, 91CW252 and 06CW255, all of which involved applications filed jointly in this Court and in the Water Court for Water Division No. 5. The situation presented in the pending proceeding before this Court is simply not the same as in *Colorado River*.

The Supreme Court has held that the Declaratory Judgment Act confers greater discretion upon federal courts than is permitted under the "exceptional circumstances" test of *Colorado River. Wilton v. Seven Falls,* 515 U.S. 277, 286 (1995) (holding that the discretionary standard of *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) was applicable to a declaratory judgment action). However, the Supreme Court declined to address whether declaratory judgment actions raising issues of federal law should fall within the *Brillhart* standard. *Id*. at 288. This appears to be an unresolved issue in the Tenth Circuit. *See United States v. City of Las Cruces*, 289 F.3d 1170, 1184 (10th Cir. 2002) (finding it need not decide the issue as appellants did not demonstrate that issues of federal law would arise in the federal action).

Unlike the underlying circumstances in *City of Las Cruces*, this action very clearly raises issues of federal law. Congressional approval of the Blue River Decree, as codified at 43 U.S.C. § 620j, means the relief requested by the Petitioners raises issues of federal law. Likewise, the "obligations to and the rights of the United States under its contracts are governed exclusively by federal law." *City of Las Cruces*, 289 F.3d at 1186 (quoting *Boyle v. United Techs. Corp*, 487 U.S. 500, 504 (1988)). The United States has petitioned this Court to declare that its rights and obligations as set forth in the GMR Protocol it has contractually agreed to with the other

Petitioners are consistent with its obligations under the Blue River Decree and 43 U.S.C. § 620j. Given the importance federal law will play in the determination requested by the Petition, as well the fact that this Court has exercised its retained jurisdiction since 1949, this matter should be one which lies beyond the "outer boundaries" of *Brillhart* discretion.[1]  *Wilton*, 515 U.S. at 288.

### D.   QUESTION 4:  PROCESS

For decades, this Court has sat as the water judge with respect to issues related to the Blue River Decree. *See* Order Regarding Further Proceedings Consistent with the Colorado Water Right Determination Act of 1969, dated August 4, 1977 ("1977 Order").  Although on its face the 1977 Order was limited to applications for due diligence and to make conditional decrees absolute, the procedures set forth therein have been used by the Court and the parties to the Blue River Decree to address many issues related to the Blue River Decree.

For example, in 1987 the City and County of Denver, acting by and through its Board of Water Commissioners ("Denver Water") filed two applications concurrently with this Court and the Colorado Water Court for Water Division 5.  The application filed in Water Court Case No. 87CW375 sought a change of the Green Mountain Reservoir water right to allow a pumpback of water from Green Mountain Reservoir to Dillon Reservoir.  The application filed in Water Court Case No. 87CW378 sought a modification of the Blue River Decree to permit exchanges from

---

[1] Even if the Court disagrees, application of the factors the Tenth Circuit has adopted for evaluation in the context of a declaratory judgment action should not dissuade the Court from exercising its jurisdiction in the current proceeding. *See State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

various reservoirs to Dillon Reservoir. Shortly after these cases were filed Denver Water filed a Motion for Clarification with this Court, requesting that the procedures set forth in the 1977 Order be used and followed in these two cases. On March 17, 1988, Judge Arraj entered an Order granting Denver Water's Motion for Clarification and ordering that the procedures set forth in the 1977 Order would apply to Case Nos. 87CW375 and 87CW378. Those cases were subsequently determined by Judge Arraj sitting as the water judge, as required by the 1977 Order, using the procedures set forth in the applicable Colorado water adjudication statutes, C.R.S. § 37-92-101 et seq.

The procedures contemplated by the 1977 Order include publication of a summary of the application that has been filed with the court in a "resume" prepared by the water court clerk. See C.R.S. § 37-92-302(3). Publication in the resume gives notice of the proceeding to persons who may be affected by the application and an opportunity to file statements of opposition to protect their interests. See C.R.S. § 37-92-302(1)(b). Numerous parties have in fact filed statements of opposition in the various proceedings that have been conducted in this Court pursuant to the 1977 Order and have participated in those proceedings to assert and protect their interests.

The Colorado Supreme Court has upheld the use of resume notice and newspaper publication pursuant to C.R.S. §37-92-302(3) and C.R.C.P. 90 as an appropriate method to give notice of proceedings involving water rights. *Southern Ute Indian Tribe v. King Consol. Ditch Co.*, 250 P.3d 1226 (Colo. 2011). "The General Assembly included the resume notice and

newspaper publication procedures in the 1969 Act, in lieu of personal service, because water rights are decreed to structures, rather than individual owners, and water court proceedings for the determination of water rights are proceedings in rem." *Id*. at 1235 (citing *Well Augmentation Subdistrict v. City of Aurora*, 221 P.3d 399, 408-409 (Colo. 2009.))  Notice given by publication in the water court resume is "calculated to alert all water users on the stream system whose rights may be affected by the application and to provide these persons an opportunity to participate in the water right proceeding and to oppose the application." *Bar 70 Enterprises, Inc. v. Tosco Corp.*, 703 P.2d 1297, 1303 (Colo. 1985).

Personal service has been required in certain limited circumstances in water court cases where the "actions focus on specific disputes among and between specific water users and/or state water officials." *Southern Ute Indian Tribe v. King Consol. Ditch Co.*, *supra,* 250 P.3d at 1235.  In the present case, the disputes that are being resolved by the GMR Protocol are disputes among and between the Petitioners.  The Petitioners include all of the parties to the Blue River Decree except for one.[2]  Since the Petitioners are all subject to the jurisdiction of the Court by virtue of filing the Petition, no personal service is necessary on them.  However, the relief requested in the Petition could affect other water users in the Colorado River drainage.  Adoption

---

[2] The only party to the Blue River Decree that is not a Petitioner in this case is the City of Englewood.  However, notice of the concurrent application filed in the Colorado Water Court was published in the résumé and the City of Englewood has filed a pleading in support of the application and to keep apprised of the course of proceedings.  If the procedures of the 1977 Order are adopted, the City of Englewood will be a party to the current proceedings in this Court also.

of the procedures set forth in the 1977 Order, including publication of notice in the water court resume, will provide all owners of water rights on the stream system an opportunity to come before this Court to protect their interests if they deem it necessary to do so.[3]

Although the Petitioners do not agree amongst themselves as to whether Article IV of the GMR Protocol meets the jurisdictional requirements of the Colorado Water Court for Water Division 5, they have reached a compromise for the purposes of the GMR Protocol adjudication.[4] The compromise (embodied in the GMR Protocol Agreement attached as Exhibit A) provides that the Petitioners will request that the Court apply the procedures of the 1969 Act only with respect to Articles I, II, and III of the GMR Protocol, so that the additional third-parties discussed above are entitled to participate in the case as to the Court's determination regarding Articles I through III. With respect to Article IV, the Petitioners (by way of compromise)

---

[3] The statutory time period for filing pleadings to become a party to the Colorado Water Court proceedings expired on January 31, 2014. Twelve parties have filed pleadings with the Colorado Water Court, seven of which are in support of the application. The additional parties that have filing pleadings are Chimney Rock, LLC, the Town of Gypsum (to monitor proceedings), Public Service Company of Colorado, Summit County, Grand County (in support), the City of Englewood (in support and to keep apprised of the course of proceedings), the City of Aurora, Eagle River Water and Sanitation District (in support), Upper Eagle Regional Water Authority(in support), Eagle Park Reservoir Company (in support), Clinton Ditch and Reservoir Company (in support), and Ute Water Conservancy District (in support).

[4] The Petitioners have not requested that the Court make any determination as to whether Article IV does or does not meet the jurisdictional requirements of the Colorado Water Court. Although the West Slope Petitioners believe that Article IV does meet those standards, they believe that a determination in either direction by the Court could adversely impact the Petitioners' compromise agreement. The West Slope Petitioners do maintain that this Court can and should exercise its jurisdiction in this case with respect to the entirety of the GMR Protocol (Articles I, II, III, and IV), and that abstention from jurisdiction is not appropriate for the reasons explained in Section C of this Brief.

request that the Court make a separate finding (without including other parties) of consistency with the Blue River Decree.

### E.     CONCLUSION

The West Slope Petitioners respectfully assert that:

1.      It is appropriate for this Court to exercise its jurisdiction and retain the Petition on its docket for determination; and

2.      The Court should enter the necessary procedural order directing that the procedures set forth in its 1977 Order will apply to that portion of the Petition seeking a determination that Sections I, II and III of the GMR Protocol are consistent with the Blue River Decree and that all persons and entities filing statements of opposition to the state water court application will be entitled to participate fully in the adjudication of that part of the Petition; and

3.      The Court should enter a judgment finding that Articles I through IV of the GMR Protocol are consistent with the Blue River Decree.

Submitted this 14th day of February, 2014.

| **Grand Valley Water Users Association** **Orchard Mesa Irrigation District** | **Grand Valley Irrigation Company** |
|---|---|
| By:  *s/ Kirsten M. Kurath* <br> Mark A. Hermundstad, Reg. No. 10527 <br> Kirsten M. Kurath, Reg. No. 24649 <br> Williams, Turner & Holmes, P.C. <br> P.O. Box 338 <br> Grand Junction, CO  81502-0338 <br><br> Attorneys for Petitioners for Grand Valley Water Users Association  and Orchard Mesa Irrigation District | By:      *s/ Frederick G. Aldrich* <br> Frederick G. Aldrich, Reg. No. 428 <br> Aldrich Law Firm, LLC <br> 601A 28 1/4  Road <br> Grand Junction, Colorado  81506 <br><br> Attorney for Petitioner <br> Grand Valley Irrigation Company |

| | |
|---|---|
| **Middle Park Water Conservancy District** | **Palisade Irrigation District** |
| By: _s/ John D. Walker_ | By: _s/ Nathan A. Keever_ |
| Stanley W. Cazier, Reg. No. 4648 | Nathan A. Keever, Reg. No. 24630 |
| John D. Walker, Reg. No. 31286 | Dufford Waldeck Milburn & Krohn, LLP |
| Cazier, McGowan, Walker | 744 Horizon Ct., Suite 300 |
| P.O. Box 145 | Grand Junction, CO 81506-3947 |
| 62495 U.S. Hwy 40 | |
| Granby, CO 80446 | Attorneys for Petitioner |
| | Palisade Irrigation District |
| Attorneys for Petitioner Middle Park Water Conservancy District | |

**Colorado River Water Conservation District**

By: _s/ Peter C. Fleming_
Peter C. Fleming, Reg. No. 20805
Jason V. Turner, Reg. No. 35665
Colorado River Water Conservation District
P.O. Box 1120
Glenwood Springs, CO 81602-1120

Attorneys for Petitioner
Colorado River Water Conservation District

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of February, 2014, I electronically filed the foregoing *Joint Brief of West Slope Petitioners Regarding the Questions Posed by the Court* with the Clerk of the U.S. District Court using the CM/ECF system which will send notification of such filing to the following:

Brian Max Nazarenus        bnazarenus@rcalaw.com, dstalnaker@rcalaw.com,
                           kcanjar@rcalaw.com, pdavis@rcalaw.com

| | |
|---|---|
| Frederick G. Aldrich | faldrich@aldrich-law.com, kdavis@aldrich-law.com |
| Anne Jamieson Castle | acastle@hollandhart.com, IntakeTeam@HollandHart.com |
| Stanley W. Cazier | cazier_mcgowan@hotmail.com |
| James J. DuBois | james.dubois@usdoj.gov, efile_nrs.enrd@usdoj.gov, laurie.himebaugh@usdoj.gov |
| Casey S. Funk | casey.funk@denverwater.org |
| Mark A. Hermundstad | mherm@wth-law.com, kris@wth-law.com |
| David G. Hill | dgh@bhgrlaw.com, pag@bhgrlaw.com |
| James R. Montgomery | jmontgomery@mwhw.com, rolson@mwhw.com |
| William A. Paddock | bpaddock@chp-law.com, skirschenbaum@chp-law.com |
| Donald E. Phillipson | dbls99@comcast.net |
| Bennett W. Raley | bwraley@mac.com |
| Robert V. Trout | rtrout@troutlaw.com |
| John Leonard Watson | jwatson@bw-legal.com, bbiondolillo@bw-legal.com, ssoltero@bw-legal.com |
| Charles B. White | cwhite@petros-white.com, knew@petros-white.com |
| Mary Mead Hammond | mhammond@chp-law.com, skirschenbaum@chp-law.com |
| Robert James Pohlman | rpohlman@swlaw.com |
| Austin C. Hamre | ahamre@dodpc.com, dodpc@dodpc.com |
| Barry Alan Schwartz | barry.schwartz@denvergov.org, raquel.trujillo@denvergov.org, stefanie.raph@denvergov.org |
| Douglas L. Abbott | dabbott@hollandhart.com, IntakeTeam@HollandHart.com, jmarsh@hollandhart.com, mmarrow@hollandhart.com |
| Peter Cheney Fleming | pfleming@crwcd.org, lnichols@crwcd.org |
| Christopher L. Thorne | cthorne@hollandhart.com, IntakeTeam@hollandhart.com |
| Christopher Graham McAnany | howard@dwmk.com, mcanany@dwmk.com |

| | |
|---|---|
| Gail Rosenschein | gail.rosenschein@denverwater.org |
| Roger T. Williams, Jr | rwilliams@rcalaw.com, apalius@rcalaw.com, dmrobertson@rcalaw.com, dstalnaker@rcalaw.com, kcanjar@rcalaw.com |
| Nathan A. Keever | howard@dwmk.com, keever@dwmk.com |
| Kathleen M. Morgan | kathi_M8@yahoo.com, merci@moriarty.com, myrna@moriarty.com |
| Chad Matthew Wallace | chad.wallace@state.co.us, terrie.sandoval@state.co.us |
| John Dorsey Walker | jdorseywalk@yahoo.com |
| Jeffrey Flinn Davis | jeff.davis@denverwater.org |
| Daniel John Arnold | daniel.arnold@denverwater.org, julie.whalen@denverwater.org |
| Lisa M. Thompson | lthompson@troutlaw.com |
| Meghan Nichols Winokur | mwinokur@hollandhart.com, IntakeTeam@HollandHart.com |
| Julie Elise Maurer | jmaurer@rcalaw.com |
| Olivia Denton Lucas | olivia.lucas@faegrebd.com |
| Karl D. Ohlsen | kohlsen@chp-law.com, sKirschenbaum@chp-law.com |
| Jason V. Turner | jturner@crwcd.org, lnichols@crwcd.org |
| Ann M. Rhodes | amr@bhgrlaw.com |

*/s/ Kris Evers*