IN UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No.: 49-cv-02782-MSK-CBS

Consolidated Civil Case Nos. 2782, 5016 and 5017

UNITED STATES OF AMERICA,

     Plaintiff,

v.

NORTHERN COLORADO WATER CONSERVANCY DISTRICT, et al.

     Defendants.

In the Matter of the Adjudication of Priorities of Water Rights in Water District No. 36 for Purposes of Irrigation:

Petitioners:

COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT, PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT

In the Matter of the Adjudication of Priorities of Water Rights in Water District No. 36 for Purposes Other Than Irrigation:

Petitioners;

COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT, PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT.

## DENVER WATER'S BRIEF REGARDING QUESTIONS POSED BY THE COURT

Petitioner/Defendant, City and County of Denver acting by and through its Board of Water Commissioners ("Denver Water"), by and through its attorneys, hereby submits its Brief regarding questions posed by the Court pursuant to the Court's December 2, 2013 Minute Order (Document No. 358):

## I.     INTRODUCTION

This brief is filed pursuant to the Court's directive that any party desiring to do so may file a brief responsive to five questions posed by the Court during the December 2, 2013 hearing. As discussed herein, the Court is being asked to interpret and determine that the Green Mountain Administration Protocol ("Protocol"), attached hereto as Exhibit DW-1, is consistent with the Blue River Decree and Senate Document 80.  The Court has jurisdiction to make such a determination under its retained jurisdiction under the Blue River Decree, as such a determination is for the purpose of further effectuation of the Blue River Decree, and 28 U.S.C. §§ 1331, 1341, and 2201. This Court is better suited than a State Court to exercise its jurisdiction in this matter because it is being asked to make a determination regarding its own decree, and to confirm that the operational terms and conditions imposed by the Protocol appropriately effectuate the Blue River Decree, to the extent codified into law by Congress.

The interests of judicial economy would be served by this Court's exercise of its jurisdiction.  Almost all the parties to this case are also involved in the Blue River Decree diligence case, Case No. 2006CW255 WD5, already on the Court's docket for resolution.  The Court has a long history of retaining jurisdiction and denying requests by Denver to remand this matter, a history on which the parties relied in agreeing upon the best procedural approach to obtain a judicial declaration and implementation of the Protocol.  This Court is best suited to

continue to retain jurisdiction, at least for the time being, to resolve expeditiously longstanding issues under the Blue River Decree. In doing so, the Court should follow the procedures and process established under the Water Right Determination and Administration Act of 1969, Colo. Rev. Stat. §§ 37-92-101—37-92-602, and utilize the State Resume and newspaper notice procedure to notify and bind potentially interested parties.

## II.     PROCEDURAL BACKGROUND

On November 15, 2013, the Petitioners, including Denver Water, filed a Petition for determination that an Administrative Protocol negotiated by certain parties concerning the administration of Green Mountain Reservoir is consistent with the Blue River Decree.  (Doc No. 355).

The Court subsequently entered an order and notice of hearing for December 2, 2013 for a non-evidentiary hearing on the law and motion calendar "to address the [355] Petition/Application filed by USA."  (Doc No. 356).

At the December 2, 2013 hearing, the Court posed the following five questions to the Petitioners:

> (1) What do you want the Court to do in regard to the Application/Petition?
>
> (2) What is the basis for jurisdiction?
>
> (3)  What court is best?
>
> (4) What process do you want the federal court to use?
>
> (5) What kind of notice is required that satisfies due process and gives opportunity to object?

Following the hearing, the Court issued a Minute Order requiring that "every party that wants to express an opinion will be filed by February 15, 2014." (Doc No. 358).

### III.    RELEVANT PROCEDURAL FACTS

1.    The origin of C.A. 2782, 5016 and 5017 ("Consolidated Cases") is best described by the Court's Findings of Fact, Conclusions of Law and Final Judgment ("Findings") dated October 12, 1955.  (Findings, C.A. 2782, 5016 & 5017 at 2-5, ¶¶1-9).

2.    In 1942, a number of appropriators—including Denver and the City of Colorado Springs ("Colorado Springs") (collectively the "Cities")—filed claims in a state water adjudication, C.A. 1805 and C.A. 1806 ("Blue River Adjudication"), in Summit County District Court for claims to "water from the Blue River and its tributaries in Water District No. 36."  *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1074 (10th Cir. 2009).

3.    In 1944, the United States also filed claims in the Blue River Adjudication, claiming water rights for the Green Mountain Reservoir and Power Plant under the CBT Project. *Id*. at 1074; *United States v. North. Colo. Water Conservancy Dist.*, 608 F.2d 422, 425 (10th Cir. 1979); *Colorado River Water Conservation Dist. v. Mun. Subdistrict*, 610 P.2d 81, 82 n2 (Colo. 1979) (describing CBT Project).

4.    In 1949, the United States withdrew its state court claim for the CBT Project in the Blue River Adjudication, and filed a complaint in federal court in C.A. 2782, requesting: (1) an adjudication of the United States' water rights in Green Mountain Reservoir and the CBT Project; (2) a quiet title of the United States' water rights for the CBT Project and the water rights of others including Denver and Colorado Springs (collectively, "the Cities") and the Forest Service; and (3) a declaratory judgment of the United States' "liability, duties and obligations" under Senate Document 80.  (Compl., C.A. 2782 at 18-19).  In addition, the United States requested that the Court provide a means for the enforcement of its decree as may be necessary

Denver Water's Brief Re: Questions Posed by the Court
Consolidated Case Nos. 2782, 5016 & 5017

and for such further relief as may be proper." (Compl., C.A. 2782 at 19 ¶7); *City of Colo. Springs.*, 587 F.3d at 1074.

5.     A decree adjudicating the Cities' water rights was entered by the Summit County District Court in the Blue River Adjudication in March, 1952. *Id.* at 1075. An appeal to the Colorado Supreme Court ensued, and the Colorado Supreme Court subsequently affirmed the decree, but remanded the Blue River Adjudication back to the Summit County District Court to determine the United States' water rights for Green Mountain Reservoir and the hydropower plant. *City & County of Denver v. North. Colo. Water Conservancy Dist.*, 276 P.2d 992, 1015 (Colo. 1955).

6.     After the Blue River Adjudication was remanded to Summit County District Court, in April 1955, the United States was served with notice and a summons pursuant to the McCarran Amendment, 43 U.S.C. § 666, which Congress had passed in 1952. *City of Colo. Springs*, 587 F.3d at 1075.

7.     The United States then removed the Blue River Adjudication to this Court, where C.A. 1805 and 1806 were renumbered C.A. 5016 and C.A. 5017, respectively, and consolidated with the United States' pending declaratory judgment action filed in C.A. 2782. *Id.*

8.     Around June, 1955, the Cities filed their first motion to remand the Blue River Adjudication to the Summit County District Court. (Order Denying Mot. of City & County of Denver and the City of Colo. Springs to Remand Civil No. 5016 to Water District No. 36 ("1955 Order Den. Remand") at 1 (D. Colo. June 13, 1955)).

9.      Denying the motion to remand, this Court limited removal of the Blue River Adjudication to the issues specified in "the mandate of the Supreme Court of the State of Colorado." (1955 Order Den. Remand); *City of Colo. Springs*, 587 F.3d at 1075.

10.     On October 12, 1955, this Court approved the "Blue River Decree" consisting of the: (1) Findings of Fact, Conclusions of law, and Final Decree, C.A. 2782, 5016 & 5017 (D. Colo. Oct. 12, 1955); (2) Final Decree, C.A. 2782, 5016 & 5017 (D. Colo. Oct. 12, 1955); and (3) Supplemental Order Dismissing Reserved Question and Amending Decree, C.A. 2782, 5016 & 5017 (D. Colo. Oct. 29, 1957).

11.     The Final Judgment, attached to the Findings, constituted a "final determination of the priorities between the United States of America, the City and County of Denver and the City of Colorado Springs, their successors in interest and assigns. . . ." (Final J., C.A. 2782, 5016 & 5017 at 10 (D. Colo. Oct. 12, 1955)).

12.     Pursuant to the Final Judgment, the United States and the Cities were "adjudged to be the owners of the rights to the use of water . . . and are entitled and allowed to divert and utilize from the Colorado River and its tributaries, including the Blue River, in the amounts and for the purposes as herein provided, and in accordance with the provisions hereof." (Final J., C.A. 2782, 5016 & 5017 at 10-11 (D. Colo. Oct. 12, 1955)).

13.     This Court further ordered, adjudged and decreed, that it "retains continuing jurisdiction for the purpose of effectuating the objectives of this Judgment." (Final J., C.A. 2782, 5016 & 5017 at 13 (D. Colo. Oct. 12, 1955 )) (emphasis added).

14.     In 1957, this court amended the retained jurisdiction provision to read: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court retains continuing

jurisdiction for the purpose of effectuating the objectives of this Final Decree; including specifically but not by way of limitation, further interpretation of Senate Document No. 80 and the enforcement of the provisions thereof."   (Supp. order dismissing reserved question and amending decree at 2 (D. Colo. Oct. 29, 1957)).

15.    On August 9, 1937, Congress passed Senate Document Number 80, 75th Congress, 1st Session ("Senate Document 80"), 50 Stat. 564, 595 (1937), which provided for the construction of the Colorado Big-Thompson Project and Green Mountain Reservoir.

(Senate Document Number 80, 75th Congress, 1st Session, pp. 2–3, R. Joint Appendix, pp. 65/174–66/175; Senate Document Number 80, Senate Miscellaneous Reports, 75th Congress, 1st Session (1937)).

16.    To the extent the terms of the Blue River Decree were approved by Congress, they were incorporated into the 1956 Colorado River Storage Project Act, Pub.L. No. 84–485, 70 Stat. 105, 110 (1956), codified at 43 U.S.C. 620j (1982). *See Public Serv. Co. of Colo. v. F.E.R.C.*, 754 F.2d 1555, 1561 (10th Cir. 1985).  "The effect of this Congressional approval is that the terms of Senate Document 80, as incorporated in the Blue River Decree, have the force of a statute and still control the manner in which Green Mountain Reservoir is to be operated." *Id.*

17.    On May 10, 1957, Denver Water filed a second motion for an injunction or for remand to state court of "such portion or portions of these cases as may appear to this Court to be severable from the issue or issues upon the existence of which removal to this Court" was originally granted.  In the alternative, Denver Water requested that the Court "issue an injunction

restraining all parties to these proceedings from further action affecting the subject of these cases in any court of the State of Colorado." (1957 Denver Mot. for Inj. or Remand at 4-5).

18.     This Court denied Denver's motion for remand ordering that "so long as this Court retains jurisdiction in the premises it shall remain available as the forum for the exercise of jurisdiction over all the proceedings thus removed together with all matters necessarily related thereto as defined by the laws of the State of Colorado." (1962 Order Den. Mot. for Remand or Inj. at 2 (D. Colo. Jan. 24, 1962)).

19.     A little less than a decade later, a dispute arose regarding the fill of Dillon Reservoir and the interpretation of the Blue River Decree, which was resolved by a Decree entered on April 16, 1964.  (Decree ("1964 Decree"), C.A. 2782, 5016 & 5017 at 2 ¶1 (D. Colo. Apr. 16, 1964)).

20.     In the 1964 Decree, the Court again ordered that "it retains continuing jurisdiction for the purpose of effectuating the objectives of the Judgment and Decree heretofore entered October 12, 1955, and this Decree." (1964 Decree at 6 ¶9).

21.     In 1969, the Colorado General Assembly reformed the Colorado water right adjudication system with the enactment of the Water Right Determination and Administration Act of 1969, C.R.S. §§ 37-92-101 – 37-92-602 ("1969 Adjudication Act").

22.     Shortly thereafter, Denver Water filed a third motion for remand or alternative disposition.  (1970 Order for Continuance at 2 (D. Colo. 1/13/1970)).  The Court heard argument on Denver's motion on January 22, 1971.  (Official Tr. 3:6-10).  At the Court's urging, the parties to the Consolidated Cases attempted to reach a stipulation, but were unsuccessful. Even though Judge Arraj expressed concerns regarding the Court's jurisdiction similar to those

expressed by this Court today, the Court continued to retain jurisdiction.  (Official Tr. 15:4-13; 21:11-17).

23.    On July 11, 1977, Denver filed a motion regarding compliance with the 1969 Adjudication Act suggesting that this Court follow the procedures established under the Act, but with "the directive that all publications shall show that any hearing or action will be before this Court."  (Mt. Re. Compliance with 1969 Adjudication Act).  On August 4, 1977, the Court issued its Order Regarding Further Proceedings Consonant with the Colorado Water Right Determination and Administration Act of 1969 ("1977 Order").  Pursuant to the 1977 Order, the Court declared that "it would act as the Water Judge for Water Division 5 insofar as the proceedings in connection with cases numbered 5016 and 5017 are concerned."  (1977 Order at ¶2).

24.    In the 1977 Order, the Court ordered the Water Division 5 Clerk to perform those functions required under the 1969 Act as if the proceedings were before the Water Division 5 Judge.  The Court further ordered that "[t]he proceedings referred to herein shall be limited to those matters relating to the filing of applications for quadrennial showing of due diligence and application for making absolute conditional decrees or portions thereof." (1977 Order at ¶4)

25.    The Court has since invoked its retained jurisdiction on several occasions to resolve disputes involving the Blue River Decree.  For example, based on the Court's retained jurisdiction, it entered a decree on November 10, 1992, confirming a right of exchange using the waters of the Blue River and its tributaries stored in the 52,000 and 100,000 acre-foot pools of Green Mountain Reservoir by the Secretary of the Interior in the exercise of the water right decreed in the Consolidated Cases.  (Findings of Fact, Conclusions of Law and Judgment and

Decree at 1, 5 ¶1 (Nov. 10, 1992)).  *See also In re Application of City & County of Denver with Respect to its Water Rights in the Blue River and its Tributaries in Summit County, Colorado*, 1989 WL 128576, *1 (D. Colo. 1989) (involving Denver's application for a change of Green Mountain Reservoir water right, approval of a plan for augmentation and replacement and for an amendment to the Blue River Decree); Decree, C.A. 2782, 5016 & 5017 (D. Colo. Feb. 9, 1978); Mem. Opinion and Order, C.A. 2782, 5016 & 5017 (D. Colo. Nov 2, 1977) (interpreting previous judgment and decree of the court in resolving whether under Blue River Decree, Denver may adjudicate water rights at Green Mountain Reservoir without the Secretary of Interior's prior consent).  *See also* 1964 Decree (resolving controversy involving Denver's closure of Dillon Reservoir and refusal to release water to Green Mountain Reservoir).

26.    In addition the Court has exercised its retained jurisdiction on numerous occasions to adjudicate Denver's applications for findings of reasonable diligence and claims to make absolute including recent rulings in 1978, 1985, 1987, 1993, 2000 and the pending application for diligence and to make absolute filed in 2006.

## IV.    RELEVANT SUBSTANTIVE FACTS

On July 8, 2004, the Colorado State Engineer issued an Interim Policy concerning the administration of Green Mountain Reservoir.  (Exhibit DW-2, Policy 2004-4, July 8, 2004). This policy was a major departure from the historic administration of this reservoir by the state water officials.  The Policy affected: (1) the rights of the United States to operate Green Mountain Reservoir under its co-equal priority for storage and power, (2) the rights of the Cities to hold water under the Blue River Decree; and (3) the rights of the beneficiaries under Senate Document 80 to water in Green Mountain Reservoir that is bypassed to maintain a minimum

flow. As stated in the policy: "The state engineer has consulted with numerous water users prior to adopting this policy and understands that there is not basin-wide consensus about the administrative and accounting principles included in the interim policy." Further, the state expressed a desire to achieve a permanent resolution to the dispute by inviting "parties interested in Green Mountain Reservoir administration and accounting [to] meet with Division of Water Resources staff and discuss a permanent resolution to these issues in order to suggest a final policy to the State Engineer." (Exhibit DW-2, Policy 2004-4, July 8, 2004). Then for the next nine years, the parties to the Blue River Decree met with the Colorado Division of Water Resources to achieve a permanent solution that now depends upon the entry of a Federal Court decree. The dispute involving the State Engineer's administration of Green Mountain Reservoir is contingent upon resolution of the Blue River Decree parties' objections concerning administration and operation of Green Mountain Reservoir. If a decree is not entered confirming the permanent solution established in the Protocol, Denver Water's water rights could be adversely affected.

## V.    QUESTIONS RAISED BY THE COURT

### A.  WHAT IS THE COURT BEING ASKED TO DO?

#### 1.  Introduction

The Court is being asked to enter a judgment and decree approving the Protocol as a judgment and decree of the Court. The parties seek a decree approving the Protocol and finding it consistent with the Blue River Decree so that it may be administered by the Colorado State and Division Engineers. Under Colorado law, the State and Division Engineers are only required to administer water rights in accordance with their decrees. A decree from the Court is therefore

necessary because a private agreement is not binding on the State and Division Engineers and will not be administered.  Accordingly, a court entered decree finding the Protocol consistent with the Blue River Decree is necessary to make the Protocol's provisions administrable by the State and Division Engineers.

### 2. The purpose of the Protocol and the Federal Court Petition.

On August 16, 2013, several parties entered into an Agreement ("2013 Agreement") under which they agreed to the Green Mountain Reservoir Administrative Protocol, which upon approval by the federal court in the form of a final judgment and decree, will bind the State and Division Engineers.  (Exhibit DW-3, 2013 Agreement at 5 ¶3.2).  The Parties to the 2013 Agreement are: the United States; Palisade Irrigation District; Denver Water; Grand Valley Irrigation Company; Colorado Springs; Middle Park Water Conservancy District; Northern Colorado Water Conservancy District; Orchard Mesa Irrigation District; Colorado River Water Conservation District; Colorado Division of Water Resources [i.e., State Engineer and Division Engineer] ("State"); Climax Molybdenum Company; Ute Water Conservancy District, acting by and through the Ute Water Activity Enterprise; and Grand Valley Water Users Association. (Exhibit DW-3, 2013 Agreement at 1-2 ¶1).

The 2013 Agreement addresses longstanding disputes regarding the administration of Green Mountain Reservoir and Climax's water rights decreed in C.A. 1710 vis-à-vis Green Mountain Reservoir through agreement of the parties to the Protocol.  In short, the Protocol seeks to further clarify and implement provisions of the Blue River Decree, by:

(1)    setting forth a protocol for, among other things: (a) the preparation, review, and modification of a fill schedule for Green Mountain Reservoir; (b) definition and administration of a fill season for exercise of the 1935 First Fill Storage Right; (c) administration of water rights during the fill

Denver Water's Brief Re: Questions Posed by the Court
Consolidated Case Nos. 2782, 5016 & 5017

season; and (d) operation of the Green Mountain Water Rights and the . . .
[Cities'] water rights in response to downstream calls senior to the Cities'
water rights;

(2)    making as much water as possible available for upstream use, including
use by the . . . [Cities], without impairment of the fill of Green Mountain
Reservoir and without impairment of legal calls of downstream water
rights;

(3)    providing a clear definition of the Cities' replacement obligation
operations;

(4)    ensuring that the administration of water rights does not allow the water
rights of the Cities to "hide behind" or otherwise benefit from the Green
Mountain Reservoir Water Rights;

(5)    reducing as much as possible or potentially eliminating the extent to which
the Green Mountain Reservoir 60 c.f.s. bypass is accounted toward the fill
of the Green Mountain Reservoir Storage Rights, and assuring, to the
extent possible, the refilling of Green Mountain Reservoir to the extent
that such bypass is accounted toward the fill of the Green Mountain
Reservoir Storage Rights; and

(6)    addressing the relative priority of the Green Mountain Water Rights, the
Cities' water rights, and Climax's C.A. 1710 Water Rights in a manner
agreed by the Blue River Decree Parties and Climax; all in a manner that
is consistent with the Blue River Decree.

(Exhibit DW-3, 2013 Agreement at 3 ¶3).

The 2013 Agreement sets forth an agreed upon process for the implementation and

judicial approval of the Protocol.  The Parties agreed to seek a determination that the Protocol is

consistent with the Blue River Decree under this Court's retained jurisdiction, and that any

interested parties have notice and an opportunity to participate in such a proceeding:

(1) the Federal Court, consistent with its retained jurisdiction to interpret and
implement the Blue River Decree, exercise such jurisdiction to determine whether
the Administrative Protocol is consistent with the terms of the Blue River Decree;
and (2) that all interested parties have notice and an opportunity to participate in
such determination with regard to Sections I, II, and III, only, of the
Administrative Protocol" pursuant to the procedures of the 1969 Act.

(Exhibit DW-3, 2013 Agreement at 3 ¶Q)

Accordingly, the Parties to the 2013 Agreement agreed that certain parties to the Blue

River Decree may file in this Court an Application requesting a determination from this Court

that the Protocol is consistent with the Blue River Decree:

> The Blue River Decree Parties will file, concurrent with the filing of the Water
> Court Application, an application and/or petition pursuant to the Federal Court's
> retained jurisdiction to interpret and implement the Blue River Decree, requesting
> (1) a determination that Sections I, II, and III of the Administrative Protocol are
> consistent with the Blue River Decree; and (2) a determination that Section IV of
> the Administrative Protocol is consistent with the Blue River Decree. . . .

(Exhibit DW-3, 2013 Agreement at 5 ¶3.2).

Consistent with the 2013 Agreement, on November 15, 2013, Petitioners filed a petition

("Federal Court Petition") for determination with this Court that the administrative protocol is

consistent with the Blue River Decree.  The Federal Court Petition requests that the Court

determine that Sections I, II, III, and IV of the proposed Protocol are consistent with the Blue

River Decree.  (Doc No. 355 at 2).

Article I of the Protocol contains defined terms and background information concerning

the Blue River Decree.  Article II defines (1) the fill schedule and the end of fill season for Green

Mountain Reservoir's water rights decreed by this Court in Case No. 2782; (2) how Green

Mountain Reservoir's water rights will be administered during and after Green Mountain

Reservoir's fill season; (3) how Green Mountain Reservoir and the Cities' water rights decreed

by this Court in Case Nos. 5016 and 5017 will be operated in response to downstream calls

senior to the Cities' water rights; (4) how Green Mountain Reservoir will be administered if

water is depleted against Green Mountain Reservoir's 1935 storage right; and (5) how Senate

Document 80 "Beneficiary" water rights will operate during the fill season in response to calls downstream of Green Mountain Reservoir prior to, and after 156,645 acre-feet has been accounted for under Article II of the Protocol.  Article III addresses the operation and administration of Green Mountain Reservoir vis-à-vis Climax's water rights decreed by the Summit County District Court in C.A. 1710; and Article IV defines the Cities' replacement obligations when the 1935 Green Mountain first fill and 1935 senior refill storage rights are filling.

Petitioners have also filed an application in State Water Court in Case No. 2013CW3077 Water Division No. 5 ("Water Court Application").  (Exhibit DW-4, Application at 4 ¶1). Unlike the Federal Court Petition, the State Water Court Application asks the Water Court to make a "determination confirm that Sections I, II, and III of the . . . Protocol are consistent with the Blue River Decree, and directing that administration be carried out in accordance with Sections I, II and III of the . . . Protocol." (Exhibit DW-4, Application at 4 ¶1, 20 ¶8.3)  The Water Court Application expresses the Petitioners' intent to stay proceedings involving the Water Court Application until this Court exercises its retained jurisdiction over the Blue River Decree and first enters a determination regarding Section I, II, III of the Protocol is consistent with the Blue River Decree.  (Exhibit DW-4, Application at 21 ¶9.2).  It is the Petitioners' intention, following entry of a decree by this Court, to serve its judgment and order on its determination regarding Articles I, II and III "on the Clerk of the Water Court with a request that the Water Court enter such judgment or order as a judgment or decree of the Water Court so that the State Water officials will administer the decree."  (Exhibit DW-3, 2013 Protocol Agreement at 5 ¶3.2).  Since filing the Federal Court Petition and the Water Court Application, twelve

entities have filed statements of opposition, seven of which have filed statements of opposition in

support.

> **3.    Because the State and Division Engineers are only governed by statutes and decrees and not by stipulations, a decree defining operations under the Blue River Decree is necessary.**

The State Engineer's Office is responsible for administration and distribution of waters of

the State and the Division Engineer within each water Division, including Water Division 5,

where Green Mountain Reservoir is located, is accomplished through the Division Engineer for

the respective Water Division.   C.R.S. § 37-92-301(1).   *See also* C.R.S. § 37-80-102(1)(h)

(referring to State Engineer's "general supervisory control over measurement, record-keeping,

and distribution of the public waters of the state.").

Under § 37-92-301(3), C.R.S., the State Engineer's Office is responsible only for the

administration of decrees entered and approved by a court:

> [i]n the distribution of water, the division engineer in each division and the state engineer shall be governed by the priorities for water rights and conditional water rights established by adjudication decrees entered in proceedings concluded or pending on June 7, 1969, and by the priorities for water rights and conditional water rights determined pursuant to the provisions of this article.

C.R.S. § 37-92-301(3) (emphasis added). One of the three fundamental principles of Colorado's

prior appropriations system is the principle that "the State Engineer, Division Engineers, and

Water Commissioners administer the waters of the natural stream in accordance with the judicial

decrees and statutory provisions governing administration." *Empire Lodge Homeowners' Ass'n*

*v. Moyer*, 39 P.3d 1139, 1147 (Colo. 2001) (emphasis added).  *See also* C.R.S. § 37–92–501(1).

"The State and Division Engineers do not determine water rights; they merely administer the

waters of the state in accordance with court decrees." *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1210 (Colo. 2010).

Where a decree is silent as to how it may be administered the State and Division Engineers may use their discretion in determining how to administer the water rights subject to a decree. *See North Sterling Irrigation Dist. v. Simpson*, 202 P.3d 1207, 1214 (Colo. 2009) (finding that where decree is silent as to the water year to be used in the administration of a decreed water right, the State and Division Engineers may make their own determination).

Due to these principles of Colorado water law, the Court is being asked to enter a decree finding that the Protocol is consistent with the Blue River Decree and Senate Document 80. Such Decree is necessary because the Blue River Decree does not, with sufficient detail, establish how water rights and structures under the decree are to be operated and administered, and without a decree defining the operations of the water rights and structures, the State and Division Engineers might administer the Blue River Decree in a manner inconsistent with the objectives of the Blue River Decree.

In order for the State and Division Engineers to be required to administer the Protocol, the Protocol must take the form of a formal decree entered by a court. A private settlement agreement between the parties is not enough. Under Colorado law, private agreements, including stipulations to a decree, are contracts, binding upon their signatory parties, and interpreted under contract law principles. *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 676 (Colo. 2011) (citing *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997)). Stipulations do not bind those who are not a party to such stipulation a stipulation. *USI Props. E., Inc.,* 938 P.2d at 175. Thus, in order for the State

and Division Engineers to administer operations under Blue River Decree, a decree specifically defining those operations is necessary. If a decree is entered finding that the operations established under the Protocol is consistent with the Blue River Decree and Senate Document 80, the State and Division Engineers will then be governed by the Protocol under C.R.S. § 37-92-301(3).

## B. WHAT IS THE BASIS OF JURISDICTION?

### 1. Introduction

The basis for jurisdiction is 28 U.S.C. §§ 2201, 1331, and 1345, and the Court's retained jurisdiction under the Blue River Decree. The Court continues to have jurisdiction of this matter under these statutes, as C.A. 2782 was filed prior to the McCarran Amendment. Because the McCarran Amendment is not retrospective in effect, this Court's jurisdiction is unaffected by the McCarran Amendment. In addition, for the reasons discussed below, the Court should not abstain from exercising its jurisdiction under the *Colorado River* abstention doctrine and *Brillhart/Mhoon* doctrine.

### 2. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1345, and 2201, and its retained jurisdiction under the Blue River Decree.

When the complaint in C.A. 2782 was filed on June 10, 1949, the Court's jurisdiction was invoked under 28 U.S.C. § 1345 (providing that "[e]xcept as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.") and the Declaratory Judgment Act, 28 U.S.C. §§ 2201—2202. (Compl, C.A. 2782 at 1 (D. Colo. Jun. 10, 1949)). When the Court entered the Blue River Decree, it retained jurisdiction for the purposes of "effectuating the objectives of this Final

Decree." (Final Decree, Civil Nos. 2782, 5016&5017 at 17 (D. Colo. Oct. 12, 1955)).  Because

this matter involves a request for a determination that the Protocol is consistent with the Senate

Document 80, a statute of the United States, the Court also has original jurisdiction under 28

U.S.C. § 1331.

Petitioners also invoke the Court's jurisdiction under its retained jurisdiction established

under the Blue River Decree, and 28 U.S.C. § 1345.  Accordingly, even if the Court has

discretion to decline jurisdiction under 28 U.S.C. §§ 2201 and 1331, it does not under the other

jurisdictional bases invoked by the Petitioners.[1]

### 3.  Abstention is not warranted.

#### a.  The Court should not abstain from exercising its jurisdiction under the *Colorado River* Abstention doctrine

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976),

involved a complaint commenced by the United States under 28 U.S.C. § 1345 in federal district

court, claiming reserved water rights on behalf of several Indian Tribes. *Id*. at 805-806.

Subsequently, one of the defendants filed an application in Colorado state water court, and

moved to join the United States.  *Id*. at 806.  With the joinder of the United States in state court,

the McCarran Amendment was triggered, and several defendants in the federal case then moved

to dismiss based on that joinder.  *Id*.  On grant of certiorari, the U.S. Supreme Court concluded

that the federal court should abstain based on four factors, which subsequently became known as

the "*Colorado* Abstention Doctrine."  *Id*. at 806, 818.

---

[1] This brief does not address the case and controversy requirements under Article III of the U.S. Constitution as this
issue is addressed in the briefs of other parties.

Denver Water's Brief Re: Questions Posed by the Court
Consolidated Case Nos. 2782, 5016 & 5017

Under the *Colorado* Abstention Doctrine a federal court may decline to exercise its jurisdiction in the interest of "(w)ise judicial administration, " in certain exceptional circumstances "involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." *Id*. at 817 (emphasis added). The four factors that must be considered are: (1) the presence of a concurrent state proceeding; (2) inconvenience of the federal forum; (3) desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Id*. (citing references omitted). No one factor is determinative. *Id*.

The *Colorado River* Court concluded that the federal court should not exercise jurisdiction due to the pending state court action; the number of state defendants and state water rights involved; the distance of the federal court forum from the state water court; and United States' participation in other Colorado state water courts. *Id*. at 820. In applying the first factor, the Court noted "the apparent absence of any proceedings in the [federal] District Court, other than the filing of the complaint, prior to the motion to dismiss." *Id*. at 820. The Supreme Court qualified that it was not deciding "whether, despite the McCarran Amendment, dismissal would be warranted if more extensive proceedings had occurred in the District Court prior to dismissal. . . ." *Id*.

*Colorado River* is distinguishable from the Federal Court Petition. The Federal Court Petition was filed under the Court's previously retained jurisdiction, and based on this Court's long history of exercising jurisdiction in matters involved Green Mountain Reservoir and Senate Document 80. The Federal Court Petition does not involve a claim for a water right, but rather a request for a determination that the Protocol is consistent with the terms of this Court's Blue

River Decree and Senate Document 80. While there is a concurrent state court action pending, the actions are not perfectly parallel because unlike the Federal Court Petition, the State Water Application does not include a claim that Article IV of the Protocol is consistent with the Blue River Decree and Senate Document 80. The Federal Court Petition is also distinguishable from the State Court Application in that the purpose of the Federal Court Petition is to obtain a determination from this Court that the Protocol is consistent with the Blue River Decree and Senate Document 80, prior to obtaining a final decree in State Water Court. Also, no party has sought to join the United States to a State Court action involving a determination of Article IV of the Protocol, which is only at issue in the Federal Court Petition. Thus, the United States may invoke, and this Court may exercise its jurisdiction under 28 U.S.C. §§ 1331, 1345, and 2201.

### b. The Court should not abstain from exercising its jurisdiction under the Declaratory Judgment Act.

The Court should exercise its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and not abstain from exercising its jurisdiction under the *Brillhart* doctrine. The *Brillhart* doctrine provides that where another action is pending in which all matters in controversy between the parties could be fully adjudicated, a federal district court may under its discretion decline to resolve a declaratory judgment action under 28 U.S.C. § 2201. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942); *see also Wilton v. Seven Falls Co.*, 525 U.S. 277, 287-89 (1995). The nature of the relief requested by the plaintiff, not the jurisdictional basis of the suit is the touchstone. *United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002). If the relief requested is primarily declaratory in nature then the action is deemed a declaratory judgment action for the purposes of applying the *Brillhart* doctrine. *Id.* (citing *Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437, 440 (10th Cir. 1992). In contrast, if

the action seeks coercive relief, which invokes the federal judiciary's "virtually unflagging obligation to exercise its jurisdiction," then a federal court may not decline to exercise its jurisdiction. *Id.*

The relief requested here is both coercive in nature and declaratory. It is declaratory in that the Petitioners request an order from the Court that the Protocol's provisions are consistent with the Blue River Decree and Senate Document 80. However, it is also coercive in nature because the Petitioners seek through the Protocol to bind the State Engineer to a permanent administration of the water rights adjudicated in Civil Nos. 2782, 5016 and 5017. "Coercive relief" is defined as "active judicial relief, either legal or equitable, that the government will enforce." BLACK'S LAW DICTIONARY at 1036 (West 2000). The coercive relief will take the form of a decree from this Court which through Colorado's resume/notice process, will have binding effect on the Petitioners and all other persons who could have participated in this matter, but did not. The effect, as discussed above, will require the State and Division Engineers to follow the Protocol in administering the Cities' and the United States' water rights decreed in the Consolidated Cases.

If the Court finds that the relief requested in the Petition is not coercive in nature, the following five factors must be considered in applying *Brillhart*: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there an alternative remedy which is better or

more effective. *State Farm Fire & Cas.Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

Most of these factors weigh in favor of this Court retaining jurisdiction over the declaratory judgment pled in the Petition. First, a declaratory judgment action confirming that the Protocol's provisions are consistent with the Blue River Decree and Senate Document 80 would serve to resolve disputes between the Petitioners concerning the administration of Green Mountain Reservoir and the Cities' water rights decreed in the Consolidated Cases. The Petitioners in the State Water Court Application and the Federal Petition are the same so a declaration from this Court would efficiently resolve the State Court Application as to the Petitioners. *Las Cruces*, 289 F.3d at 1183 (finding that the first two *Mhoon* factors are drive by the degree of identity of parties and issues in the concurrent proceedings).[2]

Second, a declaration as requested by the Petitioners would serve to clarify the legal relations at issue. The Federal Petition seeks a determination regarding all four of the Protocol's provisions, whereas the State Court Application only requests a determination regarding Articles I-III of the Protocol. A federal declaratory judgment regarding the Protocols' provisions would serve a beneficial purpose in clarifying in a single action, how the Cities' water rights and the United States' water rights decreed in the Consolidated Cases should be administered and operated in the future. Additionally, such a determination will also help to resolve uncertainties

---

[2] At this time, only one of the ten opposers who have filed statements of opposition to the Water Court Application have filed a statement of opposition to the State Water Application and Federal Petition. The State Water Application gave notice of the Petitioners' intent to stay the State Water Application and first obtain a determination from this Court. At this early stage in the case, Petitioners anticipate that the remaining opposers will become parties to the Federal Petition.

concerning changes in administration and operations, which could adversely affect Denver Water's water rights and will allow Denver to better plan for its future water supply.

Third, the parties seek no procedural advantage in requesting this Court to first resolve whether the Protocol's terms are consistent with the Blue River Decree and Senate Document 80. Rather, the Petitioners merely seek to follow a procedure similar to that used with this Court in previous disputes in the Consolidated Cases. (Mem. Opinion and Order (D. Colo. Nov. 2, 1977); Decree, C.A. 2782, 5016 & 5017 (D. Colo. Feb. 9, 1978); and 1964 Decree).

As for the fourth and fifth *Mhoon* factors, it is currently unclear whether the procedural use of a declaratory action would increase friction between the federal and state courts and improperly encroach upon state jurisdiction. At this time, this Court is being asked to interpret and declare the meaning of its own decree; an act, which this Court has undertaken in the past pursuant to its retained jurisdiction. To date, this Court's exercise of its retained jurisdiction has not caused friction with the State Water Court, so it remains to be seen how or why it may cause friction now. Nor, is it clear that there is an alternative remedy which is better or more effective. The Parties to the Protocol and the Protocol Agreement have agreed that this Court's exercise of its jurisdiction is an appropriate forum to resolve their disputes which have arisen in the Consolidated Cases and to implement a consent decree which will help to resolve those disputes. The Petitioners could ask the State Water Court to address the Protocol's provisions, but this Court appears better suited, as the Petitioners seek a determination from this Court as to whether the Protocol correctly defines how the rights decreed in the Consolidated Cases should be administered.

c. **The Court should not abstain from resolving the question of whether the Protocols' provisions are consistent with Senate Document 80.**

The Federal Court Petition requests a determination that the Protocol's provisions are consistent with Senate Document 80, which has been codified into law under 43 U.S.C. § 620j, P.L. 113-74 (Apr. 11, 1956).  Section 620j provides:

> The Final Judgment, Final Decree and stipulations incorporated therein in the consolidated cases of *United States of America v. Northern Colorado Water Conservancy District, et al.*, Civil Nos. 2782, 5016 and 5017, in the United States District Court for the District of Colorado, are approved, shall become effective immediately, and the proper agencies of the United States shall act in accordance therewith.

Based on § 620j, the Petitioners invoke federal question jurisdiction under § 1331 as this matter arises under a federal statute.  For a case to arise under  § 1331, the complaint must establish one of two things: (1) that federal law creates the cause of action; or (2) that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Fistenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012) (finding *pro se* state court complaint requiring mandamus under state law to require City to enforce its code did not trigger § 1331); *Gilmore v. Weatherford*, 694 F.3d 1160, 1170 (10th Cir. 2012) (holding that court had federal question jurisdiction over conversion claim, but not state law accounting claim, in action brought by members of Quapaw Tribe against sand and gravel company which was allegedly unlawfully removing mine tailings from Indian held lands) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)).   Here, there is no federal law creating a cause of action, so only the second prong of the "arising under" test is applicable.

With regard to the second prong, "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the

advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 113 (2005); *Gilmore*, 694 F.3d at 1171. "The 'substantial question' branch of federal question jurisdiction is exceedingly narrow—a 'special and small category' of cases." *Empire*, 547 U.S. at 699-700 (holding that case did not qualify for federal question jurisdiction because question was fact bound and situation specific and the state court in which the personal-injury suit was lodged is competent to apply federal law); *Gilmore*, 694 F.3d at 1171.

Petitioners' right to relief claimed in the Federal Petition necessarily depends on resolution of a substantial question of federal law. If the Protocol conflicts with Senate Document 80, then the request for relief here must be denied. Further, the United States is a party to these matter, which is a key factor in finding a substantial federal issue. *Gilmore*, 694 F.3d at 1174. For this reason, the federal court has jurisdiction under § 1331 as well.

### 4. The *McCarran* Amendment does not preclude the Court from exercising jurisdiction.

Under the present posture of the application filed in this matter, the McCarran Amendment, 43 U.S.C. § 666, does not affect this Court's jurisdiction. Enacted on July 5, 1952, the McCarran Amendment provides:

> Consent is given to <u>join</u> the United States as a defendant <u>in any suit</u> (1) <u>for the adjudication of rights to the use of water</u> of a river system or other source, or (2) for the <u>administration of such rights</u>, where it appears that the <u>United States is the owner</u> of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit.

43 U.S.C. § 666 (emphasis added).

The McCarran Amendment in its use of the word "join," only authorizes the joinder of the United States by other parties, and specifies that the United States may only be joined to matters involving the "adjudication of rights to the use of water" or "for the administration of such rights, where . . . and the United States is a necessary party to such suit."  43 U.S.C. § 666. The McCarran Amendment, in allowing the United States to be joined, does not bar the United States from filing actions as a plaintiff in United States District Court.  *See* 19 Fed. Proc., L. Ed. § 46:520 (discussing effect of McCarran Amendment where United States is a plaintiff) and 29 Fed. Proc., L. Ed. § 66:472 (stating that the "McCarran Amendment does not preclude federal courts from exercising jurisdiction regarding water rights claims . . . .")  The United States is authorized to file the declaratory action in this matter.  Although the United States is a party to the State Water Application, which requests similar relief not including a determination regarding Article IV of the Protocol, the State Court Application, as pled by the Petitioners, will only proceed after the Federal Court first resolves the Federal Petition.  Therefore the McCarren Amendment should not have an effect on this Court's jurisdiction.

## C.  WHAT COURT IS BEST?

The federal court is better suited to exercise its jurisdiction over this matter at this time because it is being asked not only to decipher its own decree, but also confirm that the Protocol, which is intended to provide a permanent solution to the administration of Green Mountain Reservoir under the Blue River Decree, is consistent with and further effectuates the Blue River Decree entered by this Court and Senate Document 80.  This Court is best suited to exercise its jurisdiction because of its long history of retaining jurisdiction over matters involving the

effectuation of the Blue River Decree, despite Denver's many attempts to remove this matter to State Court.

Although the Colorado Supreme Court has previously ruled that other courts may "interpret" the Blue River Decree, they may not "modify or impair existing decrees, either by enlarging or diminishing them; [and must] leave[] them just as they were without interference." *City of Grand Junction v. City & County of Denver*, 960 P.2d 675, 683 (Colo. 1998) (holding that State Water Court may interpret Blue River Decree in determining whether it bars new appropriation by Denver at Dillon Reservoir). Here, the federal court is being asked to not only interpret the Blue River Decree. It is also being asked to make a determination that the Protocol, which effectively fleshes out the Blue River Decree, is consistent with the Decree. The Court has performed this function through previous decrees entered in 1964 and 1978. (Order, Case Nos. 2782, 5016&5017 (D. Colo. Apr. 1, 1964); Order, Case Nos. 2782, 5016 & 5017 (D. Colo. Feb. 9, 1978)).

Despite numerous attempts by Denver to remove portions of the Consolidated Cases back to State Court, this Court has repeatedly declined to do so. (1955 Order Denying Remand; 1962 Order Den. Mot. for Remand of Inj). This Court's refusal to relinquish jurisdiction is now the law of the case. "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Rimbert v. Eli Lilly & Co*., 647 F.3d 1247, 1251 (10th Cir. 2011). This doctrine is designed to promote finality and prevent re-litigation of previously decided issues, but does not serve to limit a court's power. *Id*. The Court may depart from the law of the case when there is: (1) new and different evidence; (2) intervening controlling authority; or (3) a clearly erroneous prior decision

which would work a manifest injustice. *Id.* At present, there is no new or different evidence, intervening or controlling authority applicable to this matter, or a clearly erroneous prior decision that would work a manifest injustice to any party to this matter.

### D. WHAT PROCESS DO YOU WANT THE FEDERAL COURT TO USE?

The Court should use the same process as used by the Water Court under the 1969 Act, and as required by this Court's 1977 Order for Denver's diligence applications. Under that process, "[a]ny person who desires a determination of a water right . . . shall file with the water clerk a verified application setting forth facts supporting the ruling sought, a copy of which shall be sent by the water clerk to the state engineer and the division engineer." C.R.S. § 37-92-302(1)(a).[3] Following the filing of an application, "[a]ny person, including the state engineer," may oppose the application by filing "with the water clerk a verified statement of opposition setting forth facts as to why the application should not be granted or why it should be granted only in part or in certain conditions." C.R.S. § 37-92-302(1)(b). Statements of opposition must be filed "by the last day of the second month following the month in which the application is filed." C.R.S. §37-92-302(1)(c). Notice of the Application will be provided by the Water Resume, a monthly publication prepared by the Water Clerk, and in the newspaper of every county affected, as required by C.R.S. §§ 37-92-302(3)(a), (b), (c)(I)(D).

---

[3] The term "determination of a water right" has been construed broadly by the Colorado Supreme Court to include applications "to construe and make determinations regarding the scope of water rights adjudicated in prior decrees." *Southern Ute Indian Tribe v. King Consol. Ditch Co.*, 250 P.3d 1226, 1234 (Colo. 2011) (holding that application filed for determination of whether original decree included stock watering uses, and wintertime use, was authorized by C.R.S. § 37-92-302(1)(a)). Such determinations need not result in the assignment of new priority rights. *Id.*

**E.  WHAT KIND OF NOTICE IS REQUIRED THAT SATISFIES DUE PROCESS AND GIVES OPPORTUNITY TO OBJECT?**

Under Colorado law, resume notice and newspaper service is sufficient to provide notice to potentially interested parties. *See King Consol. Ditch Co*., 250 P.3d at 1235.  This procedure is designed to notify all water users on the stream system whose rights may be affected by an application, and allow for any person to participate in the water right proceeding and to oppose the application. *Id*. (citing *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 24 (Colo. 1996)).

Personal service under Colo. R. Civ. P. Rules 4 and 19 is required in water matters only in limited circumstances. *Id.* at 1235. For example, personal service has been required in matters involving the termination, by abandonment, of a person's ownership interest in a water right, *Gardner v. State*, 614 P.2d 357, 361 (Colo. 1980), or in an injunction and declaratory judgment action where relief is sought against a named party, as opposed to an application affecting all water rights on a stream system. *King Consol. Ditch Co*., 250 P.3d 1235.

The United States Supreme Court has previously been confronted with Colorado's case-by-case adjudication method, and its resume notice and newspaper publication procedure and upheld Colorado's system. *Colorado River*, 424 U.S. 800, 819-820 (citing *United States v. Dist. Court for Water Div. No. 5*, 401 U.S. 527, 529 (1971) (holding that Colorado's adjudication system with monthly publication of water right applications constitutes a general adjudication for the purpose of the McCarran Amendment); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 820 (1976) (approving the 1969 Act's month by month general adjudication system)).

## VI.     CONCLUSION

WHEREFORE, this Court should determine that (1) it has jurisdiction to act under 28 U.S.C. §§ 1331, 1345, and 2201, and its retained jurisdiction under the Blue River Decree, to make a determination whether the Protocol is consistent with the Blue River Decree and Senate Document 80; (2) determine that it is better suited to resolve this matter based upon its long history of exercising jurisdiction to effectuate the Blue River Decree; (3) utilize the same process established for Denver's diligence filings under its 1977 Order; and (4) determine that the parties' use of the Colorado State Resume Notice and newspaper process to notify potentially interested parties is sufficient to provide notice to interested parties.

Respectfully submitted this 14th day of February, 2014.

> Patricia L. Wells, General Counsel
> Casey S. Funk, No. 11638
> Daniel J. Arnold, No. 35458
>
> By:   *s/Daniel J. Arnold*
> Attorneys for Applicant, City and County of Denver, acting by and through its Board of Water Commissioners
> 1600 W. 12th Avenue
> Denver CO 80204
> Telephone: (303) 628-6460
> Daniel.arnold@denverwater.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2014, I electronically filed **DENVER WATER'S BRIEF RE: QUESTIONS POSED BY THE COURT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Ann M. Rhodes    amr@bhgrlaw.com

Anne Jamieson Castle    acastle@hollandhart.com, IntakeTeam@HollandHart.com

Austin C. Hamre    ahamre@dodpc.com, dodpc@dodpc.com

Barry Alan Schwartz    barry.schwartz@denvergov.org, catricia.hoy@denvergov.org, raquel.trujillo@denvergov.org, stefanie.raph@denvergov.org

Bennett W. Raley    bwraley@mac.com

Brian Max Nazarenus    bnazarenus@rcalaw.com, dstalnaker@rcalaw.com, kcanjar@rcalaw.com, pdavis@rcalaw.com

Chad Matthew Wallace    chad.wallace@state.co.us, terrie.sandoval@state.co.us

Charles B. White    cwhite@petros-white.com, knew@petros-white.com

Christopher Graham McAnany    howard@dwmk.com, mcanany@dwmk.com

Christopher L. Thorne    cthorne@hollandhart.com, IntakeTeam@hollandhart.com

David G. Hill    dgh@bhgrlaw.com, pag@bhgrlaw.com

Donald E. Phillipson    dbls99@comcast.net

Douglas L. Abbott    dabbott@hollandhart.com, IntakeTeam@HollandHart.com, jmarsh@hollandhart.com, mmarrow@hollandhart.com

Frederick G. Aldrich    faldrich@aldrich-law.com, kdavis@aldrich-law.com

Gail Rosenschein    gail.rosenschein@denverwater.org

James J. DuBois    james.dubois@usdoj.gov, efile_nrs.enrd@usdoj.gov, laurie.himebaugh@usdoj.gov

James R. Montgomery      jmontgomery@mwhw.com, rolson@mwhw.com

Jason V. Turner      jturner@crwcd.org, lnichols@crwcd.org

Jeffrey Flinn Davis      jeff.davis@denverwater.org

John Dorsey Walker      jdorseywalk@yahoo.com

John Leonard Watson      jwatson@bw-legal.com, bbiondolillo@bw-legal.com, ssoltero@bw-legal.com

Julie Elise Maurer      jmaurer@rcalaw.com

Karl D. Ohlsen      kohlsen@chp-law.com, sKirschenbaum@chp-law.com

Kathleen M. Morgan      kathi_M8@yahoo.com, merci@moriarty.com, myrna@moriarty.com

Kirsten Marie Kurath      kmkurath@wth-law.com, mbernal@wth-law.com

Lisa M. Thompson      lthompson@troutlaw.com

Mark A. Hermundstad      mherm@wth-law.com, clr@wth-law.com

Mary Mead Hammond      mhammond@chp-law.com, skirschenbaum@chp-law.com

Meghan Nichols Winokur      mwinokur@hollandhart.com, IntakeTeam@HollandHart.com

Michael John Gustafson      mgustafson@springsgov.com

Nathan A. Keever      howard@dwmk.com, keever@dwmk.com

Olivia Denton Lucas      olivia.lucas@faegrebd.com

Peter Cheney Fleming      pfleming@crwcd.org, lnichols@crwcd.org

Robert James Pohlman      rpohlman@swlaw.com

Robert V. Trout      rtrout@troutlaw.com

Roger T. Williams , Jr      rwilliams@rcalaw.com, apalius@rcalaw.com, dmrobertson@rcalaw.com, dstalnaker@rcalaw.com, kcanjar@rcalaw.com

Denver Water's Brief Re: Questions Posed by the Court
Consolidated Case Nos. 2782, 5016 & 5017

Stanley W. Cazier      cazier_mcgowan@hotmail.com

William A. Paddock      bpaddock@chp-law.com, skirschenbaum@chp-law.com


*s/Tracy Gomez*


eFiled per C.R.C.P. Rule 121 with a duly signed original on file at the Denver Water Department, Legal Division.