# EXHIBIT DW-1

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**

I.    **BLUE RIVER DECREE BACKGROUND**

**I.A.**    **Definitions**.  The following definitions apply for purposes of this Administrative Protocol ("Protocol").  In addition, terms defined elsewhere in this Protocol shall have the meanings there provided.

**I.A.1.**    **"Blue River Decree":**  means the Findings of Fact, Conclusions of Law, and Final Judgment entered on October 12, 1955, in Consolidated Cases No. 5016 and 5017 and the Findings of Fact and Conclusions of Law and Final Decree entered on October 12, 1955, in Consolidated Cases Nos. 2782, 5016, and 5017 ("Consolidated Cases") by the United States District Court, District of Colorado ("1955 Decree"), and all supplemental or amendatory orders, judgments, and decrees in said cases, including, without limitation, the Decree entered on April 16, 1964, therein ("1964 Decree") and the Supplemental Judgment and Decree dated February 9, 1978 ("1978 Judgment").

**I.A.2.**    **"Blue River Decree Parties":**  means, for purposes of this Protocol, the following: the United States of America ("United States"), the Cities, the Northern Colorado Water Conservancy District, the Colorado River Water Conservation District, the Grand Valley Water Users Association, the Orchard Mesa Irrigation District, the Palisade Irrigation District, the Grand Valley Irrigation Company, and the Middle Park Water Conservancy District.

**I.A.3.**    **"Blue River Decree Stipulations" or "Stipulations":**  means the 1955 Stipulation and 1964 Stipulation entered into among the parties to the Consolidated Cases in connection with the Blue River Decree, which are further defined as follows:

**I.A.3.a.**    "1955 Stipulation":  means the Stipulation among the parties to the Consolidated Cases entered into on October 5, 1955, and amended on October 10, 1955, which is set forth in full in paragraph 17 of the Findings of Fact and Conclusions of Law of the 1955 Decree.

**I.A.3.b.**    "1964 Stipulation":  means the Stipulation among the Stipulating Parties dated April 16, 1964, in the Consolidated Cases.

**I.A.4.**    **"Bypassed Storage Water":**  means bypasses of inflow to Green Mountain Reservoir between the Start of Fill Date and End of Fill Season that have been accounted toward the 1935 First Fill Storage Right pursuant to direction from the Division Engineer because they were neither used to generate electrical energy at the Green Mountain Reservoir Powerplant nor bypassed to satisfy senior water rights.  Bypasses made at any time to the extent necessary to satisfy a legal demand or call of a senior downstream water right and bypasses of up to 60 c.f.s. made from May 1st through the end of the irrigation season shall not be considered Bypassed Storage Water, nor shall such bypasses be accounted toward any of the Green Mountain Reservoir Storage Rights.

**EXHIBIT A**

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**I.A.5.** **"C.A. 1710 Water Rights":** means those water rights decreed on October 26, 1937, by the Summit County District Court in Civil Action No. 1710, including water rights adjudicated by Climax Molybdenum Company, a Delaware Corporation ("Climax"), for milling and mining purposes at the Climax mine near Leadville, Colorado ("Climax C.A. 1710 Water Rights"). The Climax C.A. 1710 Water Rights are as follows:

| Water Right | Appropriation Date | Adjudication Date | Amount |
|---|---|---|---|
| **Supply Canal No. 1** | | | |
| Humbug Creek | 08-15-1935 | 10-26-1937 | 20.0 cfs |
| Mayflower Creek | 08-15-1935 | 10-26-1937 | 30.0 cfs |
| Clinton Creek | 08-15-1935 | 10-26-1937 | 50.0 cfs |
| Other Drainages into Canal | 08-15-1935 | 10-26-1937 | 20.0 cfs |
| **Supply Canal No. 2** | | | |
| Searle Gulch | 08-15-1935 | 10-26-1937 | 35.0 cfs |
| Kokomo Gulch | 08-15-1935 | 10-26-1937 | 25.0 cfs |
| Other Drainages into Canal | 08-15-1935 | 10-26-1937 | 10.0 cfs |
| **Tenmile Diversion Ditch No. 1** | | | |
| McNulty Ditch | 06-04-1936 | 10-26-1937 | 15.0 cfs |
| Transferred to West Gravity Line | 06-04-1936 | 10-26-1937 | 20.0 cfs |
| **Tenmile Diversion Ditch No. 2** | | | |
| Transferred to West Gravity Line | 06-04-1936 | 10-26-1937 | 20.0 cfs |
| **Storage of the amounts above in:** | | | |
| Robinson Reservoir | | | 3,136 ac-ft |
| Chalk Mountain Reservoir | | | 204.1 ac-ft |

The water rights listed above are subject to the change of water rights decreed January 8, 2001, in consolidated Cases No. 92CW233 and 92CW336.

**I.A.6.** **"Cities":** means the City and County of Denver, acting by and through its Board of Water Commissioners ("Denver Water"), and the City of Colorado Springs, acting through its Utilities Enterprise ("CS-U").

**I.A.7.** **"Cities' Depletions":** means diversions or storage by the Cities in the exercise of their decreed water rights pursuant to the Blue River Decree and Blue River Decree Stipulations. The Cities must pay power interference charges to the United States on account of the Cities' Depletions in accordance with the Power Interference Agreements, and must hold water in storage to the extent of the Cities' Depletions and provide replacement water to assure the satisfaction of the 1935 First Fill Storage Right. In certain circumstances as provided in this Protocol, all or part of the Cities' Depletions may be considered to "Deplete Against the 1935 First Fill Storage Right." The Cities' Depletions are separate from the Contract Depletions.

**I.A.8.** **"Cities' Replacement Obligation":** is defined in Paragraph IV.A.1.b of this Protocol.

**I.A.9.** **"Contract Depletions":** means depletions resulting from diversions or storage upstream from Green Mountain Reservoir by certain West Slope water users ("City

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

Contract Beneficiaries") pursuant to contractual arrangements by which Denver Water or CS-U replaces such depletions ("City Replacement Contracts"). The Cities must pay power interference charges to the United States on account of the Contract Depletions in accordance with the Power Interference Agreements, and must hold water in storage to the extent of the Contract Depletions and provide replacement water to assure the satisfaction of the 1935 First Fill Storage Right. Responsibility for payment of power interference charges, as between the Cities and the City Contract Beneficiaries, shall be in accordance with the City Replacement Contracts, and nothing in this Protocol is intended to alter the terms of the City Replacement Contracts. In certain circumstances as provided in this Protocol, all or part of the Contract Depletions may be considered to "Deplete Against the 1935 First Fill Storage Right." The Contract Depletions are separate from the Cities' Depletions.

      **I.A.10.**   **"CS-U's 1948 Blue River Water Rights":** means the following water rights:

      **I.A.10.a.**   "Continental-Hoosier Project storage rights": means the May 13, 1948 storage water rights adjudicated to Upper Blue Lake, Lower Blue Lake, Spruce Lake Reservoir, and Mayflower Lake Reservoir in Civil Actions No. 1805 and 1806 by the Summit County District Court on March 10, 1952, and confirmed by the Blue River Decree.

      **I.A.10.b.**   "Continental-Hoosier Project direct flow water rights": means the May 13, 1948 direct flow water rights through the Crystal Ditch, Spruce Ditch, McCullough Ditch, East Hoosier Ditch, Hoosier Ditch, and Hoosier Tunnel adjudicated in Civil Actions No. 1805 and 1806 by the Summit County District Court on March 10, 1952, and confirmed by the Blue River Decree.

      **I.A.11.**   **"Deplete Against the 1935 First Fill Storage Right":** means the method, pursuant to the 1955 Stipulation, 1955 Decree, paragraph 4 of the 1964 Decree, and the Power Interference Agreements, by which the Cities may, with the approval of the Secretary, notwithstanding a river call instituted by the United States pursuant to this Protocol, deplete water upstream from Green Mountain Reservoir through exercise of the Cities' water rights pursuant to the Blue River Decree and Stipulations in an amount up to the volume the United States would otherwise have stored in Green Mountain Reservoir pursuant to the 1935 First Fill Storage Right, without simultaneously releasing water from replacement storage. Water that the Cities Deplete Against the 1935 First Fill Storage Right is not accounted toward the satisfaction of the 1935 First Fill Storage Right, but is included in the determination of the End of Fill Season pursuant to the provisions of Paragraph II.A.3.b.v below. The provisions of Paragraph II.D below apply in the administration of the 1935 First Fill Storage Right when the Cities' Depletions and Contract Depletions are considered to Deplete Against the 1935 First Fill Storage Right.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**I.A.12.** **"Denver Water's 1946 Blue River Water Rights":** means the following water rights[1]:

**I.A.12.a.** "1946 Dillon Reservoir storage right": means the June 24, 1946 storage water right adjudicated in Civil Action Nos. 1805 and 1806 by the Summit County District Court on March 10, 1952, and confirmed by the Blue River Decree.

**I.A.12.b.** "1946 Blue River Diversion Project direct flow water right": means the June 24, 1946 direct flow water right through the Harold D. Roberts Tunnel (a/k/a Montezuma Tunnel) adjudicated in Civil Action Nos. 1805 and 1806 by the Summit County District Court on March 10, 1952, and confirmed by the Blue River Decree.

**I.A.13.** **"Discretionary Power Diversions":** is defined in Paragraph IV.A.1.f of this Protocol.

**I.A.14.** **"End of Fill Season":** means the date on which the Fill Season for the 1935 First Fill Storage Right is deemed ended, pursuant to Paragraph II.A.3 of this Protocol.

**I.A.15.** **"Exchange and Deplete Upstream":** means the method by which the Cities, in accordance with Paragraph II.C below, and subject to the approval of the Secretary, may, in the exercise of the Cities' water rights, release water from replacement storage (e.g., Williams Fork Reservoir) to satisfy[2] the requirements of a calling water right downstream on the Colorado River and, to the extent that such replacement water is made available to meet the requirement of such calling right,[3] deplete an equivalent volume of water, at an equivalent rate of flow, at their facilities. In certain circumstances, the Cities may Exchange and Deplete Upstream to effectuate their obligations to the City Contract Beneficiaries under the City Replacement Contracts.

**I.A.16.** **"Fill Level":** means the water level elevation in Green Mountain Reservoir determined by the Secretary, in the exercise of the Secretary's reasonable discretion pursuant to applicable law, to be the fill of Green Mountain Reservoir for that water year. The Fill Level is determined by the Secretary, and is not necessarily determined by any restriction or limitation on the maximum operating water surface elevation that may be maintained in Green Mountain Reservoir in a given year because of maintenance, repairs, or dam safety. The Fill Level is not a storage volume.

**I.A.17.** **"Fill Schedule":** is defined in Paragraph II.A.1.a of this Protocol.

---

[1] Nothing in this Protocol should be construed or applied to preclude Denver Water's exercise of its Dillon Reservoir Refill water right adjudicated in Case No. 87CW376 (Water Division No. 5).

[2] As used in this Protocol, the term "satisfy" in relation to calls by senior water rights refers to the amount of water required to be bypassed or delivered to the calling right and not necessarily the amount needed to supply the full decreed rate of flow of the calling right.

[3] Nothing in this Protocol shall limit the Division Engineer's authority to assess reasonable transit losses on the delivery of replacement water as provided by law.

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**I.A.18.**    "<u>Fill Season</u>":  means the period between the Start of Fill Date and the End of Fill Season.

**I.A.19.**    "<u>Green Mountain Reservoir Storage Rights</u>":  means the 1935 First Fill Storage Right, the 1935 Senior Refill Storage Right, and the Junior Refill Storage Right.

**I.A.20.**    "<u>Green Mountain Reservoir Water Rights</u>":    means the following water rights:

**I.A.20.a.**    "<u>1935 First Fill Storage Right</u>":    means the Green Mountain Reservoir storage right with a priority date of August 1, 1935, from the Blue River and its tributaries[4] in the amount of 154,645 acre-feet.

**I.A.20.b.**    "<u>1935 Senior Refill Storage Right</u>":    means the Green Mountain Reservoir storage refill right with a priority date of August 1, 1935, from the Blue River and its tributaries in the amount of 6,316 acre-feet.[5]

**I.A.20.c.**    "<u>1935 Direct Flow Power Right</u>":    means the Green Mountain Reservoir Powerplant direct flow right with a priority date of August 1, 1935, from the Blue River and its tributaries in the amount of 1,726 cubic feet per second ("c.f.s.") for the generation of electrical power at the Green Mountain Reservoir Powerplant.

**I.A.20.d.**    "<u>Junior Refill Storage Right</u>":    means the Green Mountain Reservoir storage refill right with an appropriation date of January 1, 1985, from the Blue River and its tributaries in the amount of 154,645 acre-feet.[6]

**I.A.21.**    "<u>Power Interference Agreements</u>":  means the agreements entered into between the United States and the Cities as part of, or pursuant to, the Blue River Decree and Stipulations for replacement of, or compensation for, electrical energy at the Green Mountain Reservoir Powerplant.

**I.A.22.**    "<u>Probable Run-off</u>":  is defined in Paragraph II.A.1 of this Protocol.

**I.A.23.**    "<u>Secretary</u>":  means the Secretary of the Interior, or the Secretary's designee.

---

[4] For purposes of the definitions in this Paragraph I.A.20, "the Blue River and its tributaries" means all tributaries of the Blue River upstream of Green Mountain Reservoir, as well as Elliott Creek by diversion through the Elliott Creek Feeder Canal, which has a decreed capacity of 90 c.f.s.

[5] The administration and accounting for the United States' exercise of the 1935 Senior Refill Storage Right is not addressed by this Protocol. Agreements among the Blue River Decree Parties regarding water stored pursuant to the 1935 Senior Refill Storage Right are addressed in Section IV.

[6] The administration and accounting for the United States' exercise of the Junior Refill Storage Right is not addressed by this Protocol.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**I.A.24.**    "**Senate Document 80**": means Senate Document No. 80, 75th Congress, 1st Session, January 15, 1937, entitled "Colorado-Big Thompson Project, Synopsis of Report on Colorado-Big Thompson Project, Plan of Development and Cost Estimate Prepared by the Bureau of Reclamation, Department of the Interior."

**I.A.25.**    "**Start of Fill Date**": means the date between April 1st and May 15th fixed by the Secretary as the start of fill of Green Mountain Reservoir under the 1935 First Fill Storage Right.

**I.A.26.**    "**Substitution Agreements**": means the following agreements, as they may be renewed:

**I.A.26.a.**    Memorandum of Agreement No. 2-AG-60-01560 dated December 30, 1991, "Establishing Principles for the Substitution of Water between Green Mountain Reservoir and Williams Fork Reservoir";

**I.A.26.b.**    Memorandum of Agreement No. 2-AG-60-01550 dated December 30, 1991, "Among the City and County of Denver, the U. S. Bureau of Reclamation, Northern Colorado Water Conservancy District, and the Colorado River Water Conservation District";

**I.A.26.c.**    Memorandum of Agreement No. 09AG6C0027 dated February 22, 2010, "Between the United States of America and Colorado Springs Utilities Establishing Principles for the Substitution of Water to Green Mountain Reservoir", and ratifying and approving the Plan of Substitution set forth in:

**I.A.26.d.**    Memorandum of Agreement effective May 15, 2003, between CS-U, the Colorado River Water Conservation District, Denver Water, the Northern Colorado Water Conservancy District, the County of Summit, Vail Summit Resorts, Inc., and the Town of Breckenridge; and in:

**I.A.26.e.**    Memorandum of Agreement effective October 15, 2003, between CS-U, the County of Summit, Vail Summit Resorts, Inc., and the Town of Breckenridge.

**I.A.27.**    "**Upstream of Dillon Junior Beneficiary Rights**":  are defined in Paragraph I.B.3 of this Protocol and are identified in Exhibit 1 attached hereto.

**I.A.28.**    "**Ute**": means the Ute Water Conservancy District, acting by and through the Ute Water Activity Enterprise ("Ute Water Conservancy District").

### I.B.    Cities' Operations.

**I.B.1.**    Pursuant to the Blue River Decree and Stipulations, in order to divert water of the Blue River during the Fill Season notwithstanding their respective priority dates, the Cities must hold water in storage to the extent of the Cities' Depletions and the Contract Depletions until such time as (a) Green Mountain Reservoir achieves a fill pursuant to paragraph 4 of the 1964 Decree; or (b) the Secretary advises the Cities that such water is not necessary to

GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
February 22, 2013

assure the fill. Further, if Green Mountain Reservoir does not achieve a fill, the Cities must provide replacement water to assure the fill. The obligations of the Cities to hold water in storage and to provide replacement water, if necessary, are express conditions on the exercise of the Cities' water rights under the Blue River Decree and this Protocol. The determination, accounting, and operation of the Cities' Replacement Obligation under the Blue River Decree and Stipulations and Substitution Agreements are governed by the terms of those documents and of decrees providing for such substitution operations. The methodology to calculate the volume of replacement water to be provided by the Cities to satisfy their replacement obligations is addressed in Section IV of this Protocol.

I.B.2.    The Cities have entered into the City Replacement Contracts, by which they undertake to replace Contract Depletions or store water for the benefit of the City Contract Beneficiaries upstream of Green Mountain Reservoir as a part of the Cities' Replacement Obligation. Accordingly, for the purposes of this Protocol, the Cities' Replacement Obligation includes the Contract Depletions, and, therefore, the Contract Depletions are excluded from the Senate Document 80 "beneficiary" depletions that are addressed in paragraphs II.A.3.a.iii, II.A.3.b.iii, II.B.1.d, II.B.2.b, II.B.6, II.D.1.c, II.E.1, II.E.2, IV.A.3.a.ii, and IV.A.3.b.i.(c) of this Protocol.

I.B.3.    To ensure the satisfaction of paragraph 2 of the 1964 Stipulation, the Cities have agreed to permit certain West Slope water rights that are (a) located upstream of Dillon Reservoir; (b) junior in priority to June 23, 1946; and (c) not City Contract Beneficiaries (the "Upstream of Dillon Junior Beneficiary Rights") to divert by exchange against the 1946 Dillon Reservoir storage right or the 1946 Blue River Diversion Project direct flow right under certain circumstances and to the extent of a maximum of 80 acre feet of depletions annually. Such diversions and depletions are addressed in Paragraph II.B.3 and Section IV of this Protocol.

I.B.4.    Operations by the Cities pursuant to Sections I, II, and III of this Protocol are consistent with the terms and conditions of the Blue River Decree. Section IV of this Protocol addresses the Cities' Replacement Obligation in order to meet certain requirements of the Stipulations and Blue River Decree.

I.C.    **Downstream Calls.** Pursuant to the Blue River Decree and Stipulations, in order to divert water of the Blue River notwithstanding their priority dates, the Cities must at all times bypass water in quantities sufficient to meet all legal calls of downstream water rights on the Blue River and within Colorado below the confluence of the Blue River and the Colorado River. To satisfy this obligation, the Cities are permitted under the Blue River Decree and Stipulations either: (1) to bypass the lesser of (a) inflow or (b) flow sufficient to satisfy the call, at the Cities' respective diversion structures subject to the call; or (2) with the approval of the Secretary, to provide replacement water to satisfy such legal calls by exchanges from replacement storage in the upper Colorado River basin. To effectuate these operations in satisfaction of the Cities' obligation, such legal calls by water rights with priorities senior to those of the Cities will be administered through Green Mountain Reservoir to curtail the Cities' diversions as provided for herein, regardless of whether the Green Mountain Reservoir Storage Rights are then being exercised.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**I.C.1.**    Paragraph 7(a) of the 1955 Stipulation provides for CS-U to exercise CS-U's Blue River Water Rights notwithstanding the exercise of Denver Water's 1946 Blue River Water Rights, subject to certain terms and conditions. To ensure satisfaction of this provision at times when Denver Water's 1946 Blue River Water Rights are subject to partial curtailment in response to a downstream call, Denver Water and CS-U will operate as provided in Paragraph II.C.3 below.

**I.D.**    **No Exchanges Adjudicated.**    While this Protocol recognizes that certain exchanges may occur pursuant to the Blue River Decree, the Stipulations, and Substitution Agreements, judicial approval or adjudication of this Protocol shall not adjudicate any appropriative rights of exchange and shall not form the basis for appropriation or adjudication of any appropriative rights of exchange.

## II.    ADMINISTRATIVE PROTOCOL

### II.A.    The Fill Schedule and the End of Fill Season.

**II.A.1.**    **Preparation of the Fill Schedule**. Pursuant to paragraphs 4.A and 4.B of the 1964 Decree, and paragraph 4(a) of the 1955 Stipulation, the Secretary shall prepare a fill schedule for Green Mountain Reservoir as follows: each year the Secretary shall determine the quantity of water required to fill Green Mountain Reservoir as of the Start of Fill Date and the probable run-off of the Blue River above Green Mountain Reservoir ("Probable Run-off"), and shall prepare a schedule for the filling of Green Mountain Reservoir in accordance with the United States' rights as provided for in the Blue River Decree. For purposes of this Protocol, the Secretary is not limited to any particular level of probability in determining the Probable Run-off.

**II.A.1.a.**    Satisfaction of the 1935 First Fill Storage Right requires that there be an amount of water (after provision for all prior rights) that, added to the water in storage in Green Mountain Reservoir on the Start of Fill Date (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts), would equal 154,645 acre-feet. The Secretary shall prepare the fill schedule and a plan of operation based upon such fill schedule (together, referred to as the "Fill Schedule"), with the goals of achieving the fill of Green Mountain Reservoir as provided in Paragraph II.A.3.a below, and also, pursuant to paragraph 4 of the 1964 Decree, permitting as much water as possible to be available for upstream rights without impairment of the United States' right to fill Green Mountain Reservoir and to use that reservoir as provided in the documents (as that term is defined in the 1964 Decree), and without impairment of legal calls of downstream water rights.

**II.A.1.b.**    To that end, the Fill Schedule will set forth: (i) the volume of Probable Run-off; (ii) the volume of water that, added to the water in storage in Green Mountain Reservoir on the Start of Fill Date (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts) would equal 154,645 acre-feet; (iii) the volume of Probable Run-off available and allocated for power generation during the Fill Season; and (iv) the projected date of fill of Green Mountain Reservoir.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**II.A.2.**    **Review and Modification of the Fill Schedule.**

**II.A.2.a.**    Prior to April 1st of each year, the Secretary will submit a preliminary operating plan for the ensuing Fill Season to the Blue River Decree Parties and the Division Engineer for their comments. At such time as the Secretary has determined a tentatively designated Start of Fill Date, the Secretary will provide notice to the Blue River Decree Parties and the Division Engineer of (1) the tentative Start of Fill Date and (2) whether the initial Fill Schedule is likely to include an allocation of some volume of water for power generation. Subsequently, the Secretary shall fix the Start of Fill Date and prepare the initial Fill Schedule, and shall provide such information to the Blue River Decree Parties and the Division Engineer. During any period between the tentative Start of Fill Date and the date the Secretary notifies the Division Engineer of the fixed Start of Fill Date and the initial Fill Schedule, the accounting and administration under Section II of this Protocol shall be based on the notice provided by the Secretary of the tentative Start of Fill Date and whether the Fill Schedule is likely to include an allocation of some volume of water for power generation.

**II.A.2.b.**    The Secretary shall thereafter modify the Fill Schedule, including, but not limited to, the projected date of fill of Green Mountain Reservoir, from time to time during the snowmelt season as and, as frequently as, actual run-off conditions and other pertinent considerations indicate that the waters available for filling Green Mountain Reservoir and/or the Probable Run-off available for power generation are materially more or less than originally estimated. The Secretary shall notify the Blue River Decree Parties and the Division Engineer when material modifications have been made to the Fill Schedule.

**II.A.3.**    **The End of Fill Season**. The End of Fill Season shall be the earlier of the dates established by Paragraphs II.A.3.a or II.A.3.b below:

**II.A.3.a.**    The date when either the water level elevation in Green Mountain Reservoir reaches the Fill Level or the following volumes total 154,645 acre-feet:

**II.A.3.a.i**  the water in storage in Green Mountain Reservoir (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts) on the Start of Fill Date; plus

**II.A.3.a.ii** the water stored in Green Mountain Reservoir under the 1935 First Fill Storage Right after the Start of Fill Date (including water so stored pursuant to Paragraph II.D.2 below); plus

**II.A.3.a.iii** the water depleted by exchange upstream of Green Mountain Reservoir, and accounted toward the satisfaction of the 1935 First Fill Storage Right, by Senate Document 80 "beneficiary" water rights with priority dates junior to June 23, 1946, after the Start of Fill Date; plus

**II.A.3.a.iv** Bypassed Storage Water.

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**II.A.3.b.**      The date when a legal call by a water right with a priority date senior to August 1, 1935, fully curtails the 1935 First Fill Storage Right, for seven (7) consecutive days, <u>after</u> the following volumes total 154,645 acre-feet:

**II.A.3.b.i**  the water in storage in Green Mountain Reservoir (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts) on the Start of Fill Date; plus

**II.A.3.b.ii**  the water stored in Green Mountain Reservoir under the 1935 First Fill Storage Right after the Start of Fill Date (including water so stored pursuant to Paragraph II.D.2 below); plus

**II.A.3.b.iii**  the water depleted by exchange upstream of Green Mountain Reservoir, and accounted toward the satisfaction of the 1935 First Fill Storage Right, by Senate Document 80 "beneficiary" water rights with priority dates junior to June 23, 1946, after the Start of Fill Date; plus

**II.A.3.b.iv** Bypassed Storage Water; plus

**II.A.3.b.v** the Cities' Depletions and the Contract Depletions (either directly or by storage) after the Start of Fill Date.

**II.A.3.c.**      After the End of Fill Season, the United States may no longer exercise the 1935 First Fill Storage Right until the next Start of Fill Date.

**II.B.**    <u>General Administration During and After the Fill Season.</u>

**II.B.1.**      <u>Administration/Diversions During the Fill Season When the Fill Schedule Allocates Probable Run-off to Power Generation.</u>  At any time during the Fill Season when the Fill Schedule, as initially prepared or as modified during the snowmelt season, allocates Probable Run-off to power generation, water rights shall be administered as follows:

**II.B.1.a.**      The 1935 First Fill Storage Right will be deemed satisfied, in the context of daily administration, in accordance with the contemplated satisfaction of the 1935 First Fill Storage Right pursuant to the Fill Schedule, as the same may be modified from time to time during the Fill Season; and

**II.B.1.b.**      Water diverted by the United States through the Green Mountain Reservoir Powerplant (other than water released from storage) shall be considered to be diverted in exercise of the 1935 Direct Flow Power Right, with the United States exercising the 1935 Direct Flow Power Right against all water rights with priority dates junior to June 23, 1946, and such power right shall be deemed to be satisfied by flows available as a result of curtailment of

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

water rights with priority dates junior to June 23, 1946.[7] This operation does not constitute, or result in, a subordination of the water right priority of the 1935 Direct Flow Power Right, the 1935 First Fill Storage Right, or the 1935 Senior Refill Storage Right, but allows "as much water as possible to be available for upstream rights without impairment of the United States' right to fill Green Mountain Reservoir and to use that reservoir as provided in" the 1955 Decree and Senate Document 80, as directed by paragraph 4 of the 1964 Decree;

**II.B.1.b.i** Such water diverted through the Green Mountain Reservoir Powerplant shall neither be accounted toward, nor deemed to satisfy, the 1935 First Fill Storage Right; and

**II.B.1.c.** All water rights located upstream of Green Mountain Reservoir with priority dates between August 1, 1935, and June 23, 1946, shall be allowed to divert in priority unaffected by the exercise of the 1935 Direct Flow Power Right, and the depletions from such diversions shall neither be accounted toward, nor deemed to satisfy, the 1935 First Fill Storage Right; and

**II.B.1.d.** All Senate Document 80 "beneficiary" water rights with priority dates junior to June 23, 1946, that are located upstream of Green Mountain Reservoir and that are not Upstream of Dillon Junior Beneficiary Rights may continue to divert by exchange, and depletions from such diversions (other than Contract Depletions) shall be accounted toward the 1935 First Fill Storage Right; and

**II.B.1.e.** The Cities, with the authorization of the Secretary, may divert against the 1935 Direct Flow Power Right pursuant to the Blue River Decree and Stipulations and their Power Interference Agreements, and the City Contract Beneficiaries may continue to divert in accordance with their City Replacement Contracts. The Cities' Depletions and the Contract Depletions shall be considered to be made against the 1935 Direct Flow Power Right and shall neither be accounted toward, nor deemed to satisfy, the 1935 First Fill Storage Right; provided:

**II.B.1.e.i** that at any time when the cumulative daily average rate of flow of (a) the United States' diversions through the Green Mountain Reservoir Powerplant, (b) the Cities' Depletions, and (c) the Contract Depletions exceeds 1,726 c.f.s., then that portion of the combined Cities' Depletions and Contract Depletions that is diverted at a daily average rate of flow that, when added to the daily average rate of flow of the United States' diversions through the Green Mountain Reservoir Powerplant, exceeds 1,726 c.f.s. shall be considered to Deplete Against the 1935 First Fill Storage Right, and the provisions of Paragraph II.D below shall apply; and

---

[7] For the duration of the time when the 1935 First Fill Storage Right is being administered under an October 12, 1955 administrative priority pursuant to Paragraph II.D.2, the 1935 Direct Flow Power Right shall be administered under the same October 12, 1955 administrative priority.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**II.B.1.e.ii** that on any day after the Start of Fill Date when the cumulative volume of (a) the Cities' Depletions (that are not, pursuant to Paragraph II.B.1.e.i above, considered to Deplete Against the 1935 First Fill Storage Right) and (b) the Contract Depletions (that are not, pursuant to Paragraph II.B.1.e.i above, considered to Deplete Against the 1935 First Fill Storage Right), and (c) the United States' diversions through the Green Mountain Reservoir Powerplant exceeds the volume of Probable Run-off that is allocated to power generation by the Fill Schedule as it exists on that day, then that portion of the cumulative volume of Cities' Depletions (that are not, pursuant to Paragraph II.B.1.e.i above, considered to Deplete Against the 1935 First Fill Storage Right) and Contract Depletions (that are not, pursuant to Paragraph II.B.1.e.i above, considered to Deplete Against the 1935 First Fill Storage Right) that exceeds the volume allocated to power generation by the Fill Schedule shall be considered to Deplete Against the 1935 First Fill Storage Right, and the provisions of Paragraph II.D below shall apply.

**II.B.2.** **Administration/Diversions During the Fill Season When the Fill Schedule Does Not Allocate Probable Run-off to Power Generation**. At any time during the Fill Season when the Fill Schedule, as initially prepared or as modified during the snowmelt season, does not allocate Probable Run-off to power generation, the United States shall be considered to be exercising the 1935 First Fill Storage Right; and

**II.B.2.a.** The Cities' Depletions and Contract Depletions shall be considered to Deplete Against the 1935 First Fill Storage Right and the provisions of Paragraph II.D below shall apply; and

**II.B.2.b.** All Senate Document 80 "beneficiary" water rights with priority dates junior to August 1, 1935, that are located upstream of Green Mountain Reservoir may continue to divert by exchange, and depletions from such diversions (other than Contract Depletions) shall be accounted toward the 1935 First Fill Storage Right.

**II.B.3.** **Upstream of Dillon Junior Beneficiary Rights.**

**II.B.3.a.** In satisfaction of paragraph 2 of the 1964 Stipulation, Upstream of Dillon Junior Beneficiary Rights may continue to divert, when a call is placed by the Cities that would otherwise curtail such diversions, by exchange against the 1946 Dillon Reservoir storage right, or the 1946 Blue River Diversion Project direct flow water right to the extent of a cumulative total of 80 acre-feet of depletions annually. The depletions from such diversions shall be accounted toward the annual fill of the 1946 Dillon Reservoir storage right.

**II.B.3.b.** The Upstream of Dillon Junior Beneficiary Rights are identified in Exhibit 1 attached hereto and incorporated herein by this reference (Exhibit 1 is not intended to determine, and shall not be interpreted to establish a definition of, or otherwise set criteria for, water rights that qualify as Senate Document 80 "beneficiaries"). Upon agreement of the United States, the Cities, the Colorado River Water Conservation District, and the Division Engineer for Water Division No. 5, qualifying water rights inadvertently not identified on Exhibit 1, or included but not qualifying, may be added to or removed from the Exhibit as Upstream of Dillon Junior Beneficiary Rights, subject, however, to the annual 80 acre feet limitation of depletions

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

from such rights that are accounted toward the annual fill of the 1946 Dillon Reservoir storage right as set forth in Paragraph II.B.3.a above.

**II.B.4.** **Decreed Plans for Augmentation.** The depletions of water rights located upstream of Green Mountain Dam that are fully replaced upstream of Green Mountain Dam pursuant to decreed plans for augmentation shall not be accounted toward the Green Mountain Reservoir Water Rights unless so provided in any such decreed plan for augmentation.

**II.B.5.** **Cities' Replacement Obligation.** In satisfaction of the Blue River Decree and Stipulations, the Cities shall be obligated to make replacement water available to Green Mountain Reservoir as addressed in Section IV of this Protocol. The Cities will coordinate the accomplishment of any required replacement with the Secretary and the Division Engineer.

**II.B.6.** **Administration/Power Operations After the End of Fill Season.** After the End of Fill Season, the United States may call for water to satisfy the 1935 Direct Flow Power Right. In such case, the Cities, with the authorization of the Secretary, may continue to divert against the 1935 Direct Flow Power Right pursuant to the Blue River Decree and Stipulations and their Power Interference Agreements, and the City Contract Beneficiaries may continue to divert in accordance with their City Replacement Contracts. When the Cities are so diverting, water diverted by the United States through the Green Mountain Reservoir Powerplant (other than water released from storage) shall be considered to be diverted in exercise of the 1935 Direct Flow Power Right, with the United States exercising the 1935 Direct Flow Power Right against all water rights with priority dates junior to June 23, 1946, and such power right shall be deemed to be satisfied by flows available as a result of curtailment of water rights with priority dates junior to June 23, 1946. Nothing in this paragraph shall alter or affect any rights of Senate Document 80 "beneficiary" water rights that are located upstream of Green Mountain Reservoir to divert against the 1935 Direct Flow Power Right in accordance with Senate Document 80, the Blue River Decree, Green Mountain Reservoir water service contracts, or Section I.B.3 of this Protocol.

**II.B.6.a.** Use of the 1935 Direct Flow Power Right after the End of Fill Season shall not restrict or limit the United States' ability or right, in the discretion of the Secretary, to exercise the 1935 Senior Refill Storage Right, to place a call under the 1935 Senior Refill Storage Right, to exercise the 1935 Senior Refill Storage Right without placing a call, or to exercise the 1935 Senior Refill Storage Right under a priority co-equal to the administrative priority of the 1935 Direct Flow Power Right.

**II.C.** **Operation of Green Mountain Reservoir and the Cities' Water Rights in Response to Downstream Calls Senior to the Cities' Water Rights.** If a call senior to the Cities' water rights is in effect during the Fill Season when the Fill Schedule (as initially prepared or as modified) has allocated water to power generation, then the administration of the United States' and the Cities' operations will vary, depending on whether 154,645 acre-feet has been accounted for in accordance with Paragraph II.A.3.b above, whether the call is senior to August 1, 1935, and whether the call fully or partially curtails the affected water rights.

### GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

Accordingly, legal calls of water rights on the Blue River below Green Mountain Reservoir and on the Colorado River within Colorado below the confluence with the Blue River with priority dates senior to the priorities of the Cities' Blue River water rights will be administered as follows:

**II.C.1.    Call Before 154,645 Acre-Feet Has Been Accounted For in accordance with Paragraph II.A.3.b.** If the call is in effect when the volumes specified in Paragraph II.A.3.b.i-b.v above total less than 154,645 acre-feet, then the following applies:

**II.C.1.a.    Senior Call; Full Curtailment of the 1935 First Fill Storage Right.** During the time when the call by a water right with a priority senior to August 1, 1935, fully curtails the 1935 First Fill Storage Right, the United States cannot exercise the 1935 First Fill Storage Right, but may exercise the 1935 Direct Flow Power Right to divert the water that is passed to the calling right through the Green Mountain Reservoir Powerplant. In this circumstance, the Cities will:

**II.C.1.a.i** bypass the inflow at the Cities' respective diversion structures that are subject to the call (and the United States will pass the bypassed water and the water flowing into the Blue River between Dillon Reservoir and Green Mountain Reservoir ("Intervening Inflow") through Green Mountain Reservoir, while in its discretion exercising the 1935 Direct Flow Power Right to divert the water that is so passed to satisfy the calling right through the Green Mountain Reservoir Powerplant); and/or

**II.C.1.a.ii** Exchange and Deplete Upstream (and the volume of water Exchanged and Depleted Upstream shall not be accounted toward the satisfaction of the 1935 First Fill Storage Right, but shall be accounted, for purposes of the Cities' Power Interference Agreements, as a depletion against the 1935 Direct Flow Power Right).

**II.C.1.b.    Senior Call; 1935 First Fill Storage Right Partially Curtailed.** During the time when the call by a water right with a priority senior to August 1, 1935, partially curtails the 1935 First Fill Storage Right, the United States will exercise the 1935 First Fill Storage Right to the extent not curtailed[8], and will pass through Green Mountain Reservoir only such volume of water as is needed to satisfy the call. The United States may, in its discretion, exercise the 1935 Direct Flow Power Right to divert the water that is passed to the calling right through the Green Mountain Reservoir Powerplant. In this circumstance, the Cities will:

**II.C.1.b.i** bypass the inflow at the Cities' respective diversion structures that are subject to the call; and/or

**II.C.1.b.ii** Exchange and Deplete Upstream against the water the United States must pass through Green Mountain Reservoir to satisfy the call (and the volume of water

---

[8] This operation will continue until such time as the volumes specified in Paragraph II.A.3.b.i-b.v total 154,645 acre feet, at which time Paragraph II.C.2 will apply.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

Exchanged and Depleted Upstream shall not be accounted toward the 1935 First Fill Storage Right, but shall be accounted, for purposes of the Cities' Power Interference Agreements, as a depletion against the 1935 Direct Flow Power Right); and/or

**II.C.1.b.iii** Deplete Against the 1935 First Fill Storage Right, and the provisions of Paragraph II.D below shall apply.

**II.C.1.c.**    Senior Call; 1935 First Fill Storage Right Not Curtailed, Cities Partially or Fully Curtailed. During the time when the call by a water right with a priority senior to August 1, 1935, partially or fully curtails the Cities' rights, but does not curtail the 1935 First Fill Storage Right, the United States will exercise an August 1, 1935 priority call under the 1935 First Fill Storage Right to store all flows legally available to that right.[9] [10] In this circumstance the Cities will:

**II.C.1.c.i** bypass at the Cities' respective diversion structures that are subject to the call the lesser of (a) the inflow, or (b) the flow sufficient to satisfy the call; and/or

**II.C.1.c.ii** Deplete Against the 1935 First Fill Storage Right, and the provisions of Paragraph II.D below shall apply.

**II.C.1.d.**    Junior Call; Cities Partially or Fully Curtailed. During the time when the call by a water right with a priority between August 1, 1935, and June 23, 1946, partially or fully curtails the Cities' rights, the United States will exercise an August 1, 1935 priority call under the 1935 First Fill Storage Right to store all flows legally available to that right.[11] In this circumstance, the Cities will:

**II.C.1.d.i** bypass at the Cities' respective diversion structures that are subject to the call the lesser of (a) the inflow or (b) the flow sufficient to satisfy the call; and/or

**II.C.1.d.ii** Deplete Against the 1935 First Fill Storage Right, and the provisions of Paragraph II.D below shall apply.

**II.C.1.e.**    Consensus Operations When There Is A High Probability of Fill. In the circumstances described in Paragraphs II.C.1.b, II.C.1.c, and II.C.1.d above, if the Secretary determines in the exercise of the Secretary's reasonable discretion, that there is a high probability

---

[9] This operation will continue until such time as the volumes specified in Paragraph II.A.3.b.i-b.v total 154,645 acre feet, at which time Paragraph II.C.2 will apply.

[10] In the event that the United States is unable to exercise the 1935 First Fill Storage Right due to physical operational limitations lawfully established by the Secretary or the State Engineer and instead passes water, then the Cities may Exchange and Deplete Upstream against the water that the United States otherwise would have stored in Green Mountain Reservoir (and the volume of water Exchanged and Depleted Upstream shall not be accounted toward the 1935 First Fill Storage Right, but shall be accounted, for purposes of the Cities' Power Interference Agreements, as a depletion against the 1935 Direct Flow Power Right).

[11] This operation will continue until such time as the volumes specified in Paragraph II.A.3.b.i-b.v total 154,645 acre feet, at which time Paragraph II.C.2 will apply.

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

of filling Green Mountain Reservoir, then upon consultation with and the concurrence of the Blue River Decree Parties, Ute and the Division Engineer for Water Division No. 5, the United States may choose not to exercise the 1935 First Fill Storage Right to store all flows legally available to that right, and may instead exercise the 1935 Direct Flow Power Right. If the United States chooses to exercise the Green Mountain Reservoir Water Rights in this manner, such diversions shall be considered as Discretionary Power Diversions for purposes of determining the Cities' Replacement Obligation addressed in Section IV of this Protocol. In such circumstances, the Cities may Exchange and Deplete Upstream against the exercise of the 1935 Direct Flow Power Right.

**II.C.2.** **Call After 154,645 Acre Feet Has Been Accounted For in Accordance With Paragraph II.A.3.b.** If the call is in effect after the volumes specified in Paragraph II.A.3.b.i-b.v above total 154,645 acre-feet or more, but before the End of Fill Season, then the following applies[12]:

**II.C.2.a.** Senior Call; Full Curtailment of the 1935 First Fill Storage Right. During the time when the call by a water right with a priority senior to August 1, 1935, fully curtails the 1935 First Fill Storage Right, the United States cannot exercise the Green Mountain Reservoir Storage Rights, but may exercise the 1935 Direct Flow Power Right to divert water that is passed through the Green Mountain Reservoir Powerplant. In this circumstance, the Cities will:

**II.C.2.a.i** bypass the inflow at the Cities' respective diversion structures that are subject to the call (and the United States will pass the bypassed water and the Intervening Inflow through Green Mountain Reservoir, while in its discretion exercising the 1935 Direct Flow Power Right to divert water that is so passed to satisfy the calling right through the Green Mountain Reservoir Powerplant); and/or

**II.C.2.a.ii** Exchange and Deplete Upstream (and the volume of water Exchanged and Depleted Upstream shall not be accounted toward the 1935 First Fill Storage Right, but shall be accounted, for purposes of the Cities' Power Interference Agreements, as a depletion against the 1935 Direct Flow Power Right).

**II.C.2.b.** Senior Call; 1935 First Fill Storage Right Partially Curtailed. During the time when the call by a water right with a priority senior to August 1, 1935, partially curtails the 1935 First Fill Storage Right, the United States will pass through Green Mountain Reservoir such volume of water as is needed to satisfy the call, while in its discretion exercising the 1935 Direct Flow Power Right to divert the water that is so passed to satisfy the calling right through the Green Mountain Reservoir Powerplant. The United States may, in its discretion, exercise (a) the 1935 First Fill Storage Right to store water that is not passed to satisfy the call,

---

[12] The provisions of Paragraphs II.C.2.a-d only apply when the 1935 First Fill Storage Right is operating pursuant to its August 1, 1935 priority. When the 1935 First Fill Storage Right is operating under an October 12, 1955 administrative priority pursuant to Paragraph II.D.2, the provisions of Paragraph II.C.2.e apply.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

and/or (b) the 1935 Direct Flow Power Right to divert water that is not required to satisfy the call through the Green Mountain Reservoir Powerplant. In this circumstance, the Cities will:

**II.C.2.b.i** bypass the inflow at the Cities' respective diversion structures that are subject to the call; and/or

**II.C.2.b.ii** Exchange and Deplete Upstream (and the volume of water Exchanged and Depleted Upstream shall not be accounted toward the 1935 First Fill Storage Right, but shall be accounted, for purposes of the Cities' Power Interference Agreements, as a depletion against the 1935 Direct Flow Power Right).

**II.C.2.c.**    Senior Call; 1935 First Fill Storage Right Not Curtailed; Cities Partially or Fully Curtailed. During the time when the call by a water right with a priority senior to August 1, 1935, partially or fully curtails the Cities' rights, but does not curtail the 1935 First Fill Storage Right, the United States will, to the extent that it can generate power through the exercise of the 1935 Direct Flow Power Right, pass through the Powerplant such volume of water as the Cities have bypassed to satisfy the call. With respect to any additional water at Green Mountain Reservoir that has not been bypassed and that is not required to be used to generate power in accordance with the preceding sentence, the United States may, in its discretion, exercise (a) the 1935 First Fill Storage Right to store such water, and/or (b) the 1935 Direct Flow Power Right to divert such water through the Green Mountain Reservoir Powerplant. In this circumstance, the Cities will:

**II.C.2.c.i** bypass at the Cities' respective diversion structures that are subject to the call the lesser of (a) the inflow or (b) the flow sufficient to satisfy the call; and/or

**II.C.2.c.ii** Exchange and Deplete Upstream (and the volume of water Exchanged and Depleted Upstream shall be accounted for in accordance with the provisions of Paragraph II.B.1.e above).

**II.C.2.d.**    Junior Call; Cities Partially or Fully Curtailed. During the time when the call by a water right with a priority between August 1, 1935, and June 23, 1946, partially or fully curtails the Cities' rights, the Cities will:

**II.C.2.d.i.** bypass at the Cities' respective diversion structures that are subject to the call the lesser of (a) the inflow or (b) the flow sufficient to satisfy the call, and the United States may, in its discretion, exercise (a) the 1935 First Fill Storage Right to store flows legally available at Green Mountain Reservoir, and/or (b) the 1935 Direct Flow Power Right to divert flows through the Green Mountain Reservoir Powerplant; and/or

**II.C.2.d.ii.** Exchange and Deplete Upstream (and the volume of water Exchanged and Depleted Upstream shall be accounted for in accordance with the provisions of Paragraph II.B.1.e above), and the United States may, in its discretion, exercise (a) the 1935 First Fill Storage Right to store Intervening Inflow at Green Mountain Reservoir, and/or (b) the 1935 Direct Flow Power Right to divert the Intervening Inflow through the Green Mountain Reservoir Powerplant.

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**II.C.2.e.** Junior Call; 1935 First Fill Storage Right Operating Under an October 12, 1955 Administrative Priority is Fully or Partially Curtailed. When the 1935 First Fill Storage Right is operating under an October 12, 1955 administrative priority pursuant to Paragraph II.D.2., the provisions of Paragraphs II.C.2.a-d will not apply. During the time when the call by a water right with a priority senior to October 12, 1955, fully or partially curtails the 1935 First Fill Storage Right operating under an October 12, 1955 administrative priority, the United States will pass through Green Mountain Reservoir such volume of water as is needed to satisfy the call, while in its discretion exercising the 1935 Direct Flow Power Right to divert the water that is so passed to satisfy the calling right through the Green Mountain Reservoir Powerplant. The United States may, in its discretion, exercise (a) the 1935 First Fill Storage Right to store water that is not passed to satisfy the call, and/or (b) the 1935 Direct Flow Power Right to divert water that is not required to satisfy the call through the Green Mountain Reservoir Powerplant. In this circumstance, to the extent that the Cities are subject to the call, the Cities will:

**II.C.2.e.i** bypass the inflow at the Cities' respective diversion structures to the extent they are subject to the call; and/or

**II.C.2.e.ii.** Exchange and Deplete Upstream (and the volume of water Exchanged and Depleted Upstream shall not be accounted toward the 1935 First Fill Storage Right, but shall be accounted, for purposes of the Cities' Power Interference Agreements, as a depletion against the 1935 Direct Flow Power Right).

**II.C.3.** **Swing Call on Cities.** In satisfaction of paragraph 7(a) of the 1955 Stipulation, at times when either Denver Water's 1946 Blue River Water Rights or CS-U's 1948 Blue River Water Rights would be partially curtailed (e.g. a so-called "swing call") in response to a downstream call from a water right other than the Green Mountain Reservoir Water Rights, Denver Water's 1946 Blue River Water Rights will be deemed satisfied for the purposes of daily administration under an administrative priority co-equal with the May 13, 1948 priority of CS-U's 1948 Blue River Water Rights. This operation does not constitute, or result in, a subordination of Denver Water's 1946 Blue River Water Rights, but administratively implements paragraph 7(a) of the 1955 Stipulation during a swing call on the Cities. Under such administration, both CS-U and Denver Water will be partially curtailed, but both may continue to divert, provided that they satisfy the call by effectuating the following bypass obligations:

**II.C.3.a.** For purposes of this calculation, "Called Water" refers to the total flow of water required to be bypassed by the Cities for delivery to the calling right and "Potential Diversions" refers to the flow that could, absent the swing call, be depleted at Denver Water's and CS-U's respective Blue River facilities under their respective 1946 and 1948 Blue River Water Rights (but not including evaporation from Dillon Reservoir or from CS-U's Continental-Hoosier System, or flows that could not be diverted as a result of operational or system constraints).

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**II.C.3.b.**     The Denver Water bypass obligation equals: (Called Water) x (Denver Water Potential Diversions/ (Denver Water Potential Diversions plus CS-U Potential Diversions)).

**II.C.3.c.**     The CS-U bypass obligation equals: (Called Water) x (CS-U Potential Diversions/ (Denver Water Potential Diversions plus CS-U Potential Diversions)).

**II.C.3.d.**     The Cities will respond to downstream calls and satisfy their respective bypass obligations as provided in Paragraphs II.C.1 and II.C.2 above. In appropriate circumstances as provided in Paragraphs II.C.2 above, the Cities may satisfy such bypass obligations by Exchanging and Depleting Upstream.

**II.C.3.e.**     By way of example, if the call is by the 1940 Shoshone power water right and the amount required to be delivered (Called Water) is 100 c.f.s. and the CS-U Potential Diversions and Denver Water Potential Diversions are 50 c.f.s. and 300 c.f.s. respectively, then Denver Water's bypass obligation is 100 x (300/350), or 85.7 c.f.s., and CS-U's bypass obligation is 100 x (50/350), or 14.3 c.f.s., and Denver Water may divert 214.3 c.f.s and CS-U may divert 35.7 c.f.s., and the Cities may satisfy their respective bypass obligations (totaling 100 c.f.s.), in whole or in part, by Exchanging and Depleting Upstream in accordance with the terms of Paragraphs II.C.1 or II.C.2 above, as applicable.

**II.D.    Administration If Water is Depleted Against the 1935 First Fill Storage Right.** In any water year in which water is Depleted Against the 1935 First Fill Storage Right:

**II.D.1.**     The 1935 First Fill Storage Right will be administered pursuant to an August 1, 1935 priority in accordance with the foregoing provisions of this Protocol until the following volumes total 154,645 acre-feet:

**II.D.1.a.**     the water in storage in Green Mountain Reservoir (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts) on the Start of Fill Date; plus

**II.D.1.b.**     the water stored in Green Mountain Reservoir under the 1935 First Fill Storage Right after the Start of Fill Date; plus

**II.D.1.c.**     the water depleted by exchange upstream of Green Mountain Reservoir, and accounted toward the satisfaction of the 1935 First Fill Storage Right, by Senate Document 80 "beneficiary" water rights with priority dates junior to June 23, 1946, after the Start of Fill Date; plus

**II.D.1.d.**     Bypassed Storage Water; plus

**II.D.1.e.**     the water Depleted Against the 1935 First Fill Storage Right.

**II.D.2.**     From the date when the volumes of water specified in Paragraph II.D.1.a-e above total 154,645 acre-feet until the End of Fill Season, the 1935 First Fill Storage Right will

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

be administered with an October 12, 1955 administrative priority and shall be deemed to be satisfied by flows available as a result of curtailment of water rights with priority dates junior to October 12, 1955. This operation does not constitute, or result in, a subordination of the water right priority of the 1935 First Fill Storage Right, but allows "as much water as possible to be available for upstream rights without impairment of the United States' right to fill Green Mountain Reservoir and to use that reservoir as provided in" the 1955 Decree and Senate Document 80, as directed by paragraph 4 of the 1964 Decree, and without impairment of legal calls of downstream water rights.

**II.E.    Operation of Senate Document 80 "Beneficiary" Water Rights During the Fill Season in Response to Calls Downstream of Green Mountain Reservoir Prior To, and After, 154,645 Acre-Feet Has Been Accounted For in accordance with Paragraph II.A.3.b.**

**II.E.1.**    If a call is placed by a water right downstream from Green Mountain Reservoir during the Fill Season but before the volumes specified in Paragraph II.A.3.b.i-b.v above total 154,645 acre-feet, then all Senate Document 80 "beneficiary" water rights with priority dates junior to August 1, 1935, that are located upstream of Green Mountain Reservoir, and that are otherwise subject to a call by the 1935 First Fill Storage Right or by the downstream calling water right, may continue to divert by exchange, and the depletions from such diversions (other than Contract Depletions) shall either (a) be accounted toward the 1935 First Fill Storage Right, or (b) be replaced to the downstream calling water right by release of water previously stored in Green Mountain Reservoir.

**II.E.2.**    If a call is placed by a water right downstream from Green Mountain Reservoir during the Fill Season but after the volumes specified in Paragraph II.A.3.b.i-b.v total 154,645 acre-feet, (a) all Senate Document 80 "beneficiary" water rights with priority dates senior to June 23, 1946, and senior to such call may continue to divert as against the 1935 Direct Flow Power Right, and the depletions from such diversions shall not be accounted toward the 1935 First Fill Storage Right, and (b) all Senate Document 80 "beneficiary" water rights with priority dates junior to the downstream calling right that are located upstream of Green Mountain Reservoir, and that are not City Contract Beneficiaries, may continue to divert by exchange, and the depletions from such diversions shall either be (1) accounted toward the 1935 First Fill Storage Right, or (2) replaced to the downstream calling right by a release of water previously stored in Green Mountain Reservoir.

## III.    BLUE RIVER DECREE PRIORITY ADMINISTRATION IN WATER DISTRICT 36 AND WATER DIVISION NO. 5 (CLIMAX C.A. 1710 WATER RIGHTS)

**III.A.**    The Final Judgment entered by the United States District Court on October 12, 1955, in Consolidated Cases No. 5016 and 5017 (removed Summit Court District Court Civil Action Nos. 1805 and 1806 ("C.A. 1805 and 1806"), which were supplemental general adjudication proceedings in former Water District No. 36) assigned priority numbers to the Elliott Creek Feeder Canal, Green Mountain Reservoir, and Green Mountain Reservoir Hydroelectric Plant water rights as if those water rights had been adjudicated in the removed Summit County District Court cases and junior to priorities adjudicated in prior proceedings in

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

Water District No. 36. At the same time, the Court also decreed all of the Colorado-Big Thompson Project ("C-BT") facilities, including the Elliott Creek Feeder Canal, Green Mountain Reservoir, and Green Mountain Reservoir Hydroelectric Plant water rights, as having an August 1, 1935 date of priority, and recognized these rights as senior in priority to Denver Water's facilities, including Williams Fork Reservoir in Water District No. 51, which has a date of appropriation of November 10, 1935. The Final Judgment of October 12, 1955, both confirms an August 1, 1935 priority without postponement for the C-BT facilities and postpones the priority for certain facilities within Water District No. 36.

**III.B.** In Case No. 88CW382, filed concurrently in the Division 5 Water Court and the United States District Court, the United States sought confirmation of appropriative water rights of exchange, using water provided from Green Mountain Reservoir's 52,000 acre-foot and 100,000 acre-foot pools to meet the needs of Senate Document 80 "beneficiaries," and requested that those exchanges be administered with an August 1, 1935 priority date, and without postponement. The decree entered on that application by the United States District Court specified both that the 1955 Decree "evidences the priority dates of the direct flow, storage and exchange water rights for the operation of the Colorado-Big Thompson Project as August 1, 1935, and those rights shall be administered with said priority date as though adjudicated in the first available adjudication following that date," and that the decree in Case No. 88CW382 "shall not modify or change the stipulations, judgments, orders and decrees" in the Consolidated Cases . . . ." Accordingly, to the extent that the Final Judgment of October 12, 1955, effected a postponement of the Green Mountain Reservoir Water Rights within Water District No. 36, such postponement was not affected by the decree in Case No. 88CW382.

**III.C.** Climax holds water rights decreed on October 26, 1937, by the Summit County District Court in Civil Action No. 1710 ("C.A. 1710"), an adjudication proceeding in Water District No. 36 prior to the removed C.A. 1805/1806 Summit County District Court cases. In order to effectuate the foregoing provisions of the 1955 Final Judgment in the removed Summit County District Court adjudication, the Blue River Decree, and the decree in Case No. 88CW382, the following shall apply: within former Water District No. 36, the C.A. 1710 Water Rights, including the Climax C.A. 1710 Water Rights, will be administered as senior to the Green Mountain Reservoir Water Rights when a water right call originating within Water District 36 is being administered. Such administration of the C.A. 1710 Water Rights as senior to the Green Mountain Reservoir Water Rights shall not affect the administration of C-BT facilities as having a priority date of August 1, 1935, outside of Water District No. 36. The Blue River Decree recognizes and decrees that the priority date for the C-BT facilities is senior to the priority dates for Denver Water's 1946 Blue River Water Rights and Williams Fork Reservoir, as well as CS-U's 1948 Blue River Water Rights. The Blue River Decree, as well as the Decree in Case No. 88CW382, require that the C-BT facilities decreed with an appropriation date of August 1, 1935, be administered with an August 1, 1935 date of priority without postponement. Administration of C-BT facilities, including Green Mountain Reservoir, with an August 1, 1935 date of priority without postponement, subject to the foregoing administration within Water District No. 36, is consistent with paragraph (g) of the Final Decree in the Consolidated Cases which provides, in part, that "the 100,000 acre-feet of storage in said reservoir shall be

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

considered to have the same date of priority of appropriation as that for water diverted or stored for transmountain diversion."

**III.D.**    In consideration of the agreement by the Blue River Decree Parties of the foregoing Paragraphs III.A – III.C, Climax, in settlement of disputed issues of priority, agrees to the following regarding the Climax C.A. 1710 Water Rights:

**III.D.1.**    The water diverted pursuant to the Climax C.A. 1710 Water Rights during the Fill Season will be held in storage for non-consumptive purposes until there is a determination by the Secretary that the volumes of water set forth in Paragraph II.A.3.b.i through II.A.3.b.v plus Discretionary Power Diversions as defined in Paragraph IV.A.1.f of this Protocol will total 154,645 acre feet.  The Secretary will provide timely notice to Climax of such determination.  If the Secretary determines that the volumes of water set forth in Paragraph II.A.3.b.i through II.A.3.b.v plus Discretionary Power Diversions will total 154,645 acre feet, then Climax may consume water it has diverted under the Climax C.A. 1710 Water Rights during the Fill Season.  If the Secretary determines that the volumes of water set forth in Paragraph II.A.3.b.i through II.A.3.b.v plus Discretionary Power Diversions will total less than 154,645 acre feet, then Climax shall provide substitution water to Green Mountain Reservoir as follows:

**III.D.1.a.**    Climax shall provide substitution water in an amount equivalent to the amount of water that would be depleted under the Climax C.A. 1710 Water Rights that Fill Season.  The first source of substitution water will be provided from a six-hundred acre foot account in either Williams Fork Reservoir, pursuant to contract between Denver Water and Climax, or the Henderson Mine's East Branch Reservoir.  The account will be filled with fully consumptive water owned or controlled by Climax from Henderson's "Skylark Rights," which were changed in Case No. 96CW3681 (Water Division No. 5), and which will be further changed to enable use for Green Mountain Reservoir substitution purposes, and for storage in Williams Fork Reservoir, including all municipal uses by Denver Water.  The Parties to the Blue River Decree and Ute consent to such changes by Climax, provided that such parties may file statements of opposition in any proceeding to adjudicate such changes to ensure consistency with the terms and conditions of the decree in Case No. 96CW3681, and compliance with Colo. Rev. Stat. §§ 37-80-120(3) and 37-92-305(5).  If any portion of the Climax C.A. 1710 Water Rights is transferred to an unaffiliated third party by Climax, Climax and/or the transferee (or its successors in interest) shall continue to provide substitution water using the Skylark Rights as provided herein, or shall provide substitution water from another source, provided that the substitution water is fully consumable and the water rights that will provide such substitution water are decreed for Green Mountain Reservoir substitution purposes.  Any transferee shall secure any new source of substitution water in the order of preference set forth in Paragraph III.D.1.b below.

**III.D.1.b.**    If Climax does not have sufficient water stored in the above-referenced storage account to offset the amount of the Climax C.A. 1710 Water Rights that otherwise would be depleted that year, then Climax will reduce its consumption of water diverted under the Climax C.A. 1710 Water Rights by the amount of the shortfall until such time

### GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

as (a) the Secretary determines that volumes of water set forth in Paragraph II.A.3.b.i through II.A.3.b.v plus Discretionary Power Diversions will total 154,645 acre feet, or (b) an acceptable and lawfully available replacement source is secured and notice of such source is provided to the United States and the Colorado River Water Conservation District ("River District").  The following sources of water shall be deemed acceptable replacement sources, in order of preference, and subject to the timely and good faith action of Climax, the River District, and the United States:

        **III.D.1.b.i**      A replacement source acceptable to Climax, the United States, and the River District located upstream from Shoshone;

        **III.D.1.b.ii**      A short-term contract for release of the shortfall from the River District's Ruedi Reservoir marketing supply;

        **III.D.1.b.iii**      A short-term contract for release of the shortfall from other sources located downstream from Shoshone.

        **III.D.1.c.**      If Climax does not obtain the substitution water from the above sources, it shall release the amount of the shortfall to Tenmile Creek from storage at the Climax Mine.  Such releases shall be bypassed downstream (e.g., past Denver Water's Blue River System) to Green Mountain Reservoir or, subject to the Secretary's approval, substituted by Denver Water.

        **III.D.2.**      Climax's right of diversion and substitution of water pursuant to this Paragraph III.D shall be administered as senior in priority to the Cities' rights of diversion and substitution under the Blue River Decree, the Stipulations, and this Protocol.

        **III.D.3.**      The foregoing provisions of Paragraph III.D shall burden and benefit successors and assigns of the Climax C.A. 1710 Water Rights in perpetuity, and shall be a title covenant on the Climax C.A. 1710 Water Rights.

**IV.**      **THE CITIES' REPLACEMENT OPERATIONS**

    **IV.A. Replacement Obligations – 1935 First Fill Storage Right.**

        **IV.A.1.**      **Definitions.**

        **IV.A.1.a.**      **"Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities":**  means bypasses of inflow to Green Mountain Reservoir between the Start of Fill Date (if the Start of Fill Date occurs prior to May 1) and May 1, up to a maximum volume of 120 acre-feet per day, that are accounted toward the 1935 First Fill Storage Right pursuant to direction from the Division Engineer because they are neither used to generate electrical energy at the Green Mountain Reservoir Powerplant nor bypassed to satisfy senior water rights.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**IV.A.1.b.**    **"Cities' Replacement Obligation":**  means the collective Replacement Obligations of Denver Water and CS-U.

**IV.A.1.c.**    **"City Refill Water":** means the water the Cities must hold available for potential release to the United States on account of the Cities' Depletions or Contract Depletions or storage that is accounted toward the satisfaction of the 1935 Senior Refill Right pursuant to Paragraph IV.B below.

**IV.A.1.d.**    **"CS-U's Replacement Obligation":** means the volume of water CS-U is obligated to make available to the United States to assure the satisfaction of the 1935 First Fill Storage Right under the terms of the Blue River Decree and Stipulation, CS-U's Substitution Agreements and decrees, and CS-U's City Replacement Contracts, and to refill any Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities.

**IV.A.1.e.**    **"Denver Water's Replacement Obligation":** means the volume of water Denver Water is obligated to make available to the United States to assure the satisfaction of the 1935 First Fill Storage Right under the terms of the Blue River Decree and Stipulation, Denver Water's Substitution Agreements and decrees, and Denver's City Replacement Contracts, and to refill any Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities.

**IV.A.1.f.**    **"Discretionary Power Diversions":** means the water diverted by the United States through exercise of the 1935 Direct Flow Power Right in excess of 60 c.f.s. during the Fill Season, but Discretionary Power Diversions do not include water passed through the Green Mountain Reservoir Powerplant (a) to meet legal calls by water rights senior to the 1935 First Fill Storage Right, (b) to meet the Cities' obligations to water rights downstream of Green Mountain Reservoir pursuant to Paragraph II.C of this Protocol, or (c) to meet any flow requirements agreed to by the Secretary pursuant to any Shoshone Outage Protocol agreement consummated and effectuated among the appropriate parties ("SHOP"). Discretionary Power Diversions also do not include any Bypassed Storage Water.

**IV.A.1.g.**    **"Fill and Delivery Year":**  means the Fill and Delivery Year for Green Mountain Reservoir that begins on the Start of Fill Date in one calendar year and continues until the Start of Fill Date in the following calendar year.

**IV.A.1.h.**    **"Fill Deficit":**  means the volume of water that is computed by subtracting the volumes of water in Paragraphs IV.A.3.b.i(a),i(b),i(c),i(e),i(f),i(g) and i(h) of this Protocol from 154,645 acre-feet.  This definition may not apply when a Maximum Water Elevation Limitation is imposed on Green Mountain Reservoir.

**IV.A.1.i.**    **"Maximum Water Elevation Limitation":** means a restriction or limitation on the maximum operating water surface elevation that may be maintained in Green Mountain Reservoir in a given year because of maintenance, repairs, or dam safety.

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

IV.A.1.j.    **"Power Use Fill Shortage":** means the lesser of the Fill Deficit or the Discretionary Power Diversions.

IV.A.2.    **Replacement Obligation-Accounting Dates.** Within ten days of the End of Fill Season, the Secretary shall initially calculate the Cities' Replacement Obligation. The Secretary shall thereafter recalculate and adjust the obligation immediately prior to the commencement date described in Paragraph IV.A.7 below.

IV.A.3.    **Calculation of Replacement Obligation-Quantification.**

IV.A.3.a.    **No Replacement Year.** There is no Cities' Replacement Obligation for a Fill and Delivery Year if the volume of water in storage in Green Mountain Reservoir (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts) on the Start of Fill Date, *plus* the amounts listed below, equals 154,645 acre-feet or achieves the Fill Level:

IV.A.3.a.i    the volume of water physically stored in Green Mountain Reservoir during the Fill Season;

IV.A.3.a.ii    the volume of water exchanged from Green Mountain Reservoir to Senate Document 80 "beneficiary" water rights that is accounted toward the fill of the 1935 First Fill Storage Right pursuant to the provisions of this Protocol; and

IV.A.3.a.iii    the volume of water physically stored in Green Mountain Reservoir under the 1935 Senior Refill Storage Right and/or Junior Refill Storage Right to refill Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities as provided in Paragraph IV.A.5 below.

IV.A.3.b.    **Replacement Year.** If the criteria set forth in Paragraph IV.A.3.a above are not satisfied, it is a Replacement Year, and the Cities' Replacement Obligation[13] shall be calculated as 154,645 acre-feet:

IV.A.3.b.i    *minus* the following amounts:

IV.A.3.b.i(a) the volume of water in storage in Green Mountain Reservoir (excluding water held in temporary storage pursuant to excess capacity or "if and when" contracts) on the Start of Fill Date; and

IV.A.3.b.i(b) the volume of water stored in Green Mountain Reservoir under the 1935 First Fill Storage Right between the Start of Fill Date and the End of Fill Season; and

---

[13] Provided, however, that this calculation of the Cities' Replacement Obligation may not apply when a Maximum Water Elevation Limitation is imposed on Green Mountain Reservoir.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

**IV.A.3.b.i(c)** the volume of water exchanged from Green Mountain Reservoir to Senate Document 80 "beneficiary" water rights that is accounted toward the fill of the 1935 First Fill Storage Right pursuant to the provisions of this Protocol; and

**IV.A.3.b.i(d)** the volume of Discretionary Power Diversions; and

**IV.A.3.b.i(e)** the lesser of (1) 80 acre feet, or (2) the volume of water depleted by Upstream of Dillon Junior Beneficiary Rights that is accounted toward the annual fill of the 1946 Dillon Reservoir storage right pursuant to Paragraph II.B.3 above; and

**IV.A.3.b.i(f)** the difference between: (1) the volume of Bypassed Storage Water and (2) the volume of (a) Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities plus (b) any water released pursuant to a SHOP; and

**IV.A.3.b.i(g)** the volume of Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities that has been refilled through storage in Green Mountain Reservoir under the 1935 Senior Refill Storage Right or the Junior Refill Storage Right as provided in Paragraph IV.A.5 below; and

**IV.A.3.b.i(h)** the volume of City Refill Water that was released by the Cities on demand of the Secretary during the same Fill and Delivery Year as the City Refill Water accrued, and that was thereafter released from Green Mountain Reservoir prior to the Start of Fill Date of the ensuing Fill and Delivery Year solely for discretionary power purposes and/or for non-Project discretionary purposes;

**IV.A.3.b.ii** *plus* the Power Diversion Adjustment as determined pursuant to Paragraph IV.A.4 below;

**IV.A.3.b.iii** *subject* to such other reasonable adjustments as deemed appropriate by the Secretary; and

**IV.A.3.b.iv** *provided* that the Cities' Replacement Obligation shall be no greater than the volume of the Cities' Depletions and the Contract Depletions after the Start of Fill Date.

**IV.A.4.**    **Power Diversion Adjustment.**    Under normal operations, the Secretary prepares the Fill Schedule with the goals of filling Green Mountain Reservoir during the Fill Season without spilling water from the reservoir and of permitting as much water as possible to be available for upstream rights without impairment of legal calls of downstream water rights. While effectuating these goals, the United States may exercise the 1935 Direct Flow Power Right concurrently with the 1935 First Fill Storage Right, thereby making Discretionary Power Diversions during the Fill Season. However, over-estimating the amount of water available for Discretionary Power Diversions may result in a Power Use Fill Shortage. Accordingly, the Blue River Decree Parties, Climax, and Ute have agreed that the Cities'

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

Replacement Obligation shall be increased by the amount of the Power Diversion Adjustment, which shall be calculated as follows:

**IV.A.4.a.** **Normal Operations.** Under normal operations, the Power Diversion Adjustment is one-half (50%) of the Power Use Fill Shortage.

**IV.A.4.b.** **Conservative Operations-Power Loss Replacement Offer.** By making a "Power Loss Replacement Offer" to pay power interference charges on account of power generation foregone when water that would be used to generate power under normal operations is either spilled at Green Mountain Reservoir or released through Green Mountain Reservoir at a rate that precludes power generation, the Cities may request that the United States shift to "Conservative Operations" and reduce Discretionary Power Diversions. Power Loss Replacement Offers and Conservative Operations be effected as follows:

**IV.A.4.b.i** A Power Loss Replacement Offer shall require a commitment to compensate the United States for a specific volume of water, not less than 5,000 acre-feet, that may be spilled and/or released from Green Mountain Reservoir in a manner that precludes power generation as a result of the Conservative Operations. Power Loss Replacement Offers may be made jointly by both Denver Water and CS-U, or individually by one of the Cities.

**IV.A.4.b.ii** A Power Loss Replacement Offer may be made at any time; however, if the offer is made when it is not hydrologically and operationally possible for the United States to operate conservatively so as to store the full volume of water stated in the offer, then the "credit" described below shall be limited to the volume of additional storage actually achieved by the United States as a result of the Conservative Operations from the time the Power Loss Replacement Offer is made.

**IV.A.4.b.iii** If the Conservative Operations requested result in releases from Green Mountain Reservoir that preclude power generation (e.g., releases at a rate less than 100 c.f.s.), then the City making the offer, or the Cities if it is a joint offer, will, as a part of the Power Loss Replacement Offer, compensate the United States, in replacement power or money, for the loss of 120 acre-feet per day of power generation. Beyond such compensation, the power interference compensation due to the Conservative Operations will be determined based on the actual amount of water spilled or released from Green Mountain Reservoir in such manner as to preclude power generation.

**IV.A.4.b.iv** If the Power Loss Replacement Offer is for the minimum volume of 5,000 acre-feet, then the City making the offer, or the Cities if it is a joint offer, shall receive a credit of 5,000 acre-feet against any Power Use Fill Shortage, unless the credit is limited pursuant to Paragraph IV.A.4.b.ii above. If the Power Loss Replacement Offer exceeds 5,000 acre-feet, then the credit against the Power Use Fill Shortage shall be 5,000 acre-feet, plus the volume of water actually stored in excess of 5,000 acre-feet in Green Mountain Reservoir as a result of the Power Loss Replacement Offer, unless such credit is limited pursuant to Paragraph IV.A.4.b.ii above.

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**IV.A.4.b.v**    Under Conservative Operations as provided herein, the Power Diversion Adjustment to the Cities' Replacement Obligation will be computed as:

*(x + y)/2 minus z = Power Diversion Adjustment (this amount cannot be less than zero),* where:

> $x$ = Power Use Fill Shortage
>
> $y$ = additional amount stored as a result of the Conservative Operations
>
> $z$ = greater of 5,000 acre-feet (if hydrologically and operationally available[14]) or water stored under Conservative Operations due to the Power Loss Replacement Offer.

Examples of the application of this equation are provided in the attached Exhibit 2.

**IV.A.4.b.vi**    If the Power Loss Replacement Offer is made by one City only, the resulting credit will be allocated to the City that made the offer, by adjusting the allocation of the Cities' Replacement Obligation among Denver Water and CS-U. Further, in case of a SHOP the Cities will adjust any requests for Conservative Operations to ensure consistency with such agreement.

**IV.A.4.c.**    **Colorado River Water Conservation District Offer**: Nothing herein shall prevent the Colorado River Water Conservation District from making a Power Loss Replacement Offer to the United States on terms and conditions similar to those set forth in Paragraph IV.A.4.b above. The terms of any such Power Loss Replacement Offer will be negotiated among the United States, the Colorado River Water Conservation District and the Cities at such time as the offer is made.

**IV.A.5.**    **Green Mountain Reservoir Storage Rights – Bypassed Storage Water.** As soon as possible after the End of Fill Season, the United States will exercise the 1935 Senior Refill Storage Right and/or the Junior Refill Storage Right to refill and store the volume of Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities. Pursuant to Paragraph IV.A.3.b.i(g) above, the amount of the Cities' Replacement Obligation that is attributable to Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities will be reduced by the volume of water so stored in Green Mountain Reservoir between the End of Fill Season and September 15.

**IV.A.6.**    **Quantification of Each City's Respective Replacement Obligation.** Once the Cities' Replacement Obligation is quantified as described above, Denver Water's Replacement Obligation and CS-U's Replacement Obligation shall be quantified as each

---

[14] If the water is not hydrologically or operationally available for storage under the Power Loss Replacement Offer, then z shall be limited to water actually stored under Conservative Operations.

## GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
### February 22, 2013

City's prorated share of the Cities' Replacement Obligation, taking account of: (1) their respective diversions; (2) the Contract Depletions for which each is responsible pursuant to the City Replacement Contracts; (3) the provisions of Paragraph II.B.3.a above (deduction of up to 80 acre-feet of depletions by Upstream of Dillon Junior Beneficiary Rights from Denver Water's Replacement Obligation); and (4) the provisions of Paragraph IV.A.4.b above (Power Loss Replacement Offers).    The quantification of the Cities' respective shares of the Cities' Replacement Obligation herein is in substantial compliance with, and is contemplated by, the Substitution Agreements and decrees.

        **IV.A.7.**       **Satisfaction of Replacement Obligations-Commencement Date.** The Cities shall satisfy their respective shares of the Cities' Replacement Obligation as provided in their respective Substitution Agreements and decrees, commencing on the date after the End of Fill Season when the Secretary directs the Cities to begin substitution operations to effectuate such satisfaction.

    **IV.B.**   **1935 Senior Refill Storage Right.**

        **IV.B.1.**       **Cities' Diversions.**  In accordance with this Paragraph IV.B, the United States will permit the Cities and the City Contract Beneficiaries to deplete and store water at their respective upstream facilities while the United States is exercising the 1935 Senior Refill Storage Right.  If water so depleted or stored by the Cities and the City Contract Beneficiaries is accounted by the Division Engineer toward the satisfaction of the 1935 Senior Refill Storage Right, then the Cities will hold that volume of water ("City Refill Water") in storage and available for release (including, as necessary, release by substitution) to the United States if the United States is unable to refill a total of 6,316 acre-feet in Green Mountain Reservoir[15] as follows:

        **IV.B.1.a.**     **Administrative Priority of 1935 Senior Refill Storage Right.**  The United States will seek to store a total of 6,316 acre-feet of water in Green Mountain Reservoir by exercising the 1935 Senior Refill Storage Right pursuant to its August 1, 1935 priority, or pursuant to such junior administrative priority as may be authorized by the Division Engineer.   The Blue River Decree Parties, Ute, and Climax will not oppose the use of an administrative priority date between August 1, 1935, and October 12, 1955, for the exercise of the 1935 Senior Refill Storage Right for the purpose of reducing or eliminating the Cities' obligation with regard to City Refill Water in accordance with IV.B.1.b.i below; provided that such administrative priority shall not affect the relative priorities of the Climax C.A. 1710 Water Rights described in Paragraph III.C.

        **IV.B.1.b.**     **Reduction of City Refill Water.**  The City Refill Water will be reduced by the following amounts:

---

[15]  To the extent that the 1935 Senior Refill Storage Right is administered with a priority equal or junior to the Cities' water rights, and the Cities' Depletions and Contract Depletions are not accounted against the 1935 Senior Refill Storage Right, the provisions of this Paragraph IV.B.1 do not apply, although such depletions are still subject to repayment under the Power Interference Agreements.

GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL
February 22, 2013

**IV.B.1.b.i**    the volume of water that is stored in Green Mountain Reservoir under a junior administrative priority that is consistent with Paragraph IV.B.1.a above authorized by the Division Engineer for the 1935 Senior Refill Storage Right;

**IV.B.1.b.ii**    the volume of water that is stored in Green Mountain Reservoir under the Junior Refill Storage Right;

**IV.B.1.b.iii**    the volume of City Refill Water that is released by the Cities on demand of the Secretary;

**IV.B.1.b.iv**    the volume of water that is released from storage in Green Mountain Reservoir solely for discretionary power purposes and/or for non-Project discretionary purposes after the End of Fill Season but during the same Fill and Delivery Year in which the City Refill Water accrued, other than any volume that may be released pursuant to any SHOP; and

**IV.B.1.b.v.**    the volume of water in excess of 60 c.f.s. that, after the End of Fill Season in the Fill and Delivery Year in which the City Refill Water accrued, and before the Start of Fill Date in the Fill and Delivery Year following the Fill and Delivery Year in which the City Refill Water accrued, is (1) diverted by the United States through exercise of the 1935 Direct Flow Power Right or (2) discretionarily bypassed by the United States and not used to generate electrical energy at the Green Mountain Reservoir Powerplant; *provided* that the City Refill Water will not be reduced if such water is (1) passed to meet legal demands or calls by water rights downstream of Green Mountain Reservoir; (2) passed to meet the Cities' obligations to satisfy legal demands or calls by water rights downstream of Green Mountain Reservoir; or (3) passed pursuant to a SHOP.

**IV.B.2.**    <u>**Maximum City Refill Water Release**</u>.

**IV.B.2.a.**    <u>Release in Same Fill and Delivery Year</u>.  The Secretary may demand the release of the City Refill Water at any time in the Fill and Delivery Year in which the City Refill Water accrued.  The maximum volume of City Refill Water that the Secretary may require the Cities to release in the same Fill and Delivery Year in which the City Refill Water accrued shall be the volume of City Refill Water remaining after any reduction pursuant to Paragraph IV.B.1.b above.

**IV.B.2.b.**    <u>Release in Subsequent Fill and Delivery Year</u>.    The maximum volume of City Refill Water that the Secretary may require the Cities to release in the Fill and Delivery Year after the Fill and Delivery Year in which the City Refill Water accrued shall be the least of:

**IV.B.2.b.i**    the volume of City Refill Water remaining after any reduction pursuant to Paragraph IV.B.1.b above;

**IV.B.2.b.ii**    the volume needed to achieve the Fill Level for the then-current Fill and Delivery Year; and

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

**IV.B.2.b.iii**   the volume needed to bring the volumes in Paragraphs II.A.3.b.i-b.v above, minus the volume of Bypassed Storage Water Owed to Green Mountain Reservoir by the Cities that is not refilled pursuant to Paragraph IV.A.5 above, to 154,645 acre-feet in the then-current Fill and Delivery Year.

**IV.B.2.c.**   If by the date when the Secretary directs the Cities to begin substitution operations or determines that it is not a Replacement Year in the Fill and Delivery Year following the Fill and Delivery Year in which the City Refill Water accrued, the Secretary makes no demand for the release of City Refill Water, then all remaining City Refill Water that accrued in the preceding Fill and Delivery Year shall be considered among the Blue River Decree Parties, Ute, and Climax to have been diverted pursuant to the Power Interference Agreements, and no further release by the Cities of such City Refill Water shall be required.

**IV.B.3.**   **Effect of Paragraph IV.B.**  Nothing in the depletion, accounting or management of the City Refill Water shall limit the exercise of the 1935 Senior Refill Storage Right in the Fill and Delivery Year following the accrual of any City Refill Water.  Further, the Cities' agreement to guarantee the satisfaction of the 1935 Senior Refill Right as provided in this Paragraph IV.B is the result of a negotiated settlement and agreement, and shall not be taken as precedent regarding any party's interpretation of the rights or obligations related to the 1935 Senior Refill Storage Right.

**IV.C.**   **Other Provisions**

**IV.C.1.**   **No Waiver Regarding the Power Use Fill Shortage.**  Nothing in this Section IV shall ever give rise to any claim, defense, or theory of acquiescence, bar, merger, issue or claim preclusion, promissory estoppel, equitable estoppel, waiver, laches, unclean hands or any other similar position or defense concerning any factual or legal position regarding the obligation of the United States annually to complete the fill of the 1935 First Fill Storage Right.

**IV.C.2.**   **60 c.f.s. Bypasses.**   The Blue River Decree Parties, Ute, and Climax agree among themselves that they shall not assert in any forum that bypasses of inflow to Green Mountain Reservoir up to 60 c.f.s. should be accounted toward the administrative fill of the Green Mountain Reservoir Storage Rights.

**IV.C.3.**   **No Modification of Sections I-III.**  Nothing in this Section IV is intended to modify the administrative and accounting provisions of Sections I, II, and III above.

**IV.C.4.**   **Consistency with the Blue River Decree.**   The operations, administration of water rights, and management of the Cities' Replacement Obligations set forth in Sections I, II, III, and IV of this Protocol are consistent with the terms and conditions of the Blue River Decree and Stipulations.

**IV.C.5.**   **Power Replacement**.  For the duration of the time when the 1935 First Fill Storage Right is being administered under an October 12, 1955 administrative priority pursuant to Paragraph II.D.2 above, the 1935 Direct Flow Power Right also may be administered under an identical date.  To the extent that the 1935 Direct Flow Power Right is administered

**GREEN MOUNTAIN RESERVOIR ADMINISTRATIVE PROTOCOL**
**February 22, 2013**

with a priority date identical or junior to those of the Cities' water rights, the Cities' Depletions and Contract Depletions shall be treated, for purposes of the Cities' Power Interference Agreements, as depletions against the 1935 Direct Flow Power Right.