# EXHIBIT DW-3

# Green Mountain Reservoir Administrative Protocol Agreement

THIS AGREEMENT is made and entered into as of the effective date (as defined in paragraph 17 below), by and among the United States of America ("United States"), the City and County of Denver, acting by and through its Board of Water Commissioners ("Denver Water"), the City of Colorado Springs, acting through its enterprise Colorado Springs Utilities ("CS-U"), the Colorado River Water Conservation District ("CRWCD"), the Northern Colorado Water Conservancy District ("NCWCD"), the Middle Park Water Conservancy District ("MPWCD"), the Grand Valley Water Users Association ("GVWUA"), the Orchard Mesa Irrigation District ("OMID"), the Grand Valley Irrigation Company ("GVIC"), the Palisade Irrigation District ("PID"), Climax Molybdenum Company ("Climax"), the Ute Water Conservancy District, acting by and through the Ute Water Activity Enterprise ("Ute"), and the State Engineer and Division Engineer for Water Division 5, Colorado Division of Water Resources ("SEO") (each individually, a Party and collectively, the Parties).

## RECITALS

A. The United States is the owner and operator of Green Mountain Reservoir, an on-channel reservoir located on the Blue River in Summit County, Colorado, and is a party to the Findings of Fact, Conclusions of Law, and Final Judgment in Consolidated Cases No. 5016 and 5017 and the Findings of Fact and Conclusions of Law and Final Decree in Consolidated Cases Nos. 2782, 5016, and 5017 ("Consolidated Cases"), United States District Court for the District of Colorado ("Federal Court"), dated October 12, 1955 ("Blue River Decree"), which adjudicated water rights for Green Mountain Reservoir and the Green Mountain Powerplant (together "Green Mountain Water Rights");

B. Denver Water is a home rule municipal corporation created and existing under Article XX, section 1 of the Colorado State Constitution, the Charter of the City and County of Denver and other applicable Colorado law and is a party to the Blue River Decree;

C. The City of Colorado Springs is a home rule city and municipal corporation of the State of Colorado and is a party to the Blue River Decree;

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

D. CRWCD is a political subdivision of the State of Colorado pursuant to Colo. Rev. Stat. (C.R.S.) §§ 37-46-101 et seq. and is a party to the Blue River Decree;

E. NCWCD is a water conservancy district organized pursuant to C.R.S. §§ 37-45-101 et seq. and is a party to the Blue River Decree;

F. MPWCD is a water conservancy district organized pursuant to C.R.S. §§ 37-45-101 et seq. and is a party to the Blue River Decree;

G. GVWUA, GVIC, OMID, and PID are parties to the Blue River Decree;

H. Climax is a Delaware corporation that owns water rights adjudicated by the Summit County District Court in Civil Action 1710 ("C.A. 1710") for use at the mine and mill located near Leadville, Colorado ( the "Climax C.A. 1710 Water Rights");

I. The Ute Water Conservancy District is a water conservancy district organized pursuant to C.R.S. §§ 37-45-101 et seq.;

J. The SEO is responsible for the administration of water and water rights in the State of Colorado ("State") in Water Division No. 5;

K. Numerous disputes have arisen over the years as to how Green Mountain Water Rights should be administered under the Blue River Decree;

L. The SEO adopted an Interim Policy for the administration of the Green Mountain Water Rights under the Blue River Decree;

M. Some of the Parties have disagreed with the Interim Policy;

N. The United States, Denver Water, CS-U, CRWCD, NCWCD, MPWCD, GVWUA, GVIC, OMID, and PID (the "Blue River Decree Parties"), Ute, and Climax have negotiated an administrative protocol for the administration of the Green Mountain Water Rights and the Climax C.A. 1710 Water Rights ("Administrative Protocol"), a copy of which is attached hereto, which is intended and considered by them to be consistent with the terms of the Blue River Decree and the relative priorities of Green Mountain Water Rights and those water rights adjudicated in C.A. 1710, including the Climax C.A. 1710 Water Rights, and which is intended to reduce or eliminate the likelihood of expensive, protracted, and contentious litigation amongst the Parties;

2

O. The resolution of long-standing disputes regarding the proper administration of the Green Mountain Water Rights and the Blue River Decree provides significant benefits for water users on both the east and west slopes of the State, including, but not limited to, optimum utilization of the waters of the State, reducing litigation costs of the Parties, and providing clarity as to water rights administration;

P. The Blue River Decree Parties and Climax intend to seek judicial confirmation that the Administrative Protocol is consistent with the Blue River Decree and that the Climax C.A. 1710 Water Rights can be administered as provided in the Administrative Protocol without injury to the Green Mountain Water Rights or other water rights; and

Q. The Parties intend (1) that the Federal Court, consistent with its retained jurisdiction to interpret and implement the Blue River Decree, exercise such jurisdiction to determine whether the Administrative Protocol is consistent with the terms of the Blue River Decree; and (2) that all interested parties have notice and an opportunity to participate in such determination with regard to Sections I, II, and III, only, of the Administrative Protocol, pursuant to the procedures of the Colorado Water Right Determination and Administration Act of 1969, C.R.S. §§ 37-92-101 et seq. ("1969 Act"). To that end, the Parties agree to the judicial proceedings described herein, including the application by the Federal Court of the1969 Act procedures in determining whether Sections I, II, and III of the Administrative Protocol are consistent with the terms of the Blue River Decree, which is consistent with the Federal Court's prior practice of proceeding in consonance with the 1969 Act in matters regarding the Blue River Decree.

NOW, THEREFORE, the Parties agree as follows:

1.     Purposes of the Agreement. The intent of the Blue River Decree Parties, Ute, and Climax in agreeing to the Administrative Protocol is to clarify and implement certain provisions of the Blue River Decree by (1) setting forth a protocol for, among other things: (a) the preparation, review, and modification of a fill schedule for Green Mountain Reservoir; (b) definition and administration of a fill season for exercise of the 1935 First Fill Storage Right; (c) administration of water rights during the fill season; and (d) operation of the Green Mountain Water Rights and Denver Water and CS-U's (the Cities) water rights in response to downstream calls senior to the Cities' water rights; (2) making as much water as possible available for upstream use, including use by the Cities, without impairment of the fill of Green Mountain Reservoir and without impairment of legal calls of downstream water rights; (3) providing a clear definition of the Cities' replacement obligation operations; (4) ensuring that the administration of water rights

3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

does not allow the water rights of the Cities to "hide behind" or otherwise benefit from the Green Mountain Reservoir Water Rights; (5) reducing as much as possible or potentially eliminating the extent to which the Green Mountain Reservoir 60 c.f.s. bypass is accounted toward the fill of the Green Mountain Reservoir Storage Rights, and assuring, to the extent possible, the refilling of Green Mountain Reservoir to the extent that such bypass is accounted toward the fill of the Green Mountain Reservoir Storage Rights; and (6) addressing the relative priority of the Green Mountain Water Rights, the Cities' water rights, and Climax's C.A. 1710 Water Rights in a manner agreed by the Blue River Decree Parties and Climax; all in a manner that is consistent with the Blue River Decree. The SEO has negotiated with the Blue River Decree Parties, Ute, and Climax regarding Sections I, II and III of the Administrative Protocol, and agrees to be bound by, and to administer, distribute, and regulate the waters of the State in accordance with a final judgment and decree as provided below.

2. Approval of Administrative Protocol by Blue River Decree Parties, Climax, and Ute. The Blue River Decree Parties, Climax, and Ute approve the Administrative Protocol attached hereto as Exhibit A and agree that the Administrative Protocol shall govern the matters set forth therein, unless it is disapproved or materially modified as a result of the proceedings described in paragraphs 3 and 4 below. In the event that the Federal Court or the District Court in and for Water Division 5 ("Water Court") does not approve or materially modifies the Administrative Protocol, or refuses to rule on the proceedings filed by the Blue River Decree Parties and Climax, then paragraph 4 shall apply.

3. Judicial Proceedings. Within 60 days of the effective date of this Agreement, the Blue River Decree Parties and Climax will concurrently institute judicial proceedings in the Water Court and the Federal Court as follows:

3.1. Water Court Proceeding. The Blue River Decree Parties and Climax will file an application for determination of water right, pursuant to C.R.S. § 37-92-302(1)(a), requesting a determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree ("Water Court Application"). Notice of the Water Court Application, including the full text of Sections I, II, and III of the Administrative Protocol, shall be provided in the resume of applications filed in Water Division No. 5 in accordance with C.R.S. § 37-92-302(3)(a), and by newspaper publication in Summit, Grand, Garfield, Eagle, Pitkin, Routt, Gunnison, Rio Blanco, and Mesa Counties as well as in any other county in which publication is ordered by the water judge.

4

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

3.1.1. Upon expiration of the statutory time for filing statements of opposition to the Water Court Application, the Blue River Decree Parties shall immediately move to stay the Water Court proceeding and shall pursue the Federal Court proceeding described in paragraph 3.2 below.

3.2. Federal Court Proceeding. The Blue River Decree Parties will file, concurrent with the filing of the Water Court Application, an application and/or petition, pursuant to the Federal Court's retained jurisdiction to interpret and implement the Blue River Decree, requesting (1) a determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree; and (2) a determination that Section IV of the Administrative Protocol is consistent with the Blue River Decree ("Federal Court Application"). Immediately upon filing the Federal Court Application, the Blue River Decree Parties will request entry by the Federal Court of a procedural order specifying that the procedure set forth in the Federal Court's Order Regarding Further Proceedings Consonant With the Colorado Water Right Determination and Administration Act of 1969 entered on August 4, 1977, shall apply to that part of the Federal Court Application requesting a determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree, and to that part of the Federal Court Application only. If the Federal Court makes a determination that Sections I, II, and III are consistent with the Blue River Decree, and no motion is filed pursuant to paragraph 4, the Blue River Decree Parties will request the Federal Court to serve its judgment or order on its determination regarding Sections I, II and III on the Clerk of the Water Court with a request that the Water Court enter such judgment or order as a judgment or decree of the Water Court.

3.3. Participation in Judicial Proceedings.

3.3.1. It is the intent of the Parties that all persons and entities filing statements of opposition (whether in the Water Court or the Federal Court) to the Water Court Application shall be entitled to participate fully in the judicial proceedings to determine whether Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree, but that the scope of any such party's participation (whether in the Water Court or the Federal Court) shall be limited to whether Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree. To that end, the Parties shall not challenge the standing of any person filing a timely statement of opposition to the Water Court Application (whether in the Water Court or the Federal Court), and shall not oppose any motion to intervene in proceedings regarding whether Sections I, II and III of the Administrative Protocol are consistent with the Blue River Decree that are filed prior to the due date for filing of the opposers' initial mandatory disclosures under the Rules of Civil Procedure applicable to the proceeding. The Blue

5

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

River Decree Parties acknowledge that Climax has a direct, substantial and legally protectable interest relating to the subject matter of the Federal Court Application that may be impaired or impeded if Climax does not have the ability to protect its interests as a party to the Federal Court determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree. The Blue River Decree Parties therefore shall not oppose and shall consent to any motion to intervene by Climax in the Federal Court Application for the limited purpose of determining whether Sections I, II and III of the Administrative Protocol are consistent with the Blue River Decree. The Blue River Decree Parties will give Climax the opportunity to review and comment on drafts of the application and/or petition for the Federal Court Proceeding prior to its filing with the Federal Court for the purpose of insuring that such pleadings sufficiently acknowledge Climax's interests in Sections I, II, and III of the Administrative Protocol.

3.3.2. The Blue River Decree Parties, or their designated representative, shall serve the SEO and the First Attorney General of the Water Resources Unit of the Natural Resources and Environment Section of the Colorado Attorney General's Office (or such other attorney as designated in writing from time to time by the First Attorney General), with copies of all papers filed in either the Water Court or the Federal Court proceedings. The SEO shall not file a statement of opposition to, or otherwise file any documents opposing the determination (in either the Water Court or the Federal Court) that the Administrative Protocol is consistent with the Blue River Decree; provided that Sections I, II, and III of the Administrative Protocol are not materially modified during the course of, or as a result of, such proceedings in either the Water Court or the Federal Court. If those sections are modified, then the Blue River Decree Parties, Ute, Climax, and the SEO shall confer. If the Parties agree that the modification is material, the Blue River Decree Parties, Ute, and Climax shall not oppose upon any grounds, including timeliness, the intervention of the SEO either as an intervention of right or a permissive intervention under the applicable Rules of Civil Procedure in the original or any remanded judicial proceeding concerning Sections I, II, and III of the Administrative Protocol. If the Parties do not agree as to the materiality of the modification, their dispute shall be resolved by the presiding court in ruling upon any motion to intervene filed by the SEO. Upon intervention, the SEO shall limit its participation to matters raised by the material modification of Sections I, II, and III of the Administrative Protocol. The SEO may also move to intervene in the judicial proceedings in the event any provision of this Agreement is breached by any non-SEO Party, and the Parties shall not oppose such intervention upon any grounds. Subject to paragraph 4 below, the SEO shall not object to or appeal the entry of a final judgment and decree by either the Federal Court or the Water Court in response to the request for a determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree. Pursuant to C.R.S. §§ 37-92-301(1), -304(8), and -501(1),

6

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

the SEO shall be bound by, and shall administer, distribute, and regulate the waters of the State in accordance with any final judgment and decree entered in response to the request for a determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree, subject to any appellate review.

3.3.3. In order to become a party to the Water Court Application, Ute may file a statement of opposition in support of a determination that Sections I, II, and III of the Administrative Protocol are consistent with the Blue River Decree. Ute may also participate in the Federal Court proceeding to the same extent as any other party that files a statement of opposition in the Water Court proceeding. Notwithstanding the fact that a pleading filed by Ute is captioned as a statement of opposition, all Parties recognize and agree that Ute's position in the judicial proceedings herein will be aligned with the position of the Blue River Decree Parties and Climax. Prior to the filing of the judicial proceedings herein, the Blue River Decree Parties, Climax, and Ute will undertake to document their common interest herein by means of a formal common interest agreement allowing them to share confidential information and otherwise to cooperate in obtaining determinations from the Water Court and/or the Federal Court that the Administrative Protocol is consistent with the Blue River Decree.

3.4.   Judicial Proceedings Inconsistent with the Intent of the Parties. In the event that the Federal Court determines that it lacks jurisdiction, or otherwise declines to exercise jurisdiction, to adjudicate the Federal Court Application in whole or in part, or the Water Court declines to stay the proceedings in Water Court, the Parties will confer and determine how to proceed in obtaining the participation and judicial confirmations contemplated herein.

3.5.   No Precedent. While the Parties have agreed to follow the procedures set forth in this paragraph 3, and to request that such procedures be adopted and implemented by the Water Court and the Federal Court, nothing in this Agreement, or in the Parties' participation in those procedures in this instance, shall have the effect of precedent or preclusion on any Party in any other proceeding with respect to whether the Water Court or the Federal Court has primary jurisdiction over the subject matter of this Agreement and the Blue River Decree.

4.   If a Party Believes a Judgment and Decree is Not Consistent With, Materially Modifies, or Does Not Approve the Administrative Protocol. Within 14 days of entry of any final judgment and decree or other court order in the proceedings contemplated in paragraph 3 of this Agreement, any Party may notify the other Parties that it believes the judgment and decree or other court order(s) is not consistent with, materially modifies, or does not approve the Administrative Protocol. Such Party shall

7

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

simultaneously file a motion under C.R.C.P. 59, F.R.C.P. 59, or other appropriate rule seeking a stay of the proceedings pending the negotiations or mediation contemplated by this paragraph and requesting an enlargement of time to file additional motions as appropriate. The other Parties shall be deemed to have consented to any such motion. Upon such notification, the Parties will confer in good faith and endeavor to resolve the inconsistency, modification, or failure of approval in a manner consistent with the Administrative Protocol or in a manner that comes as close as possible to the intention of the Administrative Protocol. If the Parties are not able to reach a unanimous consensus resolution to any inconsistency, material modification, or failure of approval, then the Parties shall submit the disputed issue to a third party mediator. If the disputed issue cannot be resolved through good faith mediation, then the Parties may pursue any available legal or administrative recourse, including but not limited to a motion for post-trial relief under C.R.C.P. 59 or F.R.C.P. 59, or for relief from judgment or order under C.R.C.P. 60 or F.R.C.P. 60, as appropriate, to vacate the judgment and decree or to request another court order.

5. Administration of CBT Project Priorities and Climax C.A. 1710 Water Priorities.

5.1. The Parties agree that, pursuant to the Stipulation for Decree in the United States District Court for the District of Colorado, Consolidated Case Nos. 2782, 5016, and 5017 and District Court, Water Division No. 5, State of Colorado, Case No. 88CW382, dated August 7, 1992, and pursuant to the Findings of Fact, Conclusions of Law and Judgment and Decree in the same matter, dated November 10, 1992, the direct flow, storage and exchange water rights for the operation of the Colorado-Big Thompson Project shall be administered with a priority date of August 1, 1935 as though adjudicated in the first available adjudication following that date, with the exception of a subsequent state or federal court confirmation of the limited exception within Water District 36 that is explicitly stated in Section III.C of the Administrative Protocol, and further subject to the provisions of the Blue River Decree and the provisions of the Manner of Operation Section of Senate Document No. 80. Notwithstanding the provisions of paragraphs 9 and 10 below, this Paragraph 5.1 shall survive any partial or complete invalidation of the Administrative Protocol and shall survive the termination of this Agreement.

5.2. The SEO further agrees that the administration within Water District 36 that is explicitly stated in Section III.C of the Administrative Protocol is consistent with Colorado law and may be implemented without injury to vested water rights. In consideration of the settlement of the disputed issues of priority in Water District 36, the Blue River Decree parties, Ute, and Climax agree to the administration specified in Section III.C of the Administrative Protocol contingent upon Climax and its successors

8

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

complying with Section III.D of the Administrative Protocol. Notwithstanding the provisions of paragraphs 9 and 10 below, the provisions of Section III of the Administrative Protocol, and the foregoing provisions of this paragraph regarding Sections III.C and III.D of the Administrative Protocol, shall, to the extent consistent with any judicial rulings regarding Section III of the Administrative Protocol in the Water Court or Federal Court proceedings under paragraph 3 above, survive (a) any partial or complete invalidation of Sections I and II of the Administrative Protocol, and (b) the termination of this Agreement.

6.      No Assertion that Protocol or Protocol Agreement Violates Senate Document No. 80 or Blue River Decree. The Blue River Decree Parties, Ute, and Climax agree that they will never assert, in any forum or for any purpose, that either the Protocol Agreement or the implementation of the Administrative Protocol is a violation of any obligation of any of the Parties under Senate Document No. 80 or the Blue River Decree.

7.      No Estoppel Except as Provided. The Blue River Decree Parties, Ute, and Climax agree that except as expressly provided in paragraphs 5 and 6 above, nothing herein shall ever give rise to any claim, defense, or theory of acquiescence, bar, merger, issue or claim preclusion, promissory estoppel, equitable estoppel, waiver, laches, unclean hands or any other similar position or defense concerning any factual or legal position regarding the Parties' respective positions regarding the operation of the Colorado-Big Thompson Project, Senate Document No. 80, the 1938 Repayment Contract for the Colorado-Big Thompson Project, Reclamation Law, the Blue River Decree, the 1984 Green Mountain Operating Policy, or Colorado law.

8.      Fees and Costs. The Parties shall each be responsible for their own attorneys' fees, engineering fees, and any other costs and fees associated with the Water Court and Federal Court proceedings discussed in paragraphs 3 and 4 above.

9.      No Precedent in Other Matters. The Parties further agree that they do not intend this Agreement or the Administrative Protocol to have the effect of precedent or preclusion on any factual or legal issue in any other matter.

10.     No Precedent if Decree is Determined No Force or Effect. In the event that all or a portion of any decree confirming the Administrative Protocol is determined to be of no force or effect, neither the existence of such decree, nor the fact that any Party was willing to sign this Agreement, or not to object to or otherwise challenge the decree or the Administrative Protocol, shall ever be used against any Party in any manner in any forum.

9

11.    Reforming the Agreement. If any provision or part of this Agreement is held to be void or unenforceable by a court with jurisdiction, the Parties will confer in good faith and endeavor to reform the Agreement to replace such stricken provision with a new provision that comes as close as possible to expressing the intention of the void or unenforceable provision. The Parties acknowledge that such endeavors may not succeed in reforming the Agreement.

12.    Appropriation and Spending Limitations. In accord with the Colorado Springs City Charter, performance of CS-U's obligations under this Agreement is expressly subject to appropriation of funds by the Colorado Springs City Council. In the event funds are not appropriated in whole or in part sufficient for performance of CS-U's obligations under this Agreement, or appropriated funds may not be expended due to City Charter spending limitations, then CS-U will thereafter have no obligations in excess of CS-U's authorized appropriation for this Agreement or the applicable spending limit, whichever is less. CS-U will notify the other parties as soon as reasonably practicable in the event of non-appropriation or in the event a spending limit becomes applicable. Any other Party subject to an appropriation or lawful expenditure limitation will likewise have no obligations in excess of its authorized appropriation for this Agreement or the applicable spending limit, whichever is less, and shall notify the other Parties as soon as reasonably practicable in the event of non-appropriation or in the event a spending limit becomes applicable.

13.    Waiver. A waiver by any Party of a default by any other Party and/or of the performance of any other Party's obligations contained in this Agreement shall not be deemed a waiver of the performance of any other obligations or of any subsequent default in the performance of the same or any other obligation contained in this Agreement. Further, a waiver by any Party of a default by any other Party or of the performance of any other Party's obligations contained in this Agreement shall not constitute a waiver by any other Party.

14.    Captions. The captions of the paragraphs hereof are for convenience only and shall not govern or influence the interpretation hereof.

15.    Construction. All Parties were represented by counsel and participated in the drafting of this Agreement. Neither this Agreement nor any provision of this Agreement shall be construed against any Party, regardless of whether a Party drafted or participated in the drafting of any provision of this Agreement.

10

Green Mountain Reservoir
Administrative Protocol Agreement

16.    Counterparts. This Agreement may be executed in counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument.

17.    Effective Date. The effective date of this Agreement shall be the date of the execution of this Agreement if executed by all the Parties on the same date. If the Agreement is not executed by all the Parties on the same date, then the effective date of this Agreement shall be the date on which all the Parties have executed this Agreement.

Dated this 16Th day of August, 2013.

UNITED STATES OF AMERICA

ROBERT G. DREHER
Acting Assistant Attorney General

By: _____

JAMES J. DUBOIS, #13206
U.S. Department of Justice
Environmental and Natural Resources
Division

Attorneys for the United States of America

By: _____

MICHAEL J. RYAN
Regional Director, Great Plains Region
U.S. Bureau of Reclamation

11

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this $\underline{1^{st}}$ day of $\underline{March}$, 2013.

PALISADE IRRIGATION DISTRICT

By: _____
President

AND ITS ATTORNEYS

By: _____

Nathan A. Keever
Dufford, Waldeck, Milburn & Krohn, LLP

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this 27th day of February 2013.

ATTEST:

BY:
SECRETARY

THE CITY AND COUNTY OF DENVER,
acting by and through its BOARD OF
WATER COMMISSIONERS

BY:
PRESIDENT

APPROVED:

BY:
DIRECTOR OF PLANNING

APPROVED AS TO FORM:

BY: Casey S Funt
LEGAL DIVISION

REGISTERED AND COUNTERSIGNED:

BY: Denny Gullagher
AUDITOR
CITY AND COUNTY OF DENVER

13

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this /⌐/ ᵗʰday of ~~✓lᴀ⋅ h , 2013.

GRAND VALLEY IRRIGATION
COMPANY

By: _____
        President

AND ITS ATTORNEYS

By: _____
        Frederick G. Aldrich
        Aldrich Law Firm, LLC

14

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this _2 6_ day of _March_, 2013.

CITY OF COLORADO SPRINGS
ACTING BY AND THROUGH ITS
ENTERPRISE COLORADO SPRINGS
UTILITIES

By: _____

Scott Hente
President of City Council

APPROVED AS TO FORM

OFFICE OF THE CITY ATTORNEY

By: _____

15

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this 2ℓ day of *Oflie* , 2013

MIDDLE PARK WATER
CONSERVANCY DISTRICT

By: _____
President

AND ITS ATTORNEYS

_____
Stanley W. Cazier
Cazier, McGowan & Walker

16

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this 1st day of  April , 2013.

NORTHERN COLORADO WATER
CONSERVANCY DISTRICT

By: Mike Applegate
President and Chairman

AND ITS ATTORNEYS

By: Bennett Raley

Bennett Raley
Trout Raley Montano Witwer &
Freeman, PC

17

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this __4th__ day of March, 2013.

ORCHARD MESA IRRIGATION
DISTRICT

By: _Larry Fuller_
President

AND ITS ATTORNEYS

By: _Mark A. Hermundstad_

Mark A. Hermundstad
Williams, Turner & Holmes, P.C.

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement

Dated this __19th__ day of __June__, 2013.

COLORADO RIVER WATER
CONSERVATION DISTRICT

By:
President, James Newberry

AND ITS ATTORNEYS

Peter C. Fleming
Colorado River Water Conservation
District

19

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this _15th_ day of _August_, 2013.

COLORADO DIVISION OF WATER
RESOURCES

By: _____
Dick Wolfe, State Engineer

AND ITS ATTORNEY

By: _____
Paul L. Benington
First Assistant Attorney General
Water Resources Unit
Natural Resources & Environment
Section
Colorado Department of Law

Green Mountain Reservoir
Administrative Protocol Agreement

Dated this ____ day of _____, 2013.

CLIMAX MOLYBDENUM COMPANY

By: _____

David H. Thornton
President

AND ITS ATTORNEYS

By: _____

Brian Nazarenus
Ryley Carlock and Applewhite

21

**EXHIBIT DW-3**

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this _13th_ day of March, 2013.

UTE WATER CONSERVANCY
DISTRICT, ACTING BY AND
THROUGH THE UTE WATER
ACITIVITY ENTERPRISE

By: _____
President

AND ITS ATTORNEYS

By: _____
Mark A. Hermundstad
Williams, Turner & Holmes, P.C.

22

EXHIBIT DW-3

Green Mountain Reservoir
Administrative Protocol Agreement
February 22, 2013

Dated this __7th__ day of March, 2013.

GRAND VALLEY WATER USERS
ASSOCIATION

By: D. Kim Alberton
    President

AND ITS ATTORNEYS

By: Mark A Hermundstad
    Mark A. Hermundstad
    Williams, Turner & Holmes, P.C.

23