# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO
### Civil Action No. 49-cv-02782-MSK-CBS
### Consolidated Case Nos. Civil Action No. 2782, Civil Action No. 5016,
### and Civil Action No. 5017

UNITED STATES OF AMERICA,

      Plaintiff,

v.

NORTHERN COLORADO WATER CONSERVANCY DISTRICT, et al.

      Defendants.

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes of Irrigation:
Petitioners:
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes Other Than Irrigation:
Petitioners;
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT.

---

## MEMORANDUM IN RESPONSE TO COURT'S QUESTIONS

---

## 1.    Introduction.

At the law and motions hearing in this matter held on December 2, 2013, the Court

requested submission of position statements regarding four points:

1.      What do the petitioners ask the federal court to do?

2.      What is the federal court's jurisdiction in this matter?

3.      If there is overlapping jurisdiction with the Colorado Water Court, what court is best to address this matter?

4.      If parties other than the named parties in the Consolidated Cases are to be bound, what kind of procedure is required to satisfy due process and afford an opportunity to object?

This memorandum sets forth the position of the City of Colorado Springs, which is acting by and through its enterprise Colorado Springs Utilities, ("Colorado Springs") regarding these four questions.  Colorado Springs is a party in Civil Actions No. 2782, 5016, and 5017 ("Consolidated Cases"), a party to 1955 and 1964 stipulations with the United States and other parties in the Consolidated Cases that led to the entry of the 1955 and 1964 Blue River Decrees, and the owner of water rights adjudicated by the Blue River Decree entered by this Court in the Consolidated Cases.  Colorado Springs is also a signatory to the Green Mountain Reservoir Protocol Agreement (copy submitted by Denver as Exhibit DW-4), and a Petitioner herein seeking this Court's approval of the Green Mountain Reservoir Protocol.

**2.      Background on the Consolidated Cases and Blue River Decree.**

The Consolidated Cases arose out of a supplemental adjudication of water rights on the Blue River by the Summit County District Court in CA 1805 and 1806.[1]  That state adjudication was carried out pursuant to the adjudication system then in effect in Colorado, which provided for original, and subsequent supplemental, general stream adjudications, in which multiple water

---

[1] One case addressed irrigation water rights; the other water rights used for other purposes.

rights on a single stream were addressed in a single proceeding, out of which a single decree adjudicating multiple water rights would issue. *See, e.g.* Adjudication Act of 1943, C.R.S. §§148-9-1 *et seq.*

In 1944, the United States and the Northern Colorado Water Conservancy District ("Northern") filed a Statement of Claim in the pending Summit County District Court proceeding for Green Mountain Reservoir ("GMR"), a component part of the federal Colorado-Big Thompson Project ("CBT").  In 1949, the United States withdrew its claim in the state proceeding, and initiated Civil Action No. 2782 in this Court, seeking to have title to water rights for the CBT Project in the Colorado River and its tributaries, including GMR, which is located on the Blue River, quieted against the adverse claims of Colorado Springs, Denver, and others, and to have the validity of Senate Document 80, of the 75th Congress, 1st Session, declared, and certain features of S.D. 80 construed.

Upon the withdrawal by the United States from the Summit County cases, the Colorado River Water Conservation District ("River District") filed a claim for water rights for GMR; when the Summit County court refused to enter a decree on that Statement of Claim, various Grand Valley water users (Grand Valley Water Users Association, Grand Valley Irrigation Company, Orchard Mesa Irrigation District, and Palisade Irrigation District) sought to reopen the proceedings and file their claims for GMR.

In 1952, Congress enacted the McCarran Amendment, 43 U.S.C. §666, which granted consent to joinder of the United States in state suits for adjudication or administration of water rights held by the United States.  Also in 1952, the Summit County District Court entered its

3

decrees in CA 1805 and 1806, adjudicating, among others, water rights for Denver's and

Colorado Springs' Blue River projects, and not adjudicating any water right for GMR.

That decree was appealed to the Colorado Supreme Court, which issued its opinion in

1954 (*Denver et al. v. Northern et al.,* 130 Colo. 375, 276 P.2d 992 (Colo. 1954)).  With respect

to GMR, the Colorado Supreme Court held that the United States was a "carrier and trustee" for

the owners of the water rights (130 Colo. at 415); that the United States' governmental immunity

did not extend to the water users from GMR; that having voluntarily appeared in the Summit

County proceedings in 1944, the United States (and Northern) was subject to the jurisdiction of

that court (irrespective of  the McCarran Amendment); that it was the duty of the United States

to "protect the rights of the consumers of the water" (130 Colo. at 421); and that the United

States having failed in its duty to protect their interests, the beneficiaries of GMR, (e.g. the River

District and Grand Valley water users) were entitled to be heard in the Summit County

proceedings. The Supreme Court accordingly remanded the decree to the Summit County

District Court with instructions:

> to reopen the case as to the adjudication of said Green Mountain
> Reservoir and hydroelectric plant rights, with permission to file
> claim as may be advised in that behalf, and, upon the evidence
> already introduced, and additional evidence, if any, which may be
> tendered, to adjudicate said rights.

130 Colo. at 422.

Upon remand, the United States was served with process, and removed the state court

cases to this Court, where they were assigned Civil Actions No. 5016 and 5017, and consolidated

for trial with the pending Civil Action 2782.  The Court denied motions of Colorado Springs and

4

Denver to remand the cases, and set the Consolidated Cases for trial in October, 1955.  On

October 5, 1955, the United States and other parties in the cases (Northern, River District, Grand

Valley entities, Englewood, Denver, and Colorado Springs) entered into a stipulation ("1955

Stipulation"), which was set out verbatim in two decrees entered by this Court on October 12,

1955: a Final Judgment in Cases 5016 and 5017 (the removed state water adjudications) and a

Final Decree in Cases 2782, 5016, and 5017.  These documents constitute the original Blue River

Decree, which was approved by Congress at 43 U.S.C. §620j, and has been construed, enforced,

and supplemented by subsequent orders and decrees of the Court over the ensuing half-century.

 The Final Judgment and Final Decree awarded a priority date of August 1, 1935, to the

United States for the CBT facilities and water rights, including GMR, in the Colorado River, the

Blue River, and their tributaries, and specified that the CBT should be operated in conformity

with the "Manner of Operations" Section of Senate Document 80, and with the 1955 Stipulation;

and also recognized and confirmed water rights of Denver, Colorado Springs, and Englewood.

Each decree specified that it was a final determination of the priorities therein, and that the

United States, Denver, Colorado Springs, and Englewood were the owners of their described

water rights.

 An important feature of the Blue River Decree is the order of priorities adjudicated to the

CBT and Denver's and Colorado Springs' Blue River rights: 1935, 1946, and 1948, respectively,

which means that GMR, which is located lowest in the Blue River basin, with the largest

watershed to supply it, may effectively prevent Denver and Colorado Springs from exercising

their Blue River rights until GMR has been filled each year—by which time, there may be

insufficient water left in the watersheds that supply Denver's and Colorado Springs' upstream

facilities to fill their storage rights (especially Denver's Dillon Reservoir) or yield significant

supply for their direct flow rights (especially Colorado Springs', since they are located very high

in the watershed) before they are called out by GMR's direct flow rights or other senior

downstream Colorado River rights.  Meanwhile the parties to the Blue River Decree recognized

that the Blue River supplies are important for the two cities, and that as a general matter there is

sufficient Blue River water available, if managed appropriately, to satisfy the water rights of the

United States and Denver and Colorado Springs, and sought in part to enable such management

in the 1955 Stipulation and Blue River decrees.  The difficulties presented in implementing the

operations called for S.D. 80 as incorporated into the Blue River Decree, which has the force of

federal statute (*Public Service Co. v. F.E.R.C.*; 754 F.2d 1555, 1561 (10th Cir., 1985)), and by the

stipulations incorporated into the Blue River Decree, are at the root of most of the disputes

regarding the Blue River Decree that this Court has been called upon to address.  This Court

evidently anticipated that it would need to supervise implementation of the Blue River Decree:

the last paragraph of the 1955 Final Decree retained continuing jurisdiction in the matter, and by

order entered October 29, 1957, this Court amended that provision to read:

> It is further ordered, adjudged and decreed that this Court retains
> continuing jurisdiction for the purpose of effectuating the objectives of
> this Final Decree; including specifically but not by way of limitation,
> further interpretation of Senate Document No. 80 and the enforcement of
> the provisions thereof.

One dispute arose when Dillon Reservoir was completed in the early 1960's.  In 1962 this

Court denied a motion filed by Denver for remand to the state court of the removed cases, or

6

alternatively for "an injunction restraining all parties from further action affecting the matters

thus removed in any" Colorado state court.  Instead, this Court ordered that "so long as this

Court retains jurisdiction in the premises it shall remain available as the forum for the exercise of

jurisdiction over all the proceeding thus removed together with all matters necessarily related

thereto as defined by the laws of the state of Colorado."  Thereafter, in 1964 this Court entered a

further decree, based upon another stipulation among the parties (the "1964 Stipulation").  The

1964 decree referred to the Final Judgment and Final Decree from 1955 and Senate Document

80; confirmed that neither Denver nor Colorado Springs has any right, title, or interest in GMR

or any water the United States is entitled to store therein; specifies the rights of the United States

to fill GMR; and describes means by which Denver and Colorado Springs may carry out water

operations contemplated by the 1955 Stipulation and 1955 decrees, by exercising, with approval

of the Secretary of Interior, their decreed Blue River water rights while GMR is still filling, or is

exercising its power generation water right, and making certain exchanges of stored water in the

Williams Fork and Blue River.  The final paragraph of the 1964 decree specified, again, that the

Court retained continuing jurisdiction "for the purposes of effectuating the objectives of the

Judgment and Decree heretofore entered October 12, 1955, and this decree."

In 1969, Colorado enacted the 1969 Water Right Determination and Administration Act,

C.R.S. §37-92-101, *et seq*., ("1969 Act") to "revamp its legal procedures for determining claims

to water within the state" (*Colorado River Water Conservation District v. U.S.*, 424 U.S. 800,

804 (1976) ("*Akin*")), by dividing the state into seven Water Divisions corresponding to the

major river basins in the state, and establishing a Water Court for each Division with jurisdiction

to determine water matters within the Water Division. C.R.S. §§37-92-201, 203. The 1969 Act

also established "a single continuous procedure" (*Id.* at 820) to adjudicate water rights on an

individual basis, rather than en masse through successive stream adjudications.  The 1969 Act

thus provides for individual water users to file applications in the Water Court, with notice of

applications published monthly, and interested parties afforded an opportunity to participate in

the adjudication by filing a statement of opposition to the application, and litigating the case.

C.R.S. §37-92-302.  The 1969 Act also imposed a requirement that the holders of conditional

decrees regularly obtain judicial confirmation that they are diligently developing their water

right.  §37-92-301(4).

     In 1977, this Court adapted to the statutory changes effected by the 1969 Act by entering

an additional order regarding further proceedings in the Consolidated Cases in which it

determined that it "will act as the Water Judge provided for by the 1969 Act for Water Division

No. 5 insofar as proceedings in connection with Cases No. 5016 and 5017 are concerned,"

specifying, however, that the proceedings referred to were "limited to those relating to

applications for showings of due diligence and applications making conditional decrees or

portions thereof absolute."

     Also in 1977, a drought year, another dispute arose that required construction and

effectuation of the Blue River Decree, when the United States demanded that Denver release

some 28,000 acre-feet it had stored in Dillon Reservoir to allow GMR to complete its annual fill.

This Court issued an opinion on November 2, 1977, and a Supplemental Judgment and Decree

on February 15, 1978, specifying that the United States' priority for GMR is senior to any right

of Denver for diversion or storage at Dillon Reservoir; that the United States has a right to fill
GMR once each year; that Denver has no right in water the United States may or is entitled to
store in GMR, and has no right to require the United States to refrain from releasing water stored
in GMR for purposes consistent with the 1955 and 1964 decrees; that prior to completion of the
annual fill of GMR, Denver may store water out of priority in Dillon Reservoir only if permitted
to do so by the Secretary of Interior and subject to release of the water on call to complete the fill
of GMR; that following the annual fill of GMR, again with approval of the Secretary of Interior,
Denver may divert Blue River water in contravention of the GMR senior power generation right
so long as Denver makes acceptable arrangements for power replacement; and finally, that at any
time and subject again to approval of the Secretary, Denver may propose exchanges of water
from replacement storage owned or controlled by Denver on the Blue River or Williams River.
Denver appealed this order, which was affirmed in *United States v. Northern Colorado Water
Conservancy District*, 608 F.2d 422 (10th Cir. 1979).

Another dispute regarding the Blue River Decree arose in 1987, when Denver filed two
applications for determination of water right concurrently in the Water Court and this Court,
seeking in one case to change the United States' GMR storage rights to Dillon Reservoir, and to
provide water to "replace the functions" of GMR from unconstructed reservoirs on the West
Slope; and in the other to exchange Blue River, Williams Fork, and Fraser River water into
Denver structures in exchange for releases from unconstructed reservoirs located on the West
Slope (i.e. operate "exchanges").  In an order dated October 23, 1989, this Court granted
summary judgment to the United States, and dismissed the change application with prejudice,

applying both state law – which requires a party seeking to change water rights to own or control

them, and federal law – which prohibits a major operational change of GMR without specific

congressional approval.  The Court also dismissed the exchange application, without prejudice,

on the grounds that the Blue River Decree required Denver to obtain permission of the Secretary

of Interior, and to have replacement water "on hand" prior to proposing any exchange involving

GMR.  In that proceeding, this Court entered an order specifying that the procedures set forth in

its August 1977 order (i.e. Water Court procedures) would apply to the proceedings, and allowed

water users to file statements of opposition and participate in the proceedings in this Court.

Denver appealed the dismissal of the exchange case, which was affirmed by the 10th Circuit in

1991 (*City and County of Denver et al. v. United States et al.*, 935 F.2d 1143 (10th Cir. 1991)).

      Meanwhile, in 1988, the United States filed concurrent applications in this Court and the

Water Court invoking retained jurisdiction to confirm a right of exchange of waters stored in

GMR.  Once again this Court acted as the Water Judge, accepted Statements of Opposition, and

allowed participation of parties filing such statements (including the State Engineer) in the

proceedings, which culminated in entry of a consent decree on November 10, 1992, pursuant to

Stipulation for Decree executed by some 33 parties that had filed Statements of Opposition.  The

1992 decree held that the 1955 decrees evidence a priority date of August 1, 1935, for direct

flow, storage, and exchange water rights of the CBT, and that those rights are to be administered

with that priority date "as though adjudicated in the first available adjudication following that

date" and directed that in the administration of the Blue River Decree the State Engineer shall

recognize certain priorities of use and exchange of GMR water.  The order also directed the State

Engineer to use a priority date of June 24, 1946, in the administration of Denver's exchanges of

water from Williams Fork Reservoir to Dillon Reservoir. That decree, again, specifically

retained "continuing jurisdiction for purposes of effectuating this decree in these Consolidated

Cases, Civil Nos. 2782, 5016 and 5017."

In 2003 Colorado Springs and the River District filed Case No. 03CW320 concurrently in

the Water Court and this Court, seeking to adjudicate exchanges between Colorado Springs'

Blue River storage and the River Districts' Wolford Mountain Reservoir, and to supplement

Colorado Springs' Blue River substitution supplies pursuant to agreements between Colorado

Springs and the River District to which the United States is not a party.[2]  This Court permitted

parties filing statements of opposition in the Water Court to participate in a September, 2004

hearing before the Court, at which it dismissed the proceedings in this Court with the consent of

all parties, and without prejudice to refiling a petition to have this Court approve any decree

entered by the Water Court.

Colorado Springs submits that this history of the Consolidated Cases and the Blue River

Decree establishes several points that the Court should bear in mind in determining how to

proceed with the instant Petition.  First, this Court took jurisdiction of the adjudication of water

rights for the CBT, including GMR, at a time when the Colorado state courts were unable to join

the United States in state court adjudications. Thereafter, despite the enactment of the McCarran

Amendment, which effectively established concurrent jurisdiction to adjudicate federal water

rights, this Court has nevertheless consistently and purposefully retained and exercised the

---

[2] The United States has subsequently approved the supplies and operations contemplated by the agreements, and the Water Court has entered a decree adjudicating the exchanges.

jurisdiction it previously assumed over these water rights in order to interpret and implement the

Blue River Decree it originally entered in 1955.  That decree addresses federal water rights, has

been approved by federal law, and incorporates parts of Senate Document 80 that have the force

of federal statute.  It also incorporates federal contracts – the 1955 and 1964 Stipulations.

Additionally,  in exercising its continuing jurisdiction, this Court has consistently, purposefully,

and successfully, adapted and adopted Colorado's statutory adjudication procedures to afford due

process notice to interested parties and opportunity to participate in this Court's proceedings, so

as to "bind the world" to its rulings.  Finally, this Court has only declined to exercise jurisdiction

to adjudicate concurrent proceedings that relate to the Blue River Decree in one instance, where

the proceedings resulted from supplementary contractual arrangements to which the United

States was not a party, pertained to exchanges and substitution operations that were not

specifically decreed or contemplated by the Blue River Decree and Stipulations, and did not

modify operations by GMR.  Even there, the Court specifically contemplated that the parties

might return to the Court to obtain approval of a final decree—and Colorado Springs intends to

pursue such approval upon completion of this proceeding.

**3.      Statement of Position of Colorado Springs.**

  **Question 1:** What do the petitioners ask the federal court to do?  Colorado Springs

wishes to obtain an order of the Court adjudging that the GMR Protocol (Sections I through IV)

is consistent with the Blue River Decree, so that administration of the water rights adjudicated in

that decree and substitution operations provided for by the 1955 and 1964 Stipulations will be

carried out in accordance with the Protocol.  Such an adjudication will afford Colorado Springs

important relief, because it will result in administration of GMR and Colorado Springs' Blue River water rights in accordance with the Protocol, instead of pursuant to the Colorado State Engineer's recent interpretation of the Blue River Decree, which Colorado Springs believes is incorrect and injures Colorado Springs' water rights.

**Question 2:** What is the federal court's jurisdiction?

1.     **Subject Matter, Property, and Parties.** This Court has both subject matter jurisdiction, and jurisdiction of the matter to be adjudicated and the parties to be bound. Federal courts have subject matter jurisdiction of matters affecting federal water rights, *e.g. New Mexico ex rel Reynolds v. Molybdenum Corporation of America*, 570 F.2d 1364 (10th Cir. 1978), and of questions of federal law, 28 U.S.C. §1331. This Court took jurisdiction of the specific water rights involved on the initiation of the action in 1949 and removal of the remanded state court adjudication in 1954. Jurisdiction over the parties to be bound was obtained pursuant to the federal court's service procedures for CA 2782, and the notice procedures under the Colorado adjudication statutes then in effect. This Court has specifically retained the jurisdiction so obtained, in order to interpret and effectuate the Blue River Decree entered by the Court, both by the express terms of its decrees, and as a matter of law. *Floyd v. Ortiz*, 300 F.3d 1223 (10th Cir. 2002). (Court has jurisdiction to enforce its consent decree; enforcement is not a new proceeding requiring service pursuant to Rule 4).

2.     **Case or Controversy.** There exists a case or controversy that is not moot. First, the Colorado State Engineer is statutorily charged with administering Colorado water rights, including those adjudicated by the Blue River Decree. C.R.S. §37-92-301(1), (3). Such

administration implicates, and is informed by, interpretation of the decrees adjudicating those rights.  The State Engineer's current administration of GMR, pursuant to "Interim" Administration Policies adopted beginning in 2004, manifests a construction of the Blue River Decree that Colorado Springs disputes; further, Colorado Springs understands that other Blue River Decree parties, and other Colorado River basin water users, also dispute the State Engineer's current interpretation and administration of the Blue River Decree.

Second, in the course of discussing the State Engineer's administration with other parties to the Blue River Decree, the State Engineer, and other affected water users, Colorado Springs became aware, as well, of differences among parties to the Blue River Decree regarding the meaning and effect and proper implementation of the 1955 and 1964 Stipulations, that affect Colorado Springs' exercise of its Blue River water rights provided for by those stipulations. Colorado Springs concluded that a protocol document to guide implementation of the Blue River Decree would settle disputes regarding the Blue River Decree, primarily regarding the State Engineer's administration, but also regarding the substitution, replacement, and exchange operations of Denver and Colorado Springs pursuant to their agreements with the United States set forth in the 1955 and 1964 Stipulations.  Colorado Springs accordingly joined interested parties and the State Engineer in a long, and ultimately fruitful, process of negotiation and discussion that resulted in the crafting of the GMR Protocol.  Colorado Springs initially contemplated that the Protocol might be accomplished by agreement of the affected parties and the State Engineer.  However, though he was a party to the negotiation that resulted in the Protocol, and participated extensively in its drafting, the State Engineer determined that he will

14

not adopt the Protocol, and that he will not administer water rights as provided in the Protocol, unless or until the Protocol is adjudicated and approved by judicial decree.  He has, however, entered into the GMR Protocol Agreement, acknowledging he will carry out administration in accordance with the Protocol as and when it is approved and entered as a judicial decree, agreed to procedures for obtaining such judicial approval, and acknowledged that he will be bound by a decree of this Court entered in accordance with the procedures agreed to, which are those the Petitioners have advanced.

In view of these facts, Colorado Springs submits that despite all the Petitioners having agreed to the GMR Protocol, this matter is not moot.  The Court's jurisdiction to adjudicate is of course limited to actual cases or controversies; its duty "is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions."  *Leser v. Berridge*, 668 F.3d 1202, 1205 (10th Cir. 2011), quoting *Mills v. Green*, 159 U.S. 651, 653 (1895).  Therefore, to determine whether a matter is moot, the Court must determine whether it "can afford meaningful relief that 'will have some effect in the real world.'"  *Rezaq v. Nalley*, 677 F.3d 1001, 1007 (10th Cir. 2012) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d at 1110 (10th Cir. 2010), and *Wyoming v. Dept. of Agriculture*, 414 F.3d 1207, 1212 (10th Cir. 2005)).  This means that when a party seeks prospective equitable relief, it must show an ongoing stake in the outcome of the controversy.  *Id.*

This matter meets this test.  Colorado Springs seeks to have the fill of GMR, and the operations of GMR in relation to other water rights, including those of Colorado Springs,

administered as provided by the Protocol, rather than as provided by the State Engineer's current policies.  Through the petition it seeks prospective relief, that is, a decree that will change the State Engineer's administration of water rights to accord with the Protocol, a change that will not take place without entry of a judicial decree approving the Protocol as an interpretation and effectuation of the Blue River Decree.  Accordingly, the declaration that Colorado Springs seeks from this Court will indeed "have some effect in the real world," and specifically will affect Colorado Springs' water rights, on which Colorado Springs relies to provide municipal water supply for its citizens and customers.  Thus, Colorado Springs has an important "ongoing stake" in the outcome of the controversy regarding administration and operation of GMR and other water rights that is proposed to be resolved by this Court's ruling on the Protocol.

**Question 3:**  If there is overlapping jurisdiction with the Colorado Water Court, what court is best to address this matter?  Colorado Springs believes that even though the Water Court has concurrent jurisdiction to adjudicate Sections I, II, and III of the Protocol, this Court is better situated to address the entire Petition.  It is the position of Colorado Springs that with regard to Sections I, II, and III of the GMR Protocol, there is overlapping or concurrent subject matter jurisdiction between this Court and the Water Court, because those sections of the Protocol address a decree of this Court, as to which the Court has specifically retained continuing jurisdiction, and which deals with water rights of the United States, and effectuates federal law and federal contracts, while at the same time also constituting "water matters" within the subject matter jurisdiction of the Water Court.  It is for this reason that Colorado Springs joined with the

other Petitioners herein to submit an application in the Water Court for adjudication of those sections of the Protocol as a water matter.[3]

Colorado Springs believes, however, that Section IV of the Protocol addresses how to coordinate the exercise of water rights of the United States, Denver, and Colorado Springs in implementation of the Blue River Decree and agreements incorporated into the Blue River Decree, specifically the 1955 and 1964 Stipulations, which is not a "water matter" within the jurisdiction of the state water court, but, in Colorado Springs' view, a matter of construction of federal contracts. This Court retains jurisdiction to determine whether the proposed implementation accords with the Blue River Decree, as specified above. Meanwhile, the premises of the specific agreements articulated and sought to be implemented by Section IV of the Protocol are set forth in the other Sections of the Protocol, so that if those portions of the Protocol are not implemented – i.e. GMR is not administered in accordance with those provisions, then the implementation contemplated by Section IV will likely unravel.

Colorado Springs believes that this Court should not abstain or defer to the Water Court, but should instead exercise its continuing jurisdiction over the Blue River Decree to adjudicate the entirety of the GMR Protocol. First, Colorado Springs submits that the history of the Consolidated Cases, and this Court's historical role in the cases, dictate that this Court continue to interpret and effectuate the Blue River Decree, as it has in the past. This Court accepted jurisdiction of both the water rights and the parties by 1954, long before the Colorado Water

---

[3] The concurrent filing of the application in Water Court also was intended to provide notice and an opportunity for interested parties to file statements of opposition and participate in the adjudication. As specified in the Petition, Colorado Springs has requested that this Court adopt its 1977 order for adjudication of Sections I, II, and III of the Protocol, and act as the Water Judge and permit parties filing Statements of Opposition in the Water Court to participate in this Court's proceedings on those Sections.

Court was constituted; it approved and entered the 1955 and 1964 Stipulations implicated by Section IV of the Protocol, and the Blue River Decree that Sections I, II, and III implement. Further, it has regularly exercised its continuing jurisdiction to effectuate the decree it entered. As a result, this Court has repeatedly examined its decree, as well as the federal law and agreements that underlie and are incorporated into it, in order to adjudicate successive disputes that have arisen over the half-century since the Blue River Decree was entered. While the Water Court has undoubted expertise in water rights, and in addressing water matters, it has not consistently dealt with the Blue River Decree, Senate Document 80 or other provisions of federal reclamation law implicated by the Blue River Decree, or the interrelationships and contractual arrangements established in that decree among GMR and other water rights; this Court has.

In addition, consideration of the factors and standards established by both the *Akin*-Colorado River Abstention doctrine cases, and the *Brillhart-Wilton* cases to guide the exercise of federal court jurisdiction dictate that this Court exercise its jurisdiction here.

### 1.     Colorado River Doctrine.

The Supreme Court announced factors a federal court should weigh in considering whether to dismiss or stay federal action in cases of concurrent federal-state jurisdiction in *Akin*, approving dismissal of a federal action seeking a declaration of federal reserved water rights in Colorado's Water Division 7 in favor of adjudication in the Division 7 Water Court pursuant to the procedures of the 1969 Act. The Supreme Court held in that case that the McCarran Amendment established concurrent federal and state jurisdiction to determine such water rights, and that the doctrines of abstention as understood to that time did not mandate abstention; it then

18

in effect articulated a new doctrine of federal abstention based upon "considerations of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation."  424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952).  The *Akin* court articulated factors to be considered in assessing whether it is appropriate to decline federal jurisdiction, including (1) whether the federal court has assumed jurisdiction over the property involved; (2) the inconvenience of the federal forum; (3) the order in which jurisdiction was obtained by the concurrent forums, and (4) the desirability of avoiding piecemeal litigation, while cautioning that "only the clearest of justifications will warrant dismissal."  *Id.* at 818, 819.

The Supreme Court further elaborated on Colorado River abstention in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1, 103 S. Ct. 927, 74 L.Ed. 2d 765 (1983), when it affirmed reversal of a stay that had been entered by the federal district court pending state court adjudication of a contract dispute over arbitration.  In *Moses Cone* the Supreme Court again invoked the "virtually unflagging obligation" of federal courts to exercise their jurisdiction (stated in *Akin*, 424 U.S. at 817), 460 U.S. at 15, and reaffirmed that the standard for Colorado River abstention is an extraordinary circumstances test.  *Id.* at 19.  The Supreme Court also emphasized:

> The decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.  The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.

*Id.* at 16.

In that case, the Supreme Court examined additional factors in determining whether jurisdiction could be declined or deferred, including, in effect, whether the state or federal actions were vexatious, *Id.* at 17 FN 20; whether federal law provides the rule of decision, *Id.* at 23; and whether the state court suit will be adequate to protect the federal plaintiff's rights, *Id.* at 28. In regard to federal law, the court noted that "the presence of federal law issues must always be a major consideration weighing against surrender" of federal jurisdiction. *Id.* at 26.

The 10th Circuit referred to the foregoing factors from *Akin* and *Moses Cone*, and also to consideration of whether a party has engaged in impermissible forum shopping, in considering Colorado River abstention in *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994). That court also cautioned that the first matter to be determined, before a court may examine those factors, is whether the state and federal proceedings are in fact parallel. *Id.* at 1081. Noting that "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums," *Id.* (quoting *New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991)), the court emphasized that abstention under the Colorado River doctrine requires a determination that the parallel state court litigation will be an "adequate vehicle for the complete and prompt resolution of the issue between the parties…[T]he decision to invoke Colorado River necessarily contemplates that the federal court will having nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* at 1081-1082 (quoting *Moses Cone*, 460 U.S. at 28). Finally, the court observed that "the better practice" is to stay the federal action, rather than dismiss it, pending determination of the state case. *Id.* at 1083.

2.    *Brillhart-Wilton* **Doctrine.**

More recently, in *Wilton v. Seven Falls Company*, 515 U.S. 277, 115 S. Ct. 2137, 1322

L.Ed. 2d 214 (1995), the Supreme Court declared that the "discretionary standard" set forth in

*Brillhart v. Excess Insurance Company*, 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed 1620 (1942),

rather than the Colorado River standard, governs a federal court's decision to stay or dismiss a

federal declaratory judgment action, holding that if a district court, "in the sound exercise of its

judgment, determines after a complaint is filed that a declaratory judgment will serve no useful

purpose," it may stay or dismiss the federal action.  515 U.S. at 288.  The Supreme Court

emphasized, however, that this standard only applies to declaratory judgment actions and

declined to attempt "to delineate the outer boundaries of that discretion in other cases, for

example, cases raising issues of federal law or cases in which there are no parallel state

proceedings."  *Id.* at 290.

Anticipating *Wilton*, in *State Farm v. Mhoon*, 31 F.3d 979 (1994), the 10th Circuit had

enumerated a series of factors to be weighed by a federal court in exercising its discretion under

*Brillhart* to decline to hear a federal declaratory judgment action in the face of on-going

proceedings, including:

> [1] whether a declaratory judgment action would settle the controversy;
> [2] whether it would serve a useful purpose in clarifying the legal relations
> at issue; [3] whether the declaratory remedy is being used merely for the
> purpose of "procedural fencing" or "to provide an arena for a race to res
> judicata"; [4] whether use of a declaratory action would increase friction
> between our federal and state courts and improperly encroach upon state
> jurisdiction; and [5] whether there is an alternative remedy which is better
> or more effective.

31 F.2d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir., 1987)).

In *City of Las Cruces v. Elephant Butte Irrigation District*, 289 F.3d 1170 (10th Cir. 2002), the 10th Circuit held that the *Brillhart-Wilton* discretionary standard, rather than the more stringent "extraordinary circumstances" Colorado River standard, applied to a federal action to quiet title to water rights for a federal reclamation project, and reaffirmed the application of the *Brillhart/Mhoon* factors as a guide to the exercise of that discretion.  There, the United States first resisted participating in state stream adjudication proceedings (in New Mexico or Texas) for the lower Rio Grande basin, and then filed a federal court action seeking to quiet title to water rights in the lower Rio Grande for the federal Rio Grande Project.  The district court dismissed that action, relying on the Colorado River abstention doctrine, and alternatively on *Brillhart* and application of the *Brillhart-Mhoon* factors, and the 10th Circuit affirmed, holding that the *Brillhart* standard applied because, though the case was styled a quiet title action, the relief sought, declaration of the United States' water rights, was "only declaratory relief," and therefore it was a declaratory judgment action.  *Id.* at 1181-1182.

In its analysis, the court noted the distinction between suits seeking only declaratory relief, and those seeking "coercive relief" as well, and acknowledged that the *Brillhart* discretionary standard is likely inappropriate in coercive actions, *Id.* at 1181 (citing *Safety Nat'l Casualty Corp. v. Bristol-Myers-Squibb Co.*, 214 F.3d 562, 564 (5th Cir. 2000)).  Further, the 10th Circuit emphasized that the similarity or degree of parallelism of the state and federal proceedings should be considered in evaluating the *Brillhart-Mhoon* factors.  *Id.* at 1182.

3.      **Application to the Petition.**

Colorado Springs believes that the standard to be applied by this Court in considering whether to rule on the GMR Protocol, or alternatively defer to the Water Court, is the Colorado River "extraordinary circumstances" standard rather than the discretionary standard of *Brillhart-Wilton*.  Colorado Springs acknowledges that the 10th Circuit specifically approved application of the discretionary standard in *Las Cruces*, a case that involved, like the Consolidated Cases, adjudication of federal water rights; but Colorado Springs submits that the nature of the relief sought, and the substantial issues of federal law and federal contracts involved here distinguish this case from *Las Cruces*.

First, the relief sought by the Petition is not only declaratory.  The United States has already secured a declaration of its water rights, the relief sought in *Las Cruces*; here it seeks to effectuate that declaration by invoking the Court's jurisdiction to enforce its decree by approving a Protocol that will direct water administration.  Thus, the relief sought here is in effect coercive, because, as described above, when the Protocol is entered as a judicial decree, the State Engineer will be required to administer GMR as provided by the Protocol rather than pursuant to administrative policies devised by the State Engineer.  In addition, as the 10th Circuit acknowledged in *Las Cruces*, *Brillhart* and *Wilton* "cast doubt on whether a district court has discretion to decline jurisdiction over a declaratory judgment action presenting a federal question."  289 F.3d at 1184.  The *Las Cruces* court determined that federal law was not involved there, since neither the interstate portion of Section 8 of the Reclamation Act, nor the federal common law of equitable appropriation was implicated, and no federal contracts relevant

23

to the dispute were identified. *Id.* 1184-1187. Here the Protocol is based on, and intended to effectuate, the provisions of the Blue River Decree, which incorporates federal law, as well as "obligations to and rights of the United States under its contracts," embodied by the 1955 and 1964 Stipulations, which are governed exclusively by federal law. *Id.*, at 1186 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988)).

Ultimately, however, both the Colorado River and *Brillhart-Wilton* lines of cases rest on similar prudential considerations that seek to assure that matters are determined in the most efficient way in the most appropriate forum: that is, the question to be determined is, as this Court put it, what court is best to address this matter? Each line of cases then articulates a series of factors – largely overlapping – to assist in evaluating the particulars of a case that make it "fit" better in one court or another. To that end, Colorado Springs has examined the factors articulated in both lines of cases as described above; based on that review, Colorado Springs believes, as stated above, that this is the best court to address this particular case, whether one looks to the Colorado River or the *Brillhart/Mhoon* factors, or applies the Colorado River "extraordinary circumstances" or the *Brillhart-Wilton* "discretion" test.[4]

---

[4] Colorado Springs believes that it was application of these factors to different circumstances that resulted in this Court's 2004 "dismissal" of the concurrent proceedings in Case No. 03CW320: first, the water rights and structures involved there included Colorado Springs' Upper Blue Reservoir, Colorado Springs' Homestake Reservoir, and the River District's Wolford Mountain Reservoir, only one of which – Upper Blue Reservoir – was adjudicated by the Blue River Decree. In addition, the application in 03CW320 comprised two claims: adjudication of supplemental sources (Wolford Mountain and Homestake Reservoir) for Colorado Springs' Blue River substitution and replacement operations under the Blue River Decree, and adjudication of exchanges of water between Upper Blue and Wolford Mountain Reservoirs to secure supplies for the River District in Upper Blue Reservoir, and for Colorado Springs in Wolford Mountain Reservoir. Colorado Springs believes that only one of those claims affected implementation of the Blue River Decree and stipulations. Thus, in that case it was the state court action that included additional claims not presented to this Court. Accordingly, considerations of judicial efficiency and avoidance of piecemeal litigation dictated that the Water Court take the lead in that case. Finally, it should also be

24

      **A.**    **Parallelism of Actions**.  Both the Colorado River and *Brillhart* tests

require a court to determine whether the pending state and federal actions are parallel, as an

initial matter for Colorado River analysis (*Fox,* 16 F.3d at 1081), or as part of application of the

*Brillhart/Mhoon* factors for *Brillhart* analysis (*Las Cruces*, 289 F.3d at 1182).  Here, as noted

above, it is Colorado Springs' view that the state court action and the Petition overlap and are

largely parallel insofar as they both seek to have the Court approve and implement Sections I, II,

and III of the GMR Protocol, since the same parties will be litigating the same issues as to those

parts of the Protocol in both actions.[5]  *See*, *Fox*, 16 F.3d at 1081.  However, again as stated

above, Colorado Springs believes that Section IV of the Protocol does not involve a water matter

within the jurisdiction of the Water Court; therefore, even if the Court stays or dismisses the

Petition pending adjudication of Sections I, II and III of the Protocol as water matters in the

Water Court, it will nevertheless be required to resolve a substantive part of the case –

implementation of Section IV of the Protocol to settle disputes regarding contracted relations of

the United States.  Therefore, Colorado Springs believes that the two actions are not fully

parallel or similar, and the state court action is not "an adequate vehicle for the complete and

prompt resolution of the issue between the parties." *Fox*, at 1081 (quoting *Moses Cone*, 460 U.S.

at 28), (*See*, *also*, *Hydro Engineering, Inc. v. Petter Investments ,Inc*. 2012 WL 2872628 (D.

Utah, 2012) (state proceeding that does not include claims included in federal case is not parallel

to federal case, so that Colorado River doctrine does not apply.)

---

noted that since this Court specifically invited Colorado Springs to refile to seek approval of this Court upon
completion of Water Court proceedings, the Court's dismissal seems to have operated as a stay.
[5] Assuming the Court continues its prior practice, and permits parties filing statements of opposition in the Water
Court to participate in this Court's adjudication of Sections I, II, and II of the Protocol, as the Petitioners have
requested.

B.     *Akin* Factors.

1.     Whether the federal court has assumed jurisdiction of the *res.* As noted above, this Court accepted jurisdiction of the subject of the Consolidated Cases – the water rights adjudicated by the Blue River Decree, by 1954, and has regularly retained and exercised that jurisdiction since.

2.     Inconvenience of the federal forum.  Colorado Springs submits that the federal court is no more inconvenient a forum than the Water Court, especially in view of electronic filings, and the ability of counsel to participate in hearings by telephone (as they did on Dec. 2, 2013).

3.     The order in which jurisdiction was obtained by the concurrent forums.  Again as noted above, this Court obtained jurisdiction of the United States' original quiet title action in 1949, prior to the date when the McCarren Amendment effectively established concurrent jurisdiction in the state court.  Further, the Court obtained jurisdiction of the remanded state court proceedings in 1954, some fifteen years before the Water Court was even constituted.[6]

4.     Desirability of avoiding piecemeal litigation.  Colorado Springs believes that it is desirable to avoid piecemeal litigation regarding the GMR Protocol, especially since the Sections of the document are related: for example, Section I of the Protocol sets forth premises and definitions that are carried forward and apply to the ensuing Sections of the

---

[6] In this regard, though they do not technically apply here, the "principle of priority" recognized in Colorado courts, (*see*, *In re Telluride Global Development, LLC*, 380 B.R. 817 (2007); and the prior pending action rule (*Id.*), or the first-to-file rule, of the federal courts (*see, Diversified Metal Products, Inc. v. Odom Industries, Inc.*, 212 W.L. 2872772 (D. Idaho, 2012)) under which of two courts with concurrent jurisdiction, the court with priority should exercise "exclusive concurrent jurisdiction," support this Court's continued exercise of jurisdiction in this matter.

Protocol, so that differing understandings of those premises or definitions by this Court and the

Water Court could result in the implementation of inconsistent and inharmonious constructions

of the Blue River Decree if the Water Court addressed Sections I through III of the Protocol,

while this Court separately reviewed Section IV.   Colorado Springs submits that the way to

avoid such piecemeal litigation and possibly inconsistent results is for this Court to exercise its

jurisdiction to adjudicate the entirety of the Protocol.

        C.     ***Moses Cone* and *Fox v. Maulding* Factors.**

        1.     Whether the state or federal actions are vexatious.  Colorado

Springs believes that this factor looks to whether a party has instituted an action to prevent or

obstruct another party from obtaining judicial resolution of a legitimate legal issue – as in *Moses*

*Cone*, whether one party sought to prevent the other from obtaining a determination of whether it

was entitled to arbitration under the contract by securing an injunction from the state court that

against any efforts of the other party to secure arbitration.  Colorado Springs believes that, like

the somewhat related factor of whether a party has engaged in impermissible forum shopping,

this factor is not applicable in the current circumstances—and does not assist the Court in

determining which court is better to adjudicate the current case.

        2.     Whether federal law provides the rule of decision.  Colorado

Springs believes that questions governed by federal law are involved in this matter, since the

Blue River Decree specifically directs that GMR be operated as directed by the Manner of

Operations section of Senate Document 80, and one question to be answered in adjudicating the

Protocol is therefore whether it properly interprets and carries out that federal law; likewise, the

Blue River Decree mandates that the federal agreements embodied in the 1955 and 1964 Stipulations be executed, so that the Court must determine whether the Protocol (and especially Section IV) properly construes and carries out those agreements. Thus, federal law provides the rule of decision on at least some aspects of the Protocol. Further, the operations under the Protocol that are governed by federal law are so intertwined with the operations governed by state law that Colorado Springs does not believe it is feasible to separate, and separately adjudicate, the components of the Protocol governed by state and federal law. As the Supreme Court noted in *Moses Cone* and suggested in *Wilton*, the presence of these federal law issues, which Colorado Springs believes are inextricably linked to resolution of the cases, strongly weighs against surrender of federal jurisdiction here.

     3.  Whether the state court suit will be adequate to protect the federal plaintiff's rights. Colorado Springs believes that the Water Court action will not be adequate to protect the United States' or Colorado Springs' rights, since it will not adjudicate Section IV of the Protocol, and since it is possible that a ruling by the Water Court on Sections I, II, and III will be inconsistent with a ruling by this Court on Section IV and may result in inconsistent administration and operations.

    **D.**  ***Brillhart/Mhoon* Factors.**

     1.  Whether a Declaratory Judgment Action would settle the controversy. Evaluation of this factor (along with the next, regarding clarification of legal relations), is "designed to shed light on the overall question of whether the controversy would be better settled in state court." *Las Cruces*, 289 F.3d at 1186 (citing *Brillhart*, 316 U.S. at 495).

Further, Colorado Springs believes that this factor largely overlaps with the *Akin* factor addressing piecemeal litigation and the *Moses Cone* factor regarding adequacy of the state court action: that is, this factor directs the Court to evaluate which action, federal or state, will lead to a complete resolution of the issues that have given rise to the two actions.  In this case, for the reasons described above, Colorado Springs believes that a declaration by this Court regarding the entirety of the GMR Protocol will in fact settle the controversies among all affected parties, while adjudication of only the water matters that are pending in the Water Court will not, since the Water Court's adjudication may be inconsistent with the premises and operation of Section IV as adjudicated by this Court.

2.     Whether it would serve a useful purpose in clarifying the legal relations at issue.  Colorado Springs believes that the fundamental purpose of the GMR Protocol is to clarify the legal relations established by the Blue River Decree.  In order to give that clarification effect in water rights administration, as explained above, a judicial declaration to that effect is required.  Similarly, a judicial declaration that Section IV accords with the Blue River Decree would give effect to the legal clarification of contractual relations laid out in that section.  Therefore, Colorado Springs believes that this factor suggests that this Court should rule on the Protocol.

3.     Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata."  Colorado Springs believes that this factor also largely overlaps with the *Moses Cone/Fox* factors examining whether one or the other of the concurrent actions is vexatious or whether there has

been impermissible forum shopping.  Colorado Springs submits that this factor is not applicable in this matter.

4.      Whether use of the declaratory action would increase friction between federal and state courts and improperly encroach on state jurisdiction.  Colorado Springs believes that continued exercise of this Court's jurisdiction to enter a declaration regarding the GMR Protocol and the Blue River Decree will neither increase friction with the Water Court, nor improperly encroach upon state jurisdiction.  As set forth above, this Court has consistently, and for some sixty years, exercised jurisdiction to effectuate the Blue River Decree, often acting as the Water Court pursuant to the initial removal of the state adjudication procedures to this Court. The Division 5 Water Court is well aware of this history and has complied in prior Court proceedings where this Court has exercised jurisdiction over matters concurrently filed in the Water Court.

5.      Whether there is an alternative remedy that is better or more effective.  Colorado Springs believes that the alternative remedy to this Court reviewing the Protocol in its entirety and entering declarations regarding its consistency with the Blue River Decree would leave the parties without complete clarification of the legal relations that are sought to be settled by the Protocol and therefore would be incomplete.

**Question 4:** If parties other than the named parties in the Consolidated Cases are to be bound, what kind of procedure is required to satisfy due process and afford an opportunity to object?  Colorado Springs believes that the procedures mandated by the 1969 Act – resume publication and participation through filing statements of opposition, satisfy the requirements of

30

due process with regard to notice and an opportunity to object, so as to make a ruling entered

pursuant to that procedure binding on all parties, including the State Engineer and all others,

whether they appear or not. *Southern Ute Indian Tribe v. King Consol. Ditch Co.*, 250 P.3d 1226

(Colo. 2011); *Bar 70 Enterprises, Inc. v. Tosco Corp.*, 703 P.2d 1297 (Colo. 1985). It is for that

reason that Colorado Springs joined the other Petitioners in requesting this Court to adopt those

procedures as it has in past concurrent filings, for Sections I, II, and III of the Protocol, and to

permit all parties that have filed timely statements of opposition in the Water Court to participate

in the adjudication of those Sections.

**4.      Conclusion**

For the reasons stated above, Colorado Springs asks the Court to exercise its jurisdiction

to adjudicate the GMR Protocol as requested by the Petitioners.

Dated this 14th day of February, 2014.

s/ Mary Mead Hammond
**Mary Mead Hammond, Reg. No. 9851**
Carlson, Hammond & Paddock, LLC
1900 Grant Street, Suite 1200
Denver, CO 80203
Telephone: (303) 861-9000
Fax: (303) 861-9026
E-mail: mhammond@chp-law.com
Attorney for Petitioner City of Colorado
Springs

s/ Michael J. Gustafson
**Michael J. Gustafson, Reg. No. 37364**
City Attorney's Office – Utilities Division
Colorado Springs Utilities
P.O. Box 1575, Mail Code 510
Colorado Springs, CO 80901
Telephone: (719) 385-5909
Fax: (719) 385-5535
Email: mgustafson@springsgov.com
Attorney for Petitioner City of Colorado
Springs

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on February 14th, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Ann M. Rhodes amr@bhgrlaw.com
Anne Jamieson Castle acastle@hollandhart.com
Austin C. Hamre ahamre@dodpc.com
Barry Alan Schwartz barry.schwartz@denvergov.org
Bennett W. Raley braley@troutlaw.com
Brian Max Nazarenus bnazarenus@rcalaw.com
Casey S. Funk casey.funk@denverwater.org
Chad Matthew Wallace chad.wallace@state.co.us
Charles B. White cwhite@petros-white.com
Christopher Graham McAnany mcanany@dwmk.com
Christopher L. Thorne cthorne@hollandhart.com
Daniel John Arnold daniel.arnold@denverwater.org
David G. Hill dgh@bhgrlaw.com
Donald E. Phillipson phillipson5014@gmail.com
Douglas L. Abbott dabbott@hollandhart.com
Frederick G. Aldrich faldrich@aldrich-law.com
Gail Rosenschein gail.rosenschein@denverwater.org
James J. DuBois james.dubois@usdoj.gov
James R. Montgomery jmontgomery@mwhw.com
Jason V. Turner jturner@crwcd.org
Jeffrey Flinn Davis jeff.davis@denverwater.org
John Dorsey Walker jdorseywalk@yahoo.com
John Leonard Watson jwatson@bw-legal.com
Julie Elise Maurer jmaurer@rcalaw.com
Kathleen M. Morgan kmorgan@crocs.com
Kirsten M. Kurath kmkurath@wth-law.com
Lisa M. Thompson lthompson@troutlaw.com
Mark A. Hermundstad mherm@wth-law.com
Meghan Nichols Winokur mwinokur@hollandhart.com
Nathan A. Keever keever@dwmk.com
Olivia Denton Lucas olivia.lucas@faegrebd.com
Peter Cheney Fleming pfleming@crwcd.org
Robert James Pohlman rpohlman@swlaw.com
Robert V. Trout rtrout@troutlaw.com

Roger T. Williams, Jr. rwilliams@rcalaw.com
Stanley W. Cazier cazier_mcgowan@hotmail.com

s/ Mary Mead Hammond
**Mary Mead Hammond**
Carlson, Hammond & Paddock, LLC
1900 Grant Street, Suite 1200
Denver, CO 80203
Telephone: (303) 861-9000
Fax: (303) 861-9026
E-mail: mhammond@chp-law.com
Attorney for Petitioner City of Colorado Springs