# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

### Civil Action No. 49-cv-02782-MSK-CBS

### Consolidated Case Nos. Civil Action No. 5016 and Civil Action No. 5017

UNITED STATES OF AMERICA,

       Plaintiff,

v.

NORTHERN COLORADO WATER CONSERVANCY DISTRICT, et al.

       Defendants.

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes of Irrigation:
Petitioners:
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT

In the Matter of the Adjudication of Priorities of Water Rights in
Water District No. 36 for Purposes Other Than Irrigation:
Petitioners;
COLORADO RIVER WATER CONSERVATION DISTRICT, GRAND VALLEY
WATER USERS ASSOCIATION, ORCHARD MESA IRRIGATION DISTRICT,
PALISADE IRRIGATION DISTRICT, GRAND VALLEY IRRIGATION
COMPANY, and MIDDLE PARK WATER CONSERVANCY DISTRICT.

---

### UNITED STATES' MEMORANDUM RESPONDING TO COURT'S QUESTIONS

---

       Petitioner the United States of America ("United States"), by and through its undersigned

attorneys, and pursuant to the Court's December 2, 2013 Minute Order (Doc. 358), hereby

responds to the questions posed by the Court and state as follows:

United States' Memorandum Regarding Jurisdiction and Process          Page 1

**INTRODUCTION**

On November 15, 2013, United States, together with other parties to the October 12, 1955 Decree in these Consolidated Civil Cases No. 2782, 5016 and 5017 ("Petitioners"), filed a Petition for Determination that Administrative Protocol is Consistent with the Blue River Decree. (Doc. 355)  Petitioners seek two determinations from the Court: (1) that Sections I, II, and III of the proposed Green Mountain Reservoir Administrative Protocol ("GMR Protocol" or "Protocol"), which deal with administration of water rights, are consistent with the Findings of Fact, Conclusions of Law, and Final Decree in Consolidated Civil Cases No. 5016 and 5017, and the Findings of Fact, Conclusions of Law, and Final Judgment in Consolidated Civil Cases No. 2782, 5016 and 5017, both entered by this Court on October 12, 1955, and all amendments and supplemental orders, judgments, and decrees in said cases ( hereafter the "Blue River Decree") and (2) a separate determination that Section IV of the GMR Protocol, which deals with contractual rights and obligations of the Petitioners City and County of Denver, the City of Colorado Springs (the "Cities") and the United States, is consistent with the Blue River Decree.

At the December 2, 2013 Status Conference in these Consolidated Cases, the Court posed questions regarding jurisdiction and process to the Petitioners, and invited responses from all of the Petitioners.  The United States understands the Court to want the Parties positions on the following issues:

     1.       What do the petitioners ask the federal court to do?

     2.       What is the federal court's jurisdiction in this matter?

     3.       To the extent there is overlapping jurisdiction with the Colorado Water Court, what court is best to address this matter?

4.      If parties other than the named parties in the Consolidated Cases are to be bound, what kind of procedure is required to satisfy due process and afford an opportunity for potentially affected parties to object?

**SUMMARY OF ARGUMENT**

The United States asserts that this Court, rather than the State Water Court, is the appropriate forum for this proceeding.  The Court has jurisdiction over the real and substantial controversies existing among the Petitioners, which threaten actual and imminent concrete injuries to one or more Parties in the absence of a ruling by the Court.  In addition, despite the enactment of the McCarran Amendment, which effectively established concurrent state court jurisdiction to adjudicate federal water rights, this Court has consistently and purposefully retained and exercised the jurisdiction it assumed over the Green Mountain Reservoir water rights, in order to interpret and implement the Blue River Decree it originally entered in 1955.  That decree addresses federal water rights, has been approved by federal law, and incorporates the "Manner of Operations" provisions of Senate Document 80, which has the force of federal statute.  The Blue River Decree also incorporates federal contracts – the 1955 and 1964 Stipulations.  Abstention from exercising the Court's jurisdiction is not warranted because, *inter alia*, the State Water Court does not have jurisdiction over the controversies inherent in Section IV of the Protocol, and that Section is intimately tied to and dependent on Sections I-III.  Finally, in exercising its continuing jurisdiction, this Court has consistently, purposefully, and successfully, adapted and adopted Colorado's statutory adjudication procedures to afford due process notice to interested parties and opportunity to participate in this Court's proceedings, so as to "bind the world" to its rulings.

**BACKGROUND**

The origins of Civil Action 2782, 5016 and 5017 (the "Consolidated Cases") are set forth in the Court's Findings of Fact and Conclusions of Law ("Findings") dated October 12, 1955. Findings at pp 2-5. Further history of the proceedings are set forth in *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1074 (10th Cir. 2009); *United States v. North. Colo. Water Conservancy Dist.*, 608 F.2d 422, 425 (10th Cir. 1979); *Colorado River Water Conservation Dist. v. Mun. Subdistrict*, 610 P.2d 81, 82 n2 (Colo. 1979) (describing CBT Project).

Of significance to the questions posed by the Court is the fact that the United States' removal of the Summit County state court adjudication in C.A. 1805 and 1806 (renumbered C.A. 5016 and C.A. 5017, respectively, and consolidated with the United States' pending declaratory judgment action filed in C.A. 2782) occurred after the passage of the McCarran amendment which created concurrent jurisdiction in state and federal courts. Since 1955 this Court repeatedly has denied attempts to remand the litigation to state court. *See* Order Denying Mot. of City & County of Denver and the City of Colo. Springs to Remand Civil No. 5016 to Water District No. 36 ("1955 Order Den. Remand")(D. Colo. June 13, 1955); 1962 Order Den. Mot. for Remand or Inj. (D. Colo. Jan. 24, 1962)( "so long as this Court retains jurisdiction in the premises it shall remain available as the forum for the exercise of jurisdiction over all the proceedings thus removed together with all matters necessarily related thereto as defined by the laws of the State of Colorado."). As detailed herein, where this Court has been faced with Blue River Decree issues potentially affecting other water users, the Court has also repeatedly exercised its retained jurisdiction while adopting and using proceedings consonant with the

Colorado Water Right Determination and Administration Act of 1969. Colo. Rev. Stat. §§ 37-92-101 *et seq.* ("1969 Act").

The current controversy stems from the Colorado State Engineer's issuance in 2004 of an Interim Policy for the administration of Green Mountain Reservoir.  That policy has lead to controversy among the parties to the Blue River Decree, both over the administration of water rights for Green Mountain Reservoir and those of the Cities.  In addition, it has created disagreement over certain provisions of the Blue River Decree regarding rights and obligations of the Cities in diverting against the Green Mountain Reservoir water rights pursuant to Paragraph 4 of the Stipulation set forth in the Findings of Fact and Conclusions of Law entered in the Consolidated Cases on October 12, 1955; Paragraph 4 of the Decree in the Consolidated Cases entered on April 16, 1964; and  Paragraph 4(a) of the Supplemental Decree in the Consolidated Cases entered on February 9, 1978.

To resolve these disputes, the Petitioners, in consultation with the State Engineer, negotiated and agreed to the GMR Protocol in order to clarify and implement certain provisions of the Blue River Decree.  As explained herein, the Colorado State and Division 5 Engineers will not administer, distribute, and regulate waters in accordance with the GMR Protocol until a final judgment or order determining that Sections I, II, and III of the GMR Protocol are consistent with the Blue River Decree is entered.

**RESPONSES TO QUESTION RAISED BY THE COURT**

**1. The Court is Being Asked to Enter a Decree Determining that the Administrative Protocol, Which Clarifies Provisions of the Blue River Decree, is Consistent with the Terms of the Blue River Decree.**

The Court is being asked to 1) enter a Decree confirming that Sections I-IV of the Administrative Protocol negotiated by the Petitioners are consistent with the terms of the Blue River Decree, and 2) follow procedures previously used by this Court to enable notice to and participation by potentially affected parties who might disagree with the parties requested determination regarding Sections I-III. The proceeding contemplated herein will resolve controversies among the parties, be binding on all potentially affected water rights users, and provide a decree which is administrable by the State of Colorado.

The requested proceeding will have two parts. First, the Petitioners seek a determination that Sections I, II and III of the Protocol, which deal with clarification of the administration of the water rights decreed in the Blue River Decree, are consistent with the underlying Decree. Because water rights are interrelated by administration within the priority system, clarification of the rights under the Blue River Decree has the <u>potential</u> to impact other water rights if the Protocol changes, rather than merely clarifies, the rights and obligations under the Blue River Decree. To allow the holders of other water rights to assure that the Protocol only clarifies, but does not change the subject water rights, this Court is being asked use notice and joinder procedures based upon Colorado's 1969 Water Rights Adjudication Act. Colo. Rev. Stat. §§ 37-92-101 *et seq.* The Court has used these procedures previously to deal with similar situations in which the water rights under the Blue River Decree were at issue in a manner that potentially could affect other water users. *See, e.g.*, *Re Application of the City & County of Denver with*

*Respect to its Water Rights in the Blue River and its Tributaries in Summit County, Colorado*,
1989 WL 128576, at *1 (D. Colo. Oct. 23, 1989).  Allowing other parties, including the State or
Division Engineer, to oppose the adjudication of Sections I-III of the Protocol allows the Court
to enter a Decree resolving disputes among the parties and governing future administration,
while preventing any overreaching.

    A Decree approving the Protocol as consistent with, and clarifying of, the Blue River
Decree is necessary to provide for administration of the water rights by the Colorado State and
Division Engineers.  The State Engineer's Office is responsible for the administration and
distribution of water within Colorado.  *See* generally Colo. Rev. Stat. § 37-80-102(1)(h).
Administration of water within each Water Division (here the Colorado River drainage in which
Green Mountain Reservoir is located) is accomplished through the Division Engineer.  See *id.* at
§ 37-92-301(1).  "The State and Division Engineers do not determine water rights; they merely
administer the waters of the state in accordance with court decrees." *V Bar Ranch LLC v. Cotten*,
233 P.3d 1200, 1210 (Colo. 2010).  Under Colorado law, the State and Division Engineers are
only required to administer water rights in accordance with the water rights' <u>decrees</u>.  *See, e.g.*
*Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1147 (Colo. 2001) ("[T]he State
Engineer, Division Engineers, and Water Commissioners administer the waters of the natural
stream in accordance with the judicial decrees and statutory provisions governing
administration").  A private agreement regarding the interpretation or clarification of any decree
provisions - even among all the parties to a decree - is not binding on the State and Division
Engineers, and will not be administered. *Burlington Ditch Reservoir & Land Co. v. Metro*

*Wastewater Reclamation Dist*., 256 P.3d 645, 676-77 (Colo. 2011).  Thus a court decree is necessary to govern administration of the rights going forward.

Second, the Petitioners seek a determination that Section IV of the Protocol is consistent with the parties' contractual rights and obligations under the Blue River Decree – specifically in relation to "substitution" obligations of the Cities under certain specified conditions.  The provisions of Section IV go beyond simple administration of water rights under the prior appropriation system, and relate to rights and obligations of the United States and the Cities under Stipulations and agreements approved by the Blue River Decree.

**2.  This Court has Jurisdiction Over the Petition Because Federal Questions and Interests are Involved, the Court Previously Retained Jurisdiction, and Abstention is Inappropriate.**

**A.  The Court has Subject Matter Jurisdiction Over Federal Water Rights and Questions of Federal Law.**

This matter involves federal issues sufficient to invoke the jurisdiction of this Court.  First, the matter involves federal water rights for Green Mountain Reservoir.  Federal courts have subject matter jurisdiction over matters affecting federal water rights.  *See, e.g., New Mexico ex rel. Reynolds v. Molybdenum Corp. of Am.*, 570 F.2d 1364 (10th Cir. 1978).  Here the Petition affects important federal interests in the water rights decreed in this matter in 1955.  The importance of those water rights, and federal interests, are evidenced by the long, and sometimes bitter, history of litigation over the Blue River Decree and the interaction between Green Mountain Reservoir and the water rights of the Cities.

Second, the petition raises questions of federal law providing the Court jurisdiction under 28 U.S.C. § 1331.  Jurisdiction under 28 U.S.C. § 1331 requires either that 1) federal law creates a cause of action, or 2) the relief depends on resolution of a substantial question of federal law.

*Firstenberg v. City of Santa Fe*, 696 F.3d 1018, 1023 (10th Cir. 2012).  Here, the relief requested depends on resolution of the question of whether the Protocol's provisions are consistent with the Blue River Decree, including the "Manner of Operations" section of Senate Document 80 which is incorporated into the Decree.  The United States is required by federal statute to act in accordance with the Blue River Decree.  43 U.S.C. § 620j provides:

> The Final Judgment, Final Decree and stipulations incorporated therein in the consolidated cases of *United States of America v Northern Colorado Water Conservancy District, et al.*, Civil Nos. 2782, 5016 and 5017, in the United States District Court for the District of Colorado, are approved, and shall become effective immediately, and the proper agencies of the United States shall act in accordance therewith.

43 U.S.C. § 620j, Pub. L. No. 84-485, ch. 203, § 11, 70 Stat. 105, 110 (1956).  Thus a question posed by this Petition is whether or not the United States, in operating in a manner consistent with the Protocol, is complying with its statutory obligations.

**B.  Subject Matter Jurisdiction Based on the Court's Retained Jurisdiction.**

The Court has jurisdiction over both the subject matter of this Petition, and the parties to be bound.  This Court took jurisdiction of the federal water rights at issue in this matter on the initiation of the action in 1949, and over certain of the Cities' water rights upon removal of the remanded state court action in 1954.  Jurisdiction over the parties who ultimately signed the consent decree was obtained either through the federal court's service procedures for CA 2782, or, in the removed cases, through the notice procedures under the Colorado adjudication statutes then in effect.  As a matter of law the Court has jurisdiction to enforce its consent decree as a continuation of the original proceeding.  *Floyd v Ortiz*, 300 F.3d 1223, 1226 (10th Cir. 2002)(Court exercise of its jurisdiction to enforce a consent decree is not a new proceeding requiring service pursuant to Rule 4).

Because the Blue River Decree adjudicates and implements unique and important federal interests, this Court has historically retained jurisdiction over this matter to effectuate the objectives of the final decree.  The Court's original Final Judgment "retains continuing jurisdiction for the purpose of effectuating the objectives of this Judgment." (Final J., C.A. 2782, 5016 & 5017 at 13 (D. Colo. Oct. 12, 1955)).  In 1957, this court amended the retained jurisdiction provision to state: "[t]his Court retains continuing jurisdiction for the purpose of effectuating the objectives of this Final Decree; including specifically but not by way of limitation, further interpretation of Senate Document No. 80 and the enforcement of the provisions thereof." (Supplemental Order Dismissing Reserved Question and Amending Decree (Oct. 29, 1957)).  In 1962, the Court rejected Denver's attempt to remand this matter to State Court ordering that "so long as this Court retains jurisdiction in the premises it shall remain available as the forum for the exercise of jurisdiction over all the proceedings thus removed together with all matters necessarily related thereto as defined by the laws of the State of Colorado."  (1962 Order Den. Mot. for Remand or Inj. at 2 (D. Colo. Jan. 24, 1962)).  In 1964, the Court again ordered that "it retains continuing jurisdiction for the purpose of effectuating the objectives of the Judgment and Decree heretofore entered October 12, 1955, and this Decree." (1964 Decree at 6, ¶9).  In 1970, the Court rejected Denver's third effort to remand the matter to State Court.

Ultimately recognizing the need to notice and join other parties to proceedings potentially impacting other water rights, in 1977 Denver moved the Court to follow procedures established under Colorado's 1969 Act, but with "the directive that all publications shall show that any hearing or action will be before this Court."  Accepting the Motion, the Court declared that "it

would act as the Water Judge for Water Division 5 insofar as the proceedings in connection with

cases numbered 5016 and 5017 are concerned."  Order Regarding Further Proceedings

Consonant with the Colorado Water Right Determination and Administration Act of 1969 ("1977

Order") at ¶ 2.  Since 1977 the Court has invoked its retained jurisdiction on several occasions

and utilized notice and joinder procedures from the 1969 Act, to resolve disputes involving the

Blue River Decree. *See, e.g.*, *Re Application of the City & County of Denver with Respect to its

Water Rights in the Blue River and its Tributaries in Summit County, Colorado*, 1989 WL

128576, at *1 (D. Colo. Oct. 23, 1989) (rejecting  Denver's attempt, *inter alia*, to a change the

Green Mountain Reservoir water right); Findings of Fact, Conclusions of Law and Judgment and

Decree at 1, 5 ¶1 (Nov. 10, 1992)( confirming a right of exchange using the waters stored in

Green Mountain Reservoir in the exercise of the water right decreed in the Consolidated Cases).

Thus there is a long history both of exercising the Court's retained jurisdiction, and of using the

procedures of the 1969 Act to accomplish broad notice and full opportunity for participation

regarding issues that could affect other water rights.

In fact, the Court has repeatedly exercised its jurisdiction to interpret and enforce the

Blue River Decree, and has rejected prior attempts to remand this matter to the State Water

Court.  The Blue River Decree litigation in this Court has a history recognizing the overlapping

jurisdiction between this Court and the Colorado Water Court.  Notwithstanding this overlapping

jurisdiction, this Court has retained jurisdiction, and exercised that jurisdiction repeatedly to

address the interpretation and implementation of its Decrees over a 59 year span.  In part, this is

warranted by the unique federal purposes and federal legislative intent to protect the Blue River

Decree and implementation of Senate Document 80 evidenced by inclusion of these documents
into federal law.  *See* 43 U.S.C. § 620j.

### C.  A Sufficient Case or Controversy Exists to Support Exercise of the Court's Jurisdiction.

The instant circumstances present a case or controversy sufficient to support this Court's
exercise of jurisdiction of the Petition.  It is axiomatic that Section III limits a federal court's
jurisdiction to "cases and controversies."  U.S. Const. art. III, § 2.  The Court's job is "to decide
cases that matter in the real world, not those that don't."  *Wyoming v U.S. Dep't of Interior*, 587
F.3d 1245, 1250 (10th Cir. 2009).  A litigant must have suffered or be threatened with a concrete
injury traceable to the defendant.  *Lewis v Continental Bank Corp.,* 494 U.S. 472, 477 (1990).
Here substantial and concrete interests are tied to the proper interpretation and administration of
the Blue River Decree.  The actions of Denver and Colorado Springs in diverting and
substituting water threaten impacts to water rights and interests on Colorado's western slope that
are represented by the United States, the River District, Middle Park and the Grand Valley
entities.  In turn, the United States' actions at Green Mountain Reservoir threaten to impact the
water supplies available to the Cities.

Controversy among the parties to the Blue River Decree are longstanding, and relate both
to the operation and administration of water rights in Green Mountain Reservoir and to Denver's
and Colorado Springs' obligations when the cities take water against the senior federal water
rights as provided under the Blue River Decree.  The controversy starts with the diversion of
water by the Cities upstream of Green Mountain Reservoir, and the resulting actions, and
calculations of replacements, by the United States.  These actions implicate both the water
supply available to the Cities, and the water available via Green Mountain Reservoir to west

slope interests.  These decisions have real and substantial effects to significant legal interests that are affected by the actions of the Parties to this Petition.

The controversy regarding the Cities' replacement obligations, and the consequent availability of water to supply western slope needs, is focused in Section IV of the Protocol which is, in the view of many Parties, a matter of contract, not water rights administration. These obligations and rights are set forth in the 1955 and 1964 Stipulations, which are not "water matters" within the jurisdiction of the State Water Court.  The Protocol provisions in Section IV are built upon the assumed operation pursuant to Sections I-III.  Thus the determination requested regarding Sections I-III of the Protocol are directly related to the viability of Section IV, and resolution of the continuing dispute among the Petitioners.

The interpretation and clarification of the Blue River Decree also implicates administration of water rights by the State.  As noted, the State only administers water rights pursuant to Decree, and where ambiguity exists in a decree, it can lead to inconsistency over time.  Thus the only way to fully resolve the Petitioners' concrete disputes over their cognizable interests set forth in all <u>four</u> Sections of the Protocol is the entry of a Decree addressing all of the disputes.  The disputes among the Petitioners and full resolution of the controversy and impacts to the Parties' concrete legal interests are simply not fully resolvable absent action by this Court.

### D.  Wise Judicial Administration Counsels the Court Against Abstention in this Instance.

#### a.    *Colorado River* Abstention is Inapplicable

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) the Supreme Court articulated a new doctrine of abstention, setting forth factors a federal court should weigh in considering whether to dismiss or stay a federal action in the face of concurrent

state court action.  In *Colorado River,* the United States filed an action in federal district court

for a determination regarding the existence of federal reserved water rights.  One of the

defendants in the federal action filed an application in Water Court, joining the United States

under the McCarran Amendment.  The federal court ultimately dismissed the action before it on

abstention grounds.  In affirming the District Court's dismissal, the Supreme Court held that the

McCarran Amendment established concurrent federal and state court jurisdiction to determine

the United States' water rights, and set forth four factors that may argue for a federal court to

abstain from exercising its concurrent jurisdiction.  424 U.S. at 818.  (Often referred to as the

"*Colorado River* abstention doctrine").

In *Colorado River*, the Court recognized the "virtually unflagging obligation of the

federal courts to exercise the jurisdiction given them."  *Id.* at 817.  Nonetheless, the Court held

that a federal court may decline to exercise its jurisdiction in exceptional circumstances

"involving the contemporaneous exercise of concurrent jurisdiction, either by federal courts or

by state and federal courts."  *Id.*  The factors to be considered include (1) whether the federal

court had assumed jurisdiction over the property involved; (2) the inconvenience of the federal

forum; (3) the desirability of avoiding piecemeal litigation (cautioning that "only the clearest of

justifications will warrant dismissal"); and (4) the order in which jurisdiction was obtained by the

concurrent forums.  *Id.* at 818-19.  The Court further refined the *Colorado River* abstention

factors in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1 (1983).  In *Moses

Cone*, the Court reiterated the federal courts' "'virtually unflagging obligation'" to exercise their

jurisdiction, and reaffirmed that Colorado River abstention is an extraordinary test.  *Id.* at 15

(quoting *Colorado River*, 424 U.S. at 817), 19.  The Court emphasized that a decision to dismiss

a federal action must be based upon a careful balancing of important factors as they apply to a given case, with the balance "heavily weighted" in <u>favor</u> of exercising jurisdiction.  *Id.* at 16.

In applying the *Colorado River* abstention doctrine, the 10th Circuit has also found it relevant to consider 1) whether or not a party is engaged in impermissible forum shopping, and 2) whether the state and federal proceedings are, in fact, parallel.  *See Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994).  In Fox, the court emphasized that abstention requires that the state proceeding is actually parallel, and is an "adequate vehicle for the complete and prompt resolution of the issue between the parties . . . [T] decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case . . . ." *Id*. at 1081-82.

Here the analysis of the *Colorado River* factors, and "consideration of wise judicial administration" argue that the Court should continue to exercise its jurisdiction in this case. First, there is a long history in which this court has exercised its jurisdiction over the property at issue.  This Court assumed jurisdiction of the property at issue in this matter in 1949, and has continuously exercised that jurisdiction.  That jurisdiction was further expanded to encompass the removed actions in 1954 – 15 years before the creation of the Colorado Water Courts under the 1969 Act.

Second, it cannot be said that the federal court is an inconvenient forum for this litigation, assuming it extends to the determination of water rights under Sections I-III.  At this juncture, the proceeding in Water Court has been noticed by resume, and the time for filing of Statements of Opposition has run.  Thus we know the parties, other than the Petitioners, which have expressed some interest in the confirmation of the Protocol as clarification of the Blue River

Decree. There are twelve such parties. Despite the fact that Green Mountain Reservoir and the other facilities in question are located in Summit County, only two have counsel located outside of the Denver metropolitan area – and one of those filed a "Statement of Opposition in Support" of the proceeding.[1]

Third, the federal court and state court proceedings are not fully parallel, and the risk of piecemeal litigation in the instant case occurs only if this Court <u>abstains</u> from exercising its "unflagging obligation" to take jurisdiction of the matter presented. As previously stated, Section IV of the Protocol is essentially a matter of contract among the parties to the Blue River Decree, and not a matter of water rights definition or administration. Despite its intimate connection to the administration of water rights under Sections I-III, Section IV is not within the State Water Court's jurisdiction. Thus the Water Court proceeding is not fully parallel and is not an adequate vehicle for complete resolution of the issues presented by the Petition. Splitting litigation of the Petition between the Water Court and the Federal Court risks inconsistent results and piecemeal resolution of interrelated issues. In these circumstances, wise judicial administration counsels <u>against</u> abstention under *Colorado River*.

> **b.     Abstention of Jurisdiction Under the *Brillhart* Doctrine is Not Warranted Because the Requested Relief Will Clarify Legal Relations, Solve the Controversy, and is not Merely a Mean of Procedural Fencing.**

The Court should exercise its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and not abstain from exercising its jurisdiction under the discretionary standard first set forth in *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942). The *Brillhart* doctrine provides that where another action is pending in which all matters in controversy between parties

_____

[1] Of the twelve opposing parties, <u>at least</u> 6 are expressly "in support" of the Application.

can be adjudicated, a federal district court may decline resolving a declaratory judgment action

under 28 U.S.C. § 400 (current version at 28 U.S.C. § 2201). *Brillhart*, 316 U.S. at 495. In

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court declared that a federal

court's decision to stay or dismiss an action under the Declaratory Judgment Act is governed by

the "discretionary standard" set forth in *Brillhart*, rather than the *Colorado River* standard. 515

U.S. at 280, 288. The Court held that if, in its sound discretion a district court, "determines after

a complaint is filed that a declaratory judgment will serve no useful purpose," it may dismiss or

stay the federal action. *Id.* at 288. The Court declined, however, to delineate the outer bounds of

a court's discretion in cases raising issues of federal law, or in which no parallel state

proceedings existed. *Id.* at 290.

In *State Farm v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), the 10th Circuit articulated a

series of factors to be weighed by a court in exercising its discretion under *Brillhart* to decline to

hear a declaratory judgment action in the face of concurrent proceedings, including:

> "[1] whether a declaratory judgment action would settle the controversy [2] whether it
> would serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to
> provide an arena for a race to res judicata'; [4] whether use of a declaratory action would
> increase friction between our federal and state courts and improperly encroach upon state
> jurisdiction; and [5] whether there is an alternative remedy which is better or more
> effective."

31 F.2d at 982 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)

In *United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002) the 10th Circuit

held that the *Brillhart* discretionary standard applied to a federal court action to quiet title to

water rights for a federal reclamation project. In addition to reaffirming the *Mhoon* factors as a

guide, the court stressed that the nature of the relief requested was a touchstone. *Id.* at 1181.

United States' Memorandum Regarding Jurisdiction and Process                    Page 17

The *Brillhart* discretionary standard is probably not applicable where the relief sought is "coercive" as well as declaratory. *Id.* Finally, the court also emphasized that the similarity or degree of parallelism of the federal and state actions should be considered in evaluating the *Mhoon* factors. *Id.* at 1183.

As an initial matter, the United States asserts that this case, though dealing with federal reclamation rights, is distinct from the situation in *Las Cruces* in which an initial declaration of water rights was sought by the United States. Unlike *Las Cruces*, the United States has already obtained a declaration of its water rights. Here the United States seeks to interpret and effectuate those water rights, invoking the Court's jurisdiction to enforce its Decree. The decree sought herein will direct water administration going forward. Thus the requested relief is also coercive in nature.

In addition, in *Las Cruces*, the Court determined that federal law was not involved. Here, as previously discussed, effectuation of the Blue River Decree does involve federal law, both in the form of Senate Documents 80, and in the United States' obligations under federal law to act in accordance with the Blue River Decree. 43 U.S.C. § 620j. Moreover, in *Las Cruces*, the Court found that no federal contracts relevant to the dispute were identified. In contrast, the 1955 and 1964 Stipulations underlying the Blue River Decree include "'obligations to and rights of the United States under its contracts,'" which are governed exclusively by federal law. *Las Cruces*, 289 F.3d at 1186 (quoting *Boyle v. United Techs. Corps.* 487 U.S. 500, 504 (1988)).

Application of the prudential considerations contained in the five factors to be considered in applying the *Brillhart* doctrine support this Court's exercise of its jurisdiction. These factors largely overlap the *Colorado River* factors, and the facts in this matter support the Court's

exercise of jurisdiction whether looking at the discretionary *Brillhart/Mhoon* factors, or the more stringent standards of the *Colorado River* "exceptional circumstances" test.   First, whether declaratory or coercive, a judgment confirming that the Protocol provisions are consistent with the Blue River Decree will settle the controversy among the parties and clarify the legal relations at issue.  The requested determination will resolve uncertainties regarding legal relationships concerning administration of the subject water rights, and the obligations of the Cities regarding replacement water, which affect the water rights of the parties.

Second, the Parties seek no procedural advantage.  In fact the Parties seek no more than to utilize procedures adopted by this Court in past proceedings of a similar nature.  Based on this history, the Parties have no reason to believe that the procedural use of the federal action will cause any increase in friction between the federal and state courts, or improperly encroach upon state court jurisdiction.  This Court is merely being asked to interpret the meaning of its own decrees.  To date, this Court's exercise of its retained jurisdiction in parallel circumstances has not lead to friction with the Water Court, and there is no reason to believe that will change.

Third, as stated previously, the State Water Court cannot provide an alternative remedy which is better or more effective.  On the contrary, because this Court has jurisdiction over Section IV of the Protocol, and the State Water Court does not, the better and more effective remedy for fully resolving the controversy and clarifying the legal relations at issue lies in this Court.

3. **Although There is Overlapping Jurisdiction Over Protocol Sections I, II and III, The Unique Nature of Section IV, and This Court's Jurisdiction Over that Interrelated Provision Makes this Court the Appropriate Forum for the Entire Proceeding.**

Judicial economy and the need to avoid potentially inconsistent rulings argue that this Court, which - unlike the State Court - has jurisdiction over all aspects of the dispute, should hear the entire proceeding. As previously noted, Section IV of the Protocol is contractual in nature. It does not entail water rights administration which might affect other water users. It does not entail a "determination of water rights" as that term is broadly defined under State law. The contractual obligations involve the Cities, the western slope entities, and the United States, and implement aspects of the Senate Document 80 "Manner of Operations" incorporated into the Blue River Decree and federal statute. To the extent that contractual obligations of the United States are involved, the State Water Court lacks jurisdiction to resolve the controversy. However, the Petitioners' views of the contractual issues, and the appropriate resolution of those issues, ties back to the administrative provisions of Sections I-III.

Because the State Water Court cannot resolve all issues, it makes no logical sense to split up the jurisdictional exercise. As a matter of judicial economy, and to protect the federal interests in Senate Document 80 that span all four Protocol Sections, this Court should continue to exercise its jurisdiction over all aspects of the implementation of Senate Document 80 and the Blue River Decree.

4. **The Process Proposed By the Parties Provides Broad and Full Notice, and Joins All Interested Water Users and the State Whether They Appear Or Not**.

The Petitioners have proposed that the Court adopt the same process used by the Water Court under the 1969 Act. This Court has required the use of this process for Denver's diligence

applications pursuant to the Court's 1977 Order.  Under the process of the 1969 Act, "[a]ny person who desires a determination of a water right . . . shall file with the water clerk a verified application setting forth facts supporting the ruling sought, a copy of which shall be sent by the water clerk to the state engineer and the division engineer." Colo. Rev. Stat. § 37-92-302(1)(a). The determination that Sections I-III of the Protocol is consistent with the Blue River Decree is within the scope of this statute.  The term "determination of a water right" has been construed broadly by the Colorado Supreme Court to include applications "to construe and make determinations regarding the scope of water rights adjudicated in prior decrees." *Southern Ute Indian Tribe v. King Consolidated Ditch Co.*, 250 P.3d 1226, 1234 (Colo. 2011) (holding that application filed for determination of whether original decree included stock watering uses, and wintertime use, was authorized by Colo. Rev. Stat § 37-92-302(1)(a)).  The Petitioners filed such an Application in Water Court in November, 2013.

Following the filing of an application, "[a]ny person, including the state engineer," may oppose the application by filing "with the water clerk a verified statement of opposition setting forth facts as to why the application should not be granted or why it should be granted only in part or in certain conditions." Colo. Rev. Stat. § 37-92-302(1)(b)(emphasis added).  Notice of the Application is provided by 1) the Water Resume, a monthly publication prepared by the Water Clerk, and 2) publication of the full application in a newspaper of general circulation in every county affected.  *See* Colo. Rev. Stat §§ 37-92-302(3)(a), (b), (c)(I)(D).  Statements of opposition must be filed "by the last day of the second month following the month in which the application is filed." Colo. Rev. Stat. §37-92-302(1)(c).

In the instant case, an application similar to the Petition in this matter, together with the full text of Sections I, II, and III of the Protocol, were published in nine newspapers of general circulation in Water Division No. 5. As a result, ten (10) Statements of Opposition were filed on behalf of twelve (12) Opposers. As previously noted, six of the twelve Opposing parties are explicitly in support of the Application. No Statement of Opposition was filed by the State of Colorado, or the State or Division Engineers.

The Notice given under the Resume and publication procedures set forth in Colorado statues have been found to be constitutionally adequate to provide notice to potentially interested parties. In upholding abstention by the federal court, the United States Supreme Court in *Colorado River* upheld Colorado's adjudication procedures under the 1969 Act, including its resume notice and newspaper publication procedure. *See Colorado River*, 424 U.S. at 819-820. *See also United States v. Dist. Court for Water Div. No. 5*, 401 U.S. 527, 529 (1971) (holding that Colorado's adjudication system with monthly publication of water right applications constitutes a general adjudication for the purpose of the McCarran Amendment). The sufficiency of the process has also been confirmed by the Colorado Supreme Court. *See Southern Ute*, 250 P.3d at 1236-37.

As the Colorado Supreme Court has observed, the resume notice and newspaper publication procedure

> [S]erve the dual purpose of providing due process notice to all users of water rights on the stream, so they could decide whether to participate in the water court proceedings through filing a timely statement of opposition, and, whether or not they do so, bind them to the results of the adjudication.

*Id.* at 1236. For this reason, every potentially interested party, including the State, whether they appear or not, are bound by the Decrees entered after notice under the 1969 Act. As a

consequence, the procedure proposed by the Petitioners, and the resulting decree, will provide

the Petitioners full and final resolution of all issues presented to the Court.

**CONCLUSION**

      For the reasons set forth herein, the United States requests the Court to determine that:

      1)      The Court has concurrent jurisdiction to hear all of the matters presented in the

Petition;

      2)      This Court is best suited to resolve the entire matter before it based on its long

history of exercising its jurisdiction to effectuate the Blue River Decree, and the limitations of

the State Court's jurisdiction;

      3)      Abstention is inappropriate in this instance; and

      4)      Utilizing the process established for Denver's diligence filings under the Court's

August 4, 1977 Order is appropriate and that the Colorado resume notice and newspaper

publication process is sufficient to provide notice and due process to any interested party.

      Submitted this 15th day of February.

                        ROBERT G. DREHER
                        Acting Assistant Attorney General
                        United States Department of Justice

                        s/ James J. DuBois
                        JAMES J. DUBOIS
                        Trial Attorney, Natural Resources Section
                        Environment & Natural Resources Division
                        999 18th Street
                        South Terrace, Suite 370
                        Denver, CO 80202
                        (303) 844-1354; | Phone
                        (303) 844-1350 | Fax
                        James.Dubois@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Ann M. Rhodes    amr@bhgrlaw.com

Anne Jamieson Castle    acastle@hollandhart.com

Austin C. Hamre    ahamre@dodpc.com

Barry Alan Schwartz    barry.schwartz@denvergov.org

Bennett W. Raley    bwraley@mac.com

Brian Max Nazarenus    bnazarenus@rcalaw.com

Casey S. Funk    casey.funk@denverwater.org

Chad Matthew Wallace    chad.wallace@state.co.us

Charles B. White    cwhite@petros-white.com

Christopher Graham McAnany    howard@dwmk.com

Christopher L. Thorne    cthorne@hollandhart.com

Daniel John Arnold    daniel.arnold@denverwater.org

David G. Hill    dgh@bhgrlaw.com

Donald E. Phillipson    dbls99@comcast.net

Douglas L. Abbott    dabbott@hollandhart.com

Frederick G. Aldrich    faldrich@aldrich-law.com

Gail Rosenschein    gail.rosenschein@denverwater.org

James R. Montgomery    jmontgomery@mwhw.com

Jason V. Turner    jturner@crwcd.org

Jeffrey Flinn Davis    jeff.davis@denverwater.org

John Dorsey Walker    jdorseywalk@yahoo.com

John Leonard Watson    jwatson@bw-legal.com

Julie Elise Maurer    jmaurer@rcalaw.com

Karl D. Ohlsen    kohlsen@chp-law.com

Kathleen M. Morgan    kathi_M8@yahoo.com

Kirsten Marie Kurath    Kmkurath@wth-Law.Com

Lisa M. Thompson     lthompson@troutlaw.com

Mark A. Hermundstad     mherm@wth-law.com

Mary Mead Hammond     mhammond@chp-law.com

Meghan Nichols Winokur     mwinokur@hollandhart.com

Michael John Gustafson     Mgustafson@springsgov.Com `

Nathan A. Keever     howard@dwmk.com , keever@dwmk.com

Olivia Denton Lucas     olivia.lucas@faegrebd.com

Peter Cheney Fleming     pfleming@crwcd.org

Robert James Pohlman     rpohlman@swlaw.com

Robert V. Trout     rtrout@troutlaw.com

Roger T. Williams , Jr     rwilliams@rcalaw.com

Stanley W. Cazier     cazier_mcgowan@hotmail.com

William A. Paddock     bpaddock@chp-law.com

s/ James J. DuBois
JAMES J. DUBOIS
Trial Attorney, Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
(303) 844-1354; | Phone
(303) 844-1350 | Fax
James.Dubois@usdoj.gov