**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 49-cv-02782-MSK-CBS
Consolidated with District Court, Water Division No. 5, Case No. 2006CW255**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**NORTHERN COLORADO WATER CONSERVANCY DISTRICT, et al.,**

    **Defendants.**

---

**OPINION AND ORDER GRANTING, IN PART, MOTION FOR ENTRY OF DECREE,
VACATING ORDER RESERVING FUTURE JURISDICTION, AND CLOSING CASE**

---

**THIS MATTER** comes before the Court pursuant to the Applicant's ("Denver") Unopposed Motion for Entry of Decree **(# 402)**.

The Court foregoes an extensive recitation of the facts and procedural history of this aged case.[1] It is sufficient to note that this action concerns various parties' rights to the water that flows in the Blue River. Some of that flow is captured in the Green Mountain and Dillon Reservoirs, and some of the captured water is put to various uses by federal, state, and local entities. The case was initially commenced in 1949, the original claims to water rights were resolved by settlement in 1955, and the terms of that settlement were reduced to a decree over which the Court has since continued to exercise its jurisdiction. Pursuant to the decree and the

---

[1] For those who desire a comprehensive historical context, the Court refers readers to the 10th Circuit's abbreviated historical retelling of the dispute in *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071 (10th Cir. 2009) and *U.S. v. Northern Colorado Water Conservancy Distr.*, 608 F.2d 422 (10th Cir. 1979), among others.

1

Court's continuing exercise of jurisdiction, holders of water rights occasionally return to this Court to reaffirm or contest such rights.

### 1. Denver's Motion

As part of the decree, Denver was granted conditional rights to take 788 cubic feet per second ("cfs") of water from Dillon Reservoir through a diversion project known as the Roberts Tunnel. In prior proceedings, the Court has made absolute – that is, converted those conditional rights to the water to permanent rights -– Denver's appropriation of 520 cfs of the flow through the Roberts Tunnel. In the instant motion, which was initially filed in 2006 and most recently amended in 2013, Denver seeks to make absolute its rights to an additional 134 cfs, increasing the total amount of its absolute rights to 654 cfs.

Several state and municipal entities initially filed objections to Denver's motion. Over the ensuing years, Denver has reached various agreements with the objectors and, at this point in time, all objections to Denver's motion have been withdrawn. Thus, the motion is presently unopposed. Denver has filed a proposed decree granting its motion. That 45-page document purports to have this Court make extensive findings of fact about Denver's conduct, both historically and presently, about the nature of Denver's agreements with other entities, about the capacity of the Roberts Tunnel and other components of the diversion project, and numerous other matters.

The Court declines to approve the proposed decree as written. This Court makes findings of fact in only where there is a live dispute as to the existence of a given fact and the Court is called upon to receive and weigh evidence in order to resolve the factual dispute. No party is contesting the facts recited in Denver's proposed decree, and thus, there is no factual dispute that

requires (or even permits) this Court to make any findings. Instead, the Court is left with a situation in which all parties agree that a given set of facts is present. The most the Court can say that <u>the parties agree</u> that the facts recited in the proposed decree are true, and that they further agree that such facts warrant granting Denver the relief it requests. Accordingly, the Court finds and decrees as follows:

1. The parties – meaning Denver, any entity that previously lodged an objection to Denver's motion, and any individual or entity with actual or constructive notice of Denver's application and who has not appeared herein and lodged any timely objection or disputed any representation -- agree that Denver has been reasonably diligent in the development of the conditional water rights described in its motion and proposed decree for the period of December 14, 2000 to December 26, 2006, and that such conditional rights shall continue in effect;

2. The parties agree that Denver lawfully diverted 654 cfs, in compliance with prior orders and legal obligations, and put that water to beneficial use during the period referenced above; and

3. The parties herein are bound by that agreement and are hereafter estopped from acting or asserting otherwise.

Denver's motion **(# 402)** is thus **GRANTED IN PART** and **DENIED IN PART** on these terms.

### 2. Termination of jurisdictional reservation

The foregoing decree brings to the Court's attention, a fundamental question of whether it should exercise jurisdiction over issues of priority and use of water rights which are customarily and expertly handled by Colorado water courts. Indeed, since 1977, this Court and

the Colorado Water Court District #5 have both been considering such issues.   Review of the history of this case offers some explanation, but also points to the need to avoid requiring parties to seek relief in two fora.

This action was originally initiated by the United States for determination of its water interests under federal law.  But in its first few years, the case collected a number of companion cases, petitions for adjudication of water rights of other non-federal entities.    It appears that by 1955, the main action had been consolidated with petitions for "adjudication of priorities of water rights in Water District No. 36" both for purposes of irrigation (Civil No. 5016)[2] and non-irrigation (Civil No. 5017).  Largely by virtue of an August 4, 1977 Order issued by Judge Arraj, even after the United States' water rights were determined, the "companion cases" remained in this Court.  Denver's instant motion is brought pursuant to a companion case.

When this case was first filed, Colorado had no water courts to adjudicate and enforce appropriative rights.  But in 1969, Colorado established a system of state Water Courts in which disputes over water rights and priorities could be efficiently litigated before judges with particular expertise.  One would expect that the "companion cases" that had been consolidated into this case would have been returned to supervision by the Colorado Water Courts.  But in 1977, Judge Arraj issued an Order declaring that, for purposes of "quadrennial showing of due diligence and applications for making absolute conditional decrees or portions thereof" in connection with Civil Actions 5016 and 5017, the federal court would "act as the Water Judge" applying state law.  Since then, the two courts have worked in tandem, requiring parties to file notices and pleadings in both courts and obtain orders from both.

---

[2]   The full case numbers for these companion actions are not immediately ascertainable from this Court's review of handwritten docket sheets dating back to the 1950s.

This Court has concluded that, the merits of Judge Arraj's August 1977 Order are no longer operative. From a theoretical perspective, showings by state or municipal entities of due diligence or applications to make conditional decrees absolute are not within the limited scope of federal subject-matter jurisdiction conferred on this Court by Congress. From a policy perspective, such proceedings, involving competing rights among Colorado entities to the use of water within Colorado, involve matters of state concern and state law and thus, are properly adjudicated by Colorado Water Courts. Judge Arraj, who took over management of this case in 1960, may have had more familiarity with the Blue River Decree and Colorado water law than judges in Colorado's nascent Water Courts. This may have made the exercise of federal jurisdiction for adjudication as to showings of diligence or applications to make conditional allocations absolute an efficient use of judicial resources. But almost 40 years have passed since Judge Arraj's order was issued, and no federal district judge presiding over the case has been the beneficiary of his expertise or institutional knowledge. In contrast, for almost 50 years, Colorado Water Courts have been providing skilled and efficient determinations of the types of issues reflected in the "companion cases". This Court's continued exercise of jurisdiction over these types of collateral issues arising in the companion cases results in duplicative judicial supervision and unnecessary costs to the parties. It is not necessary and no longer reflects a prudent allocation of judicial or party resources, particularly when Colorado already provides a forum that is ready, willing, and able to make such adjudications.

Accordingly, this Court vacates Judge Arraj's August 4, 1977 Order, thereby bifurcating the "companion cases" from the underlying case, and discontinuing this Court's exercise of jurisdiction over issues of showing of due diligence or applications to make conditional decrees

absolute. Such proceedings shall hereafter be pursued by the affected parties exclusively in the Colorado Water Court for District No. 5, and on such schedule as that court may direct.

The fact that conditional allocations arise, in part, from the Blue River Decree shall not, by itself, suffice to vest jurisdiction in this Court.  Indeed, to the extent that the decree reserves exclusive federal jurisdiction to hear and resolve suits that arose among exclusively state and local entities concerning the decree's terms, this Court vacates such provision.  The Water Court is certainly familiar with the decree, the circumstances that led to it, and its subsequent interpretations to effectively assume the mantle of interpreting and applying its terms as among state and local entities.  The only future proceedings that this Court anticipates in this action would be those in which the United States asserts a claim such that this Court would exercise subject-matter jurisdiction over it pursuant to 28 U.S.C. § 1345.

There being no further proceedings to conduct in this action, the Clerk of the Court shall administratively close this case, subject only to a motion by the United States to reopen it.

Dated this 22nd day of March, 2017.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge